Civil Action No.: 08 Civ. 3134 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

Plaintiffs,

-against-

THE DEPARTMENT OF CORRECTION OF THE
CITY OF NEW YORK and THE CITY OF NEW
YORK,

**Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT IN PART**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street, Room 2-108*
*New York, N.Y. 10007*

*Of Counsel: Basil C. Sitaras*
*Tel: (212) 788-0879*
*Matter No.: 2008-014682*

Paul Marks,
Basil C. Sitaras,
   Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT

    POINT I

        TIME SPENT DONNING AND DOFFING UNIFORMS IS NON-COMPENSABLE UNDER THE FLSA. .............................................................................................. 2

        A.   Background of the FLSA ...................................................... 2

        B.   The Donning and Doffing of Uniforms by Correction Officers ............................................................ 4

        C.   The Time Spent Donning and Doffing Uniforms by Plaintiffs is *De Minimis* ..................................... 9

    POINT II

        THE NEW YORK CITY DEPARTMENT OF CORRECTION IS A NON-SUABLE ENTITY .............................. 10

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                        <u>Pages</u>

Abbe v. City of San Diego,
    2007 U.S. Dist. LEXIS 87501 (S.D. Cal. 2007) ....................................................8

Alford v. Perdue Farms, Inc.,
    2008 U.S. Dist. LEXIS 24948 (M.D.Ga. 2008)......................................................5

Anderson v. Mt. Clemens Pottery Co.,
    328 U.S. 680 (1946)............................................................................................2, 9

Anderson v. Pilgrim's Pride Corp.,
    147 F. Supp. 2d 556 (E.D. Tex. 2001),
    aff'd, 44 Fed. Appx. 652 (5th Cir. 2002) ...............................................................4

Bailey v. New York City Police Department,
    910 F. Supp. 116 (E.D.N.Y. 1996) ......................................................................10

Ballaris v. Wacker Siltronic Corp.,
    370 F.3d 901 (9th Cir. 2004) .................................................................................8

Bamonte v. City of Mesa,
    2008 U.S. Dist. LEXIS 31121 (D.Ariz. 2008)....................................................7, 8

Barrentine v. Arkansas-Best Freight System, Inc.,
    750 F.2d 47 (8th Cir. 1984) ..................................................................................7

Cabell v. Markham,
    148 F.2d 737 (2d Cir. 1945).................................................................................5

Gorman v. Consolidated Edison Corp.,
    488 F.3d 586 (2d Cir. 2007),
    cert. denied, 2008 U.S. LEXIS 4864 (June 9, 2008) .....................................2, 3, 4, 5

Gorman v. Entergy Nuclear Operations, Inc.,
    2006 U.S. Dist. LEXIS 96817 (S.D.N.Y. 2006),
    aff'd, 488 F.3d 586.....................................................................................3, 4, 5, 6, 7

IBP, Inc. v. Alvarez,
    546 U.S. 21 (2005)............................................................................................3, 5

Jordan v. IBP, Inc.,
    542 F. Supp. 2d 790, 2008 U.S. Dist. LEXIS 28109 (M.D. Tenn. 2008)..................5

**Cases**                                                                                                    **Pages**

Kavanagh v. Grand Union Co., Inc.,
    192 F.3d 269 (2d Cir. 1999).................................................................................2

Kosakow v. New Rochelle Radiology Associates, P.C.,
    274 F.3d 706 (2d Cir. 2001)..............................................................................5, 7

Lemmon v. City of San Leandro,
    538 F. Supp. 2d 1200 (N.D. Cal. 2007) ...................................................................7

Martin v. City of Richmond,
    504 F. Supp. 2d 766 (N.D. Cal. 2007) ....................................................................7

Maurice v. New York City Department of Corrections, et. al.,
    1997 U.S. Dist. LEXIS 11057, 93 Civ 6008 (S.D.N.Y. 1997 ) .................................10

Mitchell v. King Packing Co.,
    350 U.S. 260, 262 (1956)...................................................................................4

Overnight Motor Transport Co. v. Missel,
    316 U.S. 572 (1942)........................................................................................2

Reich v. IBP, Inc.,
    38 F.3d 1123 (10th Cir. 1994) ............................................................................4

Reich v. New York City Transit Authority,
    45 F.3d 646 (2d Cir. 1995).............................................................................3, 5, 9

Singh v. City of New York,
    524 F.3d 361 (2d Cir. 2008)...............................................................................9

Spoerle v. Kraft Foods Global, Inc.,
    527 F. Supp. 2d 860 (W.D. Wis. 2007) ..................................................................5

Steiner v. Mitchell,
    350 U.S. 247 (1956)......................................................................................3, 6, 7

Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,
    321 U.S. 590 (1944).........................................................................................2

Trans World Airlines v. Thurston,
    469 U.S. 111 (1985).........................................................................................2

**Statutes**                                                                      **Pages**

29 C.F.R. § 790.7(d) and 790.7(g) ...................................................................4, 5

29 C.F.R. § 790.8(c) n. 65 ........................................................................................8

29 U.S.C. § 201 <u>et</u> <u>seq</u>. .............................................................................................1, 2

29 U.S.C. § 254(a) ....................................................................................................3

Fed. R. Civ. Pro. 12(b)(6) ........................................................................................1

**Other Authorities**

81 Cong. Rec. 4983 (1937 ........................................................................................7

<u>superseded by statute</u>, Portal-to-Portal Act, 61 Stat. 86-87 ........................................2, 7

Webster's Third New Int'l Dictionary (Unabridged) 1152, 1510-11 (1986) ..................5

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006) ................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------ x
ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

                         Plaintiffs,

         -against-

THE DEPARTMENT OF CORRECTION OF THE           08 Civ. 3134 (DLC)
CITY OF NEW YORK and THE CITY OF NEW
YORK,

                        Defendants.

------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT IN PART

### PRELIMINARY STATEMENT

       Plaintiff Eric Edwards, individually and on behalf of alleged putative members of

a collective action comprised of Correction Officers employed by the City of New York

("City"), bring this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.,

("FLSA") claiming that Correction Cfficers are entitled to compensation for: (1) time spent

donning and doffing their uniforms at the beginning and end of assigned tours; and (2) time spent

on meal breaks.    Defendants now move to dismiss the complaint in part pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.    As shown below, as a matter of law, time spent

by Correction Officers donning and doffing uniforms is non-compensable under the FLSA, and

thus that portion of the complaint fails to state a claim.    Second, the claims against defendant

New York City Department of Correction ("DOC") should be dismissed because it is not a suable entity.[1]

## ARGUMENT

## POINT I

## TIME SPENT DONNING AND DOFFING UNIFORMS IS NON-COMPENSABLE UNDER THE FLSA.

### A.    Background of the FLSA

As the Second Circuit has observed, the FLSA, 29 U.S.C. § 201 et seq., was originally:

> enacted to ensure that employees receive a "fair day's pay for a fair day's work," Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Franklin D. Roosevelt)), superseded by statute, Portal-to-Portal Act, 61 Stat. 86-87, as recognized in Trans World Airlines v. Thurston, 469 U.S. 111, 128 n.22, (1985). On the pay end, the FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602-03, (1944). But not all work-related activities constitute "work or employment" that must be compensated. Kavanagh v. Grand Union Co., Inc., 192 F.3d 269, 271-72 (2d Cir. 1999).

Gorman v. Consol. Edison Corp., 488 F.3d 586, 589-90 (2d Cir. 2007), cert. denied, 2008 U.S. LEXIS 4864 (June 9, 2008).[2] However, after a decision in which the Supreme Court found that time spent walking on an employer's premises before clocking in was compensable, Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), in addition to the donning and doffing of aprons

---

[1] With respect to plaintiff's claim that they are entitled to compensation for time spent on meal breaks, it is defendants' position that Correction Cfficers are, in fact, compensated for meal breaks. Defendants will move for summary judgment on that claim defendants respectfully reserve their right to move to dismiss this and any remaining claims on summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure at the appropriate time. Moreover, under separate cover, defendants are respectfully requesting that their answer to the remaining claim be stayed pending the resolution of this motion.

[2] Copies of all electronically cited cases are annexed hereto in the attached Appendix.

and overalls, Congress enacted the Portal-to-Portal Act in 1947 as a response to those rulings. See Reich v. New York City Transit Authority, 45 F.3d 646, 649 (2d Cir. 1995).

In general, "the Portal-to-Portal Act 'narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under [the Supreme Court's] cases: [1] walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, [2] and activities that are preliminary or postliminary to that principal activity.'" Gorman v. Entergy Nuclear Operations, Inc., 2006 U.S. Dist. LEXIS 96817, *8 (S.D.N.Y. 2006), aff'd, 488 F.3d 586 (quoting IBP, Inc. v. Alvarez, 546 U.S. 21 (2005); see also 29 U.S.C. § 254(a). More specifically, "Subsection (2) of the Portal-to-Portal Act undid the [Supreme Court's prior] holding that required compensation for putting on aprons and overalls, and thus 'was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation.'" Gorman, 488 F.3d at 590 (quoting Reich, 45 F.3d at 649).

Several years after the enactment of the Portal-to-Portal Act, the Supreme Court found that "changing clothes and showering under normal conditions" were both incontrovertibly non-compensable. Steiner v. Mitchell, 350 U.S. 247, 248 (1956). However, because the plaintiffs in Steiner made "extensive use of dangerously caustic and toxic materials, and [were] compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower" as a necessary part of their job, the Court found the changing of clothes and showering under these heightened conditions to be an integral and indispensable to the plaintiffs' principal activities, and thus were compensable under the FLSA. Id. at 256. In a decision issued on the same day as Steiner, the Supreme Court applied the same "integral and indispensable" standard to find knife-sharpening by slaughterhouse workers as compensable

3

under the FLSA, given that the sharpening of knives was "indispensable to the task of butchering animals, and intrinsically 'connected with' it." Gorman, 488 F.3d at 591 (quoting Mitchell v. King Packing Co., 350 U.S. 260, 262 (1956)). Furthermore, "the Department of Labor has further stressed that 'checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks' are non-compensable, preliminary or postliminary activities." Gorman, 2006 U.S. Dist. LEXIS 96817, at *11 (citing 29 C.F.R. § 790.7(g)).

Under the above principles, the donning and doffing of uniforms by Correction Officers, a position which implicates no heightened risk to the vital considerations of health and hygiene, are preliminary and postliminary activities which are not integral and indispensable to the plaintiffs' principal activities, and thus are non-compensable under the FLSA.

**B.    The Donning and Doffing of Uniforms by Correction Officers**

In Gorman, the Second Circuit held that donning and doffing of generic protective gear or uniforms is not covered by the FLSA, that such activities are considered either preliminary or postliminary and are "not rendered integral by being required by the employer or by government regulation." Gorman, 488 F.3d at 594 (citing 29 C.F.R. § 790.7(g)); see also Reich v. IBP, Inc., 38 F.3d 1123, 1126 (10th Cir. 1994) (holding that donning and doffing safety glasses, a pair of earplugs, a hard hat and safety shoes, "although essential to the job, and required by the employer," are pre- and postliminary activities); Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 563 (E.D. Tex. 2001) (same), aff'd, 44 Fed. Appx. 652 (5th Cir. 2002) (not precedential). Thus, even where employees are required to be in uniform while working, such as Correction Officers employed by defendants, the donning and doffing of such uniforms remain non-compensable under the FLSA.

The Second Circuit's reasoning on the distinction between "integral" and "indispensable" is of particular importance, especially in light of the fact that some courts have disagreed with the holding in Gorman. See, e.g., Jordan v. IBP, Inc., 542 F. Supp. 2d 790, 2008 U.S. Dist. LEXIS 28109 (M.D. Tenn. 2008); Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860, (W.D. Wis. 2007); contra Alford v. Perdue Farms, Inc., 2008 U.S. Dist. LEXIS 24948 (M.D.Ga. 2008) (following and endorsing the Second Circuit's Gorman decision). In Gorman, in discussing the distinction between the separate "integral" and "indispensable" requirements, both of which are necessary for an activity to be compensable under the FLSA, Chief Judge Denis Jacobs wrote for the Court:

> "Indispensable" is not synonymous with "integral." "Indispensable" means "necessary." See Webster's Third New Int'l Dictionary (Unabridged) 1152, 1510-11 (1986). "Integral" means, inter alia, "essential to completeness"; "organically joined or linked"; "composed of constituent parts making a whole." Id. at 1173. At the same time, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945). The caselaw gives better guidance by apt examples: Sharpening the knife is integral to carving a carcass, Mitchell, 350 U.S. at 263; powering up and testing an x-ray machine is integral to taking x-rays, Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 717-18 (2d Cir. 2001); and feeding, training and walking the dog is integral to the work of a K-9 officer, Reich v. N.Y. City Transit Auth., 45 F.3d 646 (2d Cir. 1995), limited in part by IBP, 546 U.S. at 21. See also IBP, 546 U.S. at 40-41 (observing that activities which are "necessary" (or indispensable) to a principal activity are not thereby "integral and indispensable"); 29 C.F.R. § 790.7(d) (noting, for example, that "the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area . . . is not segregable from the simultaneous performance of his assigned work" and is thus integral to his principal activities) (emphasis added).

Gorman, 488 F.3d at 592-93. Applying this analysis, the donning and doffing of uniforms by Correction Officers are required and necessary, and thus indispensable, but such activities are not

integral to the principal activities of Correction Officers, and thus are not compensable under the FLSA.

The Gorman Court also distinguished those Supreme Court cases where the donning and doffing of equipment was considered compensable, such as Steiner, on the grounds that "when work is done work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there, just as a diver's donning of wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done. By contrast, the activities for which plaintiffs [in Gorman] seek compensation, while arguably indispensable, are not integral to their principal activities." Gorman, 488 F.3d at 593.[3] In Gorman, the "indispensable" steps that those employees were required to take were much more arduous than simply donning and doffing a uniform, and therefore it is without doubt that the donning and doffing of uniforms by the plaintiffs herein are not integral to their principal activities within the established precedent of the Second Circuit. As opposed to cases where the donning and doffing of a uniform is truly indispensable and integral to the principal activities of an employee, the donning and doffing of a Correction Officer's uniform are "'relatively effortless,' non-compensable, preliminary [and postliminary] tasks." Id. at 594 (citing Reich, 45 F.3d at 649).

The donning and doffing of uniforms by Correction Officers:

> ... is not preparatory preshift work akin to the meat cutters sharpening knives in King Packing Co, the battery workers putting

---

[3] In Gorman, the plaintiffs alleged the following pre- and postliminary activities: "Waiting in traffic outside the plant entrance; Badge inspection at the entrance, including a visual check of the interior of the car, and occasional random vehicle inspection (engine, trunk, glove compartment, undercarriage); Parking and walking to the command post; At the command post, waiting in line and passing through a radiation detector, x-ray machine, and explosive material detector; Waiting in line to swipe an ID badge and to palm a sensor; Going to the locker room to obtain and don metal capped safety boots, safety glasses, and a helmet (if applicable); Walking to the job-site; And at the end of the shift, doing many of these things in reverse." 488 F.3d at 592.

> on specialized protective gear in <u>Steiner</u>, the truck drivers
> inspecting their trucks for safety concerns in <u>Barrentine v.
> Arkansas-Best Freight System, Inc.</u>, 750 F.2d 47 (8th Cir. 1984),
> or a radiological technologist turning on and preparing a x-ray
> processing machine in <u>Kosakow</u>, 274 F.3d at 715. To hold
> otherwise would be to return to the Supreme Court's expansive
> definition of work in <u>Anderson</u> that Congress explicitly rejected.
> <u>Cf.</u> <u>IBP, Inc.</u>, 126 S.Ct. at 527 ("We discern no limiting principle
> that would allow us to conclude that the waiting time in dispute
> here is a 'principal activity' . . . without also leading to the logical
> (but untenable) conclusion that the walking time at issue in
> <u>Anderson</u> would be a 'principal activity' . . . and would thus be
> unaffected by the Portal-to-Portal Act.").

<u>Gorman</u>, 2006 U.S. Dist. LEXIS 96817, at *13-14.  Presently, there are no decisions within the

Second Circuit which address the issue of whether a peace officer's uniform attaches a certain

status or appearance that might render it integral to the officer's principal activities.  However, a

District Court for the District of Arizona stated that it was "not convinced that there is anything

unique about a police uniform in and of itself, which assists an officer in completing his or her

work. Although a police uniform connotes a position of authority and alerts the public to the

wearer's identity, it is necessary to the performance of an officer's duties only in the insufficient

sense that uniforms identify many types of workers." <u>Bamonte v. City of Mesa</u>, 2008 U.S. Dist.

LEXIS 31121, *12-13 (D.Ariz. 2008); <u>see also</u> <u>Martin v. City of Richmond</u>, 504 F. Supp. 2d

766, 774 (N.D. Cal. 2007) (stating that a police officer's uniform is not "integral and

indispensable" to his or her principal activities because a uniform, "in and of itself, does not

assist the officer in performing [police] duties."); <u>but see</u> <u>Lemmon v. City of San Leandro</u>, 538 F.

Supp. 2d 1200 (N.D. Cal. 2007).  Applying similar logic, these uniforms required of Correction

Officers do no more than to identify the officers to one another and to distinguish them from the

inmates which they protect.

Also, even though a different standard was followed by <u>Bamonte</u> as compared to <u>Gorman</u>, the end result was the same: namely, that the donning and doffing of uniforms on the facts alleged were non-compensable under the FLSA.  In <u>Bamonte</u>, as well as other Ninth Circuit decisions, "the relevant inquiry [under the FLSA] is not whether the Plaintiffs' uniforms or protective gear are necessary or integral to the performance of their duties, but rather whether the nature of their work requires the donning and doffing process to be done at the station or reporting place."  <u>Bamonte</u>, 2008 U.S. Dist. LEXIS 31121, at *12 (citing <u>Abbe v. City of San Diego</u>, 2007 U.S. Dist. LEXIS 87501 (S.D. Cal. 2007)); <u>see</u> <u>also</u> <u>Ballaris v. Wacker Siltronic Corp.</u>, 370 F.3d 901 (9th Cir. 2004).  Moreover, the <u>Bamonte</u> court found it persuasive that "the Department of Labor has declared that its 'longstanding position' is that the FLSA mandates compensation for donning and doffing of required gear 'only when the employer or the nature of the job mandates that it take place on the employer's premises.'"  <u>Bamonte</u>, 2008 U.S. Dist. LEXIS 31121, at *7 (citing <u>Wage & Hour Adv. Mem. No.</u> 2006-2 (May 31, 2006)); <u>see</u> <u>also</u> 29 C.F.R. § 790.8(c) n. 65.  Here, there is no allegation by the plaintiffs that they are required by defendants to don and doff their uniforms on DOC premises, and defendants affirmatively state that there is no such requirement within DOC regulations or guidelines.  Accordingly, this lends further weight to defendants' contention that plaintiffs can prove no set of facts entitling them to compensation for donning and doffing.

Accordingly, the donning and doffing of uniforms by Correction Officers are non-compensable activities under the FLSA, and thus plaintiffs' claim based on donning and doffing should be dismissed.

**C.    The Time Spent Donning and Doffing Uniforms by Plaintiffs is *De Minimis***

In the alternative, if the Court finds that plaintiffs' donning and doffing of their uniforms are integral and indispensable to their principal activities, defendants submit that the time spent is *de minimis*, and thus this claim should still be dismissed. See Reich, 45 F.3d at 649. "The de minimis doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work '[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours ... 'It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.'" Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680). Three factors are measured by the Court when evaluating whether compensable time should be considered de minimis: (1) the administrative difficulty of recording the time; (2) the size of the claim in the aggregate; and (3) whether the tasks occur regularly." Singh, 524 F.3d at *22. While the third factor is conceded, defendants submit that, just as the court stated in Singh in finding the otherwise compensable time *de minimis*: "as a practical administrative matter, it would be difficult for the City to record and monitor" the additional time for each employee. Id. Second, the aggregate claims are likely to be relatively small, a fact conceded by plaintiffs' in their complaint and a factor which weighs heavily in favor of the defendants. See Complaint, ¶ 12; see also Singh, 524 F.3d at 23. Thus, by weighing the factors outlined by the Second Circuit, the time spent donning and doffing uniforms is *de minimis*, requiring dismissal of plaintiff's claim.

## POINT II

## THE NEW YORK CITY DEPARTMENT OF CORRECTION IS A NON-SUABLE ENTITY.

In addition to naming the City of New York as a defendant, plaintiffs also bring this action against the DOC.  Because the DOC is not a suable entity, all claims against it should be dismissed.  It is well settled that organizational subdivisions of the City of New York lack legal existence and therefore are not suable entities.  See Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996); Maurice v. New York City Department of Corrections, et. al. , 1997 U.S. Dist. LEXIS 11057, No. 93 Civ 6008 (S.D.N.Y. 1997).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiff's claim based on the donning and doffing of their uniforms, and grant such other and further relief as this Court deems just and proper.

Dated:          New York, New York
                June 13, 2008

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-108
                                    New York, New York  10007
                                    (212) 788-0879
                                    bsitaras@law.nyc.gov


                          By:       _____
                                    Basil C. Sitaras (BS-1027)
                                    Assistant Corporation Counsel

Paul Marks,
Basil C. Sitaras,
   Of Counsel.

10

# APPENDIX

LEXSEE



Positive
As of: Jun 12, 2008

**MARCUS R. ABBE, et al., Plaintiffs, vs. CITY OF SAN DIEGO, Defendant.**

**CASE NO. 05cv1629 DMS (JMA), 06cv0538 DMS (JMA)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**2007 U.S. Dist. LEXIS 87501**

**November 9, 2007, Decided**

**PRIOR HISTORY:** Abbe v. City of San Diego, 2006 U.S. Dist. LEXIS 79010 (S.D. Cal., Oct. 19, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff police officers and defendant city filed cross motions for summary judgment in the officers' action, which alleged violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 207(a), and breach of contract. The officers also filed a motion for summary judgment on the city's affirmative defenses and a motion to strike the city's answer to the officers' complaint.

**OVERVIEW:** The officers claimed that time spent donning and doffing the police uniform and safety gear was compensable. The court held that such time was not compensable under 29 U.S.C.S. § 254 because neither law nor workplace policy mandated that the officers dress at work, and the nature of the work did not require donning and doffing the uniform at work. The court also held that such time was not compensable under 29 U.S.C.S. § 203(o) because there was a pattern and practice under a memorandum of understanding that the officers were not compensated for such time. The court held that neither the officers nor the city were entitled to summary judgment on the issue of whether certain walking and traveling time was compensable under 29 U.S.C.S. § 254 because questions of fact remained as to which pre- and post-shift activities were principal and which were preliminary. The court also held that the city was partially exempt from the FLSA's overtime provisions, such that it was not required to pay overtime to

officers who worked a "4/10" schedule unless such officers worked more than 43 hours during a 7 day work cycle, because such a work period had been established and was regularly recurring.

**OUTCOME:** The court granted in part and denied in part the city's motion for summary judgment. The court denied the officers' motion for summary judgment. The court denied the officers' motion to strike in its entirety. The court granted summary judgment to the officers on three of the city's 21 affirmative defenses and denied summary judgment on the remaining affirmative defenses.

**CORE TERMS:** summary judgment, overtime, donning, doffing, compensable, gear, affirmative defenses, principal activity, cycle, exemption, question of fact, undisputed, time spent, recurring, clothes, indispensable, integral, genuine, triable, don, matter of law, safety equipment, entitled to compensation, good faith, belt, de minimis, declaration, offset, doff, issue of material fact

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Summary judgment is appropriate under Fed. R. Civ. P. 56 where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when, under the governing substantive law, it could affect the outcome of the case. A dispute about a material

fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*

[HN2]A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party can satisfy the burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. If the moving party fails to meet the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

[HN3]If the moving party on a motion for summary judgment meets the initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Moreover, a district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein. Notably, the court is not obligated to scour the record in search of a genuine issue of triable fact.

*Civil Procedure > Summary Judgment > Evidence*

[HN4]When making its determination on a motion for summary judgment, a court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when he is ruling on a motion for summary judgment.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employees*

[HN5]The nature of the employees' duties is a question of fact, and the application of the Fair Labor Standards Act to those duties is a question of law.

*Labor & Employment Law > Wage & Hour Laws > Wage Payments*

[HN6]The Fair Labor Standards Act requires employers to pay employees for all "work" they perform. 29 U.S.C.S. §§ 206 - 207.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN7]Under the Portal-to-Portal Act, employers are not required to compensate for either: (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, or (2) activities which are preliminary to or postliminary to said principal activity or activities. 29 U.S.C.S. § 254(a)(1)-(2). Thus, under the Fair Labor Standards Act, as amended by the Portal-to-Portal Act, an employee is entitled to compensation only for "principal activities" that the employee is hired to perform, and not for tasks that are "preliminary" or "postliminary" to such principal activities. An activity is not preliminary (and thus compensable) if it is an integral and indispensable part of the principal activities. An integral and indispensable activity is one that is (1) necessary to the principal work, and (2) done for the benefit of the employer.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN8]See 29 C.F.R. § 790.8(c)

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN9]The time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable work under the Fair Labor Standards Act. However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. If employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the place of employment.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN10]Time spent donning and doffing a uniform or safety gear at home is not compensable work under the Fair Labor Standards Act because such activity is not

part of the continuous workday and is not integral and indispensable to the principal activities of the employee. On the other hand, when the employer or the nature of the work mandates that such activity take place at work, it is compensable.

*Administrative Law > Judicial Review > Standards of Review > Statutory Interpretation*
*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN11]The U.S. Department of Labor's interpretation of the Fair Labor Standards Act is entitled to great weight as part of a body of experience and informed judgment.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN12]If donning and doffing a uniform at work is required by law, employer policy or the nature of the job, the time spent performing such activity is compensable as it is necessarily part of the continuous workday and integral and indispensable to the employee's principal activities.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN13]If employees have the option and the ability to change into the required gear at home, changing into that gear for their own convenience simply does not make that activity a principal activity, even when it takes place at work.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN14]The relevant inquiry under 29 U.S.C.S. § 254 is not whether the uniform itself or the safety gear itself is indispensable to the job--they most certainly are--but rather, the relevant inquiry is whether the nature of the work requires the donning and doffing process to be done on the employer's premises.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN15]Even where an activity is integral to the principal activities of employment and otherwise compensable, an employee is not entitled to compensation if the time spent performing such activity is insubstantial or insignificant. Insubstantial or insignificant periods of time beyond the scheduled working hours may be disregarded under the Fair Labor Standards Act. 29 C.F.R. § 785.97.

As a general rule, employees cannot recover for otherwise compensable time if it is de minimis. Daily periods of approximately 10 minutes are de minimis even though otherwise compensable.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN16]29 U.S.C.S. § 203(o) provides that under certain circumstances "changing clothes" is not compensable under the Fair Labor Standards Act. Specifically, § 203(o) excludes from "hours worked" any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective bargaining agreement applicable to the particular employee. 29 U.S.C.S. § 203(o). Accordingly, under § 203(o), any time spent changing clothes at the beginning or end of the workday that is excluded from measured working time by, among other things, a custom or practice that has developed under a collective bargaining agreement, is not compensable.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN17]Without knowledge that employees were working uncompensated overtime, the employer cannot be said to suffer or permit the work and, thus, cannot be held liable for unpaid time. 29 C.F.R. § 785.11.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN18]A plaintiff's failure to report overtime does not automatically relieve the employer from the obligation to pay it. An employer who is armed with knowledge that an employee is or was working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN19]Mere knowledge that overtime is worked is not evidence of knowledge that such overtime was unreported.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN20]Walking and travel time is compensable if it takes the employee from one principal activity to an-

other. It is not compensable if it takes the employee between preliminary activities, or between a preliminary activity and principal activities at the workplace. 29 C.F.R. § 790.7(c).

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN21]Section 207(a)(1) of the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 207(a)(1), provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. 29 U.S.C.S. § 207(a)(1). There are exceptions, however. Section 7(k) of the FLSA, found at 29 U.S.C.S. § 207(k), allows public agencies a partial exemption from the overtime provisions of § 207(a)(1) for any employee in fire protection activities or any employee in law enforcement activities to whom a work period of at least 7 but less than 28 days applies. 29 U.S.C.S. § 207(k). Such employees are entitled to time and one-half pay only after they have worked more than 171 hours in a 28 day work period or approximately 43 hours in a 7 day work period. 29 U.S.C.S. § 207(k)(2). A "work period," as used in § 207(k), means any established and regularly recurring period of work which cannot be less than 7 consecutive days nor more than 28 consecutive days. 29 C.F.R. § 553.224(a).

***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Emergency Personnel***
[HN22]The employer carries the burden of demonstrating that a 29 U.S.C.S. § 207(k) compliant work period has been established. Whether an employer meets that burden is normally a question of fact.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Emergency Personnel***
[HN23]A 29 U.S.C.S. § 207(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days. In addition, an employer may establish a § 207(k) work period even without making a public declaration, as long as its employees actually work a regularly recurring cycle of between 7 and 28 days.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Emergency Personnel***
[HN24]The plain language of 29 U.S.C.S. § 207(k), as well the regulations discussing the exemption, indicate that the implementation of a work cycle that falls within

§ 207(k) is sufficient, regardless of whether the employer has the Fair Labor Standards Act (FLSA) in mind at the time of implementing the work cycle. The FLSA, through § 207(k), provides that no public agency employer of law enforcement personnel shall be deemed to have violated § 207(a)(1) in the case of such an employee to whom a work period of at least 7 but not less than 28 days applies. 29 U.S.C.S. § 207(k). Further, according to the Code of Federal Regulations, a compliant "work period" is any established and regularly recurring period of work. The word "established" refers to the period of work--that is, the schedule itself. Once a work period is "established," § 207(k) specifies that an employer does not violate the overtime provision set forth in § 207(a)(1) so long as the work cycle "applies" to the employee in question. 29 U.S.C.S. § 207(k). There is no suggestion in the language of § 207(k) that an employer must affirmatively invoke the exemption.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Emergency Personnel***
[HN25]Although a public declaration is not necessary to establish a schedule under 29 U.S.C.S. § 207(k), if a public declaration exists, it must be a declaration of intent to adopt a work period of between 7 and 28 days, not a declaration of intent to adopt a work cycle within the meaning of § 207(k).

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview***
[HN26]While there may be a breach of contract, the Fair Labor Standards Act (FLSA) is not violated if the FLSA does not cover the situation.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage***
***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
[HN27]Employees are not entitled to compensation for gap time, i.e., hours worked between 40 and 43 hours per week, under the Fair Labor Standards Act (FLSA). As long as the actual number of hours worked divided by the employee's salary at the regular rate does not fall below the minimum wage requirements of the FLSA, a "pure gap time" claim is untenable.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period***
***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Good Faith Defense***

[HN28]An employer may offset payments for meal periods, certain premium pay, and holiday pay against any overtime compensation owed under 29 U.S.C.S. § 207(h)(2). Good faith is not a prerequisite under § 207(h)(2).

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Good Faith Defense***
***Labor & Employment Law > Wage & Hour Laws > Remedies > Liquidated Damages***
[HN29]29 U.S.C.S. § 216(b) provides for liquidated damages in the amount of overtime compensation owed, in addition to compensatory damages. However, if an employer shows the act or omission giving rise to the Fair Labor Standards Act action was in good faith, liquidated damages may not be awarded. 29 U.S.C.S. § 260.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Emergency Personnel***
[HN30]29 U.S.C.S. § 207(o) allows an employer to deny a request to redeem compensable time off when granting it would be unduly disruptive. For example, compensable time off requests need not be approved where such requests would cause staffing to fall below minimum levels.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
[HN31]A motion to strike is appropriate when a defense is not pled with sufficient particularity to meet the requirements of Fed. R. Civ. P. 8. Under Fed. R. Civ. P. 12(f), a court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A defense is sufficient if it gives the plaintiffs fair notice of the defense.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
[HN32]Waiver is the intentional relinquishment of a known right.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
***Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > Elements***
***Torts > Business Torts > Fraud & Misrepresentation > Constructive Fraud > Elements***

***Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > Elements***
[HN33]Estoppel requires the defendant to establish a misrepresentation by the plaintiffs upon which the defendant reasonably relied to its detriment.

***Labor & Employment Law > Wage & Hour Laws > Statutes of Limitations***
[HN34]The Fair Labor Standards Act establishes a two-year statute of limitations unless the employees prove the employer has committed a willful violation. In the case of wilfulness, the statute of limitations is three years. 29 U.S.C.S. § 255. Wilfulness requires a finding that an employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Injunctions***
[HN35]The plain language of 29 U.S.C.S. § 211 directs the U.S. Secretary of Labor to bring all injunctive actions under 29 U.S.C.S. § 217, save those involving child labor. Accordingly, only the Secretary of Labor may pursue injunctive relief, not employees.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
[HN36]Laches is an equitable remedy.

***Constitutional Law > Congressional Duties & Powers > Reserved Powers***
***Labor & Employment Law > Wage & Hour Laws > General Overview***
[HN37]Applying the Fair Labor Standards Act to state agencies is constitutional.

***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN38]Res judicata bars all claims that could have been brought in the same complaint regarding the same breach.

COUNSEL: [*1] For Marcus R Abbe, Plaintiff: Christopher D Nissen, Gregory Glenn Petersen, Roger Mark Franks, LEAD ATTORNEYS, Stepheney R. Windsor, Jackson DeMarco Tidus Petersen and Peckenpaugh, Irvine, CA.

For Thomas E Abbott, Jr, individually and on behal of all other similarly situated, David G Abrams, induvally and on behalf of all others similarly situated, Sabin M

Abrams, indivually and on behal of all others similarly situated, Kristen B Adams, indivually and on behalf of all others similarly situated, Lori M Adams, individually and on behalf of all other similarly situated, Robert W Adams, individually and on behalf of all other similarly situated, Simon Adams, individually and on behalf of all other similarly situated, Robert Adauto, Jr, individually and on behalf of all other similarly situated, R Elizabeth Addington, individually and on behalf of all others similarly situated, Armando R Aguilar, individually and on behalf of all others similarly situated, Edward R Aguirre, Individually and on behalf of all others similarly situated, Michael A Aiken, Individually and on behalf of all others similarly situated, Leslie A Albrecht, Individually and on behalf of all others similarly situated, [*2] Daniel T Albright, Individually and on behalf of all others similarly situated, Donald A Albright, Individually and on behalf of all others similarly situated, Richard Alien, Individually and on behalf of all others similarly situated, Katherine E Allison, Individually and on behalf of all others similarly situated, Cathy N Allister, Karen A Almos, Individually and on behalf of all others similarly situated, Jesse R Almos, Jr, Individually and on behalf of all others similarly situated, Alan R Alvarez, Individually and on behalf of all others similarly situated, Arnolfo B Ambito, Individually and on behalf of all others similarly situated, Carlos A Amezcua, Individually and on behalf of all others similarly situated, Annette M Anderson, Individually and on behalf of all others similarly situated, Travis W Anderson, Individually and on behalf of all others similarly situated, Mark S Annis, Individually and on behalf of all others similarly situated, Robert W Anschick, Individually and on behalf of all others similarly situated, Ricardo Apodaca, Individually and on behalf of all others similarly situated, Oscar A Armenta, Individually and on behalf of all others similarly situated, Scott [*3] J Armstrong, Individually and on behalf of all others similarly situated, James W Arthur, Individually and on behalf of all others similarly situated, Christopher T Asbell, Individually and on behalf of all others similarly situated, Frank Ashcraft, Individually and on behalf of all others similarly situated, Anthony A Atkins, Individually and on behalf of all others similarly situated, Robert W Atwood, Individually and on behalf of all others similarly situated, Edward D Austin, Individually and on behalf of all others similarly situated, John W Austin, Individually and on behalf of all others similarly situated, John Autolino, Individually and on behalf of all others similarly situated, Gary Avalos, III, Individually and on behalf of all others similarly situated, Michael J Baier, Individually and on behalf of all others similarly situated, Teresa Bailey, Individually and on behalf of all others similarly situated, Robert M Baird, Jr, Individually and on behalf of all others similarly situated, Todd R Baker, Individually and on behalf of all others similarly situated,

James D Baker; Jr, Individually and on behalf of all others similarly situated, Vincent J Bales, Individually and [*4] on behalf of all others similarly situated, Joseph P Bane, Individually and on behalf of all others similarly situated, Sean A Bannan, Individually and on behalf of all others similarly situated, Kevin S Barnard, Individually and on behalf of all others similarly situated, Scott T Barnes, Individually and on behalf of all others similarly situated, Bridget P Barnett, Individually and on behalf of all others similarly situated, Suzie K Barney, Individually and on behalf of all others similarly situated, Charles R Barrett, Individually and on behalf of all others similarly situated, Scott D Bartolomei, Individually and on behalf of all others similarly situated, Tina C Bassett, Individually and on behalf of all others similarly situated, Tod E Bassett, Individually and on behalf of all others similarly situated, David R Bautista, Individually and on behalf of all others similarly situated, Michael A Beamesderfer, Individually and on behalf of all others similarly situated, Jana M Beard, Individually and on behalf of all others similarly situated, Carole J Beason, Individually and on behalf of all others similarly situated, David W Beathard, Individually and on behalf of all others similarly [*5] situated, Edward L Becker, Individually and on behalf of all others similarly situated, William F Becker, Individually and on behalf of all others similarly situated, Paul J Becotte, Individually and on behalf of all others similarly situated, Steven M Behrendt, Cynthia M Beilstein, Individually and on behalf of all others similarly situated, John P Beilstein, Individually and on behalf of all others similarly situated, Kevin P Belland, Individually and on behalf of all others similarly situated, Brigitta J Belz, Individually and on behalf of all others similarly situated, Michael W Belz, Individually and on behalf of all others similarly situated, Michael M Bendixen, Individually and on behalf of all others similarly situated, Teryl L Bernard, Individually and on behalf of all others similarly situated, Gerald F Berner, Individually and on behalf of all others similarly situated, David A Bertrand, Individually and on behalf of all others similarly situated, Rebecca E Bigbie, Individually and on behalf of all others similarly situated, Robert R Bigbee, Individually and on behalf of all others similarly situated, Gregory R Bisesto, Individually and on behalf of all others similarly [*6] situated, Betty Bixby, Individually and on behalf of all others similarly situated, Lynn M Bixel, Individually and on behalf of all others similarly situated, Jeffrey D Blackford, Individually and on behalf of all others similarly situated, Gifford D Blakesley, Individually and on behalf of all others similarly situated, Mark T Blakesley, Individually and on behalf of all others similarly situated, Thomas M Boerum, Individually and on behalf of all others similarly situated, Eugene H Bojorquez, Individually and on behalf of all others similarly situated, Daniel W Boldt, In-

dividually and on behalf of all others similarly situated, Donald J Borinski, Individually and on behalf of all others similarly situated, Thaddeus W Borkowski, Individually and on behalf of all others similarly situated, Nicolas Borrelli, Individually and on behalf of all others similarly situated, Thomas R Bostedt, Individually and on behalf of all others similarly situated, Matthew E Botkin, Individually and on behalf of all others similarly situated, Arthur O Bowen, Individually and on behalf of all others similarly situated, Gary L Bowen, Jr, Individually and on behalf of all others similarly situated, Clayton [*7] Bowers, James W Boyd, Individually and on behalf of all others similarly situated, Phillip K Bozarth, Individually and on behalf of all others similarly situated, Frank P Bradley, Individually and on behalf of all others similarly situated, James M Bradley, Individually and on behalf of all others similarly situated, Julie M Bradley, Individually and on behalf of all others similarly situated, Tracy D Braun, Individually and on behalf of all others similarly situated, Glenn A Breitenstein, Individually and on behalf of all others similarly situated, Daniel G Brent, Individually and on behalf of all others similarly situated, Lisa L Bressler, Individually and on behalf of all others similarly situated, Robert R Bressler, Individually and on behalf of all others similarly situated, Daniel M Brinkerhoff, Individually and on behalf of all others similarly situated, Russell D Bristol, Individually and on behalf of all others similarly situated, Frank J Brito, Individually and on behalf of all others similarly situated, Kevin M Brooks, Individually and on behalf of all others similarly situated, Ronald Broussard, Individually and on behalf of all others similarly situated, Neal N Browder, [*8] Individually and on behalf of all others similarly situated, Douglas M Brown, Individually and on behalf of all others similarly situated, Jon M Brown, Individually and on behalf of all others similarly situated, Ronald O Brown, Individually and on behalf of all others similarly situated, Scott H Brown, Individually and on behalf of all others similarly situated, Troy A Brown, Individually and on behalf of all others similarly situated, Gregory W Brown, Jr, Individually and on behalf of all others similarly situated, Joy M Brugman, Individually and on behalf of all others similarly situated, Christopher M Brush, Individually and on behalf of all others similarly situated, Terrance L Bryan, Mark J Bua, Individually and on behalf of all others similarly situated, Deborah W Burger, Individually and on behalf of all others similarly situated, Randy P Burgess, Individually and on behalf of all others similarly situated, Christina D Burhans, Individually and on behalf of all others similarly situated, Joshua P Burkhardt, Timothy A Burns, Individually and on behalf of all others similarly situated, Daniel A Burow, Individually and on behalf of all others similarly situated, John D Buttle, [*9] Individually and on behalf of all others similarly situated, Richard A Butts, Individually

and on behalf of all others similarly situated, Bruce T Byrd, Individually and on behalf of all others similarly situated, Jeanne M Byrd, Individually and on behalf of all others similarly situated, Phillip D Cady, Individually and on behalf of all others similarly situated, Lawrence B Cahill, Individually and on behalf of all others similarly situated, William D Cahill, Individually and on behalf of all others similarly situated, Jene L'Mont Calloway, Individually and on behalf of all others similarly situated, Arthur L Calvert, Individually and on behalf of all others similarly situated, Christen M Cameron, Individually and on behalf of all others similarly situated, Arturo C Campa, Individually and on behalf of all others similarly situated, William H Campbell, Individually and on behalf of all others similarly situated, Claudia Canto, Individually and on behalf of all others similarly situated, Ruth S Cardona, Individually and on behalf of all others similarly situated, Theodore M Carignan, Individually and on behalf of all others similarly situated, Karrie L Carlson, Individually and on [*10] behalf of all others similarly situated, Mark A Carlson, Individually and on behalf of all others similarly situated, Thomas J Carlyon, IV, Individually and on behalf of all others similarly situated, Daniel P Caropreso, Individually and on behalf of all others similarly situated, Frank L Caropreso, Individually and on behalf of all others similarly situated, Javier Carranza, Individually and on behalf of all others similarly situated, Robert T Carroll, Individually and on behalf of all others similarly situated, Scott Carter, Individually and on behalf of all others similarly situated, Tony B Carter, Individually and on behalf of all others similarly situated, William J Carter, Individually and on behalf of all others similarly situated, Roderick A Casey, Individually and on behalf of all others similarly situated, Roberto A Casillas, Individually and on behalf of all others similarly situated, Joseph B Castillo, Individually and on behalf of all others similarly situated, Clinton E Castle, Individually and on behalf of all others similarly situated, Cesar Castro, Individually and on behalf of all others similarly situated, Ricky F Castro, Individually and on behalf of all others [*11] similarly situated, Rudy P Castro, Jr, Individually and on behalf of all others similarly situated, Arthur H Cavada, Individually and on behalf of all others similarly situated, Misty R Cedrun, Individually and on behalf of all others similarly situated, Daniel E Cerar, Individually and on behalf of all others similarly situated, George Cesena, Individually and on behalf of all others similarly situated, Carlos Chacon, Individually and on behalf of all others similarly situated, John Chaney, Individually and on behalf of all others similarly situated, Mark A Chavez, Individually and on behalf of all others similarly situated, Blake A Cheary, Individually and on behalf of all others similarly situated, Jonathan C Cheng, Individually and on behalf of all others similarly situated, Jon P Cherski, Individually and on

behalf of all others similarly situated, James H Chiles, Individually and on behalf of all others similarly situated, Jeffrey W Chione, Individually and on behalf of all others similarly situated, Raphael R Cimmarrusti, Individually and on behalf of all others similarly situated, Dolores M Cirino, Individually and on behalf of all others similarly situated, Brent E Cisneros, [*12] Individually and on behalf of all others similarly situated, Dale L Clark, Individually and on behalf of all others similarly situated, John C Clark, Individually and on behalf of all others similarly situated, Joseph A Clark, Individually and on behalf of all others similarly situated, Lamont H Clark, Individually and on behalf of all others similarly situated, Robert D Clark, Individually and on behalf of all others similarly situated, Raymond P Clark, Sr, Individually and on behalf of all others similarly situated, Deborah A Clem, Individually and on behalf of all others similarly situated, James H Clem, Individually and on behalf of all others similarly situated, Michael A Clippinger, Individually and on behalf of all others similarly situated, Rex Cole, Jr, Individually and on behalf of all others similarly situated, Christopher P Collier, Individually and on behalf of all others similarly situated, Kimberly A Collier, Individually and on behalf of all others similarly situated, James T Collins, Individually and on behalf of all others similarly situated, Bernie T Colon, Individually and on behalf of all others similarly situated, Luis M Colon, Individually and on behalf of all [*13] others similarly situated, Victor S Colvin, Individually and on behalf of all others similarly situated, Donald R Cone, Individually and on behalf of all others similarly situated, Robert D Connaughy, Individually and on behalf of all others similarly situated, David Contreras, Sean R Conway, Individually and on behalf of all others similarly situated, Lloyd E Cook, Individually and on behalf of all others similarly situated, Robert H Cook, Individually and on behalf of all others similarly situated, Patrick J Cooley, Individually and on behalf of all others, similarly situated, Phil B Cooper, Individually and on behalf of all others similarly situated, Noe F Cordero, Individually and on behalf of all others similarly situated, Brian K Cornell, Individually and on behalf of all others similarly situated, Jeanette L Cornell, Gary F Corner, Individually and on behalf of all others similarly situated, Robert M Cornett, Individually and on behalf of all others similarly situated, Henry D Corrales, Individually and on behalf of all others similarly situated, Deborah A Cotellessa, Individually and on behalf of all others similarly situated, Carol V Council, Individually and on behalf of [*14] all others similarly situated, Chad E Crenshaw, Individually and on behalf of all others similarly situated, Marco A Crisostomo, Individually and on behalf of all others similarly situated, Tyrone H Crosby, Individually and on behalf of all others similarly situated, Robert P Cruz, Individually and on behalf of all others

similarly situated, A Vedasto Cruz, Jr, Individually and on behalf of all others similarly situated, William L Cuddy, III, Individually and on behalf of all others similarly situated, Celso G Cueva, Individually and on behalf of all others similarly situated, James P Culligan, Individually and on behalf of all others similarly situated, Ralph A Cummings, Individually and on behalf of all others similarly situated, David W Cupples, Individually and on behalf of all others similarly situated, Christopher P Curran, Individually and on behalf of all others similarly situated, Laurie J Curran, Individually and on behalf of all others similarly situated, Fenella R Custer, Individually and on behalf of all others similarly situated, Mariusz Czas, Individually and on behalf of all others similarly situated, Denise F Dailey, Individually and on behalf of all others similarly [*15] situated, Leory K Dailey, Individually and on behalf of all others similarly situated, Josephine I Dains, Individually and on behalf of all others similarly situated, Scott W Daniels, Individually and on behalf of all others similarly situated, Robert W Dare, Individually and on behalf of all others similarly situated, Eric C Davis, Individually and on behalf of all others similarly situated, Garry R Davis, Individually and on behalf of all others similarly situated, John W Davis, Individually and on behalf of all others similarly situated, Michael J Davis, Individually and on behalf of all others similarly situated, Richard E Davis, Individually and on behalf of all others similarly situated, William T Davis, Jr, Individually and on behalf of all others similarly situated, Dean L Davison, Individually and on behalf of all others similarly situated, Jerome Dawson, Individually and on behalf of all others similarly situated, Michael O Day, Individually and on behalf of all others similarly situated, William J Day, Jr, Individually and on behalf of all others similarly situated, Alexander De Armas, Individually and on behalf of all others similarly situated, Charles De la Cruz, Individually [*16] and on behalf of all others similarly situated, Susan M de la Pena, Individually and on behalf of all others similarly situated, Deana E De Los Reyes, Individually and on behalf of all others similarly situated, Romeo C De Los Reyes, Individually and on behalf of all others similarly situated, Michael J Dean, Individually and on behalf of all others similarly situated, Conrado V DeCastro, Individually and on behalf of all others similarly situated, Geoffrey S Decesari, Individually and on behalf of all others similarly situated, Jonathan M DeGuzman, Individually and on behalf of all others similarly situated, Raul Delgadillo, Individually and on behalf of all others similarly situated, Roberto L Delgadillo, Individually and on behalf of all others similarly situated, Constandinos A Delimitros, Individually and on behalf of all others similarly situated, Jovanna R Derrough, Individually and on behalf of all others similarly situated, Edward A DeVowe, Individually and on behalf of all others similarly

situated, James F Dickinson, Individually and on behalf of all others similarly situated, John R John (Jack) R Didelot, Individually and on behalf of all others similarly situated, Jennifer [*17] E Dishon, Individually and on behalf of all others similarly situated, Roy J Doakes, Individually and on behalf of all others similarly situated, Matthew W Dobbs, Individually and on behalf of all others similarly situated, Wayne R Doeden, Individually and on behalf of all others similarly situated, Donald J Dolezal, Jr, Individually and on behalf of all others similarly situated, James E Dollins, Individually and on behalf of all others similarly situated, Marianne L Dougherty, Individually and on behalf of all others similarly situated, Ronald H Dougherty, Individually and on behalf of all others similarly situated, David F Douglas, Individually and on behalf of all others similarly situated, Samuel D Douglas, Individually and on behalf of all others similarly situated, Gregory T Drilling, Individually and on behalf of all others similarly situated, Arthur W Dubois, III, Individually and on behalf of all others similarly situated, Brett A Dudley, Individually and on behalf of all others similarly situated, Kevin C Duffy, Individually and on behalf of all others similarly situated, John G Dunbar, Individually and on behalf of all others similarly situated, Jeffrey Dunn, Individually [*18] and on behalf of all others similarly situated, Anthony L Dupree, Individually and on behalf of all others similarly situated, Joseph M Durand, Individually and on behalf of all others similarly situated, Wende M Eckard, Individually and on behalf of all others similarly situated, Richard K Edgil, Individually and on behalf of all others similarly situated, Frederick G Edwards, Individually and on behalf of all others similarly situated, Michael J Edwards, Individually and on behalf of all others similarly situated, Sheryl L Edwards, Individually and on behalf of all others similarly situated, Randal W Eichmann, Individually and on behalf of all others similarly situated, Roland H Elkins, John Elliott, Individually and on behalf of all others similarly situated, Shari L Ellithorpe, Individually and on behalf of all others similarly situated, William Ellithorpe, Jr, Individually and on behalf of all others similarly situated, Darryl L Emerson, Individually and on behalf of all others similarly situated, Ernesto Encinas, Individually and on behalf of all others similarly situated, LeLand English, Individually and on behalf of all others similarly situated, Richard D Ensign, Individually [*19] and on behalf of all others similarly situated, Julie M Epperson, Individually and on behalf of all others similarly situated, Steven S Epperson, Individually and on behalf of all others similarly situated, Edward G Erbe, Individually and on behalf of all others similarly situated, Manuel Escalante, Individually and on behalf of all others similarly situated, Christopher C Escudero, Individually and on behalf of all others similarly situated, Christopher D Everett, Individually and on behalf of all others

similarly situated, Christine M Farmer, Individually and on behalf of all others similarly situated, Debra L Farrar, Individually and on behalf of all others similarly situated, Jay P Farrington, Individually and on behalf of all others similarly situated, Timothy K Faubel, Individually and on behalf of all others similarly situated, Paul J Fay, Individually and on behalf of all others similarly situated, David L Felkins, Individually and on behalf of all others similarly situated, Andrew L Fellows, Individually and on behalf of all others similarly situated, Jeffrey M Fellow

For City of San Diego Califoria, Defendant: George F. Schaefer, LEAD ATTORNEY, Law Offices of George F Schaefer, [*20] San Diego, CA; Aryn Paige Thomas, Colleen Carlton Smith, Latham and Witkins, San Diego, CA.

**JUDGES:** HON. DANA M. SABRAW, United States District Judge.

**OPINION BY:** DANA M. SABRAW

**OPINION**

ORDER:

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE FIFTH AMENDED COMPLAINT,**

**DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION ON THE FIFTH AMENDED COMPLAINT,**

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES, AND**

**DENYING PLAINTIFFS' MOTION TO STRIKE**

[Docs. 227, 133, 148, 152, 158]

This action involves wage and hour claims brought by numerous police officers employed by the City of San Diego. Pending before the Court are cross motions for summary judgment on Plaintiffs' Fifth Amended Complaint ("FAC" or "Complaint"), Plaintiffs' motion for summary judgment on Defendant City of San Diego's affirmative defenses, and a motion to strike Defendant's answer to the FAC. The motions have been fully briefed and argued. While many significant issues have been raised in the briefing and are addressed in this Order, two issues have been briefed and argued extensively by the

parties: (1) whether time spent donning and [*21] doffing the police uniform and safety gear is compensable, and (2) whether Defendant is partially exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), such that it is not required to pay overtime wages to officers who work a "4/10" schedule unless such officers work more than 43 hours during a 7 day work cycle. These issues may be determined as a matter of law, and they are decided in Defendant's favor for the reasons set forth below.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are more than 1,000 police officers employed by Defendant at the San Diego Police Department ("SDPD"). After several rounds of motions to dismiss, on June 8, 2007, Plaintiffs filed their Fifth Amended Complaint alleging several claims for relief. (Compl., Doc. 120). The first claim alleges violations of 29 U.S.C. § 207(a) under the FLSA, which governs overtime compensation. In particular, Plaintiffs allege they were (1) not paid for time spent conducting a variety of work-related activities, such as donning and doffing uniforms, preparing for line-up, walking to and from work spaces, and other preparatory activities; (2) not paid for overtime incurred; and (3) not properly reimbursed [*22] for a variety of work-related expenses, such as purchasing and cleaning uniforms, weapons, and other related gear. (Compl. P 26-29). Plaintiffs further allege Defendant violated the FLSA voluntarily, deliberately, and intentionally. (Compl. P 28). The second claim is for breach of contract, alleging Defendant did not comply with the Memorandum of Understanding ("MOU") governing the employment relationship between the parties. (Compl. P 30-37). Third, Plaintiffs claim liquidated damages pursuant to 29 U.S.C. § 216(b). (Compl. P 38-43). Finally, Plaintiffs allege Defendant failed to implement a Compensatory Time Off ("CTO") program that complies with 29 U.S.C. § 207(o). (Compl. P 44-50). Defendant answered the FAC and asserted twenty-one affirmative defenses, many of which are addressed in this Order.

On August 8, 2007, the Court issued an order establishing two phases for the parties' anticipated motions for summary judgment. In the first phase, the parties were to address only the issue of liability and to rely upon testimony of 110 representative Plaintiffs, selected by Plaintiffs' counsel. ' A second phase, if necessary, would allow the parties to address damages. (Order May 25, 2007, [*23] Doc. 118). The motions currently before the Court are filed in Phase I of the proceedings and address only liability related issues.

1  Twenty days after oppositions to the subject motions were due and one day before Plaintiffs filed their reply, Plaintiffs filed a thirteen volume Second Compendium of Declarations. (Doc. 205-217). Defendant's motion to strike this Compendium is granted, as the filing of the Compendium is both late and fails to comply with the Court's order regarding the Phase I summary judgment briefing.

Combining the parties' motions, the following questions are presented for resolution: (1) whether certain pre- and post- shift activities, such as donning and doffing uniforms and safety equipment, loading vehicles, and traveling are compensable under the FLSA; (2) whether Defendant qualifies for a partial exemption from overtime pay pursuant to 29 U.S.C. § 207(k); (3) whether Defendant is entitled to an offset under 29 U.S.C. § 207(h) for any overtime pay owed; (4) whether Defendant wilfully violated the FLSA, entitling Plaintiffs to a three-year rather than two-year statute of limitations pursuant to 29 U.S.C. § 255(a); (5) whether Defendant acted in good faith pursuant [*24] to 29 U.S.C. § 260 regarding Plaintiffs' liquidated damages claim; (6) whether Defendant's implementation of its CTO program complied with 29 U.S.C. § 207(o); (7) whether Plaintiffs' breach of contract claim is properly dismissed for lack of subject matter jurisdiction; and (8) whether summary judgment is appropriate as to any of Defendant's affirmative defenses. These issues are addressed below.

**II.**

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

**A. Legal Standard**

[HN1]Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

[HN2]A party seeking summary judgment bears the initial burden of establishing [*25] the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element

of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. _Id._ at 322-23. If the moving party fails to meet this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. _See Adickes v. S.H. Kress & Co.,_ 398 U.S. 144, 159-60, 90 S. Ct. 1598, 26 L. Ed. 2d 142(1970).

[HN3]If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." _Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); _Triton Energy Corp. v. Square D Co.,_ 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing _Anderson,_ 477 U.S. at 252). Rather, the nonmoving party must "go beyond the pleadings and by [his [*26] or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" _Celotex,_ All U.S. at 324 (quoting _Fed. R. Civ. P. 56(e)_). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." _T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,_ 809 F.2d 626, 630 (9th Cir. 1987). Moreover, "the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." _Carmen v. San Francisco Unified Sch. Dist.,_ 237 F.3d 1026, 1030 (9th Cir. 2001). Notably, the court is not obligated "to scour the record in search of a genuine issue of triable fact." _Keenan v. Allan,_ 91 F.3d 1275, 1279 (9th Cir. 1996) (citing _Richards v. Combined Ins. Co.,_ 55 F.3d 247,251 (7th Cir. 1995)).

[HN4]When making its determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. _See Matsushita,_ 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences [*27] from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." _Anderson,_ 477 U.S. at 255.

## B. Donning and Doffing Uniforms and Safety Equipment

Plaintiffs and Defendant have filed cross motions for summary judgment, in which both parties seek a determination concerning whether time spent donning and doffing Plaintiffs' uniforms and safety equipment pre-shift and post-shift is compensable under the FLSA. This

is a mixed question of law and feet. [HN5]"The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." _Ballaris v. Wacker Siltronic Corp.,_ 370 F.3d 901, 910 (9th Cir. 2004). [HN6]The FLSA requires employers to pay employees for all "work" they perform. 29 U.S.C. §§ 206 - 207. What constitutes work is the crux of the issue here. In addressing this issue, the Portal-to-Portal Act, codified at 29 U.S.C. § 254(a), is the starting point.

[HN7]Under the Portal-to-Portal Act, employers are not required to compensate for either: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, [*28] [or] (2) activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. §254(a)(1)-(2). Thus, under the FLSA, as amended by the Portal-to-Portal Act, an employee is entitled to compensation only for "principal activities" that the employee is hired to perform, and not for tasks that are "preliminary" or "postliminary" to such principal activities. An activity is not preliminary (and thus compensable) if it is "an integral and indispensable part of the principal activities." _Steiner v. Mitchell,_ 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956). An integral and indispensable activity is one that is (1) necessary to the principal work, and (2) done for the benefit of the employer. _Alvarez v. IBP, Inc.,_ 339 F.3d 894, 902-903 (9th Cir. 2003).

It is undisputed that Plaintiffs are not compensated for time spent donning or doffing their standard issued class "B" uniform, which consists of a bulletproof vest, Sam Browne (gun) belt, boots, blue pants, white undershirt, blue uniform shirt, regular belt, badge, name tag, and brass fixings. (See Undisputed Material Fact ("UMF") 80). It is further undisputed that the Sam Browne belt includes OC spray, radio, radio carrier, impact [*29] weapon -- e.g., collapsible baton, handcuffs, handcuffs case, handgun, handgun holster, and ammunition carrier. [2] (See UMF 81).

> 2   This Order is confined to the standard class "B" uniform. Other types of uniforms and safety equipment are not addressed. For example, Defendant concedes that the safety equipment adorned by SWAT team members must be donned and doffed at the workplace and that such activity is therefore compensable "work" under the FLSA.

Plaintiffs contend they are entitled to compensation for time spent donning and doffing their uniform (including uniform and safety gear) because such activity is an integral and indispensable part of the principal activities for which they are employed. Plaintiffs argue that the uniform _itself_ is essential to the discharge of their law

enforcement duties and, therefore, such dress-related activity is compensable. Defendant, on the other hand, concedes the uniform is essential to the discharge of law enforcement duties, but argues Plaintiffs are not entitled to compensation for donning and doffing the uniform because such activity is not required to be performed at work. As such, Defendant argues the dress-related activity is not integral [*30] and indispensable to Plaintiffs' principal activities.

The determination of whether donning and doffing a uniform is compensable begins with *Steiner,* the seminal case on the subject. In *Steiner,*w the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Steiner, 350 U.S. at 248.* The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id. at 249.* Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id. at 250.* Consequently, the workers were issued old but clean clothes on-site, and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. [*31] Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id. at 255.*

Following the Supreme Court's decision in *Steiner,* the Department of Labor issued regulations providing further guidance about the types of dress-related activities that require compensation under the FLSA. One such regulation, *29 C.F.R. § 790.8(c),* describes "principal activity" as follows:

> [HN8]Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes *on the employer's premises* at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related in his principal activities, it would

be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

*29 C.F.R. § 790.8(c)* (emphasis added).

More recently, in an advisory memorandum regarding [*32] the Supreme Court's recent decision in *IBP v. Alvarez, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005),* the Department of Labor reiterated its view that the FLSA does not require compensation for donning and doffing gear at home. It opines:

> Therefore, [HN9]the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. [P] *However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises.* It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [place of employment].

*Wage & Hour Adv. Mem. No.* 2006-2 (May 31, 2006) (emphasis added).

The Department of Labor consistently has maintained that [HN10]time spent donning and doffing a uniform or safety gear at home is not compensable work under the FLSA because such activity is not part of the continuous workday and is not integral and indispensable to the principal activities of the employee. On the other hand, when the [*33] employer or the nature of the work mandates that such activity take place at work, it is compensable. [HN11]The Agency's interpretation of the FLSA is "entitled to great weight as part of 'a body of experience and informed judgment.'" *Wirtz v. Wester Compress Co., 330 F.2d 19 (9th Cir. 1964)* (citation omitted).

In *Ballaris v. Wacker Siltronic Corp. 370 F.3d 901, 903 (9th Cir. 2004),* the Ninth Circuit noted with approval the Department of Labor's position regarding the compensability of donning and doffing clothing when it is required to be performed at work. The court stated that "'where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work,' the activity may be considered

integral and indispensable to the principal activities." *Id.* at 903 (citing 29 C.F.R. § 790.8(c) n.65). Applying the regulation, the court in *Ballaris* held that the process of donning and doffing full-body gowns or "bunny suits" on the employer's premises before entering "cleanrooms" to handle sensitive silicon products was compensable because, among other things, the employer required its employees to change into and out of the uniforms at the plant. [*34] *Id.* at 911-12.

Similarly, in *Alvarez*, 339 F.3d at 903, the Ninth Circuit held that where donning and doffing gear on the employer's premises is required by the employer, the activity is "necessary" to the "principal" work performed and thus, compensable. *Id.* at 903. There, meat cutters and processors were required to don and doff specialized gear at work, including liquid-repelling sleeves, aprons, and leggings, and to wipe or hose the gear on-site at the end of their shift.

Several other courts also have decided donning and doffing claims under the FLSA by focusing on employer policy and the nature of the job: if on-site changing is required, the activity is compensable; if on-site changing is not required, the activity is not compensable. *See, e.g., Martin v. Richmond, 504 F.Supp.2d 766, 773-74* (N.D. Cal. 2007) (donning and doffing police uniform not compensable where officers are permitted to dress at home); *Lee v. Am-pro Protective Agency, Inc., 860 F. Supp. 325, 326* (E.D. Va. 1994) (security guards entitled to compensation for dressing into uniforms on-site where "they are not allowed to change at home ..."); *Bagrowski v. Maryland Port Authority, 845 F.Supp. 1116, 1121 n.6* (D. Md. 1994) [*35] (officers not entitled to compensation for putting on uniforms where "[m]any officers came to work in their uniforms and nothing prevented [them] from doing so."); *Apperson v. Exxon Corp., 1979 U.S. Dist. LEXIS 14564, 87 Lab. Cas. (CCH) 33,844 *22* (E.D. Cal. 1979) (compensation for changing clothes on-site not compensable "unless the employer requires that it be done ... at that location or unless the employee cannot safely wear such clothing home at the end of the day."); *Baylor v. United States, 198 Ct. Ct. 331, 337, 1972 U.S. Ct. Cl. LEXIS 72 (1972)* (security guards required to change into uniforms at designated locker points and not at home entitled to compensation for such dress-related activities).

Accordingly, [HN12]if donning and doffing a uniform at work is required by law, employer policy or the nature of the job, the time spent performing such activity is compensable as it is necessarily part of the continuous workday and integral and indispensable to the employee's principal activities. The question before the Court, then, is whether Plaintiffs are mandated by law, workplace policy, or the nature of the job to don and doff their uniforms, including safety gear, at work.

Clearly, neither law nor workplace policy mandates that Plaintiffs [*36] dress at work. Indeed, Plaintiffs' own evidence indicates that officers are free to dress at home. For example, Plaintiffs cite the deposition of Sergeant Alexis Blaylock, who testified, "I dressed at home a lot; most of the time." (Blaylock Depo. 23:11-12). Plaintiff Randal W. Eichmann stated he usually polished his boots and "leather stuff at home, (Eichmann Depo, P's Ex. 21 at 83:15-22), arid Plaintiff Dale Shockley stated he sometimes puts on his uniform pants and gun at home. Numerous other employees also indicated dressing at home was part of their regular routine. Plaintiffs also do not dispute that they may, and do, don their Sam Browne belt at home. [1]

> 3  Sergeant Polk testified: "Q: Are [officers] allowed to travel to work in their uniform? A: Yes as long as it's covered." Q: "Are they also allowed when they are off duty to wear all their protective gear weapons and all of that? A: Yes, as long as it's covered." (Polk Depo, D's Ex. 79 at subpage 28:13 to Dec. of Aryn Thomas).

Moreover, the nature of the work does not require donning and doffing the uniform at work. Plaintiffs point out that some officers do not like being in uniform when traveling to and from work because some [*37] people react negatively to officers, thus subjecting officers to retaliatory acts that threaten their safety. (Sweeney Depo. at 54-55:24-25, 1-18). But it is undisputed that uniforms are required to be covered while off duty, such as with a jacket or sweater over the uniform shirt. (*See* UMF 83; Polk Depo at 28:16-29:10; Shockly Depo at 87:1-16). Plaintiffs' evidence, therefore, does not create a genuine issue of material fact, as the safety concerns expressed by Plaintiffs are addressed by Defendant's off-duty policy. Plaintiffs have not presented any evidence that covering the uniform is ineffective or an otherwise illusory measure to address their safety concerns. No evidence, for example, has been presented that any officer has encountered a hostile situation while en route to or from work in uniform.

Plaintiffs also argue the nature of their work requires donning and doffing the Sam Browne belt at work. They contend: (1) wearing the gun belt while traveling to work causes damage to the interior of the officer's personal vehicle (P's Opp. to D's MSJ at 21); (2) taking measures home raises safety concerns for those officers with children (*e.g.,* Brown Depo at 91:24-92:10); (3) wearing [*38] equipment off-duty makes officers a target of discontented citizens (*Id.* at 93:3-9); and (4) keeping equipment in lockers at work is convenient. (*Id.* at 50:21-51:11).

This evidence is insufficient to create a genuine issue of material fact as to whether the nature of the work

requires donning and doffing such gear at work. Specifically, convenience concerning storage of gear and minimizing damage to the interior of personal vehicles is insufficient. What prompts some Plaintiffs to don their gun belts at work is the nature of the *equipment*, not the nature of the *work*. [HN13]"[I]f employees have the *option* and the *ability* to change into the required gear at home," changing into that gear for their own convenience simply does not make that activity "a principal activity, even when it takes place" at work. *See Wage & Hour Adv. Mem. No.* 2006-2 (emphasis added).

Plaintiffs' concerns about safety of those around them at home also do not raise a material question of fact. Plaintiffs provide no evidence concerning actual harm to others or that they are unable to lock or otherwise safely store their weapons at home, and any inconvenience associated therewith does not render the activity [*39] compensable. Finally, Plaintiffs' concerns about retaliatory acts by others are adequately addressed by Defendant. As stated, Defendant requires officers who dress at home to cover their uniform so they are not readily identifiable as officers. Plaintiffs admit that those among them who dress at home, cover their uniform while traveling to and from work. Further, as mentioned, Plaintiffs have presented no evidence of any retaliatory acts or hostile encounters stemming from officers donning and doffing uniforms or safety gear at home. [4]

> 4 In *Martin, 504 F.Supp.2d at 776*, the court denied summary judgment on grounds that "a triable issue of fact exists about whether the 'nature of [a peace officer's] work' actually requires them to don and doff their [safety] gear at the station." The present case, however, is distinguishable from *Martin*. Given the general and speculative nature of evidence presented by Plaintiffs here, this Court concludes Plaintiffs have failed to raise a triable issue of fact.

Plaintiffs' principal argument is that the nature of the uniform itself is indispensable to discharging the principal functions of the job and, therefore, donning and doffing the uniform is compensable. It [*40] is important to note, however, that [HN14]the relevant inquiry is not whether the uniform *itself* or the safety gear *itself* is indispensable to the job -- they most certainly are -- but rather, the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises. Clearly, when employees are required to dress and shower at work to contain hazardous substances, *Steiner*, 350 U.S. at 247, or to don and doff specialized equipment at work, and to clean the equipment on site at the end of their shifts in order to maintain the equipment and sanitation, *Alvarez*, 339 F.3d at 894, or to don and doff specialized gowns at work to

maintain a pure environment in cleanrooms, *Ballaris* 370 F.3d at 901, the *process* of donning and doffing must be done at work to accomplish the essential duties of the job safely and effectively.

Here, in contrast to the donning and doffing activities in *Steiner*, *Alvarez*, and *Ballaris*, there is nothing about the process of donning and doffing a class "B" uniform that must be done at work in order for an officer to safely and effectively carry out his or her law enforcement duties. Since the Court has been directed [*41] to no evidence suggesting Plaintiffs are required by law, policy, or the nature of their work to don and doff their uniform or safety equipment at work, Defendant is entitled to judgment on grounds that donning and doffing the uniform in question is not integral and indispensable to the principal activities of employment. Accordingly, Defendant's motion for summary judgment on this issue is granted.

In addition, [HN15]even where an activity is integral to the principal activities of employment and otherwise compensable, an employee is not entitled to compensation if the time spent performing such activity is insubstantial or insignificant. *See* 29 C.F.R. §785.97 ("Insubstantial or insignificant periods of time beyond the scheduled working hours... may be disregarded" under the FLSA.). As a general rule, "employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1061-62 (9th Cir. 1984). "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id. at 1063*. Here, it is undisputed that donning and doffing protective gear (vest and gun belt) takes less than 10 minutes. (*See* UMF 91 & [*42] 92). Therefore, time spent donning and doffing safety gear is *de minimis* and non-compensable as a matter of law. Plaintiffs, however, have raised a question of fact concerning whether the time it takes to don and doff the *entire uniform is de minimis.* (*See, e.g.,* Kries Depo., 46:21-47:6 -- at least 20 minutes to don uniform, vest and gun belt). The grant of summary judgment in favor of Defendant regarding *de minimis* dress-related activity is therefore limited to Plaintiffs' safety gear and does not include other aspects of the class "B" uniform.

Finally, separate and apart from the Portal-to-Portal Act, Defendant is entitled to summary judgment under 29 U.S.C. § 203(o) as to donning and doffing certain aspects of the uniform. [HN16]Section 203(o) provides that under certain circumstances "changing clothes" is not compensable under the FLSA. Specifically, Section 203(o) excludes from "hours worked" any "time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective

bargaining agreement applicable to the particular employee." [*43] 29 U.S.C. § 203(o) (2007). Accordingly, under Section 203(o), any time spent changing clothes at the beginning or end of the workday that is excluded from measured working time by, among other things, a custom or practice that has developed under a collective bargaining agreement, is not compensable.

The term "clothes" as used in Section 203(o), plainly includes all aspects of the uniform in question, with exception perhaps of the safety gear. [5] As it is undisputed that Plaintiffs have never been compensated for donning and doffing their uniform, there is a pattern and practice established under the MOU, and Plaintiffs are not entitled to compensation for this activity. (UMF 89). Accordingly, Plaintiffs' donning and doffing of the uniform (not including safety equipment) falls within Section 203(o) and is non-compensable.

> 5    While the Eleventh Circuit and the Department of Labor recently have concluded that safety gear is "clothing" within Section 203(o), *Anderson v. Cagle's Inc., 488 F.3d 945,955(11th Cir. 2007)* (involving meat cutter's safety gear), the Ninth Circuit has reached a contrary conclusion. *Alvarez, 339 F.3d at 905* (meat cutter's safety gear not "clothing" within Section 203(o)). [*44] Because Defendant is entitled to summary judgment on other grounds discussed in text above, this Court declines to address whether the safety gear in question is clothing within Section 203(o).

## C. Activities other than Donning and Doffing Uniforms and Safety Equipment

Other than donning and doffing uniforms and safety equipment, neither party has supplied the Court with a comprehensive list of specific activities both parties agree are at issue. The Complaint alleges no such comprehensive list, noting that the list of pre-shift and post-shift activities for which Plaintiffs claim compensation is "not limited to" the list contained in the Complaint. (Compl. p 21 (a)). Moreover, with regard to the activities both sides agree upon, there remain genuine issues of material fact as to the importance of these activities, the time it takes to complete them, and the ability to complete them during the shift.

However, Defendant's most strenuous argument is that it had no actual or constructive knowledge that Plaintiffs were working uncompensated overtime. [HN17]Without such knowledge, Defendant cannot be said to "suffer or permit" the work and thus, cannot be held liable for unpaid time. *See 29 C.F.R. § 785.11;* [*45] *Fox v. Summit King Mines, Ltd., 143 F.2d 926, 932 (9th Cir. 1944)* ("suffer" and "permit" mean "with the

knowledge of the employer."). Resolution of this issue does not require agreement upon a complete list of activities in dispute or upon the nature of the activities. The only potential question of fact is whether Defendant was or should have been aware that Plaintiffs were not reporting overtime actually worked. Defendant urges the Court to find that Plaintiffs' failure to report the presently-claimed overtime is conclusive proof that Defendant lacked the requisite knowledge. [6]

> 6    Plaintiffs concede that all *reported* overtime was compensated. (P's Opp. to D's MSJ at 36).

[HN18]A plaintiff's failure to report overtime does not automatically relieve Defendant from the obligation to pay it. "An employer who is armed with [knowledge that an employee is or was working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester v. Roth's IGA Foodliner, Inc., 646 F.2d 413,414 (9th Cir. 1981).* Plaintiffs claim that supervisors and management of SDPD performed overtime [*46] work without compensation and admitted not receiving compensation themselves. (P's Opposition to D's MSJ at 29). Plaintiffs argue that this knowledge should be imputed to Defendant. (*Id.*). However, Plaintiffs have failed to direct the Court to any relevant evidence. Plaintiffs' mere assertion, without pointing the Court to evidence, is not enough to create a fact question. *See Keenan, 91 F.3d at 1279* (court not obligated "to scour the records in search of a genuine issue of triable fact."). Moreover, even if the Court were to take Plaintiffs' unsupported assertions as true, those assertions are irrelevant to the question at issue: whether these supervisors and managers had knowledge of *Plaintiffs'* unreported overtime work.

To that end, Plaintiffs point to the testimony of three representative Plaintiffs to demonstrate management and supervisors knew that officers arrived early to prepare for lineup, read through "most wanted" bulletins, and stayed late. (P's Response to D's MSJ at 16). But [HN19]mere knowledge that overtime is worked is not evidence of knowledge that such overtime was *unreported. See, e.g., Newton v. City of Henderson, 47 F.3d 746, 749 (5th Cir. 1995).*

Finally, Plaintiffs [*47] offer testimony supporting an inference that a culture existed in which officers were discouraged from reporting overtime less than thirty or sixty minutes in length, depending on the precinct. (P's MSJ at 20) (*See, e.g.* D's Ex. 74 (Kries) 27: 7-12, in Supp. of D's UMF 46). The existence of such a culture would be enough to support an inference that Defendant knew Plaintiffs failed to report overtime in such increments. Defendant offers evidence supporting an infer-

ence that (1) such a culture did not exist during the limitations period (D's Ex. 51 (Sweeney) 48:18-25); (2) the culture was not strong enough to constitute real discouragement of submission of overtime (D's Ex. 52 (Tai) 19:19-23); and (3) it had specifically instructed officers to report all overtime, so it lacked knowledge of any unreported overtime. (D's Ex. 14 (Blaylock) 42:21-25, 43:1-8, 51:18-25, 52:1-6, 13-25, 53:1-4).

Given the competing evidence on this issue, triable questions of fact remain that cannot be resolved on summary judgment. As such, the cross motions on this issue are denied.

### D. Travel and Walking Time.

[HN20] Walking and travel time is compensable if it takes the employee from one principal activity to another. [*48] It is not compensable if it takes the employee between preliminary activities, or between a preliminary activity and principal activities at the workplace. 29 C.F.R. § 790.7(c). Because questions of fact remain as to which pre- and post-shift activities are principal and which are preliminary, summary judgment is denied as to both parties on this issue.

### E. Overtime Pay and 29 U.S.C. § 207(k)

[HN21] Section 207(a)(1) of the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). There are exceptions, however, and one such exception is at issue here. Section 7(k) of the FLSA, found at 29 U.S.C. § 207(k), allows public agencies a partial exemption from the overtime provisions of Section 207(a)(1) for "any employee in fire protection activities or any employee in law enforcement activities" to whom "a work period of at least 7 but less than 28 days applies." 29 U.S.C. § 207(k). Such employees are entitled to time and one-half pay only after they have worked more than 171 hours in a 28 day work period or approximately 43 hours in a 7 day work period. 29 U.S.C. § 207(k)(2).

A [*49] "work period," as used in Section 7(k), means any "established and regularly recurring period of work which ... cannot be less than 7 consecutive days nor more than 28 consecutive days." 29 C.F.R. § 553.224(a). At issue is whether Defendant "established" a work period of not less than 7 consecutive days nor more than 28 consecutive days, and if so, whether that work period was "regularly recurring." See Adair v. City of Kirkland, 185 F.3d 1055, 1060 (9th Cir. 1999) (citations omitted).

### 1. "Established"

[HN22] The employer carries the burden of demonstrating that a Section 7(k) compliant work period has been established. "Whether an employer meets this bur-

den is normally a question of fact." Adair, 185 F.3d at 1060. Although this Court has not uncovered any authority which discusses the meaning of the term "established" as used in Section 7(k), an examination of that term in a related context is instructive. For example, in determining whether an ERISA plan has been established, it has been held that the "mere decision to extend benefits does not 'establish' a plan within the meaning of ERISA; instead it is the reality of a plan that is determinative." Weinstein v. Paul Revere Insurance Co., 15 F. Supp. 2d 552 (D.N.J. 1998) [*50] (emphasis added).

With respect to Section 7(k), courts have held that [HN23] a Section 7(k) work period may be "manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days." McGrath v. City of Philadelphia, 864 F. Supp. 466, 476 (E.D. Pa. 1994), citing Lamon v. City of Shawnee, 972 F.2d 1145, 1154 (10th Cir. 1992) ("City adopted Administrative Code No. 2-5, setting forth the City's § 207(k) employment policy."). In addition, an employer may establish a 7(k) work period "even without making a public declaration, as long as its employees actually work a regularly recurring cycle of between 7 and 28 days." McGrath, 864 F.Supp. at 476, citing Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1999) (stating directed verdict on existence of a Section 7(k) plan would be appropriate based on uncontradicted evidence that employees actually worked a regularly recurring work period that was set out in their employment contract).

Here, Defendant has taken the latter route. Plaintiff's do not dispute that they "actually work" a cycle of 7 consecutive days. (See UMF 3) ("The vast majority of sworn police officers work the so-called '4/10' plan, which [*51] is . . . a work period of seven days, with four, ten-hour days on-duty, and three days off."). It is also undisputed that this schedule has been in place at all relevant times. The MOU indicates that as of July 1, 2003, "the 4/10 plan applied to patrol and traffic assignments[,] will be applied to all sworn positions below the rank of Captain." (MOU, July, 2003, Defendant's Exhibit 4 at Article 33, pp. 43-44). Therefore, the undisputed facts indicate that Plaintiffs actually work a schedule that falls within the work period defined by Section 7(k). Plaintiffs so admit, and the MOU so states.

Plaintiffs nonetheless argue a question of fact exists as to whether a Section 7(k) schedule was established since: (1) the MOU uses the phrase "five day work week schedule" to describe Plaintiffs' schedule; (2) the San Diego City Council did not explicitly adopt a Section 7(k) work period for police officers despite doing so for fire fighters; and (3) Defendant's payroll practices demonstrate Plaintiffs' overtime pay is based on hours worked in excess of 40 hours per week, consistent with Section 207(a)(1) and not Section 7(k). Thus, the ques-

tion before the Court is whether this evidence is sufficient [*52] to create a triable issue of feet when Plaintiffs in practice and in fact work a 7-day, Section 7(k) compliant schedule.

Notably, it is well-settled that the type of evidence set forth by Plaintiff's does *not* preclude a *jury* from finding that a Section 7(k) schedule has been established. *See, e.g., Lamon, 972 F.2d at 1154* (pattern and practice of paying overtime for hours worked in excess of 40 per week under Section 207(a)(1) does not preclude establishment of a Section 7(k) work period); *Birdwell, 970 F.2d at 805-06* (the creation of a Section 7(k) work schedule does not turn on the language of the applicable collective bargaining agreement). Thus, Defendant correctly argues that even when (a) an MOU does not contain the term "207(k)," (b) the City Council failed to "announce the application of § 207(k)" in an implementing ordinance," or (c) Defendant's payroll practices fail to conform to a 7(k) schedule, a 7-day work cycle still may be established within the meaning of Section 7(k). (*See* D's Reply at 9).

The question remains, however, whether the evidence presented by Plaintiffs precludes a grant of summary judgment. In *Adair, 185 F.3d at 1061*, the Ninth Circuit upheld the lower court's [*53] grant of summary judgment where the city defendant "specified the work period in the [collective bargaining agreement] *and* when it actually followed this period in practice." *Id.* (Emphasis added). There, the employment agreement stated, "for purposes of complying with the Fair Labor Standards Act, the Patrol Division work period shall be eight days and the Detective Division seven days." The Court must now determine whether summary judgment is appropriate here, even though the MOU in question, which docs implement a 4/10 work cycle, does not mention the FLSA by name and contains the phrase "five day work week schedule."

In *Adair,* the language in plaintiffs' agreement referring to the FLSA helped support summary judgment because it indicated that the city "intended to adopt a 7(k) work cycle." *Adair, 185 F.3d at 1061*. It is unclear, however, whether the "intent" referenced in *Adair* is (a) simply the intent to implement a work cycle that happens to comply with Section 7(k), or (b) the intent to adopt a work cycle so as to benefit from the Section 7(k) overtime exemption. If *Adair* requires only the former, the undisputed implementation of the 7-day recurring schedule here, coupled with [*54] the agreement to implement a 4/10 schedule in the MOU, is conclusive evidence of such intent. If the latter intent is required, Plaintiffs' evidence regarding the MOU's use of the phrase "five day work week schedule" and the City Council's failure to adopt a Section 7(k) work period would create a triable issue of fact, since it would tend to prove Defendant did

not implement the 4/10 schedule in order to benefit from the Section 7(k) exemption. [7]

> 7    Plaintiffs' evidence that Defendant's payroll practice is inconsistent with a Section 7(k) schedule is insufficient to create a triable issue of fact. *See Adair, 185 F.3d at 1062* (granting summary judgment and holding city had established a Section 7(k) work cycle even though its pay periods were not "structured to correspond with the 7(k) work period.")

[HN24]The plain language of 29 U.S.C. § 207(k), as well the regulations discussing the exemption, indicate that the implementation of a work cycle that falls within Section 7(k) is sufficient, regardless of whether the employer has the FLSA in mind at the time of implementing the work cycle. As discussed, the FLSA, through Section 7(k), provides that no public agency employer of law enforcement [*55] personnel "shall be deemed to have violated" Section 207(a)(1) "in the case of such an employee to whom a work period of at least 7 but not less than 28 days *applies* . . . ." 29 U.S.C. § 207(k) (emphasis added). Further, according to the Code of Federal Regulations, a compliant "work period" is any "established and regularly recurring period of work." It is significant that the word "established" refers to the *period of work* -- that is, the schedule itself. Once a work period is "established," Section 7(k) specifies that an employer does not violate the overtime provision set forth in Section 207(a)(1) so long as the work cycle "applies" to the employee in question. 29 U.S.C. § 207(k). There is no suggestion in the language of Section 7(k) that an employer must affirmatively invoke the exemption.

Courts considering the issue similarly have emphasized the establishment of the *schedule* rather than the establishment of the exemption. *See Spradling v. City of Tulsa, 95 F.3d 1492, 1504 (10th Cir. 1996) citing Avery v. City of Talladega, 24 F.3d 1337, 1343 (11th Cir. 1994)* ("To qualify for the exemption, the employer must establish the employees in question have a work period of at least [*56] seven, but not more than twenty-eight consecutive days.") Moreover, [HN25]although a public declaration is not necessary to establish a Section 7(k) schedule, courts have held that if a public declaration exists, it must be a "declaration of intent to adopt a work period of between 7 and 28 days," not a declaration of intent to adopt a work cycle within the meaning of Section 7(k). *See Adair, 185 F.3d at 1061, citing Spradling, 95 F.3d at 1505*.

Since Section 7(k) does not require an intent to fall within the exemption, the City Council's failure to explicitly adopt a Section 7(k) exemption when given the opportunity, the MOU's failure to mention the FLSA by name, or the MOU's description of the 4/10 schedule as a

"five day work week schedule," [8] does not create a triable issue of fact concerning whether Defendant established a work schedule that is compliant with Section 7(k).

> 8  It is undisputed that most Plaintiffs work a seven-day work period consisting of four days work, followed by three days off -- the so-called 4/10 schedule. At oral argument, Plaintiffs' counsel argued that a 4/10 schedule is not necessarily a seven-day, recurring schedule, but rather a five-day schedule pursuant to [*57] the language of the MOU. (Oral Arg. at 18). This argument, however, is belied by a commonsense application of the undisputed facts. If a five-day cycle were in place, a 4/10 schedule would mean Plaintiffs work four out of every *five* days. If that were the case, Plaintiffs would work between 50 and 60 hours per seven-day week. Nowhere do Plaintiffs allege such a schedule. Given Plaintiffs' claims and the uncontroverted evidence before the Court, Plaintiffs on a 4/10 schedule work four out of every *seven* days.

Plaintiffs argue that if the MOU's reference to a "five day work week schedule" does not create a triable issue of fact, Defendant would be allowed to evade its contractual responsibilities to Plaintiffs. (Oral Arg. at 28). This argument, however, conflates Defendant's obligations under the contract (MOU) with its obligations under federal law. Plaintiffs have brought a claim for breach of contract. That claim, rather than a claim under the FLSA, provides the proper vehicle for enforcement of contractual rights. *See Birdwell, 970 F.2d at 806, citing Wethington v. City of Montgomery, 935 F.2d 222, 229 (11th Cir. 1991)* ([HN26]"[W]hile there may be a breach of contract, the FLSA is not violated [*58] if the FLSA does not cover the situation."). *See also Lamon, 972 F.2d at 1154* (verdict upheld where defendant had established a Section 7(k) schedule despite a pattern and practice of paying overtime after only 40 hours worked per week). Defendant's alleged breach of promise to pay employees more overtime than required by the FLSA is simply irrelevant to whether Defendant violated the FLSA.

In *McGrath, 864 F.Supp. at 477,* the court held that reference in a collective bargaining agreement to a forty-hour week created a question of fact as to whether the employer established a Section 7(k) schedule, even though it was undisputed that employees actually worked a Section 7(k) work cycle. This Court, however, respectfully declines to adopt the reasoning of *McGrath* on this issue, as its holding permits the possibility of a jury verdict that is contrary to the plain language of Section 7(k). In other words, the holding in *McGrath* would allow a jury to find that a Section 7(k) exemption was *not* estab-

lished, in the face of uncontradicted evidence that a 7(k)-compliant work cycle actually existed in practice. Such a result would be contrary to the express language of Section 7(k); that is, if [*59] a 7 to 28 day, recurring work cycle "applies" to an employee, the employer is not required to pay overtime wages to the employee unless the employee works more than 171 hours in a 28 day work period or more than 43 hours in a 7 day work period. To allow a jury to reach a contrary result under such circumstances, would be to invite a Rule 50 motion at the conclusion of the proceedings. [9] Accordingly, given the undisputed facts here -- that Plaintiffs actually work a Section 7(k) compliant schedule -- the issue whether Defendant established a Section 7(k) schedule is properly decided as a matter of law. None of the evidence presented by Plaintiffs creates a genuine issue of fact regarding the establishment of a Section 7(k) schedule. Because Plaintiffs actually work such a schedule, the exemption applies.

> 9  Rule 50 of the Federal Rules of Civil Procedure allows a party to move for judgment as a matter of law at trial after evidence has been fully presented on an issue. The motion may be made both before and after submission of the case to the jury, and the court may grant the motion if a claim "cannot under the controlling law be maintained . . . ."

### 2. "Regularly Recurring"

Plaintiffs' [*60] final attempt to defeat Section 7(k) eligibility is to argue (but provide no evidence) that since any given police officer works a "four month deployment," there is no "recurring" schedule within the meaning of Section 7(k). (Oral Arg. at 17:13-15). The nature of the deployment schedule is undisputed. For four months at a time, each Plaintiff on the 4/10 schedule works a recurring cycle of four days on, three days off per seven-day week. (Oral Arg. at 17). Although each such Plaintiff is given a new, recurring seven-day schedule every four months, the seven-day cycle always remains in place. The deployment schedule does not, therefore, destroy Defendant's eligibility for a Section 7(k) exemption. Summary judgment is therefore granted in favor of Defendant on this issue and against all Plaintiffs who work the 4/10 schedule.

The remaining issue is whether Plaintiffs' "gap time" hours, *i.e.,* hours worked between 40 and 43 hours per week, are compensable. At least one court has held that such hours are to be compensated at the employees' "normal hourly rate." *Lamon, 754 F. Supp. at 1521 n.1.* However, in keeping with the notion that the FLSA is a minimum standard that may not be waived by [*61] contract, the majority of courts have held that [HN27]employees are not entitled to compensation for

2007 U.S. Dist. LEXIS 87501, *

such time under the FLSA. As long as the actual number of hours worked divided by the employee's salary at the regular rate does not fall below the minimum wage requirements of the FLSA, a "pure gap time" claim is untenable. *See Monahan v. County of Chesterfield, 95 F.3d 1263, 1284 (4th Cir. 1996); Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986); Robertson v. Board of County Comm'rs, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999).* This Court finds the latter approach persuasive. Thus, unless Plaintiffs can establish a minimum wage violation, they have no claim under the FLSA for gap time pay.

### F. Offset under 29 U.S.C. § 207(h).

[HN28]Defendant may offset payments for meal periods, certain premium pay and holiday pay against any overtime compensation owed under 29 U.S.C. § 207(h)(2). Plaintiffs initially argue Defendant is ineligible for such offsets because Defendant acted in bad faith. (P's Opp. to D's MSJ at 34). But good faith is not a prerequisite under Section 207(h)(2). As such, Defendant is *eligible* for these offsets.

Defendant argues that any liability for overtime [*62] compensation is offset by premium payments made to Plaintiffs as well as paid meal periods. However, there are material questions of fact that preclude summary judgment. For example, the MOU at 144-45 indicates the parties bargained for unpaid meal periods. Although this is not conclusive evidence that meal periods in fact were unpaid, it does create a question of fact. Plaintiffs also have raised a question of fact as to whether there was a culture of discouraging submission of overtime up to one hour per day. Defendant's motion is therefore denied on these grounds.

### G. Willful Conduct Under 29 U.S.C. § 255(a).

Both parties have presented competing, admissible evidence on this issue. The determination of wilfulness depends upon an assessment of the credibility of the testimony presented. Therefore, Plaintiffs' summary judgment motion on this issue is denied.

### H. Liquidated Damages Under 29 U.S.C. § 216(b).

[HN29]29 U.S.C. § 216(b) provides for liquidated damages in the amount of overtime compensation owed, in addition to compensatory damages. However, if an "employer shows . . . the act or omission giving rise to [the FLSA action] was in good faith," liquidated damages may not be awarded. 29 U.S.C. § 260. [*63] Because genuine issues of material fact remain as to the amount of overtime owed, and whether Plaintiffs are entitled to liquidated damages, summary judgment is denied.

### I. Compensatory Time Off -- 29 U.S.C. § 207(o).

Section 207(o) allows employees to receive Compensatory Time Off ("CTO") instead of overtime pay if such an arrangement is adopted in a collective bargaining agreement. With some limitations, CTO may be accrued, redeemed or paid annually according to agreement. Neither party disputes that at all relevant times, Plaintiffs and Defendant operated under a legally binding CTO agreement.

Plaintiffs allege that Defendant failed to redeem CTO within a reasonable time, or failed to pay that time. Plaintiffs present the testimony of one employee whose request to redeem CTO was rejected "due to staffing." (P's Response to D's SS, UMF 125, Sweeney Depo. at 53-54). [HN30]Section 207(o), however, allows an employer to deny a request to redeem CTO when granting it would be "unduly disruptive." For example, CTO requests need not be approved where such requests would cause staffing to fall below minimum levels. *See, e.g. Mortensen v. County of Sacramento, 368 F.3d 1082, 1084-85 (9th Cir. 2004).*

Plaintiffs [*64] argue *Mortensen* is distinguishable because here, Defendant "systematically understaff[ed] its police force thereby making its promise to grant CTO illusory." (P's Opp. to D's MSJ at 37). However, Plaintiffs' assertion is not in any way supported by the evidence presented. Plaintiffs direct the Court only to the testimony of Paul Cooper, a lawyer who serves as an assistant to the Chief of Police and was designated as Defendant's person most knowledgeable on the issue of CTO, who stated SDPD "was in the middle of a staffing problem or challenge." (Cooper Depo. at 26:9-13). While this evidence shows SDPD was in the midst of staffing problems, it does not demonstrate the problem was of Defendant's making. Since the evidence presented by Plaintiffs does not create a question of fact, Defendant's motion for summary judgment on this claim is granted.

### J. Beach of Contract Claim.

Defendant asks the Court to dismiss the breach of contract claim pursuant to 28 U.S.C. § 1367. Because the FLSA claim has not been dismissed, Defendant's motion to dismiss the contract claim is denied.

### K. Damages-Related Issues.

Plaintiffs have moved for summary adjudication regarding the number of uncompensated hours [*65] worked. The motion is denied without prejudice as it relates to damages. Such matters may be addressed in the Phase II briefing.

### III.

### AFFIRMATIVE DEFENSES

### A. Legal Standard

Plaintiffs move for summary judgment as to Defendant's affirmative defenses, and to strike such defenses. [HN31]A motion to strike is appropriate when a defense is not pled with sufficient particularity to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A defense is sufficient if it gives Plaintiffs "fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

### B. Discussion

The motion to strike is denied in its entirety, as Plaintiffs have failed to demonstrate that any defense is redundant, immaterial, impertinent or scandalous. Plaintiffs' motion for summary judgment on Defendant's affirmative defenses is granted in part and denied in part as discussed below.

### 1. Waiver and Estoppel

[HN32]Waiver is "the intentional relinquishment of a known right." *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1237 (9th Cir. 1998). [*66] [HN33]Estoppel requires Defendant to establish a misrepresentation by Plaintiffs upon which Defendant reasonably relied to its detriment. *See Heckler v. Cnty. Health Servs.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984). Plaintiffs argue that Defendant cannot identify any facts in support of its defense of waiver or estoppel. (P's MSJ on AD's at 8-9). In response, Defendant points to Plaintiffs' deposition testimony indicating: (1) officers are expected and encouraged to report overtime (Def's Sep. Stmt. re: MSJ on AD's at UMF 9); (2) Plaintiffs' overtime has been approved in nearly all, if not all, circumstances (*Id.* at UMF 11); and (3) some Plaintiffs admitted that they chose not to submit requests for overtime worked. (*Id.* at UMF 28). Such evidence would support a jury's finding that Plaintiffs knew unreported time would not be compensated, and therefore waived their right to compensation by failing to report it. Moreover, taken together, the evidence supports an inference that Defendant reasonably relied on Plaintiffs' representations (or failure to submit requests) regarding overtime worked. Thus, summary judgment as to waiver and estoppel is denied.

### 2. Partial Exemption Under Section 7(k)

As discussed, Defendant [*67] is eligible for this partial exemption as a matter of law. Therefore, Plaintiffs' motion for summary judgment on this defense is denied.

### 3. Relief for preliminary or postliminary activities

As discussed, Plaintiffs' donning and doffing activities are not compensable as a matter of law. As to other activities, Defendant presented ample evidence to support this defense. For example, it pointed to Plaintiffs' deposition testimony indicating Plaintiffs frequently chose to arrive at work prior to their shifts, and frequently chose to engage in work-related activities away from the station. Moreover, several Plaintiffs admitted that they were not required or even encouraged to engage in such activities. (D's Sep. Stmt. in Supp. of Opposition to P's MSJ on AD's, UMF's 5, 6, 8, 12). Taken together, this evidence could support a jury's finding that such activities constitute "preliminary" activities within the meaning of the statute. Accordingly, Plaintiffs' motion for summary judgment on this defense is denied.

### 4. Restriction on Activities Compensable Under Contract or Custom

Plaintiffs raised their objection to this affirmative defense in the headings of their pleadings, but never argued the [*68] matter in their briefs. Since Plaintiffs have provided neither evidence nor legal grounds in support of their motion, it is denied.

### 5. Good Faith Defense and Waiver of Attorney-Client privilege

Plaintiffs admit Defendant is eligible for a discretionary reduction in liquidated damages if it can "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA.]" (P's MSJ on AD's at 12, quoting 29 U.S.C. § 260). Plaintiffs' argument is limited to the conclusory statement that Defendant cannot prove good faith. (P's MSJ on AD's at 12). Defendant has, however, offered sufficient evidence of good faith to create a triable issue of fact. According to Defendant, its agents reviewed labor policies regularly and attended training seminars concerning FLSA compliance. (D's Sep. Stmt. Re: P's MSJ on AD's, UMF 51, 53-56). Such evidence creates a material question of fact as to whether Defendant acted in good faith concerning its compliance with the FLSA. Therefore, Plaintiffs' motion for summary judgment on this affirmative defense is denied.

Next, [*69] Plaintiffs argue that by asserting a good faith defense, Defendant has waived its attorney-client privilege because Defendant "in fact, [is] asserting the 'advice of counsel' defense . . ." (P's MSJ on AD's at 13). Defendant's answer does not reveal reliance upon a defense of advice of counsel, nor may such be presumed. Accordingly, the Court declines to rule that Defendant

has implicitly waived the attorney-client privilege in its Answer.

### 6. Statute of Limitations

Plaintiffs argue there is no dispute that all alleged activities took place within the relevant statute of limitations. Even if Plaintiffs are correct, there is a question of fact with regard to which statutory period applies. [HN34]The FLSA establishes a two year statute of limitations unless the Plaintiffs prove the employer has committed a willful violation. In the case of wilfulness, the statute of limitations is three years. 29 U.S.C. § 255. Wilfulness requires a finding that an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." Mclaughlin v. Richland Shoe, Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).

Plaintiffs assert that Defendant's actions were willful, but point only to their [*70] own declarations as evidence of Defendant's wilfulness. Defendant has produced deposition testimony by management indicating that its managers were unaware of complaints regarding overtime practices, and that the Chief of Police, despite an open door policy, never received complaints of this nature. (D's Sep. Stmt. re: Opposition to P's MSJ on AD's, UMF 46, 49). Consequently, issues of material fact remain and summary judgment on this ground is denied.

### 7. Reliance on an Interpretation of the FLSA by the Department of Labor

Plaintiffs argue Defendant cannot point to a specific interpretation of the Department of Labor upon which it relied. To the contrary, Defendant has named and argued the effect of a number of opinion letters and regulations from the Department of Labor discussed at length above. Summary judgment is therefore denied as to this issue.

### 8. Relief from Reporting Requirements for Insubstantial or Insignificant Periods of Time

Defendant may obtain relief from reporting requirements for insubstantial or insignificant periods of time. Plaintiffs' argue the unpaid time was not de minimis, and therefore Defendant is not entitled to this affirmative defense. However, time spent [*71] donning and doffing safety gear is de minimis as a matter of law, as already discussed. Plaintiff's motion is therefore denied as to such activity. As for other activities, Defendant points to the testimony of several Plaintiffs who request compensation for activities such as checking mail and cleaning weapons. (D's Opposition to P's MSJ on AD's). The referenced testimony raises questions of fact as to whether time spent performing these and other activities is de

minimis. Plaintiffs' summary judgment motion is denied as to this issue.

### 9. Adequate Remedy at Law

Defendant's ninth affirmative defense claims Plaintiffs are barred from seeking injunctive relief because they have an adequate remedy at law. Plaintiffs move for summary judgment against this defense on grounds that they have an automatic right to seek an injunction. (P's MSJ on AD's at 16). Yet, [HN35]the plain language of 29 U.S.C. § 211 directs the Secretary of Labor to bring all injunctive actions under 29 U.S.C. § 217, save those involving child labor. Accordingly, only the Secretary of Labor may pursue injunctive relief, not employees. See McCune v. Oregon Senior Services Div., 643 F. Supp. 1444, 1454 (D. Or. 1986); Bowe v. Judson C. Burns, Inc., 137 F.2d 37, 39 (3d Cir. 1943). [*72] Plaintiffs' motion for summary judgment on this affirmative defense is therefore denied.

### 10. Laches

Plaintiffs move for summary judgment on grounds that (1) "Laches is only available as a defense with respect to causes of action that do not have a limitations period," and (2) there is no evidence to support a claim of laches. (P's MSJ on AD's at 16-17). Defendant does not dispute this argument in its opposition. Moreover, [HN36]laches is an equitable remedy. Brownrigg v. DeFrees, 196 Cal. 534, 539, 238 P. 714 (1925). Since Plaintiffs may not bring a claim in equity as explained above, the motion for summary judgment on this defense is granted.

### 11. FLSA Does Not Apply to Local Government Agencies

Defendant's eleventh affirmative defense asserts that applying the FLSA to Defendant is an "impermissible and unconstitutional interference" with the City of San Diego in contravention of the Tenth Amendment of the United States Constitution. (Answer at 9). The Supreme Court has held that [HN37]applying the FLSA to state agencies is constitutional. Garcia v. San Antonio Metropolitan Transportation Authority, 469 U.S. 528, 554, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985). The holding of Garcia has been incorporated into the FLSA by amendment. Accordingly, [*73] Defendant's eleventh affirmative defense fails as a matter of law. Plaintiffs' motion for summary judgment is granted on this ground.

### 12. Unclean Hands

Plaintiffs claim that there is insufficient evidence to support the affirmative defense of unclean hands. Defendant has presented sufficient evidence to create a fact question as to whether Plaintiffs' failure to report over-

time is misconduct. The motion for summary judgment on this ground is denied.

### 13. Failure to Exhaust

This issue has been twice decided in prior orders. *See* Doc. 71 at 4 (noting the city conceded the exhaustion of remedies argument); Doc. 108 at 6 (holding that an action seeking unpaid wages and statutory penalties is not subject to exhaustion requirements.). Yet, Plaintiffs bring the issue before the Court again in the present motion, which is denied as moot.

### 14. Failure to Mitigate and Speculative Damages

Plaintiffs argue (1) the duty to mitigate does not apply to the FLSA, and (2) Defendant cannot plead facts demonstrating how Plaintiffs could have mitigated damages. (P's MSJ on AD's at 23-24). Regardless of whether Plaintiffs' first argument is correct, mitigation of damages is an affirmative defense that applies to [*74] a breach of contract claim, so assertion of the defense does not fail on its face. Beyond a facial analysis, adjudication of Plaintiffs' motion is inappropriate at this time. This phase of the summary judgment proceedings addresses only liability. The subject affirmative defenses are damages-related defenses. Summary judgment is denied.

### 15. Compromise

Defendant claims two prior settlement agreements bar this litigation. [HN38]*Res judicata* bars all claims that could have been brought in the same complaint regarding the same breach. *See Mycogen Corp. v. Monsanto Co.,* 28 Cal. 4th 888, 905, 123 Cal. Rptr. 2d 432, 51 P.3d 297 (2002). As the original complaints in the prior cases are not before the Court and there is no additional evidence presented, the issue of res judicata cannot be determined as a matter of law. The scope of the breach alleged in the prior complaints remains a question of material fact. Thus, the motion for summary judgment on these grounds is denied.

### 16. Third Party Beneficiary and Lack of Standing

Defendant's answer to Interrogatory No. 14 concedes this issue. The motion for summary judgment is therefore granted.

### 17. Offset

The issue of offset has been addressed at length above. Summary judgment on this affirmative [*75] defense is denied.

### 18. Failure to State a Claim

Plaintiffs point out that this Court already has adjudicated Defendant's motions to dismiss and settled the issue of which claims Plaintiffs have and have not stated. Nonetheless, Plaintiffs move the Court to take judicial notice of the prior rulings regarding Plaintiffs' ability or inability to state various claims for purposes of granting this motion for summary judgment. Granting such a request would be redundant. The motion for summary judgment on this affirmative defense is therefore denied as moot.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on the Fifth Amended Complaint is GRANTED in part and DENIED in part. Plaintiffs' motion for summary judgment on the Fifth Amended Complaint is DENIED. Plaintiffs' motion to strike is DENIED in its entirety. Plaintiffs' motion for summary judgment on affirmative defenses is GRANTED with respect to the tenth, eleventh, and fifteenth affirmative defenses. With regard to all other affirmative defenses and all other issues not specifically addressed in this Order, summary judgment is DENIED.

**IT IS SO ORDERED.**

DATED: November 9, 2007

/s/ Dana M. Sabraw

HON. DANA M. SABRAW

United [*76] States District Judge

LEXSEE

**DAVID ALFORD, SR., et al., Plaintiffs, v. PERDUE FARMS, INC., Defendant.**

**Civil Action No. 5:07-cv-87 (CAR)**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
GEORGIA, MACON DIVISION**

**2008 U.S. Dist. LEXIS 24948**

**March 28, 2008, Decided
March 28, 2008, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees filed suit against defendant employer, alleging that the employer failed to compensate the employees for all work, as required by the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq. The employer moved for summary judgment.

**OVERVIEW:** The employees, who worked at the employer's poultry processing plant, were compensated for the time they spent donning and doffing specialized protective gear, such as hand and arm guards, but were not compensated for the time they spent donning and doffing generic protective gear, such as hair nets and goggles. The court held that the employees were not entitled to such compensation. Under the 1947 Portal-to-Portal Act, 29 U.S.C.S. § 254(a)(2), employers were not be liable to provide compensation for activities that were preliminary to or postliminary to the principal activities which employees were employed to perform. The court held that the simple act of putting on goggles, a hair net, and ear plugs added little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertook every day, and such acts were preliminary to work activities under 29 C.F.R. § 790.7(g). Thus, whether characterized as not integral to the principal activities, as not inherently work, or as de minimis, the donning and doffing of generic protective gear was a preliminary or postliminary activity excluded from FLSA coverage under 29 U.S.C.S. § 254(a)(2).

**OUTCOME:** The court granted the employer's motion for summary judgment.

**CORE TERMS:** gear, donning, doffing, generic, time spent, specialized, protective, plant, principal activities, integral, plugs, ear, clothes, hair nets, postliminary, compensated, cap, indispensable, compensable, wearing, boots, shoes, summary judgment, de minimis, safety glasses, showering, Portal-to-Portal Act, steel-toed, dressing, putting

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN1]Under the purview of the 1947 Portal-to-Portal Act, Congress provided that employers would not be liable to provide compensation for activities which are preliminary to or postliminary to the principal activity or activities which employees are employed to perform. 29 U.S.C.S. § 254(a)(2). Activities performed before or after an employee's regular work shift are compensable if they are an integral and indispensable part of the principal activities for which covered workman are employed.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN2]Ordinarily, such activities as changing clothes and showering are preliminary or postliminary actions that are not compensable. Nearly every occupation requires some attention to dress and grooming, and this is normally done on an employee's own time. Some employees, such as office workers or food-service workers, find it necessary to wash before work. Other employees, such as construction workers or landscapers, might find it more sensible to wash after work. A lawyer, banker, or bureaucrat might be required to spend a few moments

each morning tying a tie around his neck. A bus driver might have to put on a uniform. A retail clerk might have to pin on a name tag. The regulations promulgated by the Secretary of Labor recognize that these activities are not integral to work activities. 29 C.F.R. § 790.7(g). Although they may be required by or ultimately for the benefit of the employer, these activities are only preliminary to the principal activities for which the employees are engaged.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN3]There is no liability to compensate for donning and doffing generic personal protective gear such as hard hats, ear plugs, safety glasses, boots, or hair nets. There is a distinction between the burdensome donning and doffing of elaborate protective gear, on the one hand, and the time spent donning and doffing nonunique gear such as hardhats and safety goggles, on the other. The time spent donning and doffing the non-unique gear is de minimis. Although wearing such gear may be integral and indispensable to the employees' work, the donning and doffing of this gear occupies only a few seconds or minutes of work beyond the scheduled working hours. As such, Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., policy does not justify compensation for the time spent performing these activities.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN4]Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., policy does not justify compensation for the time spent performing the donning and doffing of generic safety gear. The placement of a pair of safety glasses, a pair of earplugs and a hard hat into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration. Such items can easily be carried or worn to and from work and can be placed, removed, or replaced while on the move or while one's attention is focused on other things. Similarly, safety shoes can be worn to and from work and require little or no additional effort to put on as compared to most other shoes. These actions require little effort beyond that required in the mere act of getting dressed in the morning, and therefore do not require the employer to take additional steps to monitor their performance and provide compensation for them.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN5]The simple act of putting on a pair of boots, a hair net, a cap, and ear plugs is difficult to distinguish from

the act of changing clothes and showering under normal conditions, an act that is by definition preliminary or postliminary to work activities. 29 C.F.R. § 790.7(g). It is something that the employee can do at his home, in his car, or whenever suits his convenience. It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day. Thus, whether it is characterized as not integral to the principal activities or as not inherently work or as de minimis, the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded from Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., coverage by the 1947 Portal-to-Portal Act, 29 U.S.C.S. § 254(a)(2).

**COUNSEL:** [*1] For All Plaintiffs (This party established specifically to be selected when e-filing documents on behalf of all plaintiffs), Plaintiff: Deirdre Stephens Johnson, LEAD ATTORNEY, Kenneth R. Lester, Tisha R. Tallman, Atlanta, GA; Hezekiah Sistrunk, Jr., LEAD ATTORNEY, The Candler Building, Atlanta, GA; Richard Celler, LEAD ATTORNEY, Morgan & Morgan, Davie, FL.

For Perdue Farms, Inc., a foreign corporation, Defendant: Lexer I. Quamie, PRO HAC VICE, Brian Z. Liss, James J. Kelley, LEAD ATTORNEYS, Washington, DC; Calvin Garner Sanford, Jr., Michael Oliver Eckard, LEAD ATTORNEYS, Atlanta, GA.

**JUDGES:** C. ASHLEY ROYAL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** C. ASHLEY ROYAL

**OPINION**

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

This case is before the Court on Defendant's Motion for Summary Judgment. Plaintiffs are hourly-wage employees of Defendant's poultry processing plant in Perry, Georgia, who allege that Defendant failed to compensate them for all work as required by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, et seq. Plaintiffs seek to bring a collective action on behalf of themselves and other similarly situated employees. Upon review of the arguments of counsel, the relevant legal authorities, and [*2] the evidentiary materials on file with the Court, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment (Doc. 40) is hereby **GRANTED.** In light of this Order granting summary judgment in favor of Defendant, Plaintiff's Motion for an Order Permitting

Court-supervised Notice to Employees (Doc. 29) is **DE-NIED.**

Plaintiffs' sole remaining claim in this case is that Defendant "fails to pay Plaintiffs for the donning and doffing of personal protective equipment such as hair nets, beard nets, goggles, ear plugs, boots, or bump caps . . . prior to the start and end of their workshift, and during break periods." (Pls' Resp. in Opposition to Mot. for Summary Judgment (Doc. 45), p. 2). Summary judgment is warranted as to this claim because the activities in question are "preliminary" or "postliminary" activities that are deemed non-compensable under the Portal-to-Portal Act of 1947. 29 U.S.C. § 254. Even if these activities could be characterized as integral and indispensable to Plaintiffs' principal activities, they are *de minimis* [*3] and not entitled to additional compensation.

It is undisputed that employees at the Perry plant are compensated for the donning and doffing of specialized gear unique to the poultry industry and to their particular jobs. This gear includes gloves, hand and arm guards, aprons and smocks, and cutting equipment. Under Defendant's compensation system, employees obtain this gear from their department after they have clocked in for work. Thus, they are compensated for time they spend donning the gear and for time walking from the dressing area to their work stations. They remain "on the clock" while they remove these items before break periods and at the end of the work day. Although they must put on the specialized gear on site and during compensated working hours, the employees are required to be wearing their hair and beard nets, ear plugs, boots, and caps prior to beginning work. Employees may take these items home with them and wear them to work or store them in lockers at the plant and put them on before clocking in.

Defendant's compensation system was developed in cooperation with the United States Department of Labor ("the Department") and was incorporated into a 2002 Consent Judgment [*4] in settlement of litigation filed by the Department in the United States District Court for the Middle District of Tennessee. This Consent Judgment ended the practice known as "line time," which was the prevailing practice in the poultry industry at the time. Under the "line time" system, employees were only paid from the time that the first chicken arrived at their work station, and were not compensated for time spent donning and doffing specialized gear, walking to the work stations, or waiting for the production line to start. The Consent Judgment provided that hourly employees at Defendant's plants would be "paid for all hours worked from the start of [their] first principal activity of the work day until the end of the last principal activity of [their] work day, with the exception of any time taken for bona fide meal breaks or bona fide off-duty time." (Consent

Judgment, Doc. 42, Attachment 3, P 2). A principal activity is defined in the Consent Judgment as

> any activity that is integral and indispensable to the employee's work and includes such activities as the donning, doffing, and sanitizing of any clothing or equipment (**excluding such items that the employee is free to put** [*5] **on at home, such as hair nets, bump caps, ear plugs, glasses, and footwear**) which is required by law, the employer, or the nature of the work, and not merely a convenience to the employee and not directly related to the specific work.

Id. at P 3 (emphasis added). Thus, the Department differentiated between the generic personal gear that employees kept themselves and the specialized equipment that Defendant maintained at the plant. Donning, doffing, and sanitizing the specialized clothing and equipment was considered to be a part of the work day. Donning and doffing the generic gear was not.

Plaintiffs' counsel apparently were unaware of the terms of the Consent Judgment, or of the actual compensation system at their clients' workplace, when they filed the initial Complaint. In the first Complaint, Plaintiffs alleged that Defendant maintained the line time system and only paid employees for time that they were on the production assembly line or in production areas. The Complaint further alleged that employees were not compensated for the time spent donning and doffing their gear; for time walking from the dressing area to the work station and back; for time spent waiting to return required [*6] supplies, tools, and other equipment; or for time spent waiting at the production line prior to the line start-up. After receiving notice from Defendant's counsel as to the terms of the Consent Judgment, and after finding that Defendant was in compliance with the Consent Judgment, Plaintiffs withdrew all claims except for their claim that they are not compensated for donning and doffing their personal protective equipment.

A review of the law regarding compensation in the poultry industry shows that the Department of Labor was correct in distinguishing non-unique, personal gear that employees may put on at home from unique, specialized equipment that employees must put on and take off on site. This case falls [HN1]under the purview of the 1947 Portal-to-Portal Act, in which Congress provided that employers would not be liable to provide compensation for activities which are "preliminary to or postliminary to" the principal activity or activities which employees are employed to perform. 29 U.S.C. § 254(a)(2). Apply-

ing the Portal-to-Portal Act, the Supreme Court has determined that activities performed before or after an employee's regular work shift are compensable if they are "an integral [*7] and indispensable part of the principal activities for which covered workman are employed." Steiner v. Mitchell, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956). Consistent with this law, the Department correctly determined that Defendant was not liable to compensate employees for time spent donning and doffing such generic items as hair nets, caps, ear plugs, glasses, and footwear.

[HN2]Ordinarily, such activities as changing clothes and showering are preliminary or postliminary actions that are not compensable. Nearly every occupation requires some attention to dress and grooming, and this is normally done on an employee's own time. Some employees, such as office workers or food-service workers, find it necessary to wash before work. Other employees, such as construction workers or landscapers, might find it more sensible to wash after work. A lawyer, banker, or bureaucrat might be required to spend a few moments each morning tying a tie around his neck. A bus driver might have to put on a uniform. A retail clerk might have to pin on a name tag. The regulations promulgated by the Secretary of Labor recognize that these activities are not integral to work activities. See 29 C.F.R. § 790.7(g). Although they may [*8] be required by or ultimately for the benefit of the employer, these activities are only preliminary to the principal activities for which the employees are engaged.

In certain situations, however, the act of washing or of dressing and undressing may be so integral and indispensable as to be part of the employee's principal activities. In Steiner, for example, the plaintiff employees worked at a battery plant, where they were exposed to various toxic chemicals during the workday. To protect the workers, the company provided a locker room on the premises and required the employees to change into company-provided work clothes in the morning and to remove their work clothes and shower before leaving at the end of the day. Without any significant discussion, the Court found that this changing and showering was compensable because "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." Id., 350 U.S. at 256.

The wearing of hair nets, ear plugs, caps, and steel-toed shoes, for which Plaintiffs in this case seek compensation, is more [*9] comparable to the normal preliminary washing and dressing that all employees must do before reporting to work. Plaintiffs have presented no evidence or reason to believe that their steel-toed shoes are any more difficult to put on than any other pair of shoes, or that a "bump cap" is more difficult to put on than any other type of cap. Ear plugs and a hair net are no more difficult to put on than a tie or a name tag. Although many employees chose to put on their steel-toed shoes or hair nets in a locker room at the plant, they were allowed to put them on or take them off at home, in their cars, or elsewhere. As such, these generic items are distinguishable from the more specialized protective gear and sanitary gear that was kept at the plant -- the plastic aprons, the protective gloves, the arm and leg guards, the cutting equipment. Employees were required to put on and take off these items on premises so that they could be properly maintained. Employees were also fully compensated for the time they spent putting on and taking off this gear.

Two circuit courts of appeals have considered the donning and doffing of similar generic personal gear in the context of the meat processing industry, [*10] and both have found that time spent donning and doffing such equipment is non-compensable. In Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994), the Tenth Circuit determined that putting on such gear was not work and was therefore not subject to compensation. The court differentiated the generic items -- safety glasses, ear plugs, hard hats, and safety shoes -- from the more specialized protective gear required for the employees who worked with cutting equipment, including mesh aprons, arm guards, protective gloves, and shin guards. The court found that donning and doffing the specialized gear was compensable work, but that the time spent putting on or taking off the generic items was comparable to the time any other employee would spend getting dressed before work or undressed after work:

> Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature.

Id. at 1126 n.1. Because putting on these items was a preliminary activity, it was not work that required compensation [*11] under the FLSA.

Although Reich has not been overruled and remains good law, it must be noted that the opinion has been criticized for its reasoning that time spent donning and doffing the generic items was not "work," given the broad definition of "work" under the FLSA. In Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004), the Ninth Circuit held that employees of a silicon wafer

manufacturing plant were entitled to compensation for time spent donning and doffing sterile uniforms at the beginning and end of their work shifts. The court compared Reich to its own decision in Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003) and noted that "work" under the FLSA need not require exertion, and that changing clothes could be compensable even if it was "non-exertional." Ballaris, 370 F.3d at 910-911. The court therefore rejected Reich's reasoning based on the definition of work. Although the court in Ballaris was correct to observe this flaw in Reich's reasoning, for purposes of this case Reich remains instructive for its finding that the activities of donning and doffing the generic protective gear were comparable to normal dressing and washing and its holding that they were [*12] inherently preliminary or postliminary to the principal work activity.

Ballaris itself is readily distinguishable from the present case. The court in that case emphasized several times that the employer's requirement that employees change clothes on the employer's premises made the act of changing clothes compensable work. There is a clear implication that the analysis would be different if the employees were allowed to take the clothing home with them and don it at home. The court also noted evidence that the process of changing occupied as much as twenty to thirty minutes each day. In that sense, Ballaris is distinguishable not only from this case, but also from the Ninth Circuit's earlier decision in Alvarez.

[HN3]In Alvarez, under facts very similar to the facts in this case, the Ninth Circuit held that there was no liability to compensate for donning and doffing the generic personal protective gear that Plaintiffs in this case were required to wear to work. The court affirmed a district court decision that denied recovery for the donning and doffing of hard hats, ear plugs, safety glasses, boots, or hair nets. In affirming the district court's decision, the Ninth Circuit "endorsed the [*13] distinction between the burdensome donning and doffing of elaborate protective gear, on the one hand, and the time spent donning and doffing nonunique gear such as hardhats and safety goggles, on the other." IBP, Inc. v. Alvarez, 546 U.S. 21, 32, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005). The court then found that the time spent donning and doffing the non-unique gear was de minimis. Alvarez, 339 F.3d at 904. Although the Ninth Circuit found that wearing such gear was integral and indispensable to the employees' work, it observed that the donning and doffing of this gear occupied "only a few seconds or minutes of work beyond the scheduled working hours." Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)). As such, neither FLSA policy nor the "actualities" of the employees' working conditions justified compensation for the time spent performing these activities.

The Alvarez court further noted that its decision was consistent with the observation in Reich that the time spent donning and doffing non-unique protective gear, though essential to the job and required by the employer, was "at once so insubstantial and so difficult to monitor that it is 'de minimis' as a matter of law.'" Alvarez, 339 F.3d at 904 [*14] (quoting Reich, 38 F.3d at 1126 n. 1). In Reich, the Tenth Circuit had reasoned that

> [HN4]The placement of a pair of safety glasses, a pair of earplugs and a hard hat into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration. Such items can easily be carried or worn to and from work and can be placed, removed, or replaced while on the move or while one's attention is focused on other things. Similarly, safety shoes can be worn to and from work and require little or no additional effort to put on as compared to most other shoes.

38 F.3d at 1126. These actions require little effort beyond that required in the mere act of getting dressed in the morning, and therefore do not require the employer to take additional steps to monitor their performance and provide compensation for them. Alvarez remains good law. Alvarez was affirmed by the Supreme Court in IBP, Inc. v. Alvarez, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005). [1]

> 1    The Supreme Court's decision in IBP, Inc. v. Alvarez concerned only the time the meat processing plant employees spent walking from the locker rooms to the production line after donning their special gear and the time they spent waiting to don [*15] and doff their gear at the start and end of the work day. Although the unanimous opinion refers approvingly to the district court's finding that there was no liability to compensate for the donning and doffing of hard hats, ear plugs, safety glasses, boots or hairnets, that aspect of the lower courts' decisions was not presented to the Supreme Court for review.

In addition to the two cases above that specifically concern meat processing employees, the Second Circuit has recently held that the donning and doffing of similar generic safety equipment by employees of a nuclear power plant was non-compensable. In Gorman v. Consolidated Edison Corp., 488 F.3d 586 (2nd Cir. 2007), the plaintiffs sought compensation for time spent donning and doffing helmets, safety glasses, and steel-toed boots. The court conceded that such gear might have

been indispensable to the employees' work, in that it was required by the employer or by government regulations, but found that the donning and doffing of such gear was not integral to the employees' work. The court contrasted the uncompensated wearing of generic safety gear with the complete changing and showering required by the employer in Steiner. It [*16] also contrasted the wearing of specialized gear required for employees who worked in the nuclear containment area, for which those employees were compensated. The court reasoned that procedures for wearing this specialized gear were integral to the act of working in the hazardous environment of the containment area. By contrast, the court found that "the donning and doffing of . . . generic protective gear [such as a helmet, safety glasses, and steel-toed boots] is not different in kind from 'changing clothes and showering under normal conditions,' which under Steiner are not covered by the FLSA." Gorman, 488 F.3d at 594.

Plaintiffs' reliance on the decision in De Asencio v. Tyson Food, Inc., 500 F.3d 361 (3rd Cir. 2007), is misplaced. Although De Asencio, like Ballaris, is critical of Reich, its actual holding has little relevance to this case. The Third Circuit in that case held that the district court had erred in giving a jury charge on the definition of work that required a finding of mental or physical exertion. The Court's decision in this case does not rely on a narrow definition of work, such as the district court adopted in the case underlying De Asencio. An activity that [*17] meets even the broad definition of work applied in De Asencio and Ballaris may yet be noncompensable if it is a preliminary or postliminary activity excluded by the Portal-to-Portal Act or if it is de minimis.

Furthermore, on it facts De Asencio is distinguishable from this case and from Alvarez and Reich. In De Asencio, as in Ballaris, the employees were required to do all donning and doffing on premises, including both the generic and the specialized gear. The defendant's internal operating requirements provided that "a worker may not keep the gear at home and wear it to the plant nor can a worker wear the gear home." De Asencio, 500 F.3d at 364 n.3. Accordingly, the court did not differenti-

ate between the two different types of gear, but considered them all in the aggregate. In this case, it is not possible to consider the generic and the specialized gear in the aggregate, as the Plaintiffs were required to be wearing their personal, generic gear when they arrived at work, and were required to don and doff the specialized gear on the premises, during work time.

Gorman, Alvarez, and Steiner together display a sound judicial instinct. At their heart, these decisions recognize that [HN5]the [*18] simple act of putting on a pair of boots, a hair net, a cap, and ear plugs is difficult to distinguish from the act of "changing clothes and showering under normal conditions," an act that is by definition preliminary or postliminary to work activities. 29 C.F.R. § 790.7(g). It is something that the employee can do at his home, in his car, or whenever suits his convenience. It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day. Thus, whether it is characterized as not integral to the principal activities (as in Gorman) or as not inherently work (as in Reich) or as de minimis (as in all three cases) the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded by FLSA's coverage by the Portal-to-Portal Act.

There is no genuine issue of material fact as to the nature of the activities performed by the Plaintiffs in donning and doffing their personal protective equipment before and after work each day. As a matter of law, the activities for which Plaintiffs seek compensation were preliminary and postliminary activities not subject to compensation [*19] under the FLSA. To the extent that they were otherwise compensable activities, they are de minimis in nature. Accordingly, Defendant is entitled to summary judgment.

**SO ORDERED,** this 28th day of March, 2008.

/s/ C. Ashley Royal

C. ASHLEY ROYAL

UNITED STATES DISTRICT JUDGE

# APPENDIX

LEXSEE



Analysis
As of: Jun 12, 2008

**FRED BAMONTE; JAVIER COTA; RICARDO PERINE; and other similarly situated employees, Plaintiffs, vs. CITY OF MESA, Defendant.**

**No. CV 06-1860-PHX-NVW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

**2008 U.S. Dist. LEXIS 31121**

**April 14, 2008, Decided**
**April 14, 2008, Filed**

**NOTICE:** Not For Publication

**PRIOR HISTORY:** Bamonte v. City of Mesa, 2007 U.S. Dist. LEXIS 50101 (D. Ariz., July 10, 2007)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, police officers, sued defendant city alleging violation of 29 U.S.C.S. § 207 of the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., because it failed to compensate them for time spent donning and doffing their uniforms and protective gear. Both sides moved for summary judgment.

**OVERVIEW:** The city did not compensate officer for time spent outside their schedules shifts donning and doffing their uniform and gear. The city did not have a policy that addressed how or where donning and doffing should take place. Although the officers assert that they were encouraged to don and doff at their station or reporting place, many of the officers choose to do so elsewhere, usually at home. The city argued that the officers were not entitled to compensation because their uniforms were not integral and indispensable to their duties, and because they were not required to don and doff their uniforms and protective gear at the police station or reporting place. The court found that although a police uniform connoted a position of authority and alerted the public to the wearer's identity, it was necessary to the performance of an officer's duties only in the insufficient sense that uniforms identify many types of workers. The officers

had the option and ability to don and doff their uniforms and protective gear at home. Consequently, such donning and doffing were preliminary and postliminary activities respectively, the performance of which did not require compensation.

**OUTCOME:** Summary judgment was granted in favor of the city.

**CORE TERMS:** gear, protective, donning, doffing, don, summary judgment, doff, station, indispensable, integral, reporting, police work, principal activities, compensable, genuine, motorcycle, police officers, belt, entitled to compensation, time spent, issue of material fact, employer's premises, postliminary, holder, police department, citations omitted, initial burden, compensate, scheduled, nonmoving

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Fed. R. Civ. P. 56 provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (2004). The court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

[HN2]The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the court that there is an absence of evidence to support the nonmoving party's claims.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

[HN3]With regard to a motion for summary judgment, to show that there are genuine issues of material fact, the nonmoving party must provide sufficient evidence such that a reasonable jury could return a verdict in its favor under the governing law.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN4]Under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., employers must pay employees for all hours worked. The United States Supreme Court defines "work" broadly as all physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer. However, under § 4(a), 29 U.S.C.S. § 254(a), of the Portal to Portal Act, employees are not entitled to compensation for activities that are "preliminary" or "postliminary" to the "principal activities" required by the work they are hired to perform.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN5]With regard to the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., an activity is neither "preliminary" nor "postliminary" simply because it is performed before or after a scheduled shift. Where such activities are "integral and indispensable" to a principal activity, they become compensable principal activities in their own right. However, an activity is "integral and indispensable" only if it is necessary to the principal work performed and is done for the benefit of the employer.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*

[HN6]Under the law of the Ninth Circuit, where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work, the activity may be considered integral and indispensable to the principle activities. 29 C.F.R. § 790.8(c) n. 65. Similarly, the Department of Labor has declared that its "longstanding position" is that the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., mandates compensation for donning and doffing of required gear only when the employer or the nature of the job mandates that it take place on the employer's premises.

*Labor & Employment Law > Wage & Hour Laws > General Overview*

[HN7]Whether an activity is excluded from hours worked under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*

[HN8]With regard to the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., an employee must be

compensated for donning and doffing which by law, policy of the employer, or nature or the work must occur on the employer's premises.

*Administrative Law > Judicial Review > Standards of Review > General Overview*
[HN9]Although an agency's advisory memorandum is not entitled to Chevron deference, it is entitled to great weight as part of a body of experience and informed judgment.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN10]With regard to the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., a police department need not compensate its officers for time spent donning and doffing their uniforms and protective gear where neither the law, the policy of the department, nor the nature of police work mandate that an officer perform these activities at the station or reporting place.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN11]With regard to the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., if employees have the option and the ability to change into their required gear at home, changing into that gear at work for their own convenience simply does not make that activity a principal activity.

**COUNSEL:** [*1] For Fred Bamonte, Javier Cota, Ricardo Perine, Plaintiffs: Anthony Joseph Coury, Michael Napier, LEAD ATTORNEYS, Michael Napier PC, Phoenix, AZ; Breanne M Sheetz, LEAD ATTORNEY, Aitchison & Vick Inc, Seattle, WA; Dale Forrest Norris, LEAD ATTORNEY, Arizona Police Association, Phoenix, AZ; Will Aitchison, Aitchison & Vick, Portland, OR.

For Mesa, City of, a body politic, Defendant: John Mark Ogden, LEAD ATTORNEY, Laurent Richard George Badoux, Michael Joseph Lehet, Littler Mendelson PC, Phoenix, AZ.

**JUDGES:** Neil V. Wake, United States District Judge.

**OPINION BY:** Neil V. Wake

## OPINION

## ORDER

Before the court is the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 81); the Defendant's Motion for Summary Judgment (Doc. # 82); and the associated statements of fact, memoranda of points and authorities, responses and replies. For the reasons set forth below the court finds that the Defendant is entitled to summary judgment.

## I. Background

The Plaintiffs are police officers employed by the City of Mesa Police Department ("MPD"). They allege that the City violated Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to compensate them for time spent donning and doffing their uniforms and protective [*2] gear. Sworn Mesa police officers are required to maintain a "Class B" uniform which consists of the following elements: a long-sleeve uniform shirt with MPD insignia shoulder patches, a clip-on or velcro tie, a metal badg and nametag, authorized trousers, socks, and authorized footwear. In addition to their attire, all officers must wear specific protective gear while on duty. This gear includes: a duty belt (or gun belt), belt "keepers," a firearm and holster, magazine cases, handcuffs and handcuff case, CAP-STUN spray and holder, telescopic baton and holder, TASER with holder, and a portable radio with holder. Although MPD does not require that officers wear ballistic vests, reflective vests, or ballistic helmets, they must have them available at all times.

The parties do not agree on the amount of time required to don and doff the uniform and equipment, but the Defendant concedes that each process may take at least ten minutes. Neither party disputes that Mesa police officers, with the exception of SWAT, must be fully uniformed and equipped prior to and through the conclusion of their shifts. However, the City does not compensate officers for time spent outside their scheduled shifts [*3] donning and doffing their uniform and gear.

The city does not have a policy that addresses how or where donning and doffing should take place. Although the Plaintiffs assert that they are encouraged to don and doff at their station or reporting place, many MPD officers choose to do so elsewhere. Of the thirteen officers questioned in preparation for these motions, only five officers fully changed at work. The remaining officers donned and doffed, either partially or fully, at a location other than the station or reporting place. Because their shifts begin as soon as they leave their residences, motorcycle officers have no choice but to fully don and doff at home.

The Plaintiffs argue that their police uniforms and protective gear are an "integrated package" which is essential to carrying out their law enforcement mission. Accordingly, they claim that such donning and doffing time is compensable under the FLSA. The City argues that the officers are not entitled to compensation because their uniforms are not integral and indispensable to their duties, and because they are not required to don and doff their uniforms and protective gear at the police station or reporting place.

The parties [*4] filed cross motions for summary judgment on the issue of the Defendant's liability based upon the testimony of several representative plaintiffs. For the reasons set forth below, the court finds that the Defendant is not liable to its officers under the FLSA for the time they spend donning and doffing their uniforms and protective gear.

## II. Standard of Review

[HN1]Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citations omitted). The court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

[HN2]The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers [*5] to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citations omitted). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citations omitted). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; accord *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden

may be discharged by indicating to the Court that there is an absence of evidence to support the nonmoving party's claims. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

[HN3]To show [*6] that there are genuine issues of material fact, the nonmoving party must provide sufficient evidence "such that a reasonable jury could return a verdict" in its favor under the governing law. *Anderson*, 477 U.S. at 248.

## III. Analysis

[HN4]Under the FLSA, "employers must pay employees for all hours worked." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), rev'd on other grounds, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005). The Supreme Court defines "work" broadly as "all physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron, and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944). However, under the Portal to Portal Act § 4(a), employees are not entitled to compensation for activities that are "preliminary" or "postliminary" to the "principal activities" required by the work they are hired to perform. 29 U.S.C. § 254(a).

[HN5]An activity is neither "preliminary" nor "postliminary" simply because it is performed before or after a scheduled shift. Where such activities are "integral and indispensable" to a principal activity, they become compensable principal activities in [*7] their own right. *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956). However, an activity is "integral and indispensable" only if it is necessary to the principal work performed and is done for the benefit of the employer. *Alvarez*, 339 F.3d at 902-03.

The Defendant argues that its officers are not entitled to compensation for time spent donning and doffing their uniforms and protective gear because they have the option to don and doff at home. [HN6]Under the law of this circuit, "'where the changing of clothes *on the employer's premises* is required by law, by rules of the employer, or by the nature of the work,' the activity may be considered integral and indispensable to the principle activities." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) (citing 29 C.F.R. § 790.8(c) n. 65). Similarly, the Department of Labor has declared that its "longstanding position" is that the FLSA mandates compensation for donning and doffing of required gear "only when the employer or the nature of the job mandates that it take place on the employer's premises." *Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006)*.

[HN7]"Whether an activity is excluded from hours worked under the FLSA . . . is a mixed [*8] question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris,* 370 F.3d at 910 (9th Cir. 2004).

**A. The donning and doffing of police uniforms and protective gear is not compensable work under the FLSA where neither the law, the police department, nor the nature of police work mandate that officers change at the station or reporting place.**

Recently, several district courts from this circuit have addressed the specific issues presented here. In *Martin v. City of Richmond,* 504 F. Supp. 2d 766 (N.D. Cal. 2007), the court determined that a police officer's uniform is not "integral and indispensable" to his or her principal activities because a uniform, "in and of itself, does not assist the officer in performing [police] duties." *Id.* at 774. The court reasoned that, despite the authority that it connotes, police clothing "[does] not help catch suspects, and [it does] not protect officers from violence." *Id.* The court determined that police protective gear, however, might be integral and indispensable to an officer's principal activities because these items "actually allow officers to carry [*9] out their law enforcement tasks." *Id.* Nevertheless, the court concluded that "the donning and doffing of protective gear at home typically renders that activity non-compensable under the FLSA." *Id.* at 775. Although the City of Richmond formally permitted its officers to change at home, the court denied its motion for summary judgment because it was not clear from the record whether its officers "actually [had] a meaningful opportunity to don their protective gear at home, or instead, whether that option [was] illusory." *Id.*

The court in *Abbe v. City of San Diego,* 2007 U.S. Dist. LEXIS 87501, 2007 WL 4146696 (Nov. 9, 2007), utilized a slightly different analysis than the *Martin* court, but reached a similar conclusion. In *Abbe,* the court rejected the proposition that the relevant inquiry under the "integral and indispensable" standard was "whether the uniform itself or the safety gear itself is indispensable to the job" because "they most certainly are." 2007 U.S. Dist. LEXIS 87501, [WL] at *7. Rather, the court determined that "the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises." *Id.* The court granted summary judgment to the defendant because it found no evidence [*10] that its officers were required by law, policy, or the nature of their work to don and doff their uniform or safety equipment at work. *Id.*

In contrast, the court in *Lemmon v. City of San Leandro,* ___ F. Supp. 2d ___, 2007 U.S. Dist. LEXIS

90278, 2007 WL 4326743 (Dec. 7, 2007), concluded that police officers are entitled to compensation for the time they spent donning and doffing their uniforms and protective gear. Unlike in *Martin,* the *Lemmon* court found that police uniforms themselves form part of an officer's equipment because they are part of a "continuum of force." 2007 U.S. Dist. LEXIS 90278, [WL] at *4. The court then reasoned that, "unlike practically any other profession," the police uniform is necessary to the principal work performed and, therefore, there is "no distinction" between an officer's clothes and his or her protective gear. *Id.* Despite evidence that the plaintiffs had the option to change at home, the *Lemmon* court concluded that the fact that "most" officers used lockers at the police station to don and doff was a "strong indicia" that such practice was a "*de facto*" requirement. 2007 U.S. Dist. LEXIS 90278, [WL] at *5; *see also Maciel v. City of Los Angeles,* ___ F. Supp. 2d ___, 2008 U.S. Dist. LEXIS 22623, 2008 WL 833963, at *8 (C.D. Cal. Mar. 21, 2008) (finding that "for all [*11] practical purposes" police equipment had to be donned and doffed at the station). Finally, the court ruled that even if the officers were actually given the option to change at home, there is no explicit requirement that there be "a location limitation [in] the analysis for finding compensability under the FLSA." *Lemmon,* 2007 U.S. Dist. LEXIS 90278, 2007 WL 4326743 at *6.

The court disagrees with the reasoning in *Lemmon,* but is persuaded by the analyses offered in *Martin* and *Abbe.* The court views these opinions as being in line with Ninth Circuit precedent which states that [HN8]an employee must be compensated for donning and doffing which by law, policy of the employer, or nature of the work must occur on the employer's premises. *See Ballaris,* 370 F.3d at 910; *Alvarez,* 339 F.3d at 903. Although the *Ballaris* and *Alvarez* courts did not explicitly preclude donning and doffing which an employee could perform at home from the definition of compensable work, they did put great emphasis on the fact that the activities which they found to be compensable could only be performed at work.

Moreover, a rule which categorically defines donning and doffing time as non-compensable when an employee has an opportunity to change at home [*12] is consistent with the Department of Labor's "longstanding" interpretation of the FLSA. *See Wage & Hour Adv. Mem. No. 2006-2* (May 31, 2006).[HN9] Although an agency's advisory memorandum is not entitled to *Chevron* deference, it is "entitled to great weight as part of 'a body of experience and informed judgment.'" *Wirtz v. Western Compress Co.,* 330 F.2d 19, 24 (9th Cir. 1964). Therefore, [HN10]a police department need not compensate its officers for time spent donning and doffing their uniforms and protective gear where neither the law, the pol-

icy of the department, nor the nature of police work mandate that an officer perform these activities at the station or reporting place.

The court agrees with *Abbe's* conclusion that the relevant inquiry is not whether the Plaintiffs' uniforms or protective gear are necessary or integral to the performance of their duties, but rather whether the nature of their work requires the donning and doffing process to be done at the station or reporting place. Therefore, the court need not analyze which pieces of uniform or gear are "necessary" for police work. Nevertheless, the court is not convinced that there is anything unique about a police uniform in and of itself, [*13] which assists an officer in completing his or her work. Although a police uniform connotes a position of authority and alerts the public to the wearer's identity, it is necessary to the performance of an officer's duties only in the insufficient sense that uniforms identify many types of workers.

**B. The donning and doffing of MPD uniforms and protective gear are preliminary and postliminary activities because the Plaintiffs have not established that the nature of their work prevents them from changing at home.**

The Plaintiffs acknowledge that neither the law nor MPD policy mandate that they don and doff their uniforms and protective gear at the station or reporting place. Instead, they argue that the donning and doffing is compensable because the nature of police work requires that they change at the station. However, they fail to present evidence from which a reasonable jury could rule in their favor.

The Plaintiffs' argument that the nature of their work does not allow them to don and doff at home is based primarily on concerns that their equipment is dangerous and that commuting in uniform unnecessarily increases health and safety risks. These concerns include: the possibility that [*14] officers might be targeted by members of the public while off-duty, but in uniform; the danger that their families could be exposed to biohazardous substances which might contaminate their uniforms; the inherent danger of police equipment, including firearms; and the potential that the public might expect them to take off-duty police action without access to all of their tools.

The evidence the Plaintiffs offer in support of these concerns is insufficient for several reasons. First, the Defendant has established that each of the "risks" the Plaintiffs cite can be easily and effectively mitigated. For example, officers are encouraged to cover up their uniform with other clothing when not on duty so that the public cannot identify them as police personnel. Several MPD officers testified that they have large shirts such as baseball jerseys which they use solely for this purpose. In addition, if exposed to biohazards officers need not risk exposing their families because the City permits them to leave their uniforms with MPD for cleaning. Finally, the Defendant also notes that any dangerous equipment that an officer chooses to take home can be stored easily in a secure locker or lockbox. [*15] Although the Plaintiffs argue that these preventative measures might not be 100% effective, they do not substantiate their claims with reference to any incident wherein an officer took such mitigating action and was nonetheless placed in danger.

Next, the record shows that at least some MPD officers actually do don and doff their uniforms and protective gear at home. Of the thirteen officers who offered testimony in preparation for this motion, only five testified that they always fully change into their uniforms and gear at work. Of the other eight officers roughly half donned and doffed completely at home and half split the process between home and the station. The court views this as evidence that the officers option to change at home is not, as the Plaintiffs suggest, merely illusory.

Finally, the fact that motorcycle officers must always don and doff at home also undermines the Plaintiffs' argument that the nature of police work requires that they change at the station. The Plaintiffs assert that motorcycle officers are "not an appropriate comparison group" because their shift begins as soon as they leave home, but the health and safety concerns which the Plaintiffs associate with [*16] donning and doffing at home apply universally to all patrol officers. There is no evidence suggesting that motorcycle officers are unable to safely store dangerous equipment at home or that they are unable to effectively protect their families from biohazard contamination using the department's laundry service. Moreover, the potential of retaliation does not prevent motorcycle officers from changing at home even though an ill-minded member of the public could easily follow an officer to his or her residence. Therefore, the court finds no meaningful reason why the nature of police work would allow a motorcycle officer to safely don and doff his uniform and protective gear at home, but prevent any other officer from doing so as well.

The Plaintiffs also offer other, secondary reasons why they cannot change at home. These include: fear that their equipment will damage the upholstery in their personal vehicles, a desire to exercise before or after a scheduled shift, to avoid back problems from wearing heavy gear for prolonged periods following their shifts, and the inability to fasten a safety belt when traveling by car. First, the court is skeptical that the Plaintiffs' protective gear [*17] prevents them from using a car's safety belt. If this were true, then all officers would be required to travel without the benefit of legally mandated safety

restraints during their shifts. Second, these concerns are based on the nature of the Plaintiffs' equipment and personal convenience, not the nature of their work. As the *Abbe* court noted, [HN11]"if employees have the option and the ability to change into their required gear at home, changing into that gear [at work] for their own convenience simply does not make that activity a principal activity." *Abbe*, 2007 U.S. Dist. LEXIS 87501, 2007 WL 4146696, *6.

Because the Plaintiffs have failed to establish the presence of a genuine issue of material fact concerning the nature of their duties, the court concludes that they have both the option and the ability to don and doff their uniforms and protective gear at home. Consequently, such donning and doffing are preliminary and postliminary activities respectively, the performance of which does not require compensation.

The parties have stipulated in open court that the individual Plaintiffs who are the subjects of these motions for summary judgment are representative of all the Plaintiffs. They agree that a ruling in favor [*18] of the Defendant on these motions entitles Defendant to summary judgment against all Plaintiffs, subject to appellate review.

IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 82) is GRANTED and that the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 81) is DENIED.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and that all Plaintiffs take nothing. The Clerk shall terminate this action.

DATED this 14th day of April, 2008.

/s/ Neil V. Wake

Neil V. Wake

United States District Judge

LEXSEE



Caution
As of: Jun 12, 2008

**JAMES H. GORMAN, JR., individually and on behalf of others similarly situated, Plaintiff, v. ENTERGY NUCLEAR OPERATIONS, INC., Defendant.**

**04 Civ. 8484 (SCR)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2006 U.S. Dist. LEXIS 96817**

**April 14, 2006, Decided**
**April 17, 2006, Filed**

**SUBSEQUENT HISTORY:** Affirmed by Gorman v. Consol. Edison Corp., 488 F.3d 586, 2007 U.S. App. LEXIS 12450 (2d Cir. N.Y., 2007)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer, individually and on behalf of a class, seeking damages for unpaid overtime pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., on the basis that he should have been compensated for the time he spent, both before and after work, completing required activities. The employer moved to dismiss the complaint. The employee contested the motion and moved to amend the complaint.

**OVERVIEW:** The employee was an hourly paid worker at an energy center that was under the jurisdiction of the Nuclear Regulatory Commission. Before work he was required to pass a badge and car inspection, pass through radiation and other detectors, and change into certain clothing before walking to his work site. The court dismissed the complaint since the employee sought compensation for activities that were explicitly not compensable under the Portal to Portal Act, 29 U.S.C.S. § 254(a), and the implementing regulations. The employee failed to show that these pre-shift activities were so directly related to his specific work that they were an integral part of his principal job activities. The time spent complying with the employer's security procedures were connected to maintaining the security of the plant, rather

than being connected with the employee's job. In fact, all people who entered the plant, visitors and employees alike, were required to go through the same process as the employee. Because the employee's proposed amendment to the complaint would not alter the noncompensable nature of these activities, the court denied him leave to amend on the basis of futility.

**OUTCOME:** The court granted the employer's motion to dismiss the complaint and denied the employee's motion for leave to amend the complaint.

**CORE TERMS:** principal activity, clothes, indispensable, walking, integral, waiting, plant, compensable, gear, integral part, protective, time spent, preshift, detector, non-compensable, postliminary, specialized, overtime, workday, putting, helmet, minutes, Fair Labor Standards Act, Portal-to-Portal Act, compensated, checking, battery, amend, glasses, inspection

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1]In evaluating a motion to dismiss, a court must view all allegations raised in a complaint in the light most favorable to the non-moving party and must accept as true all factual allegations in the complaint. A court is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself

is legally sufficient. A court's consideration is limited to the factual allegations in a plaintiff's complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2]A court must deny a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Because a complaint must allege facts which confer a cognizable right of action, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN3]A district court may rely on matters of public record in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), including case law and statutes.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN4]The Portal-to-Portal Act narrowed the coverage of the Fair Labor Standards Act by excepting two activities that had been treated as compensable under the U.S. Supreme Court's cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are preliminary or postliminary to that principal activity. 29 U.S.C.S. § 254(a).

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN5]See 29 U.S.C.S. § 254(a).

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN6]Since the enactment of the Portal-to-Portal Act, the Department of Labor and the U.S. Supreme Court have attempted to illuminate the meaning of "principal activity." The regulations define "principal activities" as activities which the employee is "employed to perform." 29 C.F.R. § 790.8(a). The U.S. Supreme Court has clarified the concept of principal activities. In Steiner v. Mitchell, the Supreme Court held that activities, such as

the donning and doffing of specialized protective gear, that are performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by § 4(a)(1). In Mitchell v. King Packing Co., the Supreme Court held that employees of a meat packing company must be compensated for the time they spent sharpening their knives before or after their shifts because sharpening the knives was an integral part of and indispensable to the various butchering activities for which they were principally employed. 29 C.F.R. § 790.8(b) states that the term principal activities includes all activities which are an integral part of a principal activity.

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN7]Activities that are an integral part of a principal activity "are those closely related activities which are indispensable to its performance. 29 C.F.R. § 790.8(b). As an example, the regulations describe an employee who must put on certain clothes to perform his or her job: If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities. 29 C.F.R. § 790.8(c).

*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act*
[HN8]The Department of Labor has further stressed that checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks are noncompensable, preliminary or postliminary activities. 29 C.F.R. § 790.7(g). the regulations clarify that Washing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity. 29 C.F.R. § 790.7(g). Further, an employee's travel on the employer's premises until he reaches his workbench or other place where he commences the performance of the principal activity or activities, and the return travel from that place at the end of the workday is also not an integral part of the employee's principal activity. 29 C.F.R. § 790.7(e).

The regulations distinguish between being "engaged to wait" and waiting "to be engaged." 29 C.F.R. § 790.7(h). The former is compensable, while the latter is not. 29 C.F.R. § 790.7(h).

**Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act**
[HN9]Both the Department of Labor and the U.S. Supreme Court have distinguished between putting on specialized protective gear and simply changing clothes. According to the regulations, typically, changing clothes is a noncompensable, preliminary or postliminary activity. 29 C.F.R. § 790.7(g).

**Labor & Employment Law > Wage & Hour Laws > Statutory Application > Portal-to-Portal Act**
[HN10]In IBP, the U.S. Supreme Court held that any activity that is integral and indispensable to a principal activity is itself a principal activity. The Supreme Court further held that any walking time that occurs after the beginning of an employee's first principal activity and before the end of the employee's last principal activity is covered by the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. Thus, the Supreme Court found that an employer had to pay employees for the time they spent donning and doffing specialized protective gear as well as for the time they spent, post-donning and pre-doffing, walking to and from their worksites. While waiting to doff protective gear is compensable, the time spent waiting to don is not.

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims**
**Civil Procedure > Judicial Officers > Judges > Discretion**
[HN11]Under 28 U.S.C.S. § 1367(c), the exercise of supplemental jurisdiction is left to the discretion of a district court. If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

**COUNSEL:** [*1] For James H. Gorman, Jr., individually, and on behalf of others similarly situated, Plaintiff: Joseph P. Carey, LEAD ATTORNEY, Joseph P. Carey, P.C., Fishkill, NY.

Mr. Thomas Mitchell, II, Plaintiff, Pro se, Pine Bush, NY.

Mr. Howard Geisler, Plaintiff, Pro se, Stormville, NY.

Mr. James Guiliano, Mr. Edward P. Halpin, Plaintiffs, Pro se, Newburgh, NY.

Mr. Wilmer Torres, Plaintiff, Pro se, Middletown, NY.

Mr. Richard Bedka, MR. Phillip A. Hakala, Plaintiffs, Pro se, Hopewell Junction, NY.

Mr. Mark Pasquale, Mr. Patrick Pennacchio, Paul A. Hamilton, Plaintiffs, Pro se, Poughkeepsie, NY.

Mr. Frank Matra, Plaintiff, Pro se, Whitestone, NY.

James W. Fandel, Plaintiff, Pro se, Bethel, CT.

Mr. Charles Porter, Mr. Austin J. Pagano, Plaintiffs, Pro se, Highland, NY.

Mr. Richard Lombardo, William J Lucas, IV, Donald T. Beusse, Mr. Gennaro Mauro, Mr. Thomas J. Prunty, Mr. Sean S. Salerno, Plaintiffs, Pro se, Wappingers Falls, NY.

Mr. William Roksold, Plaintiff, Pro se, Ossining, NY.

Mr. Robert Williams, Plaintiff, Pro se, Accord, NY.

Mr. Donald Glas, Plaintiff, Pro se, Yonkers, NY.

Mr. Frank J. Fichera, Plaintiff, Pro se, Washingtonville, NY.

Thomas Clegg, Plaintiff, Pro se, Beacon, NY.

Mr. Gary A. Sciascia, [*2] Plaintiff, Pro se, Wallkill, NY.

Mr. Paul A. Saravaideo, Plaintiff, Pro se, Maybrook, NY.

Mr. Kevin E. Bowers, Plaintiff, Pro se, Walden, NY.

For Entergy Nuclear Operations, Inc., Defendant: Jonathan Marc Kozak, Jackson Lewis LLP (WPlns), White Plains, NY.

**JUDGES:** Stephen C. Robinson, U.S.D.J.

**OPINION BY:** Stephen C. Robinson

**OPINION**

**MEMORANDUM DECISION AND ORDER**

   Stephen C. Robinson, United States District Judge:

2006 U.S. Dist. LEXIS 96817, *

James Gorman ("Plaintiff") brings this case individually and on behalf of others similarly situated for compensatory and liquidated damages for unpaid overtime, pursuant to the Fair Labor Standards Act ("FLSA"). He claims that his employer, Entergy Nuclear Operations, Inc. ("Defendant"), should compensate him for the time he spends, both before and after work, completing activities required by the Nuclear Regulatory Commission and Defendant, including passing through a radiation detector and an explosive material detector.

Defendant now moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff moves to amend his complaint for the second time. For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## I. Background

The following are   [*3] the facts as set forth in Plaintiff's complaint.

Plaintiff works for Defendant at the Indian Point Energy Center ("IPEC") as an hourly nonexempt union employee covered by the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). ¹ IPEC is under the jurisdiction of the Nuclear Regulatory Commission.

> 1  Defendant purchased IPEC from Consolidated Edison Corporation, Inc. The terms and conditions of Plaintiff's employment are set forth in a negotiated collective bargaining agreement between Defendant and the Utility Workers' Union of America, Local 1-2.

Plaintiff argues that as an "integral and indispensable qualification" of his job, he must be free of explosive material, radiological substances, false personal identification, and drugs or alcohol. (Am. Compl. P 14.) Because of these requirements, he must perform the following tasks before he can begin his job:

> 1. Wait in line of traffic outside an entrance of IPEC before badge inspection;
>
> 2. Pass through badge inspection, which includes a check of the rear seat and floors for unauthorized items and passengers;
>
> 3. Allow for random vehicle inspection, if selected, this includes an inspection of the engine, trunk, glove [*4] compartment, seats, and under vehicle;
>
> 4. Park his vehicle;
>
> 5. Walk to Command Post;

> 6. While at Command Post, pass through radiation detector, metal detector, and explosive material detector;
>
> 7. Swipe ID badge and place hand in box for electronic identification;
>
> 8. Proceed to locker room to obtain required clothing, including "metal capped safety shoes," safety glasses, and helmet; and
>
> 9. Walk to work site.

(Am. Compl. P 15.) At the end of his shift, Plaintiff has to perform some of these activities in reverse, except the radiation detector is a different machine and it takes longer for each individual to pass through. Id.

From September 6, 2001 until October 11, 2004, these procedures took twenty-four minutes before each shift and six minutes after each shift. On October 11, 2004, a new security entrance was opened. As a result, from October 11, 2004 to the present, these procedures took approximately twelve minutes before each shift and six minutes at the end of each shift. This time was not recorded by Defendant for payroll purposes.

## II. Discussion

### A. Standard of Review

[HN1]In evaluating a motion to dismiss, a court "must view all allegations raised in the complaint in the light most favorable  [*5] to the non-moving party . . . and 'must accept as true all factual allegations in the complaint.'" Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996) (quoting Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)) (citation omitted). In doing so, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The court's consideration is limited to the factual allegations in plaintiffs' complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).

[HN2]A court must deny a motion to dismiss "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992)* [*6] (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). Because the complaint must allege facts which confer a cognizable right of action, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *York v. Ass'n of the Bar, 286 F.3d 122, 125 (2d Cir. 2002)* (citing *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*).

Plaintiff first argues that Defendant's motion should be denied because Defendant improperly converted the motion to one for summary judgment and did not provide a statement of material facts as required by Local Civil Rule 56.1. According to Plaintiff, Defendant converted the motion when it referred to *Gorman v. Consolidated Edison Corp., Inc.*, No. 02-2800 (CM). In that case, Plaintiff is suing Defendant's predecessor. Judge Smith recommended that Plaintiff not be allowed to amend his complaint to add claims identical to the claims at issue here because such amendment would fail to state a claim. Judge McMahon agreed with Judge Smith and denied Plaintiff's motion to amend because the proposed amendments would be futile.

Plaintiff's argument is without merit. This Court may consider Judge McMahon's [*7] and Judge Smith's opinions in considering Defendant's motion to dismiss. "It is well established that [HN3]a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." [2] *Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998)*; *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004)*; *Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)*.

2 Moreover, this Court, in deciding this motion, did not consider Judge McMahon's and Judge Smith's opinions.

## B. Defendant's Motion to Dismiss

"The FLSA was enacted to give 'specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive [a] fair day's pay for a fair day's work and would be protected from the evil of "overwork" as well as "underpay."'" *Kavanagh v. Grand Union Co., Inc., 192 F.3d 269, 271 (2d Cir. 1999)* (quoting *Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)* overruled on other grounds, *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)*) (emphasis removed). In the years immediately after the [*8] FLSA was enacted, the Supreme Court broadly interpreted the terms "work" and "employment." Most notably, the Court, in *Anderson v. Mt. Clemens Pottery Co.*, held that the FLSA required employers to compensate employees for preliminary work activities, including walking from the factory gate to the workbench and changing into work clothes. *328 U.S. 680, 692-93, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)*.

In response to *Anderson*, Congress passed the Portal-to-Portal Act in an attempt "to delineate certain activities which did not constitute work, and therefore did not require compensation." *Reich v. New York City Transit Authority, 45 F.3d 646 (1995), 649 (2d Cir. 1995)*. [HN4]The Portal-to-Portal Act "narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under [the Supreme Court's] cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." [3] *IBP, Inc. v. Alvarez, 546 U.S. 21, 126 S.Ct. 514, 520, 163 L. Ed. 2d 288 (2005)*; *see also 29 U.S.C. § 254(a)*.

3 [HN5]"Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject [*9] to any liability or punishment under the Fair Labor Standards Act of 1938, as amended . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947-- (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." *29 U.S.C. § 254(a)*.

[HN6]Since the enactment of the Portal-to-Portal Act, the Department of Labor and the Supreme Court have attempted to illuminate the meaning of "principal activity." The regulations define "principal activities" as "activities which the employee is 'employed to perform.'" *29 C.F.R. § 790.8(a)*. In two cases decided on the same day, the Supreme Court further clarified the concept of principal [*10] activities. In *Steiner v. Mitchell, 350 U.S. 247, 248, 76 S. Ct. 330, 100 L. Ed. 267 (1956)*, the Court held that "activities, such as the donning and doffing of specialized protective gear, that are 'performed either before or after the regular work shift, on or off the

production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1).'" *IBP, Inc.,* 126 S.Ct. at 521 (quoting *Steiner,* 350 U.S. at 248). In *Mitchell v. King Packing Co.,* the Court held that employees of a meat packing company must be compensated for the time they spent sharpening their knives before or after their shifts because sharpening the knives was "an integral part of and indispensable to the various butchering activities for which they were principally employed." 350 U.S. 260, 261-63, 76 S. Ct. 337, 100 L. Ed. 282 (1956); *see also* § 790.8(b) (stating that the term principal activities "includes all activities which are an integral part of a principal activity").

[HN7]Activities that are an integral part of a principal activity "are those closely related activities which [*11] are indispensable to its performance." § 790.8(b). As an example, the regulations describe an employee who must put on certain clothes to perform his or her job:

> If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. . . . However, activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities.

§ 790.8(c). [HN8]The Department of Labor has further stressed that "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks" are non-compensable, preliminary or postliminary activities. [4] § 790.7(g). Further, "the employee's travel on the employer's premises until he reaches his workbench or other place where he commences the performance of the principal activity or activities, and the return travel from that place at the end of the workday" is also not an integral part of the employee's principal activity. [5] § 790.7(e).

> [4] Again, [*12] the regulations clarify that "[w]ashing up after work, like the changing of clothes, may in certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity.'" § 790.7(g).

> [5] The regulations distinguish between being "engaged to wait" and waiting "to be engaged." 29 C.F.R. § 790.7(h). The former is compensable, while the latter is not. *Id.*

Plaintiff argues that he should be compensated for the very activities that are explicitly not compensable under the law. No reasonable jury could find that the activities that Plaintiff wishes to be compensated for, including checking in and checking out, waiting in line to check in or check out, and walking to a locker room to change into work clothes are compensable activities that are integral to the performance of his principal activity. [6] Plaintiff has presented absolutely no cases or regulations that would allow this Court to reach any other conclusion. The Plaintiff also has not presented any arguments or facts from which this Court could find that Plaintiff has a unique situation where these preshift activities are so directly [*13] related to his specific work that they are an integral part of his principal activity. [7] Notably, Plaintiff's complaint does not even mention what kind of work Plaintiff does at IPEC. The time spent complying with the plant's security procedures are connected to maintaining the security of the plant and are not directly connected with Plaintiff's principal activity. This conclusion is strengthened by the fact that all people who enter the plant, visitors and employees alike, must go through the same process that Plaintiff does. (Pl.'s Mem. at 11.) Complying with these procedures is not preparatory preshift work akin to the meat cutters sharpening knives in *King Packing Co,* the battery workers putting on specialized protective gear in *Steiner,* the truck drivers inspecting their trucks for safety concerns in *Barrentine v. Arkansas-Best Freight System, Inc.,* 750 F.2d 47 (8th Cir. 1984), or a radiological technologist turning on and preparing a x-ray processing machine in *Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F.3d 706, 715 (2d Cir. 2001). To hold otherwise would be to return to the Supreme Court's expansive definition of work in *Anderson* that Congress explicitly rejected. [*14] *Cf. IBP, Inc.,* 126 S.Ct. at 527 ("We discern no limiting principle that would allow us to conclude that the waiting time in dispute here is a 'principal activity' . . . without also leading to the logical (but untenable) conclusion that the walking time at issue in *Anderson* would be a 'principal activity' . . . and would thus be unaffected by the Portal-to-Portal Act.").

> [6] "The Supreme Court has recognized that 'FLSA claims typically involve complex mixed questions of fact and law . . . .'" *Singh v. City of New York,*418 F. Supp. 2d. 390, 2005 WL 3215140, at *6 (S.D.N.Y. Nov. 29, 2005) (quoting *Barrentine,* 450 U.S. at 743). In this circuit, a trial judge must determine, as a matter of law, whether the activities at issue could constitute

"work." *See Holzapfel v. Town of Newburgh,* 145 F.3d 516, 521 (2d Cir. 1998). Because this Court finds that the activities at issue are not work for the purposes of the FLSA, no further analysis is necessary.

7  He argues that as an "integral and indispensable qualification" of his job, he must be free of explosive material, radiological substances, false personal identification, and drugs or alcohol. Yet many jobs in many industries have the same requirements. [*15] If this Court found for Plaintiff, it would dramatically expand the types of activities, currently considered preliminary, that an employer would be liable for under the FLSA.

While the time that Plaintiff spends donning required clothing, including "metal capped safety shoes," safety glasses, and a helmet does gives this Court brief pause, (Am. Compl. P 15), we ultimately conclude that the FLSA does not require Defendant to compensate Plaintiff for that time spent. [8] [HN9]Both the Department of Labor and the Supreme Court have distinguished between putting on specialized protective gear and simply changing clothes. According to the regulations, typically, changing clothes is a non-compensable, preliminary or postliminary activity. *See, e.g.,* § 790.7(g). In *Steiner,* the Court was faced with the question of whether workers in a battery plant had a right to compensation for the time spent "changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires [*16] their employers to provide . . . ." 350 U.S. at 248. "After distinguishing 'changing clothes and showering under normal conditions' and stressing the important health and safety risks associated with the production of batteries, the Court endorsed the Court of Appeals' conclusion that these activities were compensable under the FLSA." *IBP, Inc.,* 126 S.Ct. at 521 (quoting *Steiner,* 350 U.S. at 249, 256). Unlike the clothes worn by workers in a chemical plant, § 790.8(c), the clothes worn by workers in a battery plant, *Steiner,* 350 U.S. at 248, and the equipment worn by workers in a meat processing plant, *IBP, Inc.,* 126 S.Ct. at 521-22, steel-toed boots, safety glasses and a helmet are not specialized protective gear. Anyone could purchase them at an ordinary hardware store. [9]

8  While the complaint only describes the time it takes to obtain the protective gear, this Court will construe Plaintiff's complaint to also include the time spent putting on the gear because the Supreme Court has explicitly held that the time spent waiting to obtain protective gear is not compensable. *IBP, Inc.,* 126 S.Ct. at 527.

9  Moreover, even if this Court found that putting on steel-toed boots, a helmet, and safety-glasses [*17] is an integral and indispensable part of Plaintiff's principal activity, the time Plaintiff spends doing so is de minimis, and, therefore, non-compensable. *See New York City Transit Authority,* 45 F.3d at 652 (quoting *Lindow v. United States,* 738 F.2d 1057, 1062-63 (9th Cir. 1984)(finding that employees should not be compensated for the average of seven to eight minutes of pre-shift activities that occurred)).

Plaintiff argues that the Supreme Court's recent decision in *IBP, Inc. v. Alvarez* is controlling in this case. The Court's decision, however, does not change the above analysis, and, in fact, strengthens it.

[HN10]In *IBP,* the Court held that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'" *IBP, Inc.,* 126 S.Ct. at 525. The Court further held that "any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is . . . covered by the FLSA." *Id.* Thus, the Court found that an employer had to pay employees for the time they spent donning and doffing specialized protective gear as well as for the time they spent, postdonning and predoffing, [*18] walking to and from their worksites. *Id.* at 521. While waiting to doff protective gear is compensable, the time spent waiting to don is not. [10] *Id.* at 527.

10  Thus, the Court noted that "[w]alking to [the place where individuals change clothes] before starting work is excluded from FLSA coverage, but the statutory text does not exclude walking from that place to another area within the plant immediately after the workday has commenced." *IBP, Inc.,* 126 S.Ct. at 524.

In reaching its holding, the Court specifically noted that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner.*" *Id.* Thus, the fact that Plaintiff must engage in "certain preshift activities," including to waiting in line to enter the plant grounds, having his car searched, parking his car, walking to a security check point, getting screened, walking to a locker room to obtain work boots, safety glasses, and a helmet, and walking to his work site, does not automatically make those activities "integral and indispensable" to his "principal activity." Rather, [*19] because Plaintiff has not presented anything, aside from conclusory allegations, demonstrating that these preshift activities are "integral and indispensable" to his "principal activity," this Court can only conclude that the activi-

ties at issue are preliminary, and, therefore, non-compensable.

Plaintiff also argue that this Court, in *Haight v. The Wackenhut Corporation,* No. 03-9870 (SCR), has already ruled that overtime claims identical to the ones at issue here "are properly before this Court." (Pl.'s Mem. at 1.) In that decision, however, this Court considered whether the plaintiff's claims should be dismissed because of a failure to exhaust contractual grievances and arbitration procedures and remedies. This Court concluded that the plaintiff was not required to exhausted the grievance and arbitration procedures. This Court made *no* rulings about the merits of any overtime claims.

As Plaintiff's sole federal claim is dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. [HN11]28 U.S.C. § 1367(c) (2000); *First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 182-83 (2d Cir. 2004) ("The exercise of supplemental jurisdiction [*20] is left to the discretion of the district court . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (citations and quotation marks omitted)).

## C. Plaintiff's Motion to Amend Complaint

Plaintiff wishes to serve a second amended complaint that "further clarifies the preliminary and postliminary activities which are integral and indispensable to the performance of said principal activities." (Pl.'s Mem. at 2.) Defendant argues that Plaintiff's motion should be denied because the changes that Plaintiff wishes to make are futile.

This Court agrees with Defendant. Plaintiff's proposed changes, which add details about the procedures he is required to perform, do not alter the non-compensable nature of the activities Plaintiff is required to perform before and after work. Plaintiff's motion is denied on futility grounds. *See, e.g., DeMaria v. Andersen,* 318 F.3d 170, 182 (2d Cir. 2003).

## III. Conclusion

For the reasons set forth above, Defendants' motion is granted and Plaintiff's motion is denied. The Clerk of the Court is directed to close this case.

*It is so ordered.*

Dated: White Plains, [*21] New York

April 14, 2006

Stephen C. Robinson, U.S.D.J.

LEXSEE



Analysis
As of: Jun 12, 2008

**James H. Gorman, Jr., et al., Petitioners v. The Consolidated Edison Corporation, et al.**

**No. 07-1019.**

**SUPREME COURT OF THE UNITED STATES**

**2008 U.S. LEXIS 4864**

**June 9, 2008, Decided**

**PRIOR HISTORY:** Gorman v. Consol. Edison Corp., 488 F.3d 586, 2007 U.S. App. LEXIS 12450 (2d Cir. N.Y., 2007)

**JUDGES:** [*1] Roberts, Stevens, Scalia, Kennedy, Souter, Thomas, Ginsburg, Breyer, Alito.

**OPINION**

Petition for writ of certiorari to the United States Court of Appeals for the Second Circuit denied.

LEXSEE



Analysis
As of: Jun 12, 2008

**EMILY D. JORDAN, et al., on behalf of themselves and all others similarly situated, Plaintiffs, v. IBP, INC. and TYSON FOODS, INC., Defendants.**

**Case No. 3:02-cv-1132**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TEN-NESSEE, NASHVILLE DIVISION**

**542 F. Supp. 2d 790; 2008 U.S. Dist. LEXIS 28109; 13 Wage & Hour Cas. 2d (BNA) 1010**

**March 31, 2008, Decided**
**March 31, 2008, Filed**

**PRIOR HISTORY:** Jordan v. IBP, Inc., 2004 U.S. Dist. LEXIS 30490 (M.D. Tenn., Oct. 12, 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, hourly employees or former hourly employees of defendant employers, filed a motion for partial summary judgment with respect to liability in the employees' action brought under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq. The employers filed a motion to decertify the claims for meal period production work.

**OVERVIEW:** The employees alleged that they were not compensated for work performed before the official start of their shifts and work performed after the official clock-out time, in that they were required to don and doff certain clothing and hear during those periods, which activity also required collecting gear, sanitizing gear, stowing gear, walking, and waiting. The court held that the motion for partial summary judgment was to be granted in part and denied in part. Specifically, summary judgment was granted with regard to the employees' claim that the donning and doffing of frocks was compensable under FLSA, denied with regard to the question of whether the time that the employees spent engaging in such activities was de minimis, and denied with regard to the employees' meal period claim. The employees' summary judgment motion with regard to the employers' good faith defense to liability was moot, and summary judgment was granted with regard to the employers' good faith defense to liquidated damages.

**OUTCOME:** The court granted in part and denied in part the employees' motion for partial summary judgment, and denied the motion to decertify the meal period production work claims.

**CORE TERMS:** frock, meal, gear, donning, doffing, compensable, principal activity, integral, summary judgment, plant, indispensable, workday, decertify, Portal-to-Portal Act, floor, walking, locker, don, wear, de minimis, meat, liquidated damages, good faith, minutes, time spent, production line, protective, continuous, coverage, clean

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
[HN2]In a motion for summary judgment, if the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he or she has the burden, however, the moving party is entitled to summary judgment as a matter of law. To preclude summary judgment, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. If the evidence offered by the nonmoving party is merely colorable, or not significantly probative, or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate.

*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN3]Whether a particular activity constitutes work under the Fair Labor Standards Act is a question of law. The nature of the plaintiffs' duties, however, is a question of fact.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN4]Exertion is not required for an activity to constitute compensable work under the Fair Labor Standards Act.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*
[HN5]Under the continuous workday rule, a plaintiff is entitled to compensation from the first principal activity

in which they engage during a shift until the last principal activity in which they engage.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN6]An activity is integral and indispensable if it is performed as part of the regular work of the employees in the ordinary course of business. Factors relevant to whether an activity is integral and indispensable are essentially the same as those relevant to whether an activity qualifies as work, requiring consideration of whether the activity is required by the employer and is necessary to the employee's principal activities, and whether the benefit of the activity inures primarily to the employer. The mere fact that the donning and doffing of gear may be simple or common in a particular work environment does not mitigate against a finding that those activities are integral and indispensable.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN7]The determination of whether the time spent on a particular activity is de minimis requires a consideration of the amount of daily time spent on the activity, as well as (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. The Supreme Court has noted, however, that the precise amount of time that can be considered de minimis ultimately is a question for the trier of fact.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > Burdens of Proof*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions*
[HN8]A Fair Labor Standards Act plaintiff must demonstrate that the members of the class are similarly situated at two junctures in the course of litigation: first during the notice stage, at which a court determines whether notice should be given to putative class members, and then again at the decertification stage after discovery is complete. The burden of demonstrating that class members are similarly situated is significantly higher at the decertification stage and requires consideration of the disparate factual and employment settings of the individuals, the defenses available to the defendants, and fairness and procedural considerations.

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN9]The relevant fairness and procedural considerations require a determination of whether certification would serve the purposes of the Fair Labor Standards Act either by lowering the cost of the action to individual plaintiffs or by increasing judicial utility by providing for efficient resolution of many claims in one proceeding.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN10]A bona fide meal period of 30 minutes need not be compensated so long as employees are not required to perform any duties, whether active or inactive, while eating. 29 C.F.R. § 785.19(a). The United States Court of Appeals for the Sixth Circuit has stated that a meal period is bona fide as long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the Fair Labor Standards Act.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Liquidated Damages*
[HN11]Under the Fair Labor Standards Act, an employer in violation of the statute shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. 29 U.S.C.S. § 216(b). However, a court in its sound discretion may reduce the amount of liquidated damages if an employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of FLSA. 29 U.S.C.S. § 260. To demonstrate that a good faith reduction in liquidated damages is appropriate, an employer must demonstrate that the violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages. This burden is substantial, and unless an employer carries this burden, a district court lacks power or discretion to reduce liquidated damages for an employer found liable for violating the FLSA.

**COUNSEL:** [**1] For Emily D. Jordan, James A. Jordan, Jason A. Jordan, David Waldrop, Thelma M. Bennett, Julie M. Smith, Deonka Hawkins, Dana Hawkins, Fatumo Mohamed, Roni L. Woods, on behalf of themselves and all other similarly situated plaintiffs, Daved Akok, Rigoberto Barrera, Hakold Boyd, Mindi Cantrell, Gloria Castile, Shannon Chumbley, Brandon Cook, Dana Cunningham, Paula Deboca, Jenny Garay, Raul Garcia, David Halpin, Sherry Hill, Terry Hill, Paul Hiland, Victor Hines, Osman Ibrahim, Delores Keen, Angel McCarver, Lucian Marshall, Mary A. Moore, Kerry L. Shouse, Kevin Stone, Kaleb Waller, Gloria Williams, Sherri Williams, Billy Woodall, Ramona L. Woodard, Thong Kham Xayyacith, Inpanh Xayyadeth, Thong Kham Xayyadeth, Plaintiffs: Charles P. Yezbak, III, LEAD ATTORNEY, Yezbak Law Offices, Nashville, TN; Gregory K. McGillivary, LEAD ATTORNEY, Heidi R. Burakiewicz, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Molly A. Elkin, LEAD ATTORNEY, Woodley & McGillivary, Washington, DC.

For Helia Aburime-Smith, Plaintiff: Gregory K. McGillivary, LEAD ATTORNEY, Heidi R. Burakiewicz, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Molly A. Elkin, LEAD ATTORNEY, Woodley & McGillivary, Washington, [**2] DC.

For Michael Robinson, Nancy Robinson, Mallon B. Duncan, Hilda Morrow, Eckeo Koulauong, Hassan Shari Fomar, Helen L. Harres, David Crum, Tywan Easley, Virginia Reed, Richard Dangak, Janice S. Bagwell, Joyce Brent, Mary P. Cline, Charlotte A. Hicks, Michael D. Johnson, Pam Kurtenbach, Ricky McGlothew, Phillip Mounts, Sr., Tracey Stewart, Dione Swenzea, William T. Mitchell, William O. Pride, John Riley, Sonksabay Silavoy, Chris E. Witherspoon, Wol Aing Chok, Plaintiffs: Charles P. Yezbak, III, LEAD ATTORNEY, Yezbak Law Offices, Nashville, TN; Gregory K. McGillivary, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Molly A. Elkin, LEAD ATTORNEY, Woodley & McGillivary, Washington, DC.

For Lonnell Garrett, Charles Stockton, Tommy Golliher, Marie Shoemaker, Robin Thomas, Jonathan R. Sloan, Reymone Carey, John W. Kier, James Knight, Darcy R. Hammer, Cynthia Dixon, Mercedes Diaz, Mallor B. Duncan, Edward Pennington, Plaintiffs: Gregory K. McGillivary, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Molly A. Elkin, LEAD ATTORNEY, Woodley & McGillivary, Washington, DC.

For Melissa McCloud, Loreno Quezada, Sead Sali, Joey Peden, Brian Eckhardt, Juan Licona, Laura Meadows, Gina Luttrell, [**3] Mandy Rice, Dwight Walker, Balantino Bol, Doris Johnson, Ashley Austin, Bruce Dungey, Dana Dungey, Ben Oaks, David Wireman, Edward T. Jones, Plaintiffs: Charles P. Yezbak, III, LEAD ATTORNEY, Yezbak Law Offices, Nashville, TN; Gregory K. McGillivary, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Woodley & McGillivary, Washington, DC.

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

For Sandra S. Harrison, Plaintiff: Gregory K. McGillivary, LEAD ATTORNEY, Lauren E. Schwartzreich, LEAD ATTORNEY, Woodley & McGillivary, Washington, DC.

For IBP, Inc., Tyson Foods, Inc., Defendants: Evangeline G. Paschal, LEAD ATTORNEY, Joel Mark Cohn, LEAD ATTORNEY, Michael John Mueller, LEAD ATTORNEY, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC; John Randolph Bibb, Jr., LEAD ATTORNEY, Waller, Lansden, Dortch & Davis, LLP, Nashville City Center, Nashville, TN; Jonathan Jacob Cole, LEAD ATTORNEY, Kenneth A. Weber, LEAD ATTORNEY, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Commerce Center, Nashville, TN.

**JUDGES:** ALETA A. TRAUGER, United States District Judge.

**OPINION BY:** ALETA A. TRAUGER

**OPINION**

[*794] **MEMORANDUM**

Pending before the court is the motion for partial summary judgment with respect to liability filed by the plaintiffs (Docket No. 236), to which the defendants [**4] have responded (Docket No. 244), and the plaintiffs have replied (Docket No. 253).

Also pending before the court is the defendants' motion to decertify (Docket No. 234), to which the plaintiffs have responded (Docket No. 245). Asserting that the plaintiffs' response raised new arguments, the defendants combined their reply with a second motion to decertify a broader claim than that which they initially moved to decertify. (Docket Nos. 250, 251.) The plaintiffs have moved to strike this second motion and portions of the defendants' reply (Docket No. 255), and the defendants responded to the motion to strike (Docket No. 256).

**BACKGROUND**

This case represents yet another chapter in a long history of litigations that span multiple fora, all of which involve one or both of the defendants here and the question of whether their compensation practices violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. These defendants, individually or collectively, have now been litigating this same issue for decades, reflecting what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA. Most notably, beginning [**5] in 1988, the Department of Labor brought suit against IBP in the U.S. District Court for the District of Kansas (the "DoL Litigation"), which culminated in the issuance, in July 1996, of a company-wide permanent injunction requiring IBP to comply with the overtime and recordkeeping provisions of FLSA. *See Garcia v. Tyson Foods, Inc.,* 474 F. Supp. 2d 1240, 1242-43 (D. Kan. 2007) (discussing history of DoL Litigation). In an earlier ruling in this case denying the defendants' motion for summary judgment, [1] the court reviewed the history of the DoL Litigation in detail and considered the effect that the DoL Litigation and [*795] the injunction would have on this matter, holding, essentially, that the parties here are not barred from litigating the issue of compensability of certain activities under FLSA, although those issues also were addressed in the DoL Litigation. *See Jordan v. IBP, Inc.,* No. 3:02-1132, 2004 U.S. Dist. LEXIS 30490 (M.D. Tenn. Oct. 13, 2004).

> 1    The defendants moved for summary judgment on June 9, 2003. (Docket No. 60.) That motion was denied with respect to certain claims on January 8, 2004 (Docket No. 131) and with respect to the remainder of the claims on October 12, 2004 [**6] (Docket No. 178). The court's consideration of the impact of the DoL Litigation appears in the October 12, 2004 memorandum. (Docket No. 178.)

The plaintiffs in this matter are hourly employees or former hourly employees of the defendants who work or worked at the defendants' beef and pork processing plant in Goodlettsville, Tennessee (the "Goodlettsville Plant"). On November 21, 2002, the plaintiffs filed this collective action on behalf of themselves and other similarly situated employees alleging that, since the time the defendants commenced operations at the Goodlettsville Plant in April 2001, hourly employees working on the production floor have been denied compensation in violation of FLSA. Specifically, the plaintiffs allege that they have been denied compensation for work performed before the official start of their shifts and work performed after the official clock-out time, in that they are required to don and doff certain clothing and gear during those periods, which activity also requires collecting gear, sanitizing gear, stowing gear, walking, and waiting. The plaintiffs additionally allege that they have been denied compensation for work performed during uncompensated meal [**7] periods, in that they are required to engage in production work during meal periods and to don and doff clothing and gear prior to and after eating. The plaintiffs seek a declaratory judgment that the defendants have willfully and wrongfully violated their statutory and legal obligations under FLSA, request a complete and accurate accounting of all compensation to which they might be entitled, and seek monetary damages in the form of back

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

pay and other entitlements and liquidated damages equal to their unpaid compensation as provided for by FLSA.

This matter is before the court at this point on the plaintiffs' motion for summary judgment with respect to liability, in which the plaintiffs argue that summary judgment should be granted with respect to their claims that (1) the defendants failed to compensate them for time spent performing pre- and post-production donning and doffing and related activities; (2) the defendants failed to provide them with a bona fide meal period; (3) the defendants are not entitled to a good faith defense to their claims; and (4) the defendants are not entitled to a good faith reduction in liquidated damages. Additionally, the defendants have moved to decertify [**8] certain of the plaintiffs' claims. Those motions, and the motion to strike filed by the plaintiffs and relating to the defendants' motion to decertify, are the subject of this memorandum.

## FACTS

The plaintiffs work at the Goodlettsville Plant in a variety of hourly positions, including that of Trimmer, Styler, Knifer, Trainer, Inspector, and Tray Transfer Employee. (Docket No. 1 P 3.)

The defendants maintain time clocks on the production floor at the Goodlettsville Plant, and employees clock in and out every shift. [2] (Docket No. 244 App. P 14.) However, the defendants use the clock-in time primarily for attendance purposes and not to determine when an employee begins working for compensation purposes. (Docket No. 244 App. PP 15-18.) Instead, employees are compensated, according to [*796] the defendants' "Alternative Time and Attendance System," from a pre-determined "Pay Start Time," which is a set time that corresponds to the time at which the defendants estimate that the first piece of meat will arrive at the employee's station on the production line, until the employee clocks out as he leaves the production floor at the end of the shift. (Docket No. 244 App. PP 7-8, 11.)

2    The term "employees" [**9] shall be understood to refer specifically to production floor employees at the Goodlettsville Plant.

All production floor employees at the Goodlettsville Plant are required to wear company-issued sanitary frocks while they are on the production floor and may be subject to discipline for failing to do so. [3] (Docket No. 244 App. PP 24, 30, 39.) Because the frocks are required to maintain sanitary conditions on the production floor, employees are prohibited from--and may be subject to discipline for--wearing the frocks outside the plant, in restrooms, or in the cafeteria. (Docket No. 244 App. PP

30, 125.) Employees are also prohibited from taking the frocks home. (Docket No. 244 App. P 38.)

3    The parties dispute whether the frocks may be characterized as "specially designed." (Docket No. 244 App. PP 25, 27.) It is undisputed, however, that the frocks have cuffed sleeves, collars, and snap closures, and that the sleeves are intended to prevent contact between employees' street clothing and the product. (Docket No. 244 App. PP 26-27.)

Prior to the start of their shifts, employees report to the locker room at the Goodlettsville Plant, where they retrieve clean frocks from their assigned lockers [**10] and don those frocks. [4] (Docket No. 244 App. P 32.) Additionally, employees retrieve a set of standard gear--including hard hats, hair and beard nets, and ear protection--from their lockers and don that gear. (Docket No. 244 App. P 63.) In addition to this standard gear, some employees are required to wear certain specialized gear based on their particular position on the production line. For example, employees who use knives [5] must wear or use special cut-resistant gloves, belly guards, protective sleeves, forearm guards, scabbards, steels, meat hooks, and hook holders. [6] (Docket No. 244 App. PP 71, 75, 82, 88, 97, 102, 110). Prior to beginning work on the production line, knife-users retrieve this gear from their lockers. (Docket No. 244 App. PP 73, 80, 87, 91, 99-100, 109, 114.) Employees may be disciplined for failing to wear any of the required standard or specialized gear on the production line. (Docket No. 244 App. PP 64, 123.)

4    The defendants dispute that all employees don their frocks in the locker room, noting that some may don their frocks in the production hallway while walking to the production floor. (Docket No. 244 App. P 34.)
5    The parties dispute whether any employees, [**11] other than knife-users, are required to wear specialized gear. The plaintiffs assert that certain other employees are required to wear plastic sleeves, rubber aprons, and skinner gloves, but the defendants argue that such gear is not required of any employees other than knife-users. (Docket No. 244 App. PP 66, 122.)
6    Some knife users also are required to use safety glasses (Docket No. 244 App. P 93) and steel sanders (Docket No. 244 App. PP 105-09).

After donning their frocks and standard gear and retrieving any specialized gear they are required to wear, all employees report to the production hallway, where they wash their hands, wait for supervisors to open the production floor doors, and walk through a sanitizing foot bath onto the production floor. (Docket No. 244

App. P 129(f-h).) Employees obtain rubber or latex gloves, sanitize the gloves, and don the gloves over their frocks before beginning work on the production line. [7] [*797] (Docket No. 244 App. PP 55-60.) Knife users sanitize and don their specialized gear and retrieve and use a steel to straighten the edge of their knives before reporting to their work stations. (Docket No. 244 App. PP 116-17; 129(i-k; n)).

> 7  Employees who do not [**12] handle product or touch surfaces that come into contact with product are not required to wear rubber or latex gloves. (Docket No. 252 P 13.)

It is undisputed that this donning of frocks and gear, as well as the attendant collecting, sanitizing, walking, and waiting, occur before work on the production line begins and, thus, before each employee's Pay Start Time. (Docket No. 244 App. PP 20, 37, 56-60, 63, 121, 129.) This time is therefore uncompensated, save for four minutes per day for which knife-users are compensated pursuant to the DoL Litigation. (Docket No. 244 App. PP 19, 20, 37, 129; Docket No. 252 P 1.) The plaintiffs estimate that these pre-production activities take approximately twenty to thirty minutes per day to complete. (Docket No. 244 App. P 130.) The defendants, by contrast, assert that these pre-production activities take no longer than seven minutes. (Docket No. 244 App. P 130.)

At the end of their shifts, employees doff and sanitize any specialized gear they are required to wear and, after leaving the production floor, doff their standard gear and their frocks. [8] (Docket No. 244 App. PP 140-44.) Employees then report to the frock room to exchange their soiled frocks [**13] for clean frocks, and then stow their clean frocks in their lockers. [9] (Docket No. 244 App. PP 40, 145-51.) It is undisputed that the doffing of the frocks and gear and other activities occur after employees clock out. (Docket No. 244 App. PP 21, 136, 141, 143, 153.) The plaintiffs estimate that these post-production activities take from fifteen to forty minutes to complete; the defendants assert that they can be completed in less than five minutes. (Docket No. 244 App. P 156.)

> 8  The parties dispute whether employees wash prior to or following clock-out. (Docket No. 244 App. PP 137-38.)
>
> 9  The parties dispute whether employees must wait in lines to exchange their soiled frocks at the frock room. (Docket No. 244 App. P 155.) Additionally, the defendants note that employees are permitted to take certain gear home if they choose. (Docket No. 244 App. PP 145, 152-53.) However, most of the gear must be sanitized and worn over the required frocks, which are stored in

employees' lockers, may not be taken home, and must be donned inside the Goodlettsville Plant. (Docket No. 244 App. PP 124-28.)

With regard to meal periods, employees do not clock out for their meals during the course of a shift at [**14] the Goodlettsville Plant. (Docket No. App. 244 P 159.) Instead, under the Alternative Time and Attendance System, for every five and one-half hours worked by an employee, that worker is docked thirty minutes for an unpaid meal period. (Docket No. 244 App. P 158.) These breaks occur at scheduled times during each shift. (Docket No. 244 PP 161, 164.) Although the parties dispute when the thirty-minute period begins, [10] it is undisputed that, during the course of any thirty-minute meal period, employees must doff their frocks, standard gear, and any specialized gear they are required to wear (Docket No. 244 App. PP 175-78) and then don their frock and gear before returning to the production line so that they are completely ready to work on the production line when the thirty-minute period [*798] ends (Docket No. 244 App. PP 166, 168, 180). [11] According to the plaintiffs, these activities take ten to eighteen minutes; the defendants claim that these activities may be completed in less than four minutes. (Docket No. 244 App. P 181.)

> 10  According to the plaintiffs, the thirty-minute meal period begins at the scheduled time, regardless of whether there is still meat on the production line, and thus [**15] some plaintiffs are not able to leave the line until after the clock begins to run on the thirty-minute period, requiring them to perform production work, in addition to doffing and donning of the frock and gear, during the meal period. (Docket No. 244 App. PP 164-65.) By contrast, the defendants claim that the thirty-minute period begins individually for each employee as the last piece of meat passes his or her station, and thus the clock begins to run as each employee leaves the line. (Docket No. 244 App. PP 164-65.)
>
> 11  The plaintiffs also assert that they are encouraged use the restroom during the meal period to minimize disruption of production, as an employee who must use the restroom during a shift must leave the line, doff his or her gear and frock before using the restroom, and then don his or her gear and frock before returning to the line. (Docket No. 244 App. PP 172-73.) Moreover, the plaintiffs note that several employees have complained that they were not permitted to use the restroom during a shift. (Docket No. 244 App. P 172.) The defendants claim that, although the policy is intended to encourage the use of the restrooms during the meal period, employees are not

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

denied the [**16] opportunity to use the restroom during a shift if necessary, and the complaints the plaintiff references were mischaracterized. (Docket No. 244 App. P 172.)

## ANALYSIS

This memorandum will first address the plaintiffs' summary judgment motion with respect to their pre- and post-production activities claims. It will then consider all of the issues relating to the plaintiffs' meal period claim, including the defendants' motion to decertify that claim and the plaintiffs' related motion to strike, as well as the plaintiffs' summary judgment motion with respect to that claim. Finally, it will address the plaintiffs' summary judgment motion with respect to the defendants' good faith defenses to liability and to liquidated damages.

## I. Summary Judgment Standard

[HN1]Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a [**17] genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

[HN2]If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he or she has the burden, however, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond [**18] the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." Chao

v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there [*799] must be evidence on which the jury could reasonably find for the [nonmoving party]." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

## II. FLSA Overview

Congress enacted FLSA to establish standards for ensuring a "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To that end, the statute mandates the minimum hourly [**19] pay that an employee may receive and the maximum number of hours in a week that an employee may work. 29 U.S.C. §§ 206-07. If an employee works more than forty hours per week, the statute requires the employer to provide overtime compensation, stating:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Though it requires overtime compensation for work performed, FLSA does not specify what activities constitute work. See Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944) ("In determining whether [a certain activity] constitutes compensable work or employment within the meaning of the [FLSA], we are not guided by any precise statutory definition of work or employment."). The Supreme Court stated in Tennessee Coal that, "[t]o hold that an employer may validly compensate his employees for only a fraction of the time consumed in [**20] actual labor would be inconsistent with the very

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

purpose and structure of [FLSA]." *Id.* at 598. The Court concluded that FLSA's references to "work" and "employment" should be interpreted "as those words are commonly used--as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.; Chao v. Akron Insulation & Supply, Inc.,* 184 Fed. Appx. 508, 510 (6th Cir. 2006) (citing *Tenn. Coal,* 321 U.S. at 598). Holding that the time spent by mine workers traveling underground constitutes compensable work, the Court noted that "[n]othing in [FLSA] or in reason demands that every moment of an employee's time devoted to the service of his employer shall be directly production." *Tenn. Coal,* 321 U.S. at 599.

Shortly after deciding *Tennessee Coal,* the Supreme Court clarified that an activity need not require exertion to be considered work compensable under FLSA, noting that an employee may be hired "to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock,* 323 U.S. 126, 132-33, 65 S. Ct. 165, 89 L. Ed. 118 (1944); *see Chao,* 184 Fed. Appx. at 511 (holding that "wait [**21] time" is compensable under FLSA if it is "for the employer's benefit and at its behest"). Subsequently, the Court ruled that FLSA requires compensation for "all time [*800] during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace," including "time spent in walking to work on the employer's premises, after the time clocks were punched." *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680, 690-92, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *superseded by statute,* Portal-to-Portal Act, 61 Stat. 86-87,, *as recognized in Reich v. N.Y. City Transit Auth.,* 45 F.3d 646, 649 (2d Cir. 1995).

Congress enacted the Portal-to-Portal Act several years later to amend FLSA and further address what activities constitute work under FLSA. The statute effectively superseded the holding in *Mt. Clemens Pottery* that time spent walking constitutes work and provided that FLSA does not require an employer to compensate employees for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which [an] employee is employed to perform." 29 U.S.C. § 254(a)(1). The statute also specified that "activities which are preliminary to or postliminary [**22] to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities" are not compensable. 29 U.S.C. § 254(a)(2). The Supreme Court has since noted, however, that, other than excluding walking and preliminary and postliminary activities from FLSA

coverage, the statute "does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *IBP, Inc. v. Alvarez,* 546 U.S. 21, 28, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005).

Shortly after the Portal-to-Portal Act was enacted, the Department of Labor issued interpretations [12] defining a workday as "the period between the commencement and completion on the same workday of an employee's principal activity or activities" and providing that "to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday," those activities are not excluded from [**23] FLSA coverage by the Portal-to-Portal Act. 29 C.F.R. § 790.6(a-b). Thus, walking and preliminary and postliminary activities are compensable under FLSA, in spite of the Portal-to-Portal Act, so long as they occur after the workday has begun and before it has ended. This is known as the "continuous workday rule," which has remained in [*801] effect since 1947, *Alvarez,* 546 U.S. at 28-29, and the application of which the defendants do not dispute (Docket No. 244 at 5).

> 12    The purpose of the interpretations was "to indicate the construction of the law which the [Department of Labor] believes to be correct . . . [and to] provide a practical guide to employers and employees." 29 C.F.R. § 790.1(c). Although the interpretations are not promulgated as regulations, there are entitled to deference to the extent that they are persuasive. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ("[R]ulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will [**24] depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); *see also Bonilla v. Baker Concrete Constr., Inc.,* 487 F.3d 1340, 1342-43 (11th Cir. 2007) (noting that "[t]hese statements are not promulgated regulations because Congress did not authorize the Secretary of Labor to issue regulations regarding the scope of the exemptions [of the Portal-to-Portal Act]" but nevertheless finding that the statements "are persuasive and should be given due deference.").

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

Although the Portal-to-Portal Act limits FLSA coverage of preliminary and postliminary activities, the Supreme Court has held that such activities nevertheless are compensable "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956); *see also* 29 C.F.R. § 790.8 (b-c) (noting that the term "principal activity" includes activities that are an integral part of a principal activity and are indispensable to its performance). In *Steiner*, the Court distinguished [**25] "changing clothes and showering under normal conditions," which are not compensable under FLSA, 350 U.S. at 249, from the donning and doffing of specialized protective gear that is integral and indispensable to an employee's principal activity and therefore compensable, *id.* at 256.

Recently, in *Alvarez*, the Supreme Court revisited its previous rulings on the compensability of various activities under FLSA and the Portal-to-Portal Act. In that case, the Court consolidated the appeals of two defendants (including that of IBP, Inc., a defendant here) and addressed the question of "whether postdonning and predoffing walking time" is compensable under FLSA or is excluded from FLSA coverage by the Portal-to-Portal Act. *Alvarez*, 546 U.S. at 30. A detailed consideration of the Court's ruling is instructive. [13]

13    In addition to the Supreme Court's ruling in *Alvarez*, the plaintiffs rely on a Wage and Hour Advisory Memorandum issued by the Department of Labor interpreting that decision. Reliance on the memorandum here is unnecessary, however, as the import of *Alvarez* is clear and the interpretation of *Alvarez* embodied in the memorandum essentially is consistent with this court's interpretation [**26] of that decision.

The facts in *Alvarez* were markedly similar to those here. In that case, employees were required to wear a complement of protective gear that they donned and doffed in a company locker room prior to walking to the production floor for the start of productive work. *Id.* at 30. Although IBP compensated employees for four minutes of time to change clothes, it did not compensate them for the time spent donning and doffing gear or walking between the locker room and the production floor. *Id.* at 31. The employees sued, claiming that they were entitled to additional compensation for these activities.

The Court first noted that IBP had not challenged the lower court's previous ruling that, under *Steiner,* the donning and doffing of "unique" protective gear are not excluded from FLSA coverage by the Portal-to-Portal Act. *Id.* at 32. Instead, IBP argued, in effect, that those

activities did not trigger the start of the workday under the continuous workday rule, despite the fact that such donning and doffing are compensable, and, therefore, that time spent walking between the locker room and the production floor was not compensable under the Portal-to-Portal Act. *See id.* at 33.

Relying [**27] on the text of the relevant statutes, regulations, and its own precedent, the Court found that, if a preliminary activity is integral and indispensable to an employee's principal activity such that it is not excluded from FLSA coverage by the Portal-to-Portal Act, then that activity is itself a principal activity. [14] *Id.* at 33, 37. Moreover, the Court held [*802] that a preliminary activity that is sufficiently integral and indispensable as to be covered under FLSA also constitutes a principal activity triggering the start of the workday under the continuous workday rule. *See id.* at 33. Thus, there is no distinction between a principal activity for the purposes of determining whether an activity is compensable and for the purposes of determining the start of the workday. [15] Once an employee engages in a principal activity--or in an activity that is integral and indispensable to a principal activity--the workday has begun and, under the continuous workday rule, that activity and any subsequent activities in which the employee engages prior to the end of the workday are compensable, even if those activities would otherwise be excluded from coverage by the Portal-to-Portal Act. [16] In applying [**28] its holding to the facts at hand, the Court in *Alvarez* affirmed the Ninth Circuit's ruling that walking between the locker room and the production floor was compensable, as that activity occurred within the workday, which started and concluded, respectively, with the donning and doffing of protective gear. *Id.* at 37 ("[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA.").

14    The Court in *Alvarez* did not address the question of whether the donning and doffing of particular types of gear were compensable, instead premising its holding on the fact that the lower court had already made that determination. *Id.* at 30 ("The principal question presented by these consolidated cases--both of which involve required protective gear that the courts below found integral and indispensable to the employees' work--is whether postdonning and predoffing walking time is specifically excluded by [the Portal-to-Portal Act].").

15    The Court rejected what it characterized as the employer's [**29] attempt to "create a third category of activities--those that are 'integral and

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

indispensable' to a 'principal activity' and thus not excluded from coverage by [the Portal-to-Portal Act], but that are not themselves 'principal activities.'" *Id.* at 33.

16    As a parallel, the end of the workday is marked by the employee's performance of the last principal activity, or the last activity integral and indispensable to a principal activity. *See id.* at 28.

## III. Pre- and Post-Production Activities Claims

First, the court turns to the plaintiffs' motion for summary judgment with respect to their claims regarding compensation for pre- and post-production activities.

The plaintiffs claim that all of their pre- and post-production activities--donning and doffing their frocks and gear and the attendant collecting, sanitizing, stowing, walking, and waiting--constitute work compensable under FLSA. [17] Additionally, the plaintiffs do not dispute that these activities are preliminary and postliminary activities, but assert that the activities are integral and indispensable to their principal activities and thus are not excluded from FLSA coverage by the Portal-to-Portal Act. Finally, the plaintiffs argue [**30] that the time involved in these pre- and post-production activities is not *de minimis*.

17    More specifically, the plaintiffs argue that the act of retrieving their frocks from their lockers begins the workday and the act of stowing clean frocks in their lockers marks the end of the workday. Thus, they argue that they are entitled to compensation for those activities and for all of the time between those two activities under the continuous workday rule, regardless of the compensability of any of the intervening activities.

[HN3]Whether a particular activity constitutes work under FLSA is a question of law. *Farmer v. Ottawa County*, No. 98-2321 / 99-1047, 2000 U.S. App. LEXIS 7224, at *9 (6th Cir. Apr. 13, 2000) (citing *Birdwell v. City of* [*803] *Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992)). The nature of the plaintiffs' duties, however, is a question of fact. *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) ("Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law."); [**31] *Birdwell, 970 F.2d at 808* ("Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist."). The defendants assert that there are significant factual disputes in this case--including what

clothing and gear is required, the extent to which the defendants exercise control over clothes-changing activities, and the extent to which the required clothing and gear benefits the defendants or the plaintiffs--that preclude summary judgment with regard to the questions of whether the plaintiffs' activities constitute work, whether those activities are integral and indispensable to the plaintiffs' principal activities, and whether the time spent on those activities is *de minimis*.

### A. Exertion

The defendants first argue that the pre- and post-production activities at issue here do not constitute work, as they do not require exertion.

This argument fails, however, as the Supreme Court made clear in *Armour* that exertion is not required for an activity to constitute work. *See Armour*, 323 U.S. at 132-33, *cited* [**32] in *Alvarez*, 546 U.S. at 25. The defendants claim that *Armour* is limited to so-called "engaged to wait" cases; however, nothing in the case suggests that its holding is so limited. Additionally, the Supreme Court's recent discussion of *Armour* indicates that the Court regards *Armour* as applying not only to "engaged to wait" cases. *See Alvarez*, 546 U.S. at 25. The Court in *Alvarez* noted that, though the Portal-to-Portal Act created two specific exceptions to FLSA coverage, that enactment did not otherwise alter the Court's previous descriptions of the term "work," lending further proof to the conclusion that *Armour* remains good law. *Id.* at 28.

The defendants rely on the Tenth Circuit's opinion in *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), which was issued in the course of the DoL Litigation, to support their argument that exertion is required for an activity to be compensable under FLSA. [18] The Court in *Reich* addressed a factual situation essentially identical to that here and held that the donning and doffing of standard gear was not compensable under FLSA as it did not constitute work, since that activity "takes all of a few seconds and requires little or no concentration," and [**33] thus does not satisfy what the Court called the exertion "prong" of the *Tennessee Coal* test. *Id.* at 1125-26. The Court noted in passing that the donning and doffing of standard gear "could also be said [to be] *de minimis* as a matter of law," but that "it is more properly considered not work at all." *Id.* at 1126 n.1.

18    The defendants also rely heavily on *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556 (E.D. Tex. 2001) and *Pressley v. Sanderson Farms, Inc.*, No. Civ. A. H-00-420, 2001 U.S. Dist. LEXIS 6535, 2001 WL 850017 (S.D. Tex. Apr. 23, 2001), two district court cases that followed *Reich*. However, like *Reich*, those cases preceded the Supreme Court's ruling in *Alvarez*,

and their rationales are severely undermined by that decision.

The persuasive effect of the *Reich* decision is extremely limited, however, as it [*804] was issued before the Supreme Court's decision in *Alvarez*, which clarified that exertion is not required for an activity to be compensable under FLSA. [19] The defendants argue that *Alvarez* does not have any impact on the validity of *Reich* because, they claim, *Alvarez* only addressed the compensability of walking, and not the compensability of donning and doffing. But this is too limited a view of *Alvarez*. [**34] The fact is that *Alvarez* endorsed the view first expressed in *Armour*--that exertion is not required for an activity to be compensable, whether the activity in question is walking, waiting, or any other activity requiring little or no exertion. Moreover, since *Alvarez*, at least one district court in the Tenth Circuit has declined to follow *Reich* in light of *Alvarez*. *See Garcia, 474 F. Supp. 2d. at 1246* ("The court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich*, would approach its analysis of the pertinent issues differently in light of *Alvarez* . . . .").

[19] The defendants claim that the Tenth Circuit's ruling in *Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006)*, suggests that *Reich* remains good law even following *Alvarez*. *Smith*, however, merely stands for the proposition that traveling to one's job site, even if employees travel together and occasionally discuss work on the trip, is not compensable under the Portal-to-Portal Act, if that traveling does not occur within the continuous workday. *Id. at 1288*. If anything, *Smith*'s focus on the continuous workday supports the conclusion that *Reich*'s application is limited in light of *Alvarez. Garcia v. Tyson Foods, Inc., 474 F. Supp. 2d 1240, 1246-47 (D. Kan. 2007)* [**35] (noting that the *Smith* Court's analysis is "a markedly different one than the *Reich* analysis, is in accord with *Alvarez* and further suggests that the Circuit, if revisiting *Reich*, would approach that case differently"); *see also De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 371-72 (3d Cir. 2007)* (citing *Garcia, 474 F. Supp. 2d at 1247*).

More persuasive than the *Reich* decision are the Ninth Circuit's ruling in *Alvarez* (which was later affirmed by the Supreme Court), that Court's ruling in *Ballaris*, and the Third Circuit's recent ruling in *De Asencio*, which followed in the wake of the Supreme Court's ruling in *Alvarez*. First, in *Alvarez v. IBP, Inc.*, the Ninth Circuit noted that work includes "even nonexertional acts" and held that the donning and doffing of both standard and specialized protective gear worn by employees at a meat processing plant constitutes work,

as the gear was required by the employer's rules and was worn for the benefit of the employer. [20] *339 F.3d 894, 902-03 (9th Cir. 2003)*. The Court then concluded that, under the continuous workday rule, any activities occurring after the first principal activity of the day and before the last principal activity of the day [**36] are compensable, including walking. [21] *Id. at 906-07*.

[20] The Court ultimately concluded, however, that though the donning and doffing of standard gear constitutes work, it is not compensable, as the amount of time required to perform those tasks is *de minimis* as a matter of law. *Id. at 903-04* ("[D]onning and doffing of all protective gear is integral and indispensable to 'the principal activities for which [the plaintiffs] are employed,' and generally compensable. However, the specific tasks of donning and doffing of non-unique protective gear such as hardhats and safety goggles is noncompensable as *de minimis*.") (citations omitted).

[21] It was this aspect of the ruling that was appealed to, and affirmed by, the Supreme Court. *Alvarez, 546 U.S. at 25*. The Supreme Court's decision is discussed in detail in Section II *supra*.

The Ninth Circuit had another opportunity to address this issue in *Ballaris*. There, the Court found that the district court erred in holding that changing clothes did not constitute work because it did not require exertion. *Ballaris, 370 F.3d at 911-12*. The Court noted that its [*805] ruling in *Alvarez* stood for the proposition that work includes "nonexertional acts" and found [**37] that donning and doffing a uniform constituted work, in light of the facts that the employer required employees to change into uniforms at the plant and that the uniforms benefitted the employer by reducing the risk of contamination. *Id. at 911*. The Court thus reversed the district court's ruling and remanded the case for a determination of whether the time spent donning and doffing was *de minimis. Id. at 912*.

Most recently, the Third Circuit addressed this issue in the case of *De Asencio*, which involved the donning and doffing of gear at a meat processing plant operated by Tyson, one of the defendants here. The Court began by reviewing the Supreme Court's opinion in *Alvarez*, stating that "*Alvarez* not only reiterated the broad definition of work, but its treatment of walking and waiting time under the Portal-to-Portal Act necessarily precludes the consideration of cumbersomeness or difficulty on the question of whether activities are 'work.'" *De Asencio, 500 F.3d at 370-71*. The Court followed *Ballaris* in rejecting the Tenth Circuit's rationale in *Reich*, concluding that the question of whether donning and doffing gear constitutes work does not entail any consideration of

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

"whether the [**38] gear was cumbersome, heavy, or required concentration to don and doff," but rather simply consideration of whether the activity was "controlled or required by the employer and pursued for the benefit of the employer." *Id.* at 373.

The collective wisdom of these circuit courts makes crystal clear that exertion is not required for an activity to constitute work under FLSA and the Portal-to-Portal Act.

*B. Required by Employer*

As [HN4]exertion is not required for an activity to constitute compensable work under FLSA, the question of whether the plaintiffs' pre- and post-production activities constitute work turns on whether those activities are required by the employer, whether they are undertaken primarily for the employer's benefit, and whether those activities, which are preliminary and postliminary, are nevertheless integral and indispensable to the plaintiffs' principal activities such that they are not excluded from FLSA coverage by the Portal-to-Portal Act. *See Brock v. City of Cincinnati,* 236 F.3d 793, 801 (6th Cir. 2001); *De Asencio,* 500 F.3d at 371 ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable [**39] under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity.").

The plaintiffs correctly assert that, [HN5]under the continuous workday rule, they are entitled to compensation from the first principal activity in which they engage during a shift until the last principal activity in which they engage. *Alvarez,* 546 U.S. at 25. They assert that the first principal activity during each shift is the removal of clean frocks from their lockers and the donning of those frocks, and that the last principal activity is the stowing of clean frocks in their lockers after they have doffed the soiled frocks and exchanged the soiled frocks for clean frocks. As all of the plaintiffs engage in these activities, and as the compensability of any intervening activities-- including the donning and doffing of standard and specialized gear and the attendant collecting, sanitizing, walking and waiting--is irrelevant under the continuous workday rule if the plaintiffs prevail in their argument, the court will first address [*806] the compensability of those activities that the plaintiffs assert are the first and last principal activities in which they engage during a shift, which may render [**40] an analysis of the compensability of the intervening activities unnecessary and render some factual disputes regarding those intervening activities immaterial.

With respect to the question of whether the activities are required by the employer, the undisputed fact is that the defendants require the plaintiffs to wear frocks that are owned, maintained, cleaned, and provided to the plaintiffs by the defendants. Whether those frocks are "specially designed" is irrelevant; the fact of the matter is that the plaintiffs are not permitted to wear frocks of their own choosing or to take the provided frocks home with them. They may not launder the frocks themselves and must store the frocks in the locker room at the Goodlettsville Plant. Prior to their shifts, they must don the frocks at the plant, and they must doff the frocks and exchange the soiled frocks for clean frocks, which are stowed in their lockers, before leaving the plant at the end of their shifts. Finally, they may be subject to discipline if they do not wear the frocks on the production floor. As the Ninth Circuit noted, such facts "weigh heavily in favor of a determination that the activity is *not* excluded by the Portal-to-Portal [**41] Act." *Ballaris,* 370 F.3d at 911 (citing facts that employees were required to wear frocks, were required to change at the plant, were disciplined for failing to wear the frocks on the production floor, and were prohibited from taking frocks from the plant).

The defendants' feeble assertion that they do not "control" the manner in which the plaintiffs don and doff the frocks does not stand up to analysis and, indeed, borders on the absurd. It is irrelevant whether the plaintiffs have "flexibility" to put the frocks on in the locker room or the hallway; by this logic, taken to its extreme, the defendants could also argue that the donning of the frocks is not required, as they do not specify that plaintiffs must don the frocks feet first or head first, while sitting or while standing. Additionally, the defendants' assertion that there are "relatively few government requirements" that determine the apparel worn by workers in the meat processing industry is likewise unavailing, as the relevant inquiry here is not whether the pre-production activities at issue are required by law, but rather whether the employer "required or suffered" the employees to engage in those activities, *see Brock,* 236 F.3d at 801, [**42] which they indisputably did. Moreover, the fact that the plaintiffs are not required to be at the plant at a specific time to don the frocks is irrelevant, as each employee is required to be dressed in the frock and ready at his or her position in the production line at the Pay Start Time--which necessarily requires plaintiffs to report to the Goodlettsville Plant in advance of their Pay Start Times to change into their frocks. Finally, the fact that there may be individual differences in how long it takes particular plaintiffs to engage in these activities does not affect the question of whether these activities are required, but simply affects the determination of the appropriate compensation.

The undisputed facts demonstrate that the defendants here required the plaintiffs to remove these particular frocks from their lockers, don and doff these frocks,

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

and exchange and stow the frocks prior to and following every shift, satisfying the first element of the test to determine whether the plaintiffs engaged in work compensable under FLSA.

## C. For Employer's Benefit

As the donning and doffing of frocks are required by the defendants, the [*807] next issue is whether these activities "necessarily [**43] and primarily" benefit the defendants. *Tenn. Coal,* 321 U.S. at 598; *Brock,* 236 F.3d at 803.

Here, the Ninth Circuit's ruling in *Ballaris* is instructive. In that case, the Court held that the donning and doffing of uniforms by employees at a silicon chip manufacturing plant benefitted the employer because the uniforms "were required to limit potential cleanroom contamination, and thereby to assist the employer in ensuring the quality of the silicon chips manufactured at the plant." *Ballaris,* 370 F.3d at 911. Such reasoning has also been applied in cases involving the meat processing industry, notably by the Ninth Circuit in *Alvarez,* which ruled that the donning of protective gear--which included the donning of a frock--was done for the benefit of the employer. *Alvarez,* 339 F.3d at 903 (holding that "it is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP.").

The defendants do not dispute that the purpose of the frock is to maintain sanitary conditions on the production floor and to prevent the defendants' product from becoming contaminated. The defendants argue, however, that the frocks also [**44] benefit the plaintiffs by keeping their street clothes from becoming dirty. Though it is perhaps the case that the frocks provide a benefit to the plaintiffs, that does not alter the fact that the reason the defendants require their employees to wear frocks is motivated not by the employees' needs, but rather by the defendants' need to maintain a sanitary production floor. Moreover, although the frocks are not specifically required by federal law, their use enables the defendants to meet federal regulations requiring employees to wear clean garments and the company to maintain hygienic practices on the production floor. Additionally, the court is unpersuaded by a recent district court ruling on which the defendants rely (Docket No. 258), in which the plaintiffs' summary judgment motion was denied on the grounds that there were factual questions as to whether the employer reaped the "primary benefit" of donning and doffing, though it was clear that the employer reaped "some benefit." *Chao v. Tyson Foods, Inc.,* No. 2:02-CV-1174-VEH, 2008 U.S. Dist. LEXIS 29950, *39-40 (N.D. Ala. Jan. 22, 2008). The fact is that the frocks enable the defendants to maintain the cleanliness of their facilities and prevent [**45] their product from becoming con-

taminated. This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. The minor benefit to the employees of keeping their street clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

Finally, the fact that plaintiffs may socialize during the time that they are donning and doffing their frocks is irrelevant. The plaintiffs only socialize during that time because they are required to be at the plant to don their frocks and gear; there is no reason to believe they would choose to socialize during that time if they were not required to be at the plant donning and doffing their frock at the defendants' behest. See *Chao,* 184 Fed. Appx. at 511 (noting that time spent waiting prior to shift was for defendant's benefit, despite fact that employees may have socialized during that time).

Because the frocks are required by the defendants, and because the wearing of the frocks necessarily and primarily benefits [*808] the defendants, [**46] the donning and doffing of the frocks therefore constitute work.

## D. Integral and Indispensable

Having concluded that the preliminary and postliminary activities at issue here constitute work, as they are both required by the defendants and pursued for the defendants' benefit, the court must consider next whether those activities are so integral and indispensable to the plaintiffs' principal activities such that they are not excluded from FLSA coverage by the Portal-to-Portal Act. See *Steiner,* 350 U.S. at 256.

[HN6]An activity is integral and indispensable if it is "performed as part of the regular work of the employees in the ordinary course of business." *Duchon v. Cajon Co.,* 840 F.2d 16 (6th Cir. 1988). Factors relevant to whether an activity is integral and indispensable are essentially the same as those relevant to whether an activity qualifies as work, requiring consideration of whether the activity is required by the employer and is necessary to the employee's principal activities, and whether the benefit of the activity inures primarily to the employer. [22] See *Alvarez,* 339 F.3d at 902-03 ("To be 'integral and indispensable,' an activity must be necessary to the principal work performed [**47] and done for the benefit of the employer."); *Bonilla,* 487 F.3d at 1344 ("The factors to be considered are: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer."). The changing of clothes may be considered integral and

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

indispensable to an employee's principal activities "where the changing of clothes *on the employer's premises* is required by law, by rules of the employer, or by the nature of the work." *Ballaris*, 370 F.3d at 910 (citing 29 C.F.R. § 790.8(c)) (emphasis in the original). Additionally, the mere fact that the donning and doffing of gear may be simple or common in a particular work environment does not mitigate against a finding that those activities are integral and indispensable. *Alvarez*, 339 F.3d at 903.

> 22   In fact, some courts effectively combine the "work" and "integral and independent" analyses and consider just two factors: whether the activity is required by the employer and whether it benefits the employer. *See, e.g., Ballaris*, 370 F.3d at 910-12; *Alvarez*, 339 F.3d at 902-03 (ruling, without discussion, that activities [**48] constituted work "as a threshold matter," and then analyzing in detail whether activities were necessary and benefitted the employer in context of ruling on "integral and indispensable" question).

The defendants assert that the facts of *Steiner* do not permit the conclusion that the activities at issue here are integral and indispensable, as *Steiner* involved employees working in a battery plant who handled exceedingly dangerous and caustic materials in the course of their work. While it is the case that *Steiner* involved a work environment far more extreme than that at the Goodlettsville Plant, there is no basis for concluding that *Steiner* is limited to such extreme circumstances. Indeed, courts have applied *Steiner* in much more mundane industrial settings, including meat processing plants such as the Goodlettsville Plant. *See, e.g., Alvarez*, 339 F.3d at 903 (holding that donning and doffing of frock and gear by meat processing plant employees are integral and indispensable under *Steiner*); *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 2007 U.S. Dist. LEXIS 95037, at *8 (W.D. Wisc. 2007) (same).

The defendants also rely on the Second Circuit's ruling in *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), [**49] interpreting *Steiner* as limited to work "done in a lethal atmosphere." In holding that the donning and doffing of generic [*809] protective gear is not integral and indispensable, *id.* at 594, *Gorman* stands in contrast to the rulings in *Ballaris* and *Alvarez*. However, the *Gorman* Court did not explicitly consider whether the activities at issue there were required and necessary and whether they primarily benefitted the employer, and concluded, somewhat inexplicably and in reliance on *Reich*, that an activity is not necessarily integral just because it was "required by the employer or by governmental regulation." *Id.*

Regardless, though, *Gorman* is distinguishable from the case at hand. The gear at issue in *Gorman* was only safety boots, safety glasses, and a helmet. *Id.* at 592. The "gear" at issue here--that is, the frock that the plaintiffs are required to don and doff--can hardly be characterized as generic, as evidenced by the facts that the frock has certain design features specific to the job and that plaintiffs are not permitted to use a frock of their choosing. Moreover, the plaintiffs are not permitted to clean, store, or don their frocks at home, are required by the defendants to wear those [**50] frocks at all times on the production floor, and are subject to discipline for failing to do so; additionally, the frocks are both necessary to the plaintiffs' jobs and benefit the defendants, in that they allow for the maintenance of sanitary conditions on the production floor and prevent the defendants' product from becoming contaminated. *See Spoerle*, 2007 U.S. Dist. LEXIS at *8-*9 (holding that donning and doffing of gear and frock at meat processing plant was integral and indispensable where it was necessary to perform job safely, where it was required by company policy and federal law, and where the failure to do so resulted in discipline). Thus, the donning and doffing of the frocks do not constitute the "changing of clothes and showering under normal conditions," which is not compensable under *Steiner*, 350 U.S. at 249, but rather an integral and indispensable activity for which compensation is required. [23] As the donning and doffing of the frocks are integral and indispensable to the plaintiffs' principal activities, then, under *Alvarez*, the donning and doffing themselves are principal activities and mark the beginning and the end of the continuous workday, such that the plaintiffs [**51] are entitled to compensation for those activities and any and all other activities--including any walking, waiting, collecting, sanitizing, and donning of standard or specialized gear--that occurs between those two activities. [24] *See Alvarez*, 546 U.S. at 33.

> 23   This holding is not to suggest that the donning of gear--which generally shortly follows the donning of the frock--would not otherwise itself be compensable work and be integral and indispensable to the plaintiffs' principal activities. Indeed, to separate out the act of donning the frock from the act of donning the other standard protective gear worn by all employees, as the plaintiffs have urged, is a bit like splitting hairs, in that those activities are very closely tied in time and in nature. Regardless, as the plaintiffs have demonstrated as a matter of law that the donning and doffing of the frock constitutes compensable work that is integral and indispensable to their principal activities, then, under the continuous workday rule, there is no need to consider inde-

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

pendently the compensability of the other activities that occur within that period.

24  As it is undisputed that all of the plaintiffs are required to don and doff [**52] their frocks prior to and following each shift at the Goodlettsville Plant, the holding that these activities mark the beginning and the end of the workday renders immaterial the many minor factual disputes regarding the precise complement of gear that plaintiffs wear, on which the defendants rely in their attempt to defeat summary judgment.

Finally, the court will address briefly the plaintiffs' argument that the continual workday begins with the removing [*810] of the frock from the locker prior to donning of the frock and ends with the exchanging of the soiled frock for a clean frock and stowing of the clean frock in the locker following doffing of the frock. While it may be the case that each activity in this entire cycle is necessary from a causal point of view--that is, an employee could not retrieve a clean frock from his or her locker had he or she not previously exchanged the soiled frock--that alone is not sufficient to establish that those activities are integral and indispensable to the plaintiffs' principal activities. See *Bonilla, 487 F.3d at 1344* ("If mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a [**53] practical necessity for all workers to travel from their homes to their jobs. If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of 'integral and indispensable.'"). The acts of retrieving, exchanging, and stowing are not so integral to the plaintiffs' principal activities, in that they are not required by the nature or exigencies of the plaintiffs' work, but rather merely by the physical and logistical organization of the plant.

Thus, the acts of donning and doffing the frock serve, respectively, as the beginning and the end of the plaintiffs' compensable workday, and all other activities performed in the interim are compensable under the continuous workday rule, while other preliminary and postliminary activities that precede or follow the donning and doffing--such as retrieving, exchanging, and stowing--are not compensable, as they are not integral and indispensable to the plaintiffs' principal activities.

### E. De Minimis

The plaintiffs also seek summary judgment as to the defendants' argument that the amount of time involved in the pre- and post-production activities is *de minimis,* regardless of whether it is otherwise [**54] compensable under FLSA.

As the Supreme Court noted, "[s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Mt. Clemens Pottery, 328 U.S. at 692.* Thus, even though the plaintiffs' pre- and post-production activities constitute work and are integral and indispensable to the plaintiffs' principal activities, those activities may yet be excluded from FLSA coverage if the time spent on them is *de minimis.* [HN7]The determination of whether the time spent on a particular activity is *de minimis* requires a consideration of the amount of daily time spent on the activity, as well as "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States, 738 F.2d 1057, 1062-63 (9th Cir. 1984)); Brock, 236 F.3d at 804* (citing *Lindow, 738 F.2d at 1062-63).*

The Supreme Court has noted, however, that the precise amount of time that can be considered *de minimis* ultimately is a question [**55] for the trier of fact. *Mt. Clemens Pottery, 328 U.S. at 692.* And, indeed, the parties provide widely ranging estimates of the amount of time that the plaintiffs spend completing the required pre- and post-production activities. Moreover, the *de minimis* analysis is complicated by the parties' dispute over the feasibility of determining the amount of time that the employees spend performing compensable pre- and post-production activities as well as variations in the amount of time spent by employees engaged in these activities.

As the process of parsing out how much time plaintiffs engage in compensable activities [*811] is fundamentally factual, and as there exist genuine issues of fact as to the application of the *de minimis* rule in this case, summary judgment on this issue is inappropriate.

### IV. Meal Period Claim

Before turning to a consideration of the plaintiffs' motion for summary judgment as to their meal period claim, we briefly address the factual circumstances and the merits of the plaintiffs' motion to strike and the defendants' motion to decertify.

### A. Motion to Strike

On August 20, 2007, in keeping with the scheduling order in effect in this case, the defendants moved to decertify what [**56] they termed the plaintiffs' "meal period production work" claim. ("First Motion to Decertify," Docket No. 234.) The First Motion to Decertify did not extend to the plaintiffs' entire meal period claim, excluding that aspect of the claim that addressed compensation for non-production work--including the donning

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

and doffing of frocks and gear--and extending only to that aspect of the claim that involved production work. The plaintiffs opposed the First Motion to Decertify and characterized it as an attempt by the defendants to splinter the plaintiffs' single meal period claim encompassing the defendants' alleged failure to compensate the plaintiffs for both production work and non-production work performed during the meal period. (Docket No. 245.)

Then, on October 9, 2007, the defendants filed a reply combined with a second motion to decertify that extended to the plaintiffs' entire meal period claim. ("Reply and Second Motion to Decertify," Docket Nos. 250, 251.) In the Reply and Second Motion to Decertify, the defendants argued that the meal period claim actually consists of two claims--one for production work and one for non-production work--that, they claim, the plaintiffs wrongly [**57] "bundled" in their opposition to the First Motion to Decertify. The defendants further argued that the plaintiffs' argument was premised on the assumption that donning and doffing of the frock and gear are compensable activities.

In response to the Reply and Second Motion to Decertify, the plaintiffs filed a Motion to Strike the portion of that brief that constituted the second motion to decertify the entire meal period claim, arguing that such motion was untimely under the governing scheduling order and that the scope of the reply exceeded that of the original motion. (Docket No. 255.) The defendants responded to the motion to strike, arguing that the plaintiffs first asserted a "unified theory of recovery" with respect to the production and non-production aspects of the meal period claim in their opposition to the First Motion to Decertify.

First, it is abundantly clear that, to the extent the defendants sought to decertify the entire meal period claim in their Reply and Second Motion to Decertify, such motion is untimely. The governing scheduling order was issued on March 6, 2007, and the parties were granted an extension of time to file their motions for decertification and summary [**58] judgment. The defendants thus had ample notice of the deadline for their motion to decertify. There does not appear any reason why they did not simply move to decertify the entire meal period claim in their First Motion to Decertify, had they wished to do so. [25]

25   In the First Motion to Decertify, the defendants apparently anticipated filing an additional motion, noting that "Defendants do not concede that plaintiffs' other claims do not require individualized determination. At this time, however, defendants are moving to decertify only the meal period production claim." (Docket No. 235 at 1 n.1.) It is unclear why, given the scheduling order

in effect, the defendants believed at the time they filed the First Motion to Decertify that a subsequent motion would be entertained absent some compelling circumstance.

[*812] The defendants are correct that certification issues may evolve and require reconsideration as the parties gain information and as new theories arise. However, such is not the case here. The defendants' argument that the plaintiffs first "bundled" the two aspects of their meal period claim in their response to the First Motion to Decertify is without merit. Indeed, in the complaint, [**59] the plaintiffs asserted three claims: that they had not been compensated for "[w]ork before 'official' clock in time," "[w]ork after 'official' clock out time," and "[w]ork during scheduled meal periods." (Docket No. 1 P 13.) The meal period claim outlined in the complaint extended specifically to both production work performed during the meal period and to donning and doffing performed during that time:

> The defendants deduct 30 minutes per day from each hourly employee's paycheck regardless of whether or not the employee has a meal break or is able to spend the full 30 minutes eating lunch. . . . Hourly production line and production floor employees rarely, if ever, leave for lunch on time. Employees are not allowed to leave the line as long as there is meat on the line. Moreover, employees must don and doff some of their gear and equipment during their uncompensated meal periods.

(Docket No. 1 P 13.) Moreover, upon conditionally certifying the plaintiffs' meal period claim, the court noted that the certification encompassed both "clothes changing and washing activities" as well as "unpaid production work during meal periods." (Docket No. 120 at 2.)

Thus, those sections of the Reply [**60] and Second Motion to Decertify that seek the decertification of the plaintiffs' entire meal period claim--rather than just the production work aspect of that claim--are stricken as untimely. [26]

26   The stricken portion comprises Section B of the Reply and Second Motion to Decertify. (Docket No. 251 at 8-14.)

## B. Motion to Decertify

[HN8]A FLSA plaintiff must demonstrate that the members of the class are similarly situated at two junctures in the course of litigation: first during the "notice

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

stage," at which a court determines whether notice should be given to putative class members, and then again at the "decertification stage" after discovery is complete. *Wilks v. Pep Boys,* No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, 2006 WL 2821700, at *2 (M.D. Tenn. Sept. 26, 2006) (citations omitted). The burden of demonstrating that class members are similarly situated is significantly higher at the decertification stage and requires consideration of the disparate factual and employment settings of the individuals, the defenses available to the defendants, and fairness and procedural considerations. *Id.*

The plaintiffs claim that the production work aspect of the meal period claim is suitable for class treatment, as they are all hourly [**61] employees who perform meat production work at the Goodlettsville Plant. They further assert that they are all subject to a common policy under which the defendants automatically deduct thirty minutes of pay for each shift an employee works. Finally, they assert that the defendants' attempt to decertify one aspect of their meal period claim is without precedent and makes little sense, as the remainder of the meal period claim--regarding non-production work--will proceed under any circumstances.

[*813] With respect to the plaintiffs' factual and employment settings, one factor particularly relevant is "whether they were all impacted by a 'single decision, policy, or plan.'" 2006 U.S. Dist. LEXIS 69537, [WL] at *3 (citing *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409 (W.D. Pa. 2000)). Consideration of this factor necessarily raises the question of how exactly the meal period at the Goodlettsville Plant is measured--that is, whether it begins at a given time for all employees regardless of whether meat remains on the production line, requiring some employees to continue production work after the start of the meal period, or whether it begins as each employee individually leaves the production line after the last piece of meat [**62] passes his or her station. To some extent then, the strength of the plaintiffs' claim that the class members are required to perform production work during the meal period will turn on this question, which is in dispute and is not suitable for resolution at this point in the litigation, *see* Section IV.C. *infra,* but which, ultimately, is a question common to all of the plaintiffs.

Beyond this factor, the plaintiffs are correct that, in a broad sense, they are similarly situated in that they are all meat processing plant employees. As the defendants point out, though, deposition testimony reflects that the plaintiffs had widely varying experiences with regard to production work during meal periods and that those experiences may not be generalized by job type or category. But the defendants' argument is predicated on their conception of the meal period claim as two distinct claims--a production work claim and a non-production work claim--when there is no apparent reason or justification for treating the claim as such. Indeed, if one considers the meal period claim as a single claim, then the factual similarities among the plaintiffs become overwhelming, as the defendants do not dispute [**63] that all employees were required to don and doff their frocks and gear prior to and after eating. It is only when the defendants pry off one slice of the meal period claim that the factual differences become more prominent. Moreover, even considering the so-called meal period production work claim alone, the factual differences among the plaintiffs are not so extreme as to require decertification; plaintiffs need not be "identically situated" to be considered "similarly situated." *Wilks,* 2006 U.S. Dist. LEXIS 69537, 2006 WL 2821700, at *3. Here, any differences among the plaintiffs may be addressed through the creation of subclasses of plaintiffs--those who performed only non-production work during the meal period, and those who performed both non-production work and production work during the meal period. [27]

> 27  The defendants suggest that decertification is appropriate here because, unlike *Wilks,* the plaintiffs may not be divided into sub-classes based on job category because factual variations occur across categories. But *Wilks* merely stands for the proposition that courts may fashion subclasses as a means of ensuring judicial efficiency and fairness where there are some factual variations; there is no reason [**64] that such classes must be based on job category rather than simply on the basis of whether plaintiffs were or were not required to perform production work, in addition to non-production work, during meal periods.

With respect to the available defenses, the defendants claim that the factual variations among the plaintiffs will require them to obtain testimony from "each supervisor who managed each plaintiff in each position that employee held." The plaintiffs, by contrast, contend that the likely defenses are actually uniform and suitable for collective resolution. As was the case in *Wilks,* the defenses here are amenable to collective resolution in that the defendants will have ample opportunity to demonstrate that they do not employ a policy or practice which has the effect of denying plaintiffs compensation to which [*814] they are entitled under FLSA and may cross-examine the representative plaintiffs and adduce other testimony that supports their position. 2006 U.S. Dist. LEXIS 69537, [WL] at *7. As such, decertification is not necessary to enable the defendants to adequately defend themselves.

Finally,[HN9] the relevant fairness and procedural considerations require a determination of whether certifi-

cation would serve the [**65] purposes of FLSA either by "lower[ing] the cost of the action to individual plaintiffs" or by "increas[ing] judicial utility by providing for efficient resolution of many claims in one proceeding." *Id.* Here, the unavoidable fact is that the plaintiffs' meal period claim with respect to non-production work will go forward under any circumstances. *See* Section IV.A. *supra.* Thus, there is an exceptionally strong interest not only in resolving the claims of the plaintiffs collectively, but also in resolving both aspects of the meal period claim itself in the course of this single litigation.

As such, the defendants' motion for decertification of the production work aspect of the meal period claim will be denied.

*C. Summary Judgment*

The plaintiffs seek summary judgment with respect to their claim that they are denied a bona fide meal period in that they are required to perform compensable activities--including production work as well as the doffing and donning of frocks and gear--during the uncompensated thirty-minute meal period that they are allowed each shift.

[HN10]A "bona fide meal period" of thirty minutes need not be compensated so long as employees are not "required to perform any duties, [**66] whether active or inactive, while eating." [28] *29 C.F.R. § 785.19(a).* The Sixth Circuit has stated that a meal period is bona fide "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Hill v. United States,* 751 F.2d 810, 814 (6th Cir. 1984). [29] The question of whether activities performed during a meal period are predominantly for the benefit of the employer is "highly individualized and fact-based." *See Beasley v. Hillcrest Med. Ctr.,* 78 Fed. Appx. 67, 70 (10th Cir. 2003); *Bernard v. IBP, Inc.,* 154 F.3d 259, 265 (5th Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.").

28  By contrast, "rest periods" generally lasting from five to twenty minutes, must be compensated. *29 C.F.R. § 785.18.*

29  The plaintiffs also rely on a Wage and Hour opinion letter issued by the Department of Labor providing that "the meal period [**67] may not include any time performing 'work,' and that time spent donning and doffing of personal protective equipment, clothing or gear before or after the meal period is compensable." Although opinion letters are "entitled to some credence," *Hill,* 751 F.2d at 814, in this case it is not at all clear that the "predominant benefit" test articulated in *Hill* is coextensive with the general standard for determining whether "work" is compensable, as the opinion letter implies. The persuasive power of the opinion letter is further limited because it makes no reference to the "predominant benefit" test, nor does it provide any rationale for equating that test with the general compensability standard.

Here, there are genuine issues of fact as to whether the activities performed during the meal period predominantly benefit the defendants, in that the parties vigorously dispute how much time the plaintiffs must spend doffing and donning [*815] their frocks and gear during the meal period. The plaintiffs assert that these tasks take at least ten minutes, whereas the defendants claim these activities take no more than four; this dispute is essentially the same as that raised by the defendants' *de minimis* [**68] argument and likewise may not be resolved on summary judgment. Moreover, there is a genuine issue of fact as to how the meal period is measured and thus whether the plaintiffs are required to engage in production work during the course of the meal period, in that the plaintiffs assert that certain employees must perform production work if there is still meat on the production line at the time the meal period begins, while the defendants claim that each employee's meal period does not begin until the last piece of meat passes that employee's station on the line. Finally, the parties dispute the nature and application of the defendants' restroom policy, and how that affects the plaintiffs' use of time during the meal period.

As there are genuine issues of material fact as to what activities are performed during the meal period and as to whether those activities predominantly benefit the defendants, the plaintiffs' motion for summary judgment will be denied.

**V. Good Faith Defense to Liability**

The plaintiffs also have moved for summary judgment with respect to the defendants' good faith defense to liability under Section 259 of the Portal-to-Portal Act. The defendants, however, have chosen [**69] not to pursue this defense (Docket No. 244 at 32); thus the plaintiffs' motion with regard to the defense is moot.

**VI. Liquidated Damages**

Finally, the plaintiffs have moved for summary judgment with regard to their claim for liquidated damages.

542 F. Supp. 2d 790, *; 2008 U.S. Dist. LEXIS 28109, **;
13 Wage & Hour Cas. 2d (BNA) 1010

[HN11]Under FLSA, an employer in violation of the statute "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, a court "in its sound discretion" may reduce the amount of liquidated damages if an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA]." 29 U.S.C. § 260.

To demonstrate that a good faith reduction in liquidated damages is appropriate, [30] an employer must demonstrate that the violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose [liquidated damages]." *Elwell v. Univ. Hosps. Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)). [**70] This burden is "substantial," and unless an employer carries this burden, a district court lacks power or discretion to reduce liquidated damages for an employer found liable for violating FLSA. *Id.*

> 30  The good faith defense to liquidated damages embodied in Section 260 is distinct from the good faith defense to liability embodied in Section 259, which is not at issue here. *See Section V supra.*

The defendants assert that plaintiffs have failed to provide any facts relevant to the good faith defense to liquidated damages. However, the defendants misstate the burden under Section 260--it is not the responsibility of the plaintiffs to prove bad faith, but, rather, it is the defendants' [*816] burden to prove good faith. *Id.* Additionally, the defendants argue that a ruling on liquidated damages is premature as there are genuine issues of fact as to "whether defendants violated the FLSA or acted in good faith." As has been discussed already, however, the only genuine issues of fact that exist go to the application of the *de minimis* rule, and the defendants have not come forward with any facts that would justify a reduction in liquidated damages if the *de minimis* rule does not apply to the uncompensated [**71] work in which the plaintiffs engage.

Thus, the plaintiffs' motion for summary judgment with respect to the defendants' defense to liquidated damages under Section 260 will be granted.

**CONCLUSION**

For the reasons discussed herein, the motion for partial summary judgment filed by the plaintiffs will be granted in part and denied in part. Specifically, summary judgment will be granted with regard to the plaintiffs' claim that the donning and doffing of frocks is compensable under FLSA, denied with regard to the question of whether the time that the employees spend engaging in such activities is *de minimis,* and denied with regard to the plaintiffs' meal period claim. The plaintiffs' summary judgment motion with regard to the defendants' good faith defense to liability is moot, and summary judgment will be granted with regard to the defendants' good faith defense to liquidated damages.

Additionally, the motion to strike filed by the plaintiffs will be granted, and the motion to decertify filed by the defendants will be denied.

An appropriate order will enter.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

**ORDER**

For the reasons expressed in the accompanying Memorandum, the Motion [**72] for Partial Summary Judgment (Docket No. 236) filed by the plaintiffs is **GRANTED** in part and **DENIED** in part. Specifically, summary judgment is granted with regard to the plaintiffs' claim that the donning and doffing of frocks is compensable under FLSA, denied with regard to the question of whether the time that the employees spend engaging in such activities is *de minimis,* and denied with regard to the plaintiffs' meal period claim. The plaintiffs' summary judgment motion with regard to the defendants' good faith defense to liability is moot, and summary judgment is granted with regard to the defendants' good faith defense to liquidated damages.

Additionally, the Motion to Strike (Docket No. 255) filed by the plaintiffs is **GRANTED**, and the Motion to Decertify Claims for Meal Period Production Work (Docket No. 234) filed by the defendants is **DENIED**.

It is so Ordered.

Entered this 31st day of March 2008.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

LEXSEE



Cited
As of: Jun 12, 2008

SERGIO MAURICE, Plaintiff, -against- N.Y.C. DEPARTMENT OF CORREC-
TIONS, MESSHALL, ADMINISTRATIVE WARDEN SHOENFIELD, and DIETI-
CIAN MS. SMITH, Defendants.

93 Civ. 6008 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1997 U.S. Dist. LEXIS 11057

July 30, 1997, Decided
July 30, 1997, FILED

**DISPOSITION:** [*1] Defendants' motion for sum-
mary judgment granted in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, the New
York City Department of Corrections (DOC), an admin-
istrative warden, and a dietician, asked a United States
district court to grant their joint motions for summary
judgment pursuant to Fed. R. Civ. P. 56. Plaintiff pris-
oner filed this action pursuant to 42 U.S.C.S. § 1983 for
violation of his Eighth Amendment rights.

**OVERVIEW:** When the prisoner was incarcerated he
advised a doctor employed by the DOC that he was al-
lergic to meat and requested a meat-free diet. The doctor
informed him that the DOC did not offer a vegetarian
diet. The prisoner later became ill after he was served a
meal with rice that he believed contained "chicken base."
He was taken to a medical clinic and had recovered by
the following day. The court found that the pro se com-
plaint seemed to allege that the DOC violated the pris-
oner's Eighth Amendment rights by failing to provide a
vegetarian diet and sought damages under § 1983. The
court held that as an agency of the city, the DOC was not
a suable entity. With regard to the warden and the dieti-
cian, the court held that the prisoner failed to support his
claim that they were deliberately indifferent to his medi-
cal needs in violation of the Eighth Amendment. Fur-
thermore, the prisoner did not show that he suffered from
a sufficiently serious medical condition to implicate
Eighth Amendment concerns and failed to show that the
warden and dietician knew of, and disregarded, an "ex-
cessive risk" to the prisoner's health or safety.

**OUTCOME:** The court granted the joint motion for
summary judgment filed by the DOC, the administrative
warden, and the dietician in the prisoner's action for
damages under § 1983.

**CORE TERMS:** diet, summary judgment, correction,
doctor, state law, deliberate indifference, vegetarian,
prisoner's, dietary, rice, prescription, deposition, color,
eating, matter of law, medical clinic, medical needs, sub-
jective test, meat-free, religious, religion, prison, suable,
entity, prong, meat, state of mind, failing to provide, ma-
terial fact, objective test

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards >
Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards >
Materiality*
*Criminal Law & Procedure > Sentencing > Cruel &
Unusual Punishment*
[HN1]Summary judgment is proper where the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that

Page 1

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
*Governments > State & Territorial Governments > Claims By & Against*
[HN2]Under Fed. R. Civ. P. 17(b), a city agency's capacity to be sued is determined by state law.

*Governments > Local Governments > Charters*
*Governments > Local Governments > Claims By & Against*
[HN3]Chapter 16 § 396 of the charter of the City of New York provides that all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law. New York City, N.Y., Admin. Code. § 16 § 396.

*Civil Rights Law > Immunity From Liability > Local Officials > General Overview*
[HN4]As an agency of the City of New York, the Department of Corrections is not a suable entity.

*Civil Rights Law > Section 1983 Actions > Elements > Color of State Law > General Overview*
*Civil Rights Law > Section 1983 Actions > Scope*
[HN5]To recover under 42 U.S.C.S. § 1983, a plaintiff must prove that the conduct complained of was committed by a person under color of state law and deprived the plaintiff of a right under the Constitution or a federal statute.

*Civil Rights Law > Section 1983 Actions > Elements > Color of State Law > General Overview*
[HN6]Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken under color of state law.

*Civil Rights Law > Prisoner Rights > Medical Treatment*
*Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*

[HN7]A prisoner may recover under § 1983 for a violation of the Eighth Amendment if he is able to demonstrate that a defendant, acting under color of state law, acted with deliberate indifference to the prisoner's serious medical needs.

*Civil Rights Law > Prisoner Rights > Medical Treatment*
*Civil Rights Law > Section 1983 Actions > Scope*
*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment*
[HN8]To prove deliberate indifference to "serious" medical needs, the prisoner must satisfy both an objective and subjective test. The objective test is satisfied by showing a condition of urgency, capable of producing death, degeneration, or extreme pain such that the alleged deprivation of medical assistance is sufficiently serious. The subjective test is satisfied by showing that the defendant acted with a state of mind equivalent to criminal recklessness i.e., that the defendant knew of and disregarded a grave risk to the prisoner's health or safety.

COUNSEL: APPEARANCES:

SERGIO MAURICE, Plaintiff, Pro Se, Sullivan Correctional Facility, Fallsburg, New York.

For Defendants: PAUL A. CROTTY, Corporation Counsel Of The City Of New York, New York, NY, Of Counsel: Michael S. Brown, Esq.

JUDGES: JOHN F. KEENAN, United States District Judge

OPINION BY: JOHN F. KEENAN

OPINION

OPINION and ORDER

**JOHN F. KEENAN, United States District Judge:**

Before the Court is the joint motion for summary judgment of defendants New York City Department of Corrections ("DOC"), Administrative Warden Shoenfield, and Dietician Smith, pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted. [1]

> 1   Defendant Corrections Officer Olders has not been served in this action, nor is a corrections officers by that name known to the DOC. Further, Plaintiff explains that defendant "Masshall" is a typographical error; he apparently used the term in order to identify Corrections Officer Olders as a "Mess Hall" officer.

[*2] **Background**

Plaintiff Sergio Maurice was incarcerated at the DOC's Anna M. Kross Center ("AMKC") from June 14, 1993 to July 28, 1993 and from September 16, 1993 to October 4, 1993. When Plaintiff arrived at AMKC, he advised a doctor employed by the DOC that he was allergic to meat and requested a meat-free diet. The doctor informed him that the DOC did not offer a vegetarian diet. However, the doctor noted Plaintiff's dietary preference on a "Diet Prescription Request" dated June 15, 1993. The doctor also diagnosed Plaintiff as suffering from obesity, and prescribed a low sodium and low fat diet for him. The doctor's diagnosis and prescription are reflected in the "Diet Prescription Request."

On June 19, 1993, Plaintiff was served a meal with yellow-colored rice. Plaintiff believes that the rice contained "chicken base." After eating a few spoonfuls of rice, Plaintiff became sick. He claims to have suffered stomach cramps, sweating, and diarrhea immediately after eating the rice. Plaintiff informed a correction officer that he was not feeling well. About an hour later, Plaintiff was taken to a medical clinic for treatment. He was given tea to drink. By the next day, he [*3] had recovered.

After the incident, Plaintiff began eating jelly and bread twice a day. He also began eating "junk food" purchased from the prison commissary. As a result of this diet, Plaintiff claims he gained 85 pounds.

Construed liberally, the complaint seems to allege that Defendants violated Plaintiff's First and Eighth Amendment rights by failing to provide him a vegetarian diet. He seeks $ 500,000 in damages under 42 U.S.C. § 1983.

**DISCUSSION**

Defendants now move for summary judgment in their favor on both of Plaintiff's claims. Defendant DOC contends that it is entitled to judgment as a matter of law on the grounds that it is not a suable entity. The individual defendants assert that Plaintiff fails to provide proof of an Eighth or First Amendment violation sufficient to create an issue of fact for trial. The Court addresses each contention in turn below, applying the well-established standard requiring summary judgment [HN1]where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter [*4] of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

**I. Defendant DOC's Motion for Summary Judgment**

Defendant DOC moves for summary judgment on the ground that it is not a suable entity. The Court agrees with the DOC.

[HN2]Under Fed. R. Civ. P. 17(b), a city's agency capacity to be sued is determined by state law. [HN3]Chapter 16 § 396 of the Charter of the City of New York provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Admin. Code & Charter ch. 16 § 396.

It is well settled that, [HN4]as an agency of the City of New York, the Department of Corrections is not a suable entity. See Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996); Jolly v. New York City Dep't of Corrections v. New York City Dep't Corrections, No. 89 Civ. 4520 (JFK), 1989 WL 153053, at *4 (S.D.N.Y. Dec. 13, 1989). Accordingly, the claim against the Department of Corrections is dismissed.

[*5]

The individual defendants, Administrative Warden Shoenfield and Dietician Smith, move for summary judgment on the grounds that Plaintiff fails to support his claim that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Shoenfield and Smith also argue that Plaintiff's First Amendment claim fails as a matter of law because Plaintiff admits that his dietary preferences were not connected to any religious requirements.

[HN5]To recover under 42 U.S.C. § 1983, a plaintiff must prove that the conduct complained of was committed by a person "under color of state law" and deprived the plaintiff of a right under the Constitution or a federal statute. See Gomez v. Toledo, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980). [HN6]"'Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken "under color of" state law.'" Monroe v. Pape, 365 U.S. 167, 184, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961) (quoting United States v. Classic, 313 U.S. 299, 326, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941)).

Defendants Shoenfield and Smith [*6] are employees of the DOC. They therefore do not dispute that they acted under color of state law for purposes of this motion. The question thus becomes whether there are any genuine issues of disputed, material fact requiring a trial of Plaintiff's Eighth and First Amendment claims.

**A. Eighth Amendment Claim**

The Supreme Court has recognized that [HN7]a prisoner may recover under § 1983 for a violation of the Eighth Amendment if he is able to demonstrate that a defendant, acting under color of state law, acted with deliberate indifference to the prisoner's "serious" medical needs. See Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). [HN8]To prove deliberate indifference, the prisoner must satisfy both an objective and subjective test. See Hathaway v. Coughlin, 99 F.3d 550, 553 (2nd Cir. 1996). The objective test is satisfied by showing "a condition of urgency," capable of producing "death, degeneration, or extreme pain" such that the alleged deprivation of medical assistance is sufficiently serious. See id. at 553 (internal quotations omitted). The subjective test is satisfied by showing that the defendant acted with a state of mind equivalent [*7] to criminal recklessness -- i.e., that the defendant knew of and disregarded a grave risk to the prisoner's health or safety. See id.

The Court finds that Plaintiff fails to satisfy either prong of this test. First, with respect to the objective test of deliberate indifference, Plaintiff has not shown that he suffered from a sufficiently "serious" medical condition to implicate Eighth Amendment concerns. Plaintiff ate a few spoonfuls of rice, after which he suffered from stomach cramps and diarrhea. See Pl. Dep. at 90, 96. After being seen by a nurse at the medical clinic, he was given tea to drink and released with instructions to return the next day if he was not feeling better. See id. at 101. Plaintiff states that he felt better the next morning. See id. at 105. By Plaintiff's own account, that was the extent of his illness. These facts do not describe a condition of urgency, capable of producing death, degeneration, or extreme pain. See Hathaway, 99 F.3d at 553. Plaintiff therefore fails to satisfy the objective prong of his deliberate indifference claim.

Second, Plaintiff fails to satisfy the subjective prong of the deliberate indifference test by showing [*8] that defendants Shoenfield and Smith knew of and disregarded an "excessive risk" to Plaintiff's health or safety. With respect to his actual illness, Plaintiff testified at deposition that he was taken to the medical clinic within one hour after telling a corrections officer that he was ill. He was then treated at the clinic. Plaintiff does not point to any facts demonstrating that he received anything other than prompt and proper treatment. Therefore, Plaintiff does not show facts supporting an inference of Defendants' deliberate indifference to his medical needs with respect to his medical treatment.

Plaintiff also cannot satisfy the subjective test by complaining that the prison failed to provide him with a meat-free diet. Plaintiff testified that when he told the facility's doctor that he was allergic to meat, the doctor advised Plaintiff that the prison did not offer vegetarian meals. See Pl. Dep. at 50. Indeed, the Diet Prescription Request form which Plaintiff claims Defendants failed to follow, and which indicates Plaintiff's meat allergy, states plainly: "Vegetarian Diets are not offered in this DOC System." See Pl. Exh. A. These facts do not show that defendants [*9] Shoenfield or Smith acted with a culpable state of mind in failing to provide Plaintiff with a special vegetarian diet. Indeed, the evidence before the Court does not even show that those defendants were involved in the circumstances forming the basis of Plaintiff's claims. Accordingly, the Court grants defendants Shoenfield and Smith's motion for summary judgment on Plaintiff's Eighth Amendment claim. [2]

> 2   To the extent that Plaintiff appears to blame Defendants for his weight gain while imprisoned, the Court finds this claim to be utterly ludicrous. Plaintiff testified at deposition that his weight gain is due to his own decision to eat bread, jelly, and junk food. See Pl. Dep. at 111.

**B. First Amendment Claim**

Plaintiff also claims that Defendants' failure to provide him with a meat-free diet violated his First Amendment rights. The Court finds that Plaintiff fails to point to any facts indicative of a First Amendment violation.

It is DOC policy to accommodate prisoners' dietary requests when [*10] such requests are based on religious restrictions. Plaintiff, who claims to adhere to the Rastafarian religion, explicitly stated at deposition that his dietary request had "nothing to do with [his] religion." See Pl. Dep. at 33. Because Plaintiff's practice of religion is not implicated by his claim that Defendants' failed to respect his dietary preference, Plaintiff does not have a viable First Amendment claim. See Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir. 1992) (per curiam) (First Amendment requires that inmate be provided "a diet that is consistent with his *religious* scruples") (emphasis added) (citing Kahane v. Carlson, 527 F.2d 492 (2d Cir. 1975)). Accordingly, the Court also dismisses Plaintiff's First Amendment claim.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. The Court orders this action closed and directs the Clerk to remove it from the active docket.

**SO ORDERED.**

Dated: New York, New York

July 30, 1997

**JOHN F. KEENAN**

United States District Judge

## JUDGMENT

Defendants having moved for summary judgment pursuant to Fed. R. Civ. [*11] P. 56 and the said motion having come before the Honorable John F. Keenan, United States District Judge, and the Court thereafter, on July 30, 1997, having rendered its Opinion (79007) and Order granting the defendants' motion, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion (79007) and Order of July 30, 1997, defendants' motion for summary judgment is hereby granted in its entirety; accordingly, the case is closed and removed from the active docket.

**DATED:** New York, New York

July 31, 1997