The Law Office of Paul B. Weitz & Associates
Paul B. Weitz, Esq. (PW-0025)
233 Broadway, 5th Floor
New York, New York 10279

Co-Counsel for Plaintiffs:
Gottlieb & Associates
Jeffrey M. Gottlieb, Esq. (JG-7905)
150 East 18th Street, Suite PHR
New York, New York 10003


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ERIC EDWARDS, Individually and on Behalf         ECF 2008 Civ: 3134 (DCL)
of All Other Persons Similarly Situated,

                              Plaintiffs,

           -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CITY OF NEW YORK and THE CITY
OF NEW YORK,

                              Defendants.
------------------------------------------------------------------X


       Jeffrey M. Gottlieb, Esq., declares the following:

       1.   I am an attorney admitted to practice law before the Courts of the States of

New York and the United States District Courts for the Southern New York.

       2.   I am co-counsel for the plaintiff, Eric Edwards and submit this Declaration in

opposition to defendant, THE DEPARTMENT OF CORRECTIONS OF THE CITY OF

NEW YORK and THE CITY OF NEW YORK's Motion to Dismiss.

       3.      Annexed hereto as Exhibit "A" is the Summons and Complaint.

4.      Annexed hereto as Exhibit "B" is the Declaration of Plaintiff, Eric Edwards.

5.      Annexed hereto, as Exhibit "C" and submitted herewith is the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss. ("Memorandum of Law").

6.      As demonstrated in the Memorandum of Law, the motion should be denied in its entirety because, it is premature and Plaintiff, both Individually and on Behalf "Persons Similarly Situated" has established viable claims under the Fair Labor Standards Act, 29 U.S.C. 201 et. seq.


Dated: New York, New York
       July 17, 2008

                                                    /S/
                                        _____
                                        Jeffrey M. Gottlieb, Esq. (JG-7905)
                                              Gottlieb & Associates
                                              Co-Counsel for Plaintiffs
                                        150 East 18th Street, Ste. PHR
                                             New York, New York 10003
                                                   (212) 228-9795
                                                  (212) 982-6284 Fax

                                        THE LAW OFFICE OF PAUL B. WEITZ
                                            Paul B. Weitz, Esq. (PW-0025)
                                        Attorneys for Plaintiff, Individually and on
                                        Behalf of All Other Persons Similarly Situated
                                             233 Broadway, 5th Floor
                                             New York, New York 10279
                                                   (212) 346-0045
                                                  (212) 346-0876 Fax

# EXHIBIT A

The Law Office of Paul B. Weitz & Associates
Paul B. Weitz, Esq. (PW-0025)
233 Broadway, 5th Floor
New York, New York 10279

Co-Counsel for Plaintiffs:
Jeffrey M. Gottlieb, Esq. (JG-7905)
150 East 18th Street
Suite PHR
New York, New York 10003



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ERIC EDWARDS, Individually and on Behalf
of All Other Persons Similarly Situated,

                              Plaintiffs,

            -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CITY OF NEW YORK and THE CITY
OF NEW YORK,

                              Defendants.
-----------------------------------------------------------------X

ECF 2008 Civ:

**Collective**
**Action Complaint**
**Demand for Jury Trial**

Plaintiff, through his attorneys, complaining of Defendants, alleges as follows:

## INTRODUCTION

Plaintiff, and the putative members of the collective action are Correction Officers

("COs") employed by the Department of Corrections ("DOC"), an agency of the City of

New York ("NYC"). This action is brought pursuant to the Fair Labor Standards Act

("FLSA") seeking to compensate them for the time spent putting on their required

uniforms and equipment and the time spent changing back into their street clothes at the

end of their tour of duty ("Donning and Doffing") as well as the time for their meal

{00008806:}

breaks since they are required to be in uniform and remain in the facility during meal breaks for emergencies that might arise.

## NATURE OF ACTION

1. Plaintiff alleges on behalf of himself and other similarly situated current and former employees, classified by Defendants as correction officers, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§216 (b), that they are: (i) entitled to unpaid wages from Defendants for work performed for which they received no compensation at all, as well as for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 et seq.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the claims in this action pursuant to the provisions of 28 U.S.C. §§1331 and 1337. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. §216(b).

3. Venue is proper in this district pursuant to 29 U.S.C. §1391 as Defendants' principal places of businesses are in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

4. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

## PARTIES

5. Plaintiff at all relevant times is and was a resident of Rosedale in the County of Queens in the State of New York.

6. Defendant, NYC, is a municipality organized and existing pursuant to the laws of the State of New York and maintains its principal place of business in the City, County and State of New York

7. Defendants DOC and NYC are, and at all times material hereto, were public agencies within the meaning of FLSA Sec. 3(x), 29 U.S.C. 203 (x).

8. Defendants DOC and NYC are, and at all times material hereto, political subdivisions of the State of New York and a local government "employer" within the meaning of 29 U.S.C. 203 (r) and (s).

## COLLECTIVE ACTION ALLEGATIONS

9. Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants at any time since March 27, 2005 to the entry of judgment in this case (the "Collective Action Period"), as COs and who were not paid for all of the hours that they worked and received no compensation for overtime rates not less than one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members") .

10. This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are approximately 10,000 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

11. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

12. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

13. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

    a. whether the Defendants employed the Collective Action Members within the meaning of the FLSA;

    b. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    c. whether Defendants failed to pay the Collective Action Members for all hours worked by them as well as overtime compensation for all of the hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

d.  whether the time spent by the Collective Action Members donning their required uniform and equipment at the beginning of their work shift and the time spent doffing same at the end of the shift were done primarily for the benefit of Defendants and were integral and indispensable to Defendants' business operations and constitute compensable work time;

e.  whether the restrictions by Defendants placed on the meal breaks of the Collective Action Members deem such time as compensable work time;

f.  whether the Defendants have failed to compensate the Collective Action Members in connection with interruptions to their meal breaks;

g.  whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

h.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

i.  whether Defendants should be enjoined from such violations of the FLSA in the future.

14. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## STATEMENT OF THE FACTS

15. Plaintiff was a CO employed by Defendants at their facility on Rikers Island, Bronx County, New York from on or about May, 1991 until the present (the "time period").

16. Plaintiff's work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

17. The work performed by Plaintiff required little skill and no capital investment. His duties did not include managerial responsibilities or the exercise of independent judgment.

18. Plaintiff often worked in excess of 40 hours a week, yet the Defendants willfully failed to pay Plaintiff (and all other COs) compensation for all hours worked by him as well as overtime compensation of one and one-half times his regular hourly rate. Specifically, Defendants have failed to pay Plaintiff and the Class Action Members for the time spent donning and doffing their uniforms and equipment as well as the time for their meal breaks.

19. In addition to Plaintiff, during the time period, Defendants usually employed al least 8,000 other CO employees simultaneously.

20. Throughout that time and, upon information and belief, both before that time (throughout the Class Period) and continuing until today, the Defendants have likewise employed other individuals, like the Plaintiff (the Collective Action Members) in positions that required little skill and no capital investment and their duties and responsibilities did not include any managerial responsibilities or the exercise of

independent judgment. They do not have the authority to hire and fire other employees, and they are not responsible for making hiring and firing recommendations.

21. Such individuals have worked in excess of 40 hours a week, yet Defendants have likewise willfully failed to pay them any compensation for all of the hours worked by them as well as overtime compensation of one and one-half times their regular hourly rate.

22. As stated, the exact number of such individuals is presently unknown, but within the sole knowledge of the Defendants and can be ascertained through appropriate discovery.

23. Throughout all relevant time periods, upon information and belief, and during the course of Plaintiff's own employment and the course of the Collective Action Period, the Defendants failed to maintain accurate and sufficient time records.

24. Upon information and belief, Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of 29 C.F.R. § 516.4;

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT

25. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

26. At all relevant times, Defendants have been and continue to be an employer within the meaning of FLSA, 29 U.S.C. §§203(s).

27. At all relevant times, Defendants employed and/or continued to employ, Plaintiffs within the meaning of the FLSA.

28. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216 (b). Plaintiff's written consent is attached hereto and incorporated by reference.

29. At all relevant times, the Defendants had a policy and practice of refusing to pay the COs for all of the hours worked by them as well as overtime compensation for their hours worked in excess of forty hours per workweek.

30. As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action Members, for all hours worked by them as well as for overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendants have violated and continue to violate, the FLSA, 29 U.S.C. §§201 *et seq.*, including 29 U.S.C. §§207(a)(1) and 215 (a).

31. As a result of Defendants' failure to record, report, credit, and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

32. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

33. Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the Collective Action Members, are entitled to recover from Defendants their unpaid wages, their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable

attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

## PRAYER FOR RELIEF

WHEREFORE Plaintiff on behalf of himself and all other similarly situated Collective Action Members respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members and tolling of the statue of limitations;

b.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  An order equitably tolling the Statute of Limitations for a period of 6 years prior to the commencement of this action;

e.  An award of unpaid wages and overtime compensation due under the FLSA;

f.   An award of liquidated damages as a result of the Defendants' willful

failure to pay wages and overtime compensation pursuant to 29 U.S.C. §

216;

g.   An award of prejudgment and post-judgment interest;

h.   An award of costs and expenses of this action together with reasonable

attorneys' and expert fees; and

i.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
        March 27, 2008

THE LAW OFFICE OF PAUL B. WEITZ
Paul B. Weitz, Esq. (PW-0025)
Attorneys for Plaintiff, Individually and on
Behalf of All Other Persons Similarly Situated
233 Broadway, 5th Floor
New York, New York 10279
Tel: (212)346-0045
Fax: (212)346-0876

Co-Counsel
Jeffrey M. Gottlieb, Esq. (JG-7905)
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: (212)228-9795
Fax: (212)982-6284

Exhibit A



50000 SERIES
30% P.C.W.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _the City of New York_ to pay me overtime wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____    1/16/08    ERIC EDWARDS
Signature                   Date       Print Name

ECF 2008 CIV: _____

UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORIK

ERIC EDWARDS, Individually and on Behalf of
All Other Persons Similarly Situated,

                Plaintiffs,

      -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CNY and THE CITY OF NEW YORK,

              Defendants.

## COMPLAINT

PAUL B. WEITZ & ASSOCIATES PC
Paul B. Weitz, Esq., PW-0025
*Attorneys for Plaintiffs*
233 Broadway, 5th Floor
New York, New York  10279-0003
(212) 346-0045

CO-COUNSEL:
Jeffrey M. Gottlieb, Esq. JG-7905
*Attorneys for Plaintiffs*
150 E. 18th Street, Suite PHR
New York, New York 10003
(212) 228-9795

*Service of copy of the within*        *is hereby admitted.*

*Dated:*

            .............................
            *Attorneys for*

PAUL B. WEITZ & ASSOCIATES PC
Paul B. Weitz, Esq., PW-0025
*Attorneys for Plaintiffs*
233 Broadway, 5th Floor
New York, New York  10279-0003
(212) 346-0045

CO-COUNSEL:
Jeffrey M. Gottlieb, Esq. JG-7905
*Attorneys for Plaintiffs*
150 E. 18th Street, Suite PHR
New York, New York 10003
(212) 228-9795

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____ District of _____ New York _____

ERIC EDWARDS, Individually and on Behalf of
All Other Persons Similarly Situated,

V.

THE DEPARTMENT OF CORRECTIONS OF
THE CNY and THE CITY OF NEW YORK,

### SUMMONS IN A CIVIL ACTION

CASE NUMBER:

08 CV 3134

TO: (Name and address of Defendant)

Dept. of Corrections of the CNY, 60 Hudson St., 6th Floor, NY NY 10013
City of New York Law Dept., 100 Church St., NY NY 10007

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PAUL B. WEITZ & ASSOCIATES, PC
233 Broadway, 5th Floor
New York, New York 10279
(212) 346-0045

Co-Counsel:
JEFFREY M. GOTTLIEB, ESQ.
150 East 18th Street, Suite PHR
New York, New YOrk 10003
(212) 228-9795

an answer to the complaint which is served on you with this summons, within _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

MAR 2 7 2008

CLERK

(By) DEPUTY CLERK                                        DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____      _____
                        Date                              *Signature of Server*

                                          _____
                                          *Address of Server*

_____
(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

ECF 2008 CIV: _____

UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC EDWARDS, Individually and on Behalf of
All Other Persons Similarly Situated,

                    Plaintiffs,

          -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CNY and THE CITY OF NEW YORK,

                    Defendants.

## SUMMONS

| PAUL B. WEITZ & ASSOCIATES PC | CO-COUNSEL: |
|---|---|
| Paul B. Weitz, Esq., PW-0025 | Jeffrey M. Gottlieb, Esq. JG-7905 |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |
| 233 Broadway, 5th Floor | 150 E. 18th Street, Suite PHR |
| New York, New York  10279-0003 | New York, New York 10003 |
| (212) 346-0045 | (212) 228-9795 |

*Service of copy of the within*          *is hereby admitted.*

*Dated:*

                    ...........................
                    *Attorneys for*

| PAUL B. WEITZ & ASSOCIATES PC | CO-COUNSEL: |
|---|---|
| Paul B. Weitz, Esq., PW-0025 | Jeffrey M. Gottlieb, Esq. JG-7905 |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |
| 233 Broadway, 5th Floor | 150 E. 18th Street, Suite PHR |
| New York, New York  10279-0003 | New York, New York 10003 |
| (212) 346-0045 | (212) 228-9795 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ERIC EDWARDS, Individually and on Behalf
of All Other Persons Similarly Situated,

ECF 2008 Civ: 3134 (DLC)

                                         Plaintiffs,

             -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CITY OF NEW YORK and THE CITY
OF NEW YORK,

                                         Defendants.

-----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## THE COMPLAINT IN PART

*GOTTLIEB & ASSOICATES*
*Jeffrey M. Gottlieb, Esq. (JG-7905)*
*Attorneys for Plaintiff, Individually and on*
*Behalf of All Other Persons Similarly Situated*
*150 East 18th Street, Suite PHR*
*New York, New York 10003*
*Tel: (212)228-9795*
*Fax: (212)982-6284*

Jeffrey M. Gottlieb, Esq.,
Of Counsel.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………....ii

PRELIMINARY STATEMENT…………………………………………………………….1

ARGUMENT
      POINT 1
            TIME SPENT BY CORRECTIONS OFFICERS DONNING
            AND DOFFING UNIFORMS AND EQUIPMENT IS
            COMPENSABLE PURSUANT TO THE FLSA……………………………….1

            A.    CONTROLLING U.S. SUPREME COURT PRECEDENT…………..…1

            B.    CONTROLLING 2ND CIRCUIT PRECENDENT…………………….3

            C.    CORRECTION OFFICERS' UNIFORMS AND EQUIPMENT
                ARE INTEGRAL AND INDESPENSABLE TO THEIR
                PRINCIPAL ACTIVITIES……………………………………….....5

      POINT II
            THE TIME SPENT DONNING AND DOFFING BY
            PLAINTIFFS IS NOT de minimis………………………………..……………...8

CONCLUSION……………………………………………………………………..11

# TABLE OF AUTHORITIES

**PAGES**

**CASES** .............................................................................................................................

Abbe v. City of San Diego,
Nos. O5 cv 1629 DMS (JMA), 06 cv 0538 DMS (JMA),
2007 WL 4146696 (S.D. Cal. Nov. 9, 2007) ........................................................- 7 -

Anderson, 328 U.S. at 692 .............................................................................- 10 -

De Asencio v. Tyson Foods, Inc., 500 F.Sd S61, 374-75 (3d Cir. 2007) ..................- 11 -

Gorman v. Consol. Edison Corp., 488 F.3d 586 (2nd Cir. 2007) ...........................- 4 -

IBP, Inc. v. Alvarez, 546 U.S. 21 (2005) ...............................................................- 3 -

Lemmon v. City of San Leandro, (USDC ND CA, C06-07107 (MHP), 12/7/07) .............- 6 -

Lindow v. United States, 738, F2d 1057, 1063 (9th Cir. 1984) ..............................- 11 -

Martin v. City of Richmond, 504 F. Supp. 2d 766, 774 (N.D. Cal 2007) ....................- 8 -

Martin v. City of Richmond, No. C06-06146 CRB, 2007WL 2317590 ........................- 6 -

Reich, 38 F.3d at 1126 ...................................................................................- 10 -

Spoerle v. Kraft Foods Global, Inc., (W.D. WI., 12/31/07, 3:07 cv 00300-bbc) .........- 7 -

Steiner v. Mitchell, 350 U.S. 247 (1956) ..............................................................- 3 -

Taylor v. Vt. Dep't. of Educ., 313 F. 3d 768, 776 (2nd Cir. 2002) ...........................- 5 -

Tennessee Coal, Iron & Rail Co., 321 U.S. at 602 ................................................- 10 -

Walling v. General Industries Co., 330 U.S. 545, 547-48 (1947) ..............................- 9 -

Yi v. Sterling Collision Centers, Inc., 480 F.3d 505, 507 (7th Cir. 2007) ...................- 9 -


STATUTES

Fair Labor Standards Act, 29 U.S.C. Section 201 et. seq. ........................................- 2 -

{00010899:}ii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ERIC EDWARDS, Individually and on Behalf
of All Other Persons Similarly Situated,

           Plaintiffs,

   -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CITY OF NEW YORK and THE CITY
OF NEW YORK,

         Defendants.

----------------------------------------------------------------X

ECF 2008 Civ: 3134 (DLC)

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANTS MOTION TO
DISMISS THE COMPLAINT
IN PART**

## PRELIMINARY STATEMENT

Plaintiff Eric Edwards is a corrections officer ("CO") employed by the Defendant, City of New York ("City"), and commenced this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 201 et. seq. ("FLSA") for unpaid overtime wages for the time spent "Donning and Doffing" their required uniforms and specialized gear, as well as time for meal breaks which is not the subject of the instant motion. The City seeks to dismiss the "Donning and Doffing" portion of the Complaint on the grounds that the time involved is "non-compensable under the FLSA" as a matter of law and even if compensable, it would be *de minimis.*

## ARGUMENT

### POINT 1

*TIME SPENT BY CORRECTIONS OFFICERS DONNING AND DOFFING
UNIFORMS AND EQUIPMENT IS COMPENSABLE PURSUANT TO THE FLSA*

A.  CONTROLLING U.S. SUPREME COURT PRECEDENT

The most recent and leading authority by the U.S. Supreme Court on this issue is IBP, Inc. v. Alvarez, 546 U.S. 21 (2005). The unanimous Court in IBP clarified the exceptions that

{00010894;}1

the Portal-to-Portal Act of 1947 made to the FLSA. First, the Court cited its earlier decision in Steiner v. Mitchell, 350 U.S. 247 (1956), which held "activities, such as donning and doffing of specialized protective gear that are 'performed either before or after the regular work shift, on or off the production line, are compensable under the Portal-to-Portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)".' Id. at 254. The Court expressly reaffirmed their earlier holding in Steiner and added "we conclude that the locker rooms where the special safety gear is donned and doffed are the relevant 'place of performance' of the principal activity that the employee was employed to perform within the meaning of §14(a)(1). Walking to that place before starting work is excluded from FLSA coverage, but the statutory text does not exclude walking from that place to another area within the plant immediately after the workday has commenced." Id. 32, 33.

The uniforms and specialized gear worn by the plaintiffs, and mandated by the defendant particularly the bullet resistant vest and canister of tear gas (Edwards Decl. Par. 4, 10), are necessary for their health and safety and are integral and an indispensable part of their principal activity and the time spent donning and doffing them are principal activities and are compensable pursuant to the FLSA.

It is common knowledge that prisons, including Rikers Island, are dangerous environments for both Corrections Officers and inmates alike. Without the bullet resistant vests, tear gas, knives and other safety equipment that the Corrections Officers are required to wear, their jobs would be impossible and unsafe to carry out effectively without endangering their safety.

B.    CONTROLLING 2ND CIRCUIT PRECEDENT

Gorman v. Consol. Edison Corp., 488 F.3d 586 (2nd Cir. 2007), cert. denied (June 9, 2008) is the only 2nd Circuit decision on the donning and doffing issue post IBP. Gorman cited Steiner for "dealing as it does with donning and doffing gear that protects against workplace dangers that transcend ordinary risks." Id. at (600). Steiner therefore, supports the view that when work is done in a dangerous and/or lethal atmosphere, the measures that allow entry and immersion into that destructive element may be integral to all work done there "... just as a diver's donning of a wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done." Id. at 601.

In the instant case, there is no doubt that a prison, especially Rikers' Island, is a "dangerous and/or lethal atmosphere" and the CO's bullet resistant vest, canister of tear gas and uniform are absolutely necessary for their health and welfare and are integral and indispensable to their principal activities, supervising, protecting and housing inmates.

Defendants cite Gorman (Def. Mot. P. 3-7) and agree that the "donning and doffing of uniforms by Corrections Officers are required and necessary, and thus indispensable" (Id. at 5) but argue that they are not integral and thus non compensable (Id. at 6). Defendants also argue that the CO's uniforms do not implicate a "heightened risk to the vital considerations of health and hygiene" (Id. at 4). Plaintiffs disagree with this analysis, and defendants have conspicuously failed to mention the CO's equipment anywhere in their motion or brief- despite the fact that plaintiffs have explicitly alleged that they are seeking compensation for donning and doffing "required uniforms and equipment" (Plaintiffs' Complaint, pg. 1, 5, 6). It can hardly be argued that the CO's equipment is not necessary for their health and is not a vital consideration.

Without such protective safety gear and equipment, the COs lives would be put a risk each and every time they show up for their shifts. Thus, it is unreasonable for Defendants to

argue that the donning and doffing of such safety gear and equipment is not integral and indispensable to the CO's employment.

Defendants reliance on Gorman is misplaced and Gorman is distinguishable from the case at bar. On a motion to dismiss pursuant to Rule 12(b)(6) the "Court must accept as true all allegations in the Complaint and draw all reasonable inferences in favor of the non-moving party. Id. at 597 citing, Taylor v. Vt. Dep't. of Educ., 313 F. 3d 768, 776 (2nd Cir. 2002). Plaintiffs allege that the donning and doffing of their uniforms and equipment "were done primarily for the benefit of Defendants and were integral and indispensable to Defendants' business operations and constitute compensable work time." (Plaintiffs' Comp. Par. 13(d)). Gorman dealt with two issues: the time to go through security at a nuclear power plant and donning and doffing "metal capped safety boots, safety glasses, and a helmet (if applicable)." Id. at 598. The Gorman court held that the activities to enter and exit the plant were not integral to the principal activities and that the donning and doffing of "generic protective gear (helmet, safety glasses and steel-toed boots)" were also not integral.

In the matter at hand, the uniform and mandated safety equipment of a CO are axiomatically different and distinguishable from the gear in Gorman in that the equipment, especially the bullet resistant vest and canister of tear gas, is not the "generic protective gear" envisioned in Gorman. Gorman cites IBP regarding "non unique 'gear'" like the gear worn by Plaintiffs. Id. at 605. Furthermore, the safety gear and equipment worn by the plaintiffs is not generic in that they are specialized pieces of safety equipment not commonly available to the general public

C.    CORRECTION OFFICERS' UNIFORMS AND EQUIPMENT ARE INTEGRAL AND INDESPENSABLE TO THEIR PRINCIPAL ACTIVITIES

One of the leading cases involving donning and doffing under the FLSA is <u>Lemmon v. City of San Leandro,</u> (USDC ND CA, C06-07107 (MHP), 12/7/07) a case which also involved uniforms and safety/police officers . In <u>Lemmon</u>, the police officers were required to wear prescribed uniforms and equipment and there was no policy whether the officers had to don and doff at the local police station or could do so at home.  The City had provided lockers to the officers to store their uniforms and equipment at the police station and "it appears that most officers don and doff entirely at the police station." <u>Id.</u> at 3.  The Court held that "A patrol officer cannot effectively do her job without her uniform.  Although an officer may perform some of her duties without the uniform, she cannot perform all of her required duties without the uniform.  For instance, officers must be in full uniform for the line-up or while on patrol. Furthermore, although it is theoretically possible for a police officer to do her job without her uniform – as in the case of undercover police officers – it would be a practical absurdity to eliminate uniforms due to the myriad benefits that officers and the SLPD obtain simply because officers are in uniform.  Specifically,  police uniforms are special because the uniform itself forms part of the equipment." <u>Id.</u> at 6.  The Court criticized an opposite result in <u>Martin v. City of Richmond,</u> No. C06-06146 CRB, 2007WL 2317590.   "Unlike practically any other profession, the police uniform is part of the continuum of  force.  This distinguishing characteristic of the police uniform made it necessary to the principal work performed.  Thus, this Court again respectfully disagrees with Judge Bryer's characterization of the police uniform as "mere clothes." <u>Id.</u>

The Court went on to state that "there is no distinction between the uniform and equipment because the police uniform with all its component parts functions as an integrated

whole that serves as an officer's survival suit… There can be no debate that police officers' equipment is necessary for them to perform their law enforcement duties." Id. The equipment and uniform of Correctional Officers is no less important to their survival and performance of their duties than police officers and perhaps even more necessary and important in the instant matter. The Court held that a "police officers' uniform and gear constitute personal protective equipment and do not constitute "clothes." ' Id. at 8. Thus, the time spent donning and doffing of same is not excluded by the Portal-to-Portal Act and are therefore, compensable. The Court went even further to hold that "donning and doffing may be compensable even if performed off the employer's premises." Id.

It should also be noted that Judge Patel in Lemmon also criticized the holding in Abbe v. City of San Diego, Nos. O5 cv 1629 DMS (JMA), 06 cv 0538 DMS (JMA), 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007), which required the donning and doffing to take place on the employers' premises. Judge Patel also stated that in addition to the benefits that the uniforms affords the officers there is also "a presumption that it benefits the SLPD since it would not have required the uniform otherwise." Id. at 10. "In sum, since both prongs of Alvarez are met, this court holds that the time spent donning and doffing the required uniform and gear is compensable under the FLSA. The integral and indispensable nature of the donning and doffing makes those activities principal to a police officer's duties". Id. at 11. The uniform and gear of a correction officer is just as integral and indispensable as those of a police officer.

In Spoerle v. Kraft Foods Global, Inc., (W.D. WI., 12/31/07, 3:07 cv 00300-bbc), the Court dealt with donning and doffing "personal protective equipment" such as a hard hat, steel-toed boots, etc. Id. at 3. This case was post Alvarez, Gorman and Lemmon and held that the donning and doffing of protective gear are "principal activities" within the meaning of the Portal-to-Portal Act. Id. at 12.

Despite this authority, Defendants cite <u>Martin v. City of Richmond,</u> 504 F. Supp. 2d 766, 774 (N.D. Cal 2007) for the proposition that "a police officer's uniform is not 'integral and indispensable' to his or her principal activities." (Def. Mot. at 7). <u>Martin</u> however, supports the plaintiff's position. This is because in that case, the Court also held that "[a]s for the donning and doffing of required 'duty equipment', *summary judgment [for defendant] is unwarranted,* notwithstanding defendant's formal policy of permitting officers to put on and take off their protective gear at home." <u>Id.</u> at 781 (emphasis supplied). Judge Breyer also held that officers must "actually have a meaningful opportunity" to dress at home and therefore it is not relevant where the officers actually don and doff their gear. <u>Id.</u> at 785. It is impractical for a Corrections Officer to change his or her uniform and gear at home and even if he or she wanted to, a portion of their gear, namely the canister of tear gas, would still be required to be signed in at Rikers' Island.

Furthermore, as Plaintiff, stated in his Declaration, "I nor any other CO's that I know, would wear their uniform (and gear) in public. We do not want the general public to know that we are CO's because it could compromise the safety of the CO and his or her family or cause other possible problems. CO's do not want to run into released former inmates or friends and family of inmates because they are either angry or upset with us due to their incarceration or want favors of some type for those inmates currently in jail. Therefore, almost no CO wears his or uniform in public." (Edwards Decl. Par. 7) In sum, the COs do not don and doff their safety equipment and gear at home for myriad reasons, including but not limited to, the practical issues of having to sign in and out the equipment, but also, their well founded fear for their safety from released inmates or the family and friends of inmates currently housed at the facility.

In sum, even at this early juncture the undisputed evidence shows that Plaintiffs cannot work at Rikers unless they first obtain unique safety equipment and undergo mandated security

tasks. Defendant has developed and implemented these measures and so controls the amount of time Plaintiffs spend qualifying themselves to work.

The security tasks are not merely generic pre- or postliminary to plaintiffs' principal duties. It cannot be said that obtaining and turning in tear gas canisters, and in moving from the place where the tear gas canisters are obtained and the assigned places of duty, and appearing and subjecting to inspection from superior officers at line up are activities "predominantly ... spent in [the employees'] own interests" from which "no benefit ... inure[s] to the company."


POINT II

*THE TIME SPENT DONNING AND DOFFING BY
PLAINTIFFS IS NOT de minimis*


As an alternative theory to dismiss, Defendants contend that the time spent by the COs donning and doffing their uniforms and equipment is *de minimis* as a matter of law. (Def. Mot. at 9). The same issue was raised by the defendants in Spoerle. Id. at 17. The court in Spoerle held:

> "I must reject defendant's argument for two reasons.
>
> First, defendant has adduced no evidence regarding the amount of time it takes to perform the activities at issue. Because defendant seeks to rely on an exception to the rule, it is defendant's burden to prove that the exception applies. Walling v. General Industries Co., 330 U.S. 545, 547-48 (1947); Yi v. Sterling Collision Centers, Inc., 480 F.3d 505, 507 (7th Cir. 2007) ("[T]he burden of proving entitlement to an exemption is on the defendant.") Thus, defendant's failure to adduce evidence on this point is fatal to its argument.
>
> Defendant suggests that the court could take judicial notice of the fact that the time in question is de minimis, but it cites no cases in which a court has done so. In fact, the Supreme Court expressly declined to rule on the question in Anderson, 328 U.S. at 692, so that "the trier of facts [could] mak[e] more definite finding as to the amount of walking time in issue.

Second, even if the total time at issue is only a few minutes, this would not necessarily mean that the time was not compensable. The "de minimis' exception has no statutory basis and <u>Anderson</u> is the only case in which the Supreme Court considered the exception's application. (Apparently, in <u>Alvarez</u> the parties did not raise the issue before the Supreme Court and the Court ignored it.) Although a number of courts have concluded that any task or group of tasks is not compensable if it takes less than 10 minutes, e.g. <u>Reich,</u> 38 F.3d at 1126, no court has explained why 10 minutes of work is worthy of compensation but 9 minutes and 59 seconds is not. In <u>Anderson,</u> the Court did not suggest that the exception was meant to be a judgment that an employee's work is free for the employer once it falls below some arbitrary amount of time. Rather, the Court stated that in some instances compensating employees for "a few seconds or minutes of work" will not be feasible "in light of the realities of the industrial world." <u>Id.</u>

This suggests a standard that considers not just the time involved, but also the difficulty of measuring that time. In other words, the need to compensate an employee for her work must be weighed against the cost or difficulty of providing compensation. As the amount of time decreases for an employee to perform tasks, so does the employer's duty to provide compensation for those tasks when doing so would impose an administrative cost. <u>Cf.</u> <u>Tennessee Coal, Iron & Rail Co.,</u> 321 U.S. at 602 ("This does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible.") However, when providing compensation for a task imposes no additional burden on the employer, there is no justification for denying the employee compensation for that task, regardless how fast the task was performed. Any other rule would deny employees "the just remuneration guaranteed them by the Act for contributing their time, liberty and strength primarily for the benefit of others." <u>Id.</u> After all, many jobs could be divided up into tasks that take only a few minutes a piece. Taken to its logical conclusion, a "de minimis" rule that focuses only on time could swallow up an entire shift.

This understanding is consistent with the recent holding of the Court of Appeals for the Third Circuit, which stated in a similar case that the "de minimis" exception applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any

{00010894.}9

> part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.
>
> De Asencio v. Tyson Foods, Inc., 500 F.Sd S61, 374-75 (3d Cir. 2007). Other courts have reached a similar conclusion that they must consider the administrative burden on the employer when determining whether the "de minimis" exception applies. E.g., Lindow v. United States, 738, F2d 1057, 1063 (9th Cir. 1984) (courts should consider 'the practical administrative difficulty of recording the additional time"). Because defendant has not adduced any evidence that it would be difficult to compensate plaintiffs for donning and doffing the personal protective equipment, I cannot conclude that those activities are "de minimis" as a matter of law."

The Defendant-City has likewise produced no evidence that the donning and doffing of the plaintiffs uniforms and equipment are/were *de minimis* and that portion of Defendant's motion should likewise be denied. In contrast, the declaration of Plaintiff Eric Edwards states that it takes him and the other CO's 15-20 minutes prior to their shift to don and a like amount of time at the end of the shift to doff (Edwards Decl. Par. 9). Certainly 30-40 minutes per day is not de minimis by any standard and therefore Defendant's portion of the motion regarding de minimis must also be denied.

Stated otherwise, the aforementioned daily 30-40 minutes for donning and doffing the uniforms and specialized gear, including the waiting time are essential for the safe operation of Plaintiffs principal activities A common-sense assessment supports the conclusion that the de minimis rule cannot apply to the present case and bar compensation for the otherwise compensable duties that Plaintiffs perform.

## CONCLUSION

Defendants arguments must fail. It would be "hasty" to rule on these questions of mixed law and facts without a further development of the record. In considering both the Supreme Court's decision in *Alvarez* and the authority cited above, as well as the disagreement among the jurisdictions, it is far from clear that "no relief" would be granted. If the facts proved that the time associated with donning and doffing in this case constituted "work" as outlined by the Supreme Court in *Alvarez,* and if that time was found not to be *de minimis,* Plaintiffs would be entitled to compensation. As such, for the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss the Complaint in Part in its entirety.

Dated: New York, New York
     July 18, 2008

                           /S/
                         GOTTLIEB & ASSOICATES
                         Jeffrey M. Gottlieb, Esq. (JG-7905)
             Attorneys for Plaintiff, Individually and on
           Behalf of All Other Persons Similarly Situated
                     150 East 18th Street, Suite PHR
                        New York, New York 10003
                          Tel: (212)228-9795
                         Fax: (212)982-6284

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ERIC EDWARDS, Individually and on Behalf              08CV3134(DLC)
of All Other Persons Similarly Situated,
                                        Plaintiffs,        Declaration of
                                                          Eric Edwards
          -against-

THE DEPARTMENT OF CORRECTIONS OF
THE CITY OF NEW YORK AND THE CITY
OF NEW YORK
                              Defendants.
------------------------------------------------------------X

1) I am the Plaintiff in the above action and make this Declaration in opposition to

   the Defendant's, City of New York ("City"), Motion to Dismiss the Complaint in

   Part.

2) I am and have been a Correction Officer ("CO") employed by the City since May,

   1991 until the present. During the entire period of time, my post was at the

   Department of Correction ("DOC") facility located at Rikers Island. During this

   time, I was assigned to the Robert N. Davoren Center which houses both

   adolescent and adult male detainees. Rikers Island generally holds about 15,000

   inmates at any time.

3) Prisons, in general, are very dangerous places for both the inmates as well as the

   staff. Rikers Island is no exception. Perhaps Rikers Island may be more dangerous

   than other prisons due to a host of reasons including, but not limited to, the

   extremely large size of the inmate population.

4) All COs are required to be in a specified uniform with all of their required

   equipment prior to the start of their shift. In addition to oral orders regarding the

   wearing of our uniforms and equipment given to the COs on a continuing basis by

all supervisory officers as well as the training we receive at the CO Academy, the DOC has issued written directives concerning same, a copy of the 67 page "Uniform and Equipment Specifications and Regulations" dated 9/23/96 is annexed hereto as Exhibit "A" ("Ex. A"). All COs are required to strictly adhere to these regulations while on duty and may not deviate from them. We are also prohibited from wearing "any distinguishable uniform item with civilian clothes." *Id* at 1.

5) In addition to the uniform, we are also required to wear certain equipment, which include: bullet resistant vest and utility belt, which is used to hold the other required equipment, such as: pen holder, whistle, memo book, glove pouch, flashlight, duty knife and case (commonly know as a "911") and a canister of tear gas[1].

6) At the beginning of each shift, there is a roll call in which a supervisory officer (the area Captain) "inspects every officer to ensure that the uniform and equipment are in compliance with the regulations." *Id* at 6. Additionally, we are subject to an annual inspection by the Control Room Captain in our uniform and gear to further insure our compliance with the regulations.

7) Myself, and all other COs, are provided lockers in a locker room at the facility in order to store our uniforms and equipment and change from our street clothes into our uniforms and equipment prior to our shift and to change back into our street

---

[1] The bullet proof vest is used to safeguard against potential stabbings of COs; the whistle is integral to call for assistance during periodic emergencies; the memo book contains notes regarding our assigned post duties of the shift, the use of the tear gas and any other unusual occurrences; the gloves are always worn when searching prisoners or jail cells; the flashlight is always used by the COs on the midnight shift as well as those COs on the day shift searching in dark areas for contraband; the duty knife is used to cut down prisoners who are hanging and the tear gas is used for prisoner control and safety.

clothes at the end of our shift. We do not wear our uniforms and equipment off of
Rikers Island and are prohibited from mixing any part of our uniform with street
clothes or anything that is not prescribed by the regulations. I, nor any other COs
that I know, would wear their uniform (and gear) out in public. We do not want
the general public to know that we are COs because it could compromise the
safety of the CO and his or her family or cause other possible problems. COs do
not want to run into released former inmates or the friends and family of inmates
because they are either angry or upset with us due to their incarceration or want
favors of some type for those inmates currently in jail. Therefore, almost no CO
wears his or her uniform in public. Another reason that we do not change into our
uniform at home is that if we do wear the uniform, we must wear the entire
uniform in a proper manner and may not mix any civilian clothes with it
whatsoever.

8) After we put on our uniforms and equipment, we must line up at a property
clerk's window and sign out a canister of tear gas and then report for roll call and
inspection. At the end of our shift, we must do the reverse, that is, line up at the
property clerk's window and return the canister of tear gas and then go to our
lockers and take off and store our uniforms and equipment and change back into
our street clothes.

9) The approximate amount of time that it takes me and the other COs to change into
our uniforms and equipment and to obtain the tear gas canisters prior to the shift
and roll call is 15-20 minutes and it takes the same amount of time to do the
reverse at the end of the shift.

10) The uniforms and equipment that we are required to wear are integral and

indispensable to our employment as corrections officers. The uniforms are

absolutely necessary, among other things, to distinguish staff from inmates, and

the equipment is necessary for the health, safety and welfare of staff and inmates

alike. It is public knowledge about the extremely dangerous inmates that are

housed at Rikers Island. Therefore, it is obvious why we are required to wear

bullet resistant vests and to have tear gas canisters on our person. Without this

specialized protective gear, our lives would be in serious jeopardy.

Dated: New York, New York
          July 16, 2008

                                            Eric Edwards

EXHIBIT A

415

## THE CITY OF NEW YORK
## DEPARTMENT OF CORRECTION

# DIRECTIVE

| [ ] NEW | [ ] INTERM | [ X ] REVISED | SUBJECT | UNIFORM AND EQUIPMENT |
|---|---|---|---|---|
| | | | | SPECIFICATIONS AND REGULATIONS |

| EFFECTIVE DATE | *TERMINATION DATE | | | |
|---|---|---|---|---|
| 9/23/96 | / / | | | |

| CLASSIFICATION | SUPERSEDES | DATED | DISTRIBUTION | PAGE 1 |
|---|---|---|---|---|
| # 2270 | SEE SECTION XV | | A & E | OF 67 PAGES |

RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER

AUTHORIZED BY THE COMMISSIONER

SIGNATURE — SIGNATURE

I. **_PURPOSE_**

A. To establish and set forth a specific standard of specifications and regulations regarding the uniforms and equipment for uniformed members of the Department.

B. To ensure that the specifications and regulations as outlined herein are strictly adhered to.

II. **_POLICY_**

A. The Department's policy is to ensure that all uniformed members, when wearing the prescribed uniform, shall do so in a proper and presentable manner, so as to instill a distinct sense of pride to the member and reflect credit on the Department.

B. Commanding Officers or their designees shall be responsible for inspecting all uniforms of members assigned to their command and to ensure that the provisions contained herein are strictly complied with.

C. All detailed uniform specifications are to be kept on file with the Departmental Uniform Committee.

III. **_REGULATIONS_**

**UNIFORMS
GENERAL RULES**

A. Uniformed members of the Department, while on duty, shall wear the prescribed uniform as specified in this Directive.

B. Members shall not deviate from, modify or interchange in any manner, the prescribed uniform set forth within these regulations.

C. Members shall not wear any distinguishable uniform item with civilian clothes except the authorized shield, when required.

416

| EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>**UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|
| CLASSIFICATION<br># 2270 | | |
| DISTRIBUTION<br>**A & E** | PAGE 2 OF<br>67 PAGES | |

III.  **REGULATIONS**  (Continued)

**UNIFORMS GENERAL RULES (Continued)**

D. Uniformed members of the Department authorized to wear civilian clothes, shall wear the prescribed uniform when so directed.

E. Uniformed members of the Department shall wear at all times while on duty, the regulation duty uniform prescribed by the Commissioner and the Chief of Department, with exception of those individuals specifically authorized by the Commissioner or Chief of Department to wear appropriate civilian attire.

F. Members of the uniformed force, except when on suspension or on authorized leave, shall wear the regulation class "A" dress uniform when reporting as respondents at official Departmental disciplinary hearings, either at Central Office or the Office of Administrative Trials and Hearings (OATH).

G. Uniformed members reporting to the aforementioned hearings as a witness, shall do so in regulation class "A" dress uniform when on-duty and in appropriate civilian attire when off-duty.

H. Members of the uniformed force shall wear the regulation class "A" dress uniform when ordered to do so by teletype order, verbal and/or written direction by the Commissioner, Chief of Department, Commanding Officers or designees.

I. Uniforms and equipment shall be purchased and maintained at the expense of the member.

J. Only uniforms bearing the authorized certification label, as stipulated herein, are permitted and approved for use.

K. Seasonal uniform changes will be implemented upon direction by the Chief of Department, unless otherwise stipulated:

1. Uniformed members of all ranks who are assigned to outside posts shall wear the long sleeve regulation duty uniform shirt and tie at all times between October 1 and April 30.

2. Uniformed members of all ranks who are assigned to outside posts may wear the short sleeve regulation duty uniform shirt at all times between May 1 and September 30.

3. Uniformed members of all ranks who are assigned to inside posts may wear short sleeve shirts and no ties all year round. However, if worn with an outer garment, a tie must be worn.

416



| EFFECTIVE DATE **9/23/96** | SUBJECT |
|---|---|
| CLASSIFICATION **# 2270** | **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |
| DISTRIBUTION **A & E** | PAGE **3** OF **67** PAGES |

III.   **REGULATIONS** (Continued)

**UNIFORMS**
**GENERAL RULES**
(Continued)

*Note:*   *During the period between October 1 and April 30, any member assigned to an inside post (wearing a short sleeve shirt), who is reassigned to an outside post, shall change into a long sleeve shirt and tie prior to assuming the outside post duty assignment.*

4.   When a long sleeve shirt is insufficient outerwear, the appropriate regulation garment must be worn with the duty shirt. If an outer garment is worn, a tie must be worn whether the member is wearing a long or short sleeve shirt underneath.

L.   **Command Insignias**

To be worn by Correction Officers on both collars of the uniform shirt, with the exception of officers certified in Mental Health who shall wear the Mental Health insignia on the left collar (see illustration Section XI).

M.   **Departmental Insignias**

To be worn by Correction Officers on both lapel collars of blouses, jackets and coats (see illustration Section XI).

N.   **Service Stripes**

To be worn only by Correction Officers; light blue hash stripe, bordered in white and black, to be affixed to the left sleeve of all long sleeve shirts, winter reefer coats, summer blouses, cruiser duty jackets, utility "B" jackets and sweaters.

Each hash stripe represents 5 years of service as follows:



| | |
|---|---|
| *I* | 5 years |
| *II* | 10 years |
| *III* | 15 years |
| *IIII* | 20 years |
| *IIIII* | 25 years |

Black   White   Blue
(Represents 10 years of service).

(For placement of service stripes, see Section XII).

O.   **Uniform Shirts/T-Shirts/Ties/Pants**

1.   When wearing a long-sleeved uniform shirt, a regulation tie must be worn at all times.

416

| | EFFECTIVE DATE<br>**9 / 23 / 96**<br>CLASSIFICATION<br># 2270<br>DISTRIBUTION<br>**A & E** | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS**<br><br>PAGE **4** OF<br>**67** PAGES | |

III.   **REGULATIONS** (Continued)

UNIFORMS
GENERAL RULES
(Continued)

2.   When wearing a short-sleeved uniform shirt under a long-sleeved outer garment, the shirt shall be buttoned at the neck and worn with the regulation tie.

3.   Whenever a member elects to wear a T-shirt under the short-sleeved uniform shirt, said T-shirt shall be white in color. If no outer garment is being worn, the top button of the short-sleeved uniform shirt shall be left open, exposing the top part of the white T-shirt.

4.   The pants legs shall not be altered or tapered in any manner. The pants shall be between 6 3/4" and 9 1/2" wide at the hem of the leg for females and between 8" and 9 1/2" wide at the hem of the leg for males with no blousing of the pants.

P.   **Departmental Patch/Command Patch**

1.   Departmental patches shall be placed on both sleeves of all uniform items (with the exception of the authorized reversible raincoat) in accordance with the measurement specifications delineated in Section XII, Patch Placement.

2.   Command patches shall be worn on the right sleeve, in lieu of the Department patch, in accordance with measurement specifications (see Section XII) for those commands authorized to wear said items.

Q.   **Bullet-Resistant Vests**

1.   The bullet-resistant vest, other than the tactical ballistic vests used by the Emergency Response Unit (ERU), shall only be worn underneath the uniform shirt and/or outer garment and not be exposed in any fashion or manner.

2.   For specifications, see Section VIII, Sub-Section V.

UNIFORMS
INITIAL PURCHASE

R.   All new uniforms will be sold with a 3 part receipt system. The member will be given 2 receipt copies upon initial purchase of any new uniform product. The receipt must indicate the vendor's name, address and telephone number and a statement that the garments were produced by an authorized manufacturer.

1.   One copy will be kept by the member for record keeping purposes.

2.   One copy shall be relinquished at the member's uniform inspection, and is to be placed in the uniform inspection folder for each member.

416

| EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|
| CLASSIFICATION<br>#2270 | | |
| DISTRIBUTION<br>A & E | PAGE 5 OF<br>67 PAGES | |

III.   **REGULATIONS** (Continued)

UNIFORMS
INITIAL PURCHASE
(Continued)

3.   All new uniforms purchased during any period in a member's tenure must be inspected and the receipt surrendered prior to the wearing of the item in question.

> **Note:**   *Certified vendors and authorized manufacturers lists are to be published and updated regularly by the Departmental Uniform Committee.*

UNIFORMS & EQUIPMENT
INITIAL PURCHASE
RECRUITS

S.   Recruit Officers shall be responsible for purchasing all of the uniforms and equipment specified at the beginning of the Recruit Officer Training Program as stipulated by the Commanding Officer (or designee) of the Correction Academy.

T.   The Commanding Officer of the Correction Academy (or designee) shall be required to ensure that Recruit Officers have purchased all of the required uniforms and equipment, and have presented said items to the Correction Academy for verification by the end of their training program. All recruits shall be required to have the prescribed uniforms and equipment prior to their command assignments.

UNIFORMS & EQUIPMENT
INSPECTION
RECRUITS

U.   The uniform and equipment of all recruit personnel shall be inspected on a daily basis by the Academy staff.

V.   A final inspection of Recruit Officers' required uniforms and equipment shall be conducted by the Commanding Officer (or designee) of the Correction Academy prior to their assignment to a command.

W.   The Correction Academy shall be responsible to properly stamp the regulation class "A" dress uniform items and complete the applicable sections of the Uniform Inspection Record Card (Form #120 - 1/96, see Attachment A) for all uniforms and equipment.

X.   The receipts and inspection record shall be forwarded by the Academy to the recruit member's new command.

UNIFORMS & EQUIPMENT
INSPECTION

Y.   Commanding Officers of all Divisions/Facilities/Units are responsible for ensuring that all members of the uniformed force strictly adhere to the prescribed uniform/equipment specifications and regulations.

Z.   It shall be the responsibility of all Commanding Officers to ensure that uniforms worn by members are authorized, and are in a clean, presentable condition. In the event a member's uniform is not proper, the Commanding Officer shall require that it be immediately remedied.

416

| EFFECTIVE DATE<br>**9/ 23 /96**<br>CLASSIFICATION<br>**# 2270**<br>DISTRIBUTION<br>**A & E** | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS**<br><br>PAGE 6 OF<br>67 PAGES |

III.   **REGULATIONS**   (Continued)

**UNIFORMS & EQUIPMENT<br>INSPECTION<br>(Continued)**

AA.  Inspection of uniforms and equipment shall be performed in the following manner:

1.  The supervisory officer conducting the daily roll call, or a designee, shall personally inspect every officer to ensure that the uniform and equipment are in compliance with the regulations contained herein.

2.  In the event an officer is not in compliance, the officer will be instructed to immediately remedy the situation and when appropriate, disciplinary action shall be taken.

3.  In addition to inspections at roll call and the scheduled annual inspection, supervisory officers shall periodically inspect uniforms during normal tours of inspection.

**UNIFORMS & EQUIPMENT<br>ANNUAL INSPECTION**

4.  During the annual uniform inspection, the Uniform Inspection Record Card (Form #120 - 1/96), shall be utilized and properly completed by the supervisory officer performing the inspection. The time and place of the annual inspection shall be determined by the Commanding Officer, commencing on the first business day in May and concluding on the first business day in June.

5.  Officers who are on authorized vacation, indefinite sick leave, or other leave during the scheduled inspection period shall have their annual inspection within 2 weeks after they return to duty.

**PERSONAL APPEARANCE<br>WHEN IN UNIFORM**

BB.  All members of the Department shall wear their hair in a style that does not fall below the top of the shirt collar and allows for the wearing of the regulation uniform cap to fit squarely on the top of the head with the center of the visor directly over the nose. Members of the Department may not cut, shave or wear their hair in a manner that results in an unnatural pattern, design or style. In addition, members may not color their hair in a shade not normally recognized as a natural shade.

CC.  Beards, mustaches and sideburns shall be maintained and worn in the manner prescribed herein:

Beards must be closely trimmed and shaped in conformity with the jaw line. Mustaches and sideburns must be neatly trimmed. All facial hair must be trimmed within 1" from the face and worn in a manner that will not interfere with the wearing and utilization of any protective gear.

416

| EFFECTIVE DATE 9 / 23 / 96 | SUBJECT | |
|---|---|---|
| CLASSIFICATION # 2270 | **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
| DISTRIBUTION A & E | PAGE 7 OF 67 PAGES | |

III.   _REGULATIONS_   (Continued)

PERSONAL APPEARANCE
WHEN IN UNIFORM
(Continued)

DD.  Members of the Department shall maintain their fingernails to a length not to exceed ½" from the tip of the finger and in a manner that will not impede their ability to properly, efficiently and rapidly use or operate keys, firearms, handcuffs, other security devices, or any other items relative to their duties.

EE.  Members of the Department shall not wear any facial jewelry, earrings, exposed dangling necklaces or exposed dangling bracelets.

FF.  Members are directed to minimize the wearing of jewelry while on-duty and in uniform, including but not limited to rings and decorative hair accessories.

SHIELD AND
IDENTIFICATION CARD

GG.  Members shall carry their shield and identification card at all times.

HH.  Members shall wear their shield on the outermost garment at all times and specifically display the shield when in civilian clothes and visiting Departmental Facilities/Divisions/Units/Central Office or when at the scene of an emergency.

> **Note:**   _The placement of any pin or adornment either on or around the shield, including facsimiles of Departmental emblems, is unauthorized._

II.  It is the responsibility of every member to safeguard their shield and identification card at all times, and to ensure that any unauthorized individual does not gain possession of the shield and/or identification card.

JJ.  Pictures for all new identification cards shall be taken with a red background for uniformed personnel. The prescribed uniform for the picture shall be:

1.  **Correction Officers**

    Regulation duty uniform navy blue shirt with command insignias and black tie. No jackets, sweaters or any other outerwear shall be permissible.

2.  **Supervisory Officers**

    Regulation duty uniform white shirt with rank insignias and black tie. No jackets, sweaters or any other outerwear shall be permissible.

416



| EFFECTIVE DATE | SUBJECT |
|---|---|
| **9/23/96** | **UNIFORM AND EQUIPMENT** |
| CLASSIFICATION | **SPECIFICATIONS AND REGULATIONS** |
| **# 2270** | |
| DISTRIBUTION | PAGE 8 OF |
| **A & E** | 67 PAGES |

III.    **REGULATIONS**  (Continued)

**NAME PLATES**    KK.    All members of the Department, while in uniform, are required to wear name plates centered below the shield as follows:

    1.  **Supervisory Officers** - gold with black lettering.

    2.  **Correction Officers** - silver with black lettering.

    3.  Members may purchase name plates in the proper coloring, with black lettering denoting the numbers of years serving as a member of the Department. The number of years of service shall appear below the member's last name on the name plate.

    4.  Recruit Officers shall purchase name plates during their Academy training period.

        *Note:*  *If at any time a name plate is broken, lost or stolen, it shall be incumbent upon the member to purchase a new name plate.*

**MOURNING BAND**    LL.    Members shall wear a black elastic mourning band, 1/2" wide, on the shield and covering the City Seal, upon the death of an active or retired member of the Department, or any other uniformed City/State agency (see illustration).

The mourning band shall be worn as follows:



    1.  **Death of an Active Member - Same Command**

        From the time of death until 2400 hours on the 10th day after death.

    2.  **Death of an Active Member - Other Command**

        From the time of death until 2400 hours on the 5th day after death.

    3.  **Death of a Retired Member**

        From the time of death until 2400 hours on the day of the funeral.

    4.  **Death of a Member - Other Uniformed City or State Agency**

        From the time of death until 2400 hours on the day of the funeral.

416

| EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>**UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |
|---|---|
| CLASSIFICATION<br># 2270 | |
| DISTRIBUTION<br>A & E | PAGE 9 OF<br>67 PAGES |

III. **REGULATIONS** (Continued)

RELIGIOUS HEADPIECES

MM. Whenever a uniformed member of the Department is in uniform and desires to wear a Yarmulke, Kufi or Kamir, the member may do so only when inside a Department facility. However, when outside a facility, the headpiece shall be worn underneath the prescribed uniform cap. The only authorized colors for these religious headpieces are blue or black.

BREAST BARS AND METAL EMBLEMS

NN. Members shall wear authorized breast bars starting ¼" above the center of the shield and each bar shall be ¼" apart. When more than 1 breast bar is worn, the highest awarded bar shall be on top, furthest away from the shield.

> *Note:* *Breast bars from other agencies or those representing ethnic or religious affiliations are unauthorized .*



1. Members may elect to wear a metal emblem of the flag of the United States of America not to exceed 1" square, worn above the center of the shield or authorized breast bars (see illustration).



2. Members of the Emergency Response Unit who complete and are certified in the NYPD Repel Training Course may wear the Helicopter Repel Bar (silver colored metal helicopter with wings) centered above the shield (see illustration).



3. Members of the Emergency Response Unit (and Support Team) who have completed the Emergency Medical Technician Course and are currently certified by New York State, may wear the Emergency Medical Technician (EMT) certification symbol insignia. The insignia shall be worn on the upper left side of the shield backing.

4. Members may elect to wear an orange bar, bordered in gold, with gold letters denoting their number of years of service. This bar is to be worn on short sleeve shirts in the following manner:

   Centered above the right breast pocket, 1/4" over the top edge of the pocket seam.

Service Bar



Gold        Gold        Orange

V - 5 years          X - 10 years
XV - 15 years        XX - 20 years
XXV - 25 years

416



| EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
|---|---|
| CLASSIFICATION # 2270 | |
| DISTRIBUTION A & E | PAGE 10 OF 67 PAGES |

III.  **REGULATIONS** (Continued)

BREAST BARS
AND
METAL EMBLEMS
(Continued)

Illustrations of breast bars are in proper sequence when placed on shield backing.

Department Medal of Honor



Gold    Green    White

Additional award of this medal is indicated by a gold oak leaf in the center of the bar.

Honorable Mention    (Silver Star)
Exceptional Merit    (Lt. Green Star)
Commendation    (Bronze Star)



Gold  Green  White  Orange  Blue

Two awards of the same medal are represented by the appropriately colored star centered on the green and blue.  A third award is represented by the appropriately colored star centered on the green, blue and white.

Meritorious Duty



Gold  Green  White  Orange  Blue

Additional awards of this type are shown by a silver numeral centered on the bar indicating the total number of awards.

Excellent Duty



Gold    Green    Orange    White

Additional awards of this type are shown by a silver numeral centered on the bar indicating the total number of awards.

Unit Citation

96

Gold    Blue    Orange

Unit Citation awards shall have 2 silver colored numerals representing the last 2 digits of the year of the award, centered in the middle of the bar.

416

| EFFECTIVE DATE 9/ 23 /96 CLASSIFICATION # 2270 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS | CORRECTION DEPARTMENT |
|---|---|---|
| DISTRIBUTION A & E | PAGE 11 OF 67 PAGES | |

III.  **REGULATIONS** (Continued)

BREAST BARS
AND
METAL EMBLEMS
(Continued)

Illustrations of breast bars are in proper sequence when placed on shield backing.

Perfect Attendance



Gold    Blue    White    Red

5 Years  - Plain bar.
10 Years - Silver Star centered in the white.
15 Years - 2 silver stars centered in the blue and red.
20 Years - 3 silver stars centered in the blue, white and red.
25 Years - Gold star centered in the white.

ADW Association Medal





Gold  White  Blue  Red  White  Blue
      Red

The William Heidenreich Outstanding Career Achievement Award is presented for excellence to members of the Assistant Deputy Warden's Association.

Correction Captain's Assoc. Medal



Gold    Blue    Orange

This award is presented for excellence to members of the Correction Captain's Association for distinguished service and community service.

COBA Arturo Meyers Award



Gold    Blue    Gold

The Arturo Meyers Award is presented for excellence to members of the Correction Officers' Benevolent Association.



Expert          - Gold colored medal.
Sharpshooter    - Silver colored medal.



Breast bars are centered horizontally 1/4" above the center of the shield

Additional breast bars are placed 1/4" above each other - in order of importance

A United States flag emblem, not exceeding 1" square, may be worn 1/4" above the center of the shield or breast bars

1/4"

416

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION<br>#2270 | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| | DISTRIBUTION<br>A & E | PAGE 12 OF<br>67 PAGES | |

## IV. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - DUTY UNIFORM

**REGULATION**
**DUTY UNIFORM**

The regulation duty uniform is specified for wear during daily tours of duty (except where noted):



Regulation
Uniform Cap
(Standard)

**A. UNIFORM CAP - Standard**

Standard NYPD/NYCDOC navy blue, 8 point cap with black visor, black strap with 2 small gold buttons containing the seal of the City of New York affixed at each end of the black visor. The silver metal cap device bearing the City seal and member's shield number, shall be affixed to the center of the cap.

> *Note:* *Must be worn for all outside duty assignments or as otherwise prescribed by Departmental orders and/or teletypes.*

**B. UNIFORM CAP - Summer (optional)**

Same as uniform cap - standard, with the exception that the surrounding black band connected to the black visor consists of a ventilation mesh to allow for movement of fresh air.

> *Note:* *Can only be worn between May 1 and September 30.*

**C. UNIFORM HAT - Winter (optional)**

NYCDOC regulation trooper style cap, police blue in color. Must be constructed of a nylon shell and quilted polyester batting insulated lining (optional Gore-Tex Z Liner, or equal). The shell and lining shall be of a 4 panel design and a fold down front flap. There shall be a shell fabric strap with a slider adjustable snap which secures the earflap up over the cap or down under the chin. The front flap shall have a layer of shell fabric, a stiffening board, and pile with a snap to secure it to the front of the cap and 2 black eyelets set through the front flap centered vertically with spacing 1 3/8" center to center to attach a cap device bearing the City seal and member's shield number.





416

| EFFECTIVE DATE 9/23/96 | SUBJECT |
|---|---|
| CLASSIFICATION # 2270 | UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
| DISTRIBUTION A & E | PAGE 13 OF 67 PAGES |

IV.  **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**CORRECTION OFFICER - DUTY UNIFORM** (Continued)

REGULATION
DUTY UNIFORM
(Continued)

Regulation
Short Sleeve
Shirt



Regulation
Long Sleeve
Shirt

D.  **UNIFORM SHIRT**

1. NYCDOC regulation dark navy blue military type 75% dacron polyester/25% worsted wool, tropical weave, with shoulder strap, and 2 military creases in front and 3 military creases in back of shirt. Pockets to be nonfunctional, with functional pencil compartment, flap to be scalloped and sewn to body of shirt. Two eyelet holes sewn above left breast, 1 3/4" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets 1/8" stitched, and centered 1" from front edge and 1" from bottom edge to accept command insignia.

2. Long sleeve shirt accepts service stripes on left sleeve (see Section XII for placement).

3. Long sleeve and short sleeve uniform shirt specifications are identical with the exception of the length of the sleeve.

4. Must contain an authorized and numbered certification label to be sewn on the inside of back placket between the 4th and 5th button from the collar, with no stitching exposed on the outside of the shirt.

E.  **UNIFORM TROUSERS**

1. NYCDOC regulation dark navy-blue 75% dacron polyester/25% worsted wool, with 2" waist band, and 1" belt loops and police design type pockets to accept equipment. Trouser legs shall contain front/rear creases and the outer seam shall have sewn a 1/2" black NY twist stripe (braid).

    *Note:*  Uniform duty trousers cannot be worn with the class "A" regulation summer blouse or class "A" regulation winter reefer coat.

2. Must contain an authorized and numbered certification label to be sewn on the inside of the right hip pocket below the pocket facing. The label shall be sewn down on all 4 sides using a single-needle, lock-stitch machine.

416



| | EFFECTIVE DATE<br>9/23/96 | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| | DISTRIBUTION<br>A & E | PAGE 14 OF<br>67 PAGES | |

IV.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**CORRECTION OFFICER - DUTY UNIFORM**   (Continued)

**REGULATION
DUTY UNIFORM**
(Continued)



Regulation
Cruiser Duty Jacket
(Shown with duty shirt
and turtleneck)

F.  **CRUISER DUTY JACKET**

1.  NYCDOC regulation dark navy police blue jacket, constructed of 200 Denier Nylon (warp) and 3 ply 70 Denier Taslanized nylon (filling), plain weave, treated with durable fluorocarbon water and stain release agents (optional Gore-Tex Z Liner, or equal). The jacket shall be waist length, single breasted, with overlapping storm front with zipper and snap. The outer shell shall be waterproof; equipped with detachable epaulets, 2 lower flaps and pleated pockets with side openings for hands, bi-swing back, 2-piece set-in sleeves with underarm sleeve gussets, sleeve zippers and leather trim on the cuffs; zippered side vents with snap tab closures, collar with collar stand and inside zippered patch pocket; ScotchLite retro-reflective package; zip-out insulated liner. Two eyelet holes sewn above left breast, 1 and ³/₄" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets ¹/₈" stitched, and centered 1" from front edge and 1" from bottom edge to accept the DC insignia. Three snaps or buttons on the collar to accept optional detachable hood (see Section VII, Sub-Section H).

2.  Left sleeve accepts service stripes (see Section XII for placement).

3.  Must contain authorized and numbered certification label to be sewn on the inside right zipper pocket located on the permanent lining. The label shall be sewn down on all 4 sides.

G.  **REVERSIBLE RAINCOAT**



Orange

Black

Regulation
Reversible
Raincoat

1.  NYCDOC regulation raincoat, constructed of US 101 polyester taffeta, Gore-Tex PTFE membrane (or equal), polyester knit, 3 layer laminate, police blue in color on the front side and fluorescent orange underneath with ScotchLite 1¹/₂" silver reflective tape around each cuff and a strip around the front and back side of the armhole. The letters NYC in black 4" letters and CORRECTION in black 2" letters shall be screened onto the back of the orange side. The raincoat shall be waterproof by design, fully cut, raglan shoulder design and reversible. There shall be 2 slash through side openings with flaps, snap front with inner and outer storm flies, badge tabs on both sides, and hook and loop cuff and neck closure.

2.  This item is optional. If a member elects to wear this garment, it must contain an authorized and numbered certification label to be attached to the right front fly on the orange side, at the bottom hem.

418

| EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>**UNIFORM AND EQUIPMENT**<br>**SPECIFICATIONS AND REGULATIONS** |  |
|---|---|---|
| CLASSIFICATION<br>**# 2270** | | |
| DISTRIBUTION<br>**A & E** | PAGE 1 5 OF<br>6 7 PAGES | |

IV.　**UNIFORM AND EQUIPMENT SPECIFICATIONS**
　　　　**CORRECTION OFFICER · DUTY UNIFORM**　(Continued)

**REGULATION**
**DUTY UNIFORM**
(Continued)

H.  **SOCKS**

　　1.  Males:　　　Black socks only.

　　2.  Females:　　Black socks, or flesh tone nylon pantyhose or knee-high socks.

I.  **SHOES**

　　Black military style laced leather oxford (shined) or patent leather.

　　　　*Note:*　Sneaker or sneaker type footwear is prohibited.

J.  **TIE**

　　Black breakaway type worn with long-sleeve uniform shirt.

　　　　*Note:*　If the regulation duty Cruiser jacket or regulation Commando
　　　　　　　　V-neck sweater is worn, the tie must also be worn.

K.  **TIE CLASP**

Regulation
Tie Clasp

　　Silver clasp with blue letters (D.C.N.Y.) the center of which shall contain the City seal.

V.　**UNIFORM AND EQUIPMENT SPECIFICATIONS**
　　　　**CORRECTION OFFICER · CLASS "A" DRESS UNIFORM**

**CLASS "A"**
**REGULATION**
**UNIFORM**
**DRESS**

The class "A" regulation uniform is designated for wear at Departmental functions,
ceremonies, parades, uniform inspections, hearings (as specified in Section III,
paragraphs F, G & H) and other instances when directed by the Commissioner, Chief
of Department, Commanding Officer or a designee.

　　　　*Note:*　Class "A" dress uniform specification standards are consistent
　　　　　　　　with NYPD regulations and all blouse, trouser and winter reefer
　　　　　　　　coat items shall contain the NYPD authorization label.

416



| | EFFECTIVE DATE<br>**9 / 23 /96**<br>CLASSIFICATION<br>**# 2270**<br>DISTRIBUTION<br>**A & E** | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS** |
|---|---|---|
| | | PAGE **1 6** OF<br>**67** PAGES |

V.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**

    **CORRECTION OFFICER - CLASS "A" DRESS UNIFORM**   (Continued)


**CLASS "A"<br>REGULATION<br>UNIFORM<br>DRESS**<br>(Continued) ·



Regulation<br>Class "A"<br>Uniform<br>(Shown with<br>summer blouse)



Regulation<br>Class "A"<br>Uniform<br>(Shown with<br>winter reefer coat)

**A.  STANDARD UNIFORM CAP**

    Same as for regulation duty standard uniform cap.

**B.  SUMMER BLOUSE**

  1.  NYPD regulation navy blue 100% serge wool blouse with shoulder straps, 2 - 9" side vents (to allow access to regulation firearm) and gold buttons containing the City seal. Two eyelet holes sewn above left breast, 1 ³/₄" apart to accept regulation shield. Collar eyelets ¹/₈" stitched, and centered 1" from front edge and 1" from bottom edge to accept the DC insignia.

  2.  Left sleeve accepts service stripes (see Section XII for placement).

    _Note:_   *The trousers and summer blouse must be the same exact shade and cut from the same bolt of cloth to ensure the proper color matching for the wearing of both uniform items together. The wearing of the blouse shall be as prescribed by direction and/or teletype order.*

**C.  WINTER REEFER COAT**

  1.  NYPD regulation navy blue 100% serge wool reefer coat with convertible collar, side vents and gold buttons containing the City seal.  Two eyelet holes sewn above left breast, 1 ³/₄" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets ¹/₈" stitched, and centered 1" from front edge and 1" from bottom edge to accept DC insignia.

  2.  Left sleeve accepts service stripes (see Section XII for placement).

    _Note:_   *Navy type pea coats are unauthorized. The wearing of the class "A" winter reefer coat shall be as prescribed during winter months, by direction and/or teletype order.*

**D.  UNIFORM TROUSERS**

    NYPD regulation navy blue 100% serge wool with ¹/₂" black mohair braid on outside seams.

416

| | EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |  |
|---|---|---|---|
| | CLASSIFICATION # 2270 | | |
| | DISTRIBUTION A & E | PAGE 17 OF 67 PAGES | |

## V. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - CLASS "A" DRESS UNIFORM   (Continued)

**CLASS "A" REGULATION UNIFORM DRESS (Continued)**

E. UNIFORM SHIRT

Same as for regulation duty uniform shirt.

F. SOCKS

Same as for regulation duty uniform socks.

G. TIE

Same as for regulation duty uniform tie.

H. TIE CLASP

Same as for regulation duty uniform tie clasp.

I. SHOES

Same as for regulation duty uniform shoes.

J. CEREMONIAL GLOVES

Lightweight white cotton or polyester rayon type.

## VI. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - CLASS "B" UTILITY UNIFORM

**CLASS "B" REGULATION UNIFORM UTILITY**

A. The class "B" regulation uniform is mandatory for officers assigned to work details and special support units whose duties require this type of work uniform, such as:

1. Support Services Division;

2. Correction Industries Division;

3. Transportation Division Garage Detail;

4. Construction Management Unit;

5. Divisional Storehouse Detail;

6. Facility Kitchen Detail;

416

| EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
|---|---|
| CLASSIFICATION # 2270 | |
| DISTRIBUTION A & E | PAGE 18 OF 67 PAGES |




VI. **UNIFORM AND EQUIPMENT SPECIFICATIONS**

**CORRECTION OFFICER - CLASS "B" UTILITY UNIFORM** (Continued)

**CLASS "B" REGULATION UNIFORM UTILITY** (Continued)

7. Facility Intake Detail;

8. Facility Environmental/Sanitation Detail; and

9. Facility Maintenance Detail.

<u>Note:</u> *The duty uniform is prohibited from being worn on class "B" assignments.*

B. **UNIFORM CLASS "B" SHIRT**

1. NYCDOC regulation light blue military type poly cotton blend, with shoulder straps, and 2 military creases in front and 3 military creases in back of shirt. Pockets to be nonfunctional, flap to be scalloped and sewn to body of shirt. Two eyelet holes sewn above left breast, 1 3/4" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets 1/8" stitched, and centered 1" from front edge and 1" from bottom edge to accept command insignia.

2. Left sleeve of long sleeve shirt accepts service stripes (see Section XII for placement).

3. Long sleeve and short sleeve uniform shirt specifications are identical, with the exception of the length of the sleeve.

4. No tie shall be worn with the class "B" utility uniform shirt.


Regulation Class "B" Utility Trousers

C. **UNIFORM CLASS "B" UTILITY TROUSERS**

1. NYCDOC regulation police navy blue pants, constructed of 65% polyester/35% cotton fiber blend. The trousers shall be a tailored split seam construction uniform style with 2 front quarter pockets, 2 double-section side pockets, 2 button-tab hip pockets, and wide waistband with belt loops inserted bottom and tacked to the top; a wide elastic waistband with silicone shirt-grip stripe. The patterning shall allow generous seat and thigh. The waistband construction and trouser patterning shall accommodate an optional removable windproof-breathable liner.

2. Must contain an authorized and numbered certification label to be attached to the waistband next to the "size and care" label.

416

| | EFFECTIVE DATE<br>9/23/96<br>CLASSIFICATION<br># 2270 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS |  |
|---|---|---|---|
| | DISTRIBUTION<br>A & E | PAGE 19 OF<br>67 PAGES | |

## VI. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - CLASS "B" UTILITY UNIFORM (Continued)

**CLASS "B"**
**REGULATION**
**UNIFORM**
**UTILITY**
**(Continued)**

D. **UNIFORM CLASS "B" UTILITY JACKET**

1. NYPD/NYCDOC regulation navy blue whipcord work jacket, thumb tip length, with lining, front zipper and side vents. Two eyelet holes sewn centered over the left breast 1 $\frac{3}{4}$" apart to accept the regulation shield. Collar eyelets $\frac{1}{8}$" stitched, and centered 1" from front edge and 1" from bottom edge to accept DC insignia.

2. Left sleeve accepts service stripes (see Section XII for placement)

   *Note:* *The regulation class "B" utility jacket listed will continue to be an authorized uniform item until new specifications and design have been approved.*

E. **CLASS "B" UTILITY COVERALLS**

The following item is authorized for members within the Support Services Division and the Transportation Division Garage Unit who are detailed to specified job assignments:

1. NYCDOC regulation 1 piece navy blue 65% polyester/35% combed cotton utility coverall, durable press with soil release, short or long sleeve version.

2. The Departmental patch shall be affixed to the left sleeve and the command patch shall be affixed to the right sleeve, as specified in Section XII.

3. Unit identification patches shall be sewn and placed in accordance with measurements and specifications noted in Section X, Sub-Section B. 2., a, b & c, with the following exceptions for the COMMAND NAME:

| SUPPORT<br>SERVICES DIV.<br>NYC<br>CORRECTION | TRANSPORTATION<br>DIVISION<br>NYC<br>CORRECTION |
|---|---|

F. **WORK CAP** (Baseball Type)

NYPD/NYCDOC regulation navy baseball type cap with adjustable back and a $\frac{3}{4}$ scale Correction emblem or command patch affixed to the center of the front.

416



| | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| --- | --- | --- | --- |
| | CLASSIFICATION<br># 2270 | | |
| | DISTRIBUTION<br>A & E | PAGE 20 OF<br>67 PAGES | |

## VI. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - CLASS "B" UTILITY UNIFORM  (Continued)

**CLASS "B"
REGULATION
UNIFORM
UTILITY
(Continued)**

G. SOCKS

  Black in color only.

H. SHOES

  Black military style laced leather oxford type or work boot.

  *Note:*  *Sneaker or sneaker type footwear is prohibited.*

## VII. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - OPTIONAL UNIFORM ITEMS

**REGULATION
UNIFORM
OPTIONAL UNIFORM
ITEMS**

The following have been authorized as regulation uniform items but are not listed as mandatory (optional).

A. COMMANDO V-NECK SWEATER



Regulation
Commando V-Neck
Sweater
(tucked into pants)

1. NYCDOC regulation sweater, constructed of 50% Virgin British worsted wool/ 50% Virgin Colonial Spun long-fiber wool, police blue in color. Shall be a pullover style, 2x2 rib throughout, V-Neck, with a straight body and set in sleeves. The number of counted ribs from side seam to side seam across the chest and bottom welt shall be equal to the chest size in inches. Knitted welt and turn back cuff design. Durable cloth patches shall reinforce shoulders and elbows. The body and sleeve welts shall be knit with a sewn non-raveling edge. Shoulder epaulets attached at shoulder seam only, with microphone straps underneath. Shield patch sewn over left side breast with eyelets 1 ¾" apart to accept shield.

2. The garment shall come in 2 styles:

   a. Without lining; or

   b. With GoreTex XCR lining (or equal).

3. Left sleeve accepts service stripes (see Section XII for placement).

4. The sweater shall be worn tucked into the pants and not bloused so as to protrude or in any way impede access to equipment and/or gunbelt items.

416R

 

| EFFECTIVE DATE 11/03/06 | SUBJECT |
| CLASSIFICATION # 2270 | **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |
| DISTRIBUTION A & E | APPROVED FOR WEB POSTING ☐ YES ☒ NO |
| | PAGE 21 of 67 PAGES |

VII. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
*CORRECTION OFFICERS-OPTIONAL UNIFORM ITEMS* (Continued)

    5.  The Commando sweater may be worn in place of the Cruiser duty jacket in facilities or during outside duty assignments.

    6.  Must contain an authorized and numbered certification label to be positioned at the back of the neck:

      a.  attached to the manufacturer's label; or
      b.  if equipped with the XCR lining, directly to the membrane.

**B.  TURTLENECK STYLE SWEATER**



Regulation Turtleneck Style Sweater

    1.  Navy blue, police style turtleneck sweater made of 100% cotton or cotton blend with DCNY black letters in white, emblazoned on the left side of the neck cowl.

    2.  The turtleneck sweater may only be worn with the regulation duty Cruiser jacket or Emergency Service duty jacket.

    3.  The turtleneck sweater shall not be worn with any uniform shirt or Commando sweater, but in lieu of said items.

    4.  The turtleneck sweater can be worn only on posts requiring the wearer to be outside of a facility during the course of the duty assignment.

**C.  CARGO PANTS**

Cargo Pants:

•  May be worn by Correction Officers in lieu of the standard uniform duty trousers when performing custodial duties and when assigned to units authorized to wear the class "B" utility uniform.

•  May not be worn:

  –  when attending ceremonial functions;

  –  with the class "A" regulation summer blouse or class "A" winter reefer coat; or

  –  when assigned to facility or Headquarters administrative posts.

    1.  FABRIC

Delta Mills style 9290, 65% Polyester 35% Rayon, 2 x 2 Serge Twill Piled Yarn, 15 –15 ½ oz. per linear yard or equal pre-approved fabric.

**NEW MATERIAL UNDERLINED**

416R

| EFFECTIVE DATE **11/03/06** | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |  |
|---|---|---|
| CLASSIFICATION # **2270** | | |
| DISTRIBUTION **A & E** | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 21Gof 67 PAGES |

## VII.   UNIFORM AND EQUIPMENT SPECIFICATIONS

*CORRECTION OFFICERS-OPTIONAL UNIFORM ITEMS* (Continued)

### 7.   INSIDE TRIM

The right fly and crotch linings shall be the same fabric and color as the waistband curtain. The right fly lining shall be sewn to the left fly below the zipper. The crotch lining shall be serged to each front. A separate French fly made of the outer fabric shall be sewn to the inside right fly.

### 8.   BELT LOOPS

There shall be a minimum of 5 belt loops on waist sizes 28, 29, 30, and a minimum of 7 on all sizes over 30. Each loop is to be ¾" wide, of double thickness, and stitched on the face side with a 2 needle machine. Except for the back loop which shall be tack on, all loops will be sewn into the bottom of the waistband and into the recap. They shall accommodate a 1-5/8" belt.

### 9.   ZIPPER

The <u>pants</u> shall be closed with a Scovil Guardloc or equivalent brass zipper and have a brass bottom stop at the base of the zipper chain. The straight bartack will be sewn through from the outside of the garment the inside at the bottom of the fly. It shall be sewn through the zipper tape, the right and left fly and the right fly lining. The right and left fly shall be joined by an additional bartack located below the bottom zipper stop on the inside of the <u>pants.</u>

### 10.   SEAMING

The entire <u>pants</u> are to be seamed with Polyester core of 100% Polyester spun thread. The seat seam shall be stitched with a tandem needle seat seaming machine.

### 11.   CREASING

The front of the <u>pants</u> legs must incorporate a 1/16" top stitch, sewn in crease. Sewing must be 10 stitches per inch.

### 12.   SIZE TAG

The <u>pants</u> shall have a sewn in label giving care instructions and an outside waistband label which will be marked with a lot number, size, fiber content and WPL number. A 13 permanent size label shall be sewn inside on the hip pocket.

**NEW MATERIAL <u>UNDERLINED</u>**

416R



| EFFECTIVE DATE **11/03/06** | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|
| CLASSIFICATION # **2270** | | |
| DISTRIBUTION **A & E** | APPROVED FOR WEB POSTING [ ] YES [X] NO | PAGE 21D of 67 PAGES |



## VII. UNIFORM AND EQUIPMENT SPECIFICATIONS
### *CORRECTION OFFICERS- OPTIONAL UNIFORM ITEMS* (Continued)

13. AUTHORIZATION TAG

The cargo pants must contain an authorized and numbered certification label to be sewn on top of the inside left seam cargo pocket.

14. FINISHING AND PRESSING

All loose threads shall be removed. Pants must be pressed completely and properly with the side seam, inseam, and seat seam pressed open. There must be a Texpak clip attached to the top fly of the finished pants.

15. WARRANTY

One year against workmanship or fabric defects.

16. STANDARD SAMPLE

Unless otherwise specified shall be equal to the sample on the file at the Equipment Section.

D. LEATHER GLOVES

NYCDOC regulation black gloves completely made of 100% fully tanned cowhide with an athletic glove type wrist closure system. Each glove will be constructed of the following leather pieces: 1 front, 1 back, 1 thumb, and 3 fourchettes. The back of the glove at the wrist shall be elasticized with 2 rows of $^5/_{16}$" elastic sewn with a zig-zag stitch.

**NEW MATERIAL UNDERLINED**

---

416

| EFFECTIVE DATE 9/23/96 | SUBJECT |
| CLASSIFICATION #2270 | UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
| DISTRIBUTION A & E | PAGE 22 OF 67 PAGES |

VII. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**CORRECTION OFFICER - OPTIONAL UNIFORM ITEMS** (Continued)

REGULATION UNIFORM OPTIONAL UNIFORM ITEMS (Continued)

**E. WINTER GLOVES**

NYCDOC regulation black colored Nylon 70 Denier (warp) and 2 ply taslanized Nylon 70 Denier (filling), plain weave gloves with a permanent waterproof-breathable glove. They shall have fabric back and 100% black tanned leather on the palms, thumbs and fingers. The glove shall be fully insulated throughout the hands and fingers. The fingers shall be box construction with shell fabric between the fingers. The palm shall be fully reinforced with a layer of leather running completely across the palm and inside of the thumb. The front of the glove at the wrist shall be elasticized with 2 rows of 1/4" elastic set with a zig-zag stitch.

*Note:* Items "D" - Leather Gloves & "E" - Winter Gloves, shall only be worn on outside assignments.

**F. WINDSTOPPER TROUSER LINER**

NYCDOC regulation black colored Gore-Tex (or equal) outer laminate and black colored nylon 70 Denier and 2-ply taslanized nylon 70 denier, plain weave inner facing. The pants liner shall be waist high, windproof design, open at the front fly, reinforced waist facing, 2 piece leg and buttonholes for attachment to trouser.

**G. RAIN CHAPS**

NYCDOC regulation Gore-Tex US101 polyester/Gore-Tex polyester tricot 3 layer laminate (or equal) police blue colored on 1 side and fluorescent orange on the other. They shall be thigh high length wide cut for easy on/off over boots or shoes, waterproof by design. There shall be elasticized boot straps to hold chaps under shoes.

*Note:* Can only be worn with authorized rain coat.

**H. DETACHABLE HOOD**

NYCDOC regulation police blue in color, 200 Denier nylon (warp) and 3 ply 70 Denier Taslanized nylon (filling) plain weave in a 1 piece design (or equal). Bound all around with taffeta and with an overlapping front secured by 2 snaps. The hood shall attach to a jacket by means of 3 snaps. The shell fabric shall match the Cruiser duty jacket in construction and color. There shall be 2 sets of darts top and bottom for shape. The hood shall be pile lined and shall open and close via a zipper splitting it down the middle so as to lay flat on the back when not in use. May contain optional white colored Gore-Tex liner (or equal) in between the outer and inner shells.

416

| EFFECTIVE DATE<br>9/23/96<br>CLASSIFICATION<br>#2270<br>DISTRIBUTION<br>A & E | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS<br><br>PAGE 23 OF<br>67 PAGES |  |
| --- | --- | --- |

## VII. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - OPTIONAL UNIFORM ITEMS (Continued)

REGULATION
UNIFORM
OPTIONAL UNIFORM
ITEMS
(Continued)

I. **OVERSOCKS**

NYCDOC regulation black colored, 3-layer nylon and lycra stretch knit fabric or 3-layer non-stretch nylon Suplex Taslite fabric (or equal), with a Gore-Tex (or equal) membrane. The oversock shall be totally waterproof, highly breathable, windproof and designed to be worn over socks and inside footwear. The oversock shall have a footbed and rear stay constructed from the specified non-stretch material with the top and forward sections of the oversock constructed of the specified stretch material. The oversock shall measure 11" high and shall be hand washable.

## VIII. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - UNIFORM EQUIPMENT

REGULATION
UNIFORM
EQUIPMENT

The following equipment is authorized and shall be worn with all classes of uniforms where required:

A. **TROUSER BELT**

Uniform approved black leather, 1 ³/₄" wide with silver or black buckle.

B. **EQUIPMENT/GUNBELT**

Uniform approved black leather/laminate, 2 ¹/₄" wide with silver or black buckle, as noted below:

| Manufacturer * | Model # * |
| --- | --- |
| Cobra | B1P |
| DeSantis | B33 |
| J P | 5FL |
| Safariland | 146 |

Regulation
Gunbelts

<u>Note</u>: *Buckles with ornamental designs or insignias are not authorized on the trouser belt or equipment/gunbelt.*

\* or authorized equivalent

416

| EFFECTIVE DATE 9/ 23 /96 | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | CORRECTION DEPARTMENT CITY OF NEW YORK |
|---|---|---|
| CLASSIFICATION # 2270 | | |
| DISTRIBUTION A & E | PAGE 24 OF 67 PAGES | |

VIII. __UNIFORM AND EQUIPMENT SPECIFICATIONS__
__CORRECTION OFFICER - UNIFORM EQUIPMENT__ (Continued)

REGULATION
UNIFORM
EQUIPMENT
(Continued)

C. **BELT KEEPERS** (for Equipment/Gunbelt)

Uniform approved black leather/laminate or equivalent with black or silver snaps, as noted below:

| Manufacturer * | Model # * |
|---|---|
| Cobra | U7 |
| DeSantis | V1 |
| J P | 25 |
| Safariland | 85 |



Regulation
Belt Keepers

D. **DUTY HOLSTER** (.38 cal, S & W, Model 10)

Uniform approved black leather swivel type with interlocking safety internal device, as noted below:

| Manufacturer * | Model # * |
|---|---|
| J P | 2074S |

E. **DUTY HOLSTER** (9mm, S&W, Models 5946, 6946 and 3953)

Uniform approved black leather/laminate multi-construction security holster, as noted below:

| Manufacturer * | Model # * |
|---|---|
| Cobra | X100 |
| DeSantis | 69M |
| Safariland | 2955 |

* or authorized equivalent

416

| EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>**UNIFORM AND EQUIPMENT**<br>**SPECIFICATIONS AND REGULATIONS** |  |
|---|---|---|
| CLASSIFICATION<br># 2270 | | |
| DISTRIBUTION<br>A & E | PAGE 2 5 OF<br>6 7 PAGES | |

VIII. _UNIFORM AND EQUIPMENT SPECIFICATIONS_
_CORRECTION OFFICER - UNIFORM EQUIPMENT_ (Continued)

**REGULATION**
**UNIFORM**
**EQUIPMENT**
(Continued)

F. **DUTY HOLSTER** (9mm, Sig Sauer, Models P226, P228 and P225)

Uniform approved black laminate multi-construction security holster, as noted below:

| Manufacturer * | Model # * |
|---|---|
| Safariland | 2955 |

G. **DOUBLE SPEEDLOADER POUCH**

Uniform approved black leather double speedloader holder with snap closures, as noted below:

| Manufacturer * | Model # * |
|---|---|
| J P | SL2 |



Regulation
Double
Speedloader Pouch

H. **SPEEDLOADERS**

Uniform approved black, ball bearing type speedloader, holding 6 cartridges for the Smith & Wesson Model 10 gun, as noted below:

| Manufacturer * | Model # * |
|---|---|
| HKS | 10A |

I. **DUAL 9mm MAGAZINE HOLDER**

Uniform approved black leather/laminate dual magazine holder with snap closures worn vertically only, as noted below:

| Manufacturer * | Model # * |
|---|---|
| Cobra | U66 |
| DeSantis | U41 |
| Safariland | 77 |

Regulation
Dual
9mm Magazine
Holder

* or authorized equivalent

416

| | EFFECTIVE DATE<br>**9/ 23 /96**<br>CLASSIFICATION<br>**# 2270**<br>DISTRIBUTION<br>**A & E** | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS**<br><br>PAGE 2 6 OF<br>6 7 PAGES | |

## VIII. *UNIFORM AND EQUIPMENT SPECIFICATIONS*
### *CORRECTION OFFICER - UNIFORM EQUIPMENT* (Continued)

**REGULATION
UNIFORM
EQUIPMENT
(Continued)**

**J. KEY RING HOLDER**

Uniform approved black leather, with either single or twin metal holder attached.

**K. HANDCUFFS**

Black or silver colored Peerless or Smith & Wesson brand handcuffs with key.

> *Note:* *Correction Officers are not authorized to carry handcuffs in a jail facility unless authorized by the Commanding Officer for special duty assignments.*



**L. HANDCUFF CASE**

1. Black leather enclosed case with flap and snap button, (authorized for use within or outside facility).

2. Black leather open breakaway type case with snap button, (authorized for posts outside of facility only).

:Regulation
Handcuffs and
Handcuff Case

**M. DUTY KNIFE Rescue Tool**

High carbon, stainless steel locking blade approximately $2\frac{1}{2}$" long with a curved tip going back towards the handle approximately 1". Tip of blade is rounded and smooth. Handle construction is contoured rubberized plastic and black in color.

> *Note:* *Knife must be individually serial numbered and number must be recorded with command.*



**N. DUTY KNIFE CASE**

Uniform approved black leather carry case with flap and snap button capable of attaching to a belt up to $2\frac{1}{4}$" in size.

Regulation
Duty Knife and
Duty Knife Case

416

| EFFECTIVE DATE **9/23/96** CLASSIFICATION **#2270** DISTRIBUTION **A & E** | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** PAGE **27** OF **67** PAGES | CORRECTION DEPARTMENT |
|---|---|---|

## VIII. UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - UNIFORM EQUIPMENT (Continued)

**REGULATION UNIFORM EQUIPMENT** (Continued)



Regulation Flashlight and Flashlight Holder

**O. FLASHLIGHT**

1. Black, "Mini-Maglite" type flashlight constructed of aluminum alloy not to exceed 5" in length and weighing approximately 2 ounces; or

2. Standard 2-Cell (C or D), aluminum alloy or plastic flashlight.

3. Flashlight equipment shall be mandatory, 24 hours a day, for all Correction Officers in uniform.

   *Note:* *Any other flashlight, other than the type described herein, is unauthorized.*

**P. FLASHLIGHT HOLDER**

Uniform approved black leather, capable of holding a "Mini-Maglite" type or standard 2-Cell flashlight and attaching to a belt up to 2 ¼" in size.

**Q. WHISTLE**

Small or large sized black or silver colored whistle with attached securing ring.

**R. MEMO BOOK**

Uniform approved black leather with small 3 ring binder capable of holding 4, 4" x 6" writing pads.

**S. MEMO BOOK PAD**

Uniformed approved writing pad measuring 4" x 6" with 3 holes and paper must be lined.

**T. PEN & PENCIL HOLDER**

Uniform approved black leather holder with 2 or 3 compartments.

**U. GLOVE POUCH**

Uniform approved black leather holder with velcro front closure to accommodate the holding of rubber gloves.

Regulation Glove Pouch

416

| EFFECTIVE DATE<br>9 / 23 / 96 | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|
| CLASSIFICATION<br># 2270 | | |
| DISTRIBUTION<br>A & E | PAGE 28 OF<br>67 PAGES | |

## VIII.  UNIFORM AND EQUIPMENT SPECIFICATIONS
### CORRECTION OFFICER - UNIFORM EQUIPMENT  (Continued)

**REGULATION<br>UNIFORM<br>EQUIPMENT<br>(Continued)**

### V.  BULLET-RESISTANT VEST

Small arms protective undergarment must be in accordance with United States Department of Justice NIJ-STD-0101.03, dated February 1987 or latest revision, and New York Police Department purchase description FTS 1303-94 fitted for gender and size of member.

## IX.  UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS - REGULATION UNIFORMS

The regulation duty uniform is specified for wear during daily tours of duty (except where noted):

**REGULATION<br>DUTY<br>UNIFORM<br>CAPTAIN**

### A.  RANK INSIGNIA

The rank insignia, 2 gold glit bars (large and small size), shall replace Departmental and command insignias and shall be worn as follows:

1.  Large gold metal type insignia shall be worn on the shoulders of the summer blouse, winter reefer coat and Cruiser duty jacket (see Section XII for placement).

2.  Commando V-neck sweater shall accept a gold colored rank insignia imprinted on black cloth shoulder boards trimmed at both ends with thin gold stripes.

3.  Small gold metal type insignias shall be worn on collars of uniform shirts and collars of all class "B" utility jackets (see Section XII for placement).

### B.  UNIFORM CAP - Standard

Shall be the same as required for Correction Officer with the following modifications:

1.  Cap device shall be gold colored metal without shield number.

2.  Strap shall be gold colored.

   *Note*:  *Must be worn for all outside duty assignments or as otherwise prescribed by Departmental orders and/or teletypes.*

416

| | EFFECTIVE DATE<br>9/23/96<br>CLASSIFICATION<br># 2270<br>DISTRIBUTION<br>A & E | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS**<br><br>PAGE 29 OF<br>67 PAGES |  |
|---|---|---|---|

IX.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
       **SUPERVISORY OFFICERS - REGULATION UNIFORMS**  (Continued)

**REGULATION
DUTY
UNIFORM
CAPTAIN**
(Continued)

C. **UNIFORM HAT - Winter (optional)**

Shall be the same as required for Correction Officer with the following modification:

·The cap device shall be gold colored metal without shield number.

D. **UNIFORM SHIRT**

1. NYCDOC regulation white colored, "3D" stretch poplin with micro comfort finish. Shall be constructed of 62% dacron polyester/38% combed cotton with 9-11% filling stretch with shoulder straps. Two military creases in front and 3 in back of shirt. Two breast pockets finished with mitered corners and shall have a $1\frac{1}{2}$" box pleat stitched top and bottom to prevent spreading and a $\frac{3}{8}$" velcro strip to secure to flaps. Left pocket to have sewn through pencil opening $1\frac{3}{8}$" wide. Two eyelet holes sewn above left breast, $1\frac{3}{4}$" apart (with 1" inside reinforcement sling) to accept regulation shield. Rank insignia to be centered 1" from front edge and 1" from bottom edge.

2. Long sleeve and short sleeve uniform shirt specifications are identical with the exception of the length of the sleeve.

3. Must contain authorized and numbered certification label to be sewn on the inside of back placket between the 4th and 5th button from the collar, with no stitching exposed on the outside of the shirt.

   <u>Note</u>:    *Service Stripes are not authorized on any supervisory officer uniforms.*

E. **UNIFORM TROUSERS**

Shall be the same as required for Correction Officer with the following modification:

The outer seam shall have sewn a $1\frac{1}{4}$" black NY twist stripe (braid).

   <u>Note</u>:    *Uniform duty trousers cannot be worn with the class "A" regulation summer blouse or class "A" regulation winter reefer coat.*

416

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS |  |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | | |
| | DISTRIBUTION<br>A & E | PAGE 30 OF<br>67 PAGES | |

IX.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
       **SUPERVISORY OFFICERS - REGULATION UNIFORMS**  (Continued)

REGULATION
DUTY
UNIFORM
CAPTAIN
(Continued)

F.  **CRUISER DUTY JACKET**

Shall be the same as required for Correction Officer with the following modifications:

1.  No eyelet holes for command insignia on collar.

2.  Addition of a 1" black NY twist stripe (braid) on each sleeve.

3.  Metal rank insignias placed on epaulets (as stipulated in Section XII).

G.  **REVERSIBLE RAINCOAT**

Shall be the same as described for Correction Officer.

H.  **SOCKS**

Shall be the same as required for Correction Officer.

I.  **SHOES**

Shall be the same as required for Correction Officer.

J.  **TIE**

Shall be the same as required for Correction Officer.

K.  **TIE CLASP**

Gold clasp with blue letters (D.C.N.Y.) the center of which shall contain the City seal.

416

| EFFECTIVE DATE 9/23/96 | SUBJECT | CORRECTION DEPARTMENT |
|---|---|---|
| CLASSIFICATION # 2270 | UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS | |
| DISTRIBUTION A & E | PAGE 31 OF 67 PAGES | |

IX.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
        **SUPERVISORY OFFICERS - REGULATION UNIFORMS**   (Continued)

CLASS "A"
REGULATION
UNIFORM
DRESS
CAPTAIN

The class "A" regulation uniform is designated for wear the same as required for Correction Officer.

A. **UNIFORM CAP - Standard**

Same as for regulation duty uniform cap - standard.

B. **SUMMER BLOUSE**

Shall be the same as required for Correction Officer with the following modifications:

1. Addition of 1 gold button on each sleeve.

2. Addition of a 1 1/4" black NY twist stripe (braid) on each sleeve just above the top-most gold button (as specified in Section XII).

3. No eyelet holes for command insignias on collar.

4. Metal rank insignias placed on epaulets (as specified in Section XII).



C. **WINTER REEFER COAT**

Shall be the same as required for Correction Officer with the following modifications:

1. One additional gold button on cuffs.

2. One and one-quarter inch black NY twist stripe (braid) on sleeves above the top-most gold button (as specified in Section XII).

3. Coat when worn shall be buttoned and enclosed to the collar.

4. The authorized supervisory winter reefer coat is available in 2 options:

    a. Standard Correction Officer style worn as previously specified; or

Regulation
Class "A" Dress Uniform
Captain
Winter Reefer Coat
NYPD Version

416

| EFFECTIVE DATE 9/23/96 | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|
| CLASSIFICATION #2270 | PAGE 32 OF 67 PAGES | |
| DISTRIBUTION A & E | | |

IX.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
      **SUPERVISORY OFFICERS - REGULATION UNIFORMS**  (Continued)

**CLASS "A" REGULATION UNIFORM DRESS CAPTAIN** (Continued)

b.  NYPD supervisory officer regulation winter coat, double breasted with flared buttons, (large buttons in 2 rows of 5 flared from a position parallel to the jacket pockets in an upward direction), closed collar version (see illustration on page 31).

*Note:*  *Service stripes are not authorized for supervisory class "A" regulation winter reefer coat.*

D.  **UNIFORM TROUSERS**

Shall be the same as required for Correction Officer with the following modification:

The outer seam shall have sewn a 1 ¼" black NY twist stripe (braid).

E.  **UNIFORM SHIRT**

Same as for regulation duty uniform shirt.

F.  **SOCKS**

Same as for regulation duty uniform socks.

G.  **TIE**

Same as for regulation duty uniform tie.

H.  **TIE CLASP**

Same as for regulation duty uniform tie clasp.

I.  **SHOES**

Same as for regulation duty shoes.

J.  **CEREMONIAL GLOVES**

Lightweight white cotton or polyester rayon type.

416

| EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|
| CLASSIFICATION<br># 2270 | PAGE 33 OF<br>67 PAGES | |
| DISTRIBUTION<br>A & E | | |

IX. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SUPERVISORY OFFICERS - REGULATION UNIFORMS** (Continued)

**CLASS "B"**
**REGULATION**
**UNIFORM**
**UTILITY**
**CAPTAIN**

The class "B" regulation uniform is mandatory for Captains assigned to details and special support units whose duties require this type of work uniform, such as:

1. Support Services Division;

2. Correction Industries Division;

3. Transportation Division Garage detail;

4. Construction Management Unit;

5. Divisional storehouse detail; and

6. Facility maintenance detail.

> **Note:** The class "B" uniform is optional for Captains assigned to:
>
> a) Facility kitchen details;
>
> b) Facility intake details; or
>
> c) Facility environmental/sanitation details.

A. **UNIFORM CLASS "B" SHIRT**

Shall be the same as required for Correction Officer with the following modification:

The rank insignia shall replace the command insignia.

B. **UNIFORM CLASS "B" UTILITY TROUSERS**

Shall be the same as required for Correction Officer.

C. **WORK CAP** (Baseball Type)

Shall be the same as required for Correction Officer with the following modification:

A small rank insignia shall be affixed to the center of the patch.

| | EFFECTIVE DATE<br>9 / 23 / 96 | SUBJECT | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|---|
| 416 | CLASSIFICATION<br># 2270 | | PAGE 34 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | | |

## IX. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS - REGULATION UNIFORMS (Continued)

**CLASS "B"
REGULATION
UNIFORM
UTILITY
CAPTAIN**
(Continued)

**D. UNIFORM CLASS "B" UTILITY JACKET**

Shall be the same as required for Correction Officer with the following modification:

The rank insignia shall replace the DC insignia on the collar.

**E. SOCKS**

Shall be the same as required for Correction Officer.

**F. SHOES**

Shall be the same as required for Correction Officer.

The following have been authorized as regulation uniform items but are not listed as mandatory (optional).

**REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS
CAPTAIN**

**A. COMMANDO V-NECK SWEATER**

Shall be the same as for Correction Officer with the following modifications:

1. The epaulets shall be stitched at the shoulder seam to accept rank insignia cloth shoulder boards.

2. The rank insignia shall be military gold colored rank designation imprinted on black cloth shoulder boards trimmed at both ends with thin gold stripes, to be slipped through the sweater epaulets.

**B. TURTLENECK STYLE SWEATER**

Shall be the same as described for Correction Officer.

**C. DUTY UNIFORM SKIRT (Female)**

Shall be the same as described for Correction Officer.

**D. LEATHER GLOVES**

Shall be the same as described for Correction Officer.

| 416R | EFFECTIVE DATE 11/03/06 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| | CLASSIFICATION # 2270 | | PAGE 35 OF 67 PAGES |
| | DISTRIBUTION A & E | APPROVED FOR WEB POSTING ☐ YES ☒ NO | |

## IX.  UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS – REGULATION UNIFORMS   (Continued)

REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS
CAPTAIN
(Continued)

**E.  WINTER GLOVES**

Shall be the same as described for Correction Officer.

**F.  WINDSTOPPER TROUSER LINER**

Shall be the same as described for Correction Officer.

**G.  RAIN CHAPS**

Shall be the same as described for Correction Officer.

**H.  DETACHABLE HOOD**

Shall be the same as described for Correction Officer.

**I.  OVERSOCKS**

Shall be the same as described for Correction Officer.

**J.  CARGO PANTS**

1.  The Cargo Pants are optional for Captains assigned to:

   a.  i.  Facility housing area supervisory posts;

      ii.  Facility Kitchen details;

      iii.  Facility Intake details;

      iv.  Facility Environmental Health/Sanitation details; and

      v.  Facility Recreation details.

   b.  Details and Special Support Units where the wearing of a Class "B" uniform is mandatory (refer to Section IX. Class "B" Regulation Uniform Utility Captains).

NEW MATERIAL UNDERLINED

| 416R | EFFECTIVE DATE **11/03/06** | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|---|
| | CLASSIFICATION # **2270** | | |
| | DISTRIBUTION **A & E** | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 35A OF 67 PAGES |

## IX. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS – REGULATION UNIFORMS   (Continued)

REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS
CAPTAIN
(Continued)

2. Cargo Pants may not be worn:

   a. When attending ceremonial functions;

   b. With the Class "A" regulation summer blouse or Class "A" winter reefer coat.

   c. When assigned to facility or Headquarters administrative posts; or

   d. When assigned to an area accessible to the public (i.e., Parry Center, Visit Control Building, etc.).

3. Captains assigned to facility housing area and recreation supervisory posts must wear a regulation duty white shirt when wearing cargo pants.

REGULATION
UNIFORM
EQUIPMENT
CAPTAIN

The following equipment is authorized and shall be worn with all classes of uniforms where required:

### A. TROUSER BELT

Shall be the same as required for Correction Officer.

### B. EQUIPMENT/GUNBELT

Shall be the same as for Correction Officer.

### C. BELT KEEPERS (for Equipment/Gunbelt)

Shall be the same as described for Correction Officer.

### D. DUTY HOLSTER (.38 cal, S&W, Model 10)

Shall be the same as described for Correction Officer.

NEW MATERIAL UNDERLINED

| 416 | EFFECTIVE DATE<br>9/23/96<br>CLASSIFICATION<br>#2270<br>DISTRIBUTION<br>A & E | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS<br><br>PAGE 36 OF<br>67 PAGES | CORRECTION<br>DEPARTMENT |

IX.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SUPERVISORY OFFICERS - REGULATION UNIFORMS**  (Continued)

REGULATION
UNIFORM
EQUIPMENT
CAPTAIN
(Continued)

E.  **DUTY HOLSTER (9mm, S&W, Models 5946, 6946 and 3953)**

Shall be the same as described for Correction Officer.

F.  **DUTY HOLSTER (9mm, Sig Sauer, Models P226, P228 and P225)**

Shall be the same as described for Correction Officer.

G.  **DOUBLE SPEEDLOADER POUCH**

Shall be the same as described for Correction Officer.

H.  **SPEEDLOADERS**

Shall be the same as described for Correction Officer.

I.  **DUAL 9mm MAGAZINE HOLDER**

Shall be the same as described for Correction Officer.

J.  **KEY RING HOLDER**

Shall be the same as required for Correction Officer.

K.  **HANDCUFFS**

Shall be the same as for Correction Officer.

L.  **HANDCUFF CASE**

Shall be the same as for Correction Officer.

M.  **DUTY KNIFE Rescue Tool**

Omitted for this rank.

N.  **DUTY KNIFE CASE**

Omitted for this rank.

416

| EFFECTIVE DATE<br>9 / 23 / 96 | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS** |  |
| --- | --- | --- |
| CLASSIFICATION<br># 2270 | | |
| DISTRIBUTION<br>A & E | PAGE 37 OF<br>67 PAGES | |

## IX.  UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS - REGULATION UNIFORMS  (Continued)

REGULATION
UNIFORM
EQUIPMENT
CAPTAIN
(Continued)

O. **FLASHLIGHT**

Shall be the same as required for Correction Officer.

P. **FLASHLIGHT HOLDER**

Shall be the same as required for Correction Officer.

Q. **WHISTLE**

Omitted for this rank.

R. **MEMO BOOK**

Shall be the same as required for Correction Officer.

S. **MEMO BOOK PAD**

Shall be the same as required for Correction Officer.

T. **PEN & PENCIL HOLDER**

Shall be the same as required for Correction Officer.

U. **GLOVE POUCH**

Shall be the same as described for Correction Officer.

V. **BULLET RESISTANT VEST**

Shall be the same as required for Correction Officer.

W. **DEFENSE SPRAY**

Mace defense spray, manufactured by MSI Model MK-VI, # MDL 6020(CS), .84 ounce, spring loaded flip top safety cap, belt/pocket clip, pistol grip dispenser.



Regulation
Defense Spray
with Holster

X. **DEFENSE SPRAY HOLSTER**

Uniform approved synthetic black leather or equivalent with black or silver snaps, as noted below:

| Manufacturer * | Model # * |
| --- | --- |
| MSI (Right-Handed) | 6981R |
| MSI (Left -Handed) | 6981L |

° Or approved equal

416

| | EFFECTIVE DATE 9 / 23 /96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| | CLASSIFICATION # 2270 | | |
| | DISTRIBUTION A & E | PAGE 38 OF 67 PAGES | |

IX.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
      **SUPERVISORY OFFICERS - REGULATION UNIFORMS**  (Continued)

**ASSISTANT DEPUTY WARDEN**

A.  RANK INSIGNIA

The rank insignia, a gold gill oak leaf (large and small size), shall be worn as described for Captain.

**REGULATION DUTY UNIFORM**

B.  The regulation duty uniform shall be the same as required for Captain.

**REGULATION CLASS "A" UNIFORM**

C.  The class "A" regulation dress uniform shall be the same as required for Captain.

**REGULATION CLASS "B" UNIFORM UTILITY**

D.  The class "B" regulation utility uniform shall be the same as required for Captain.

**REGULATION UNIFORM OPTIONAL UNIFORM ITEMS**

E.  The optional uniform items shall be the same as for Captain.

**REGULATION UNIFORM EQUIPMENT**

F.  The equipment shall be the same as for Captain with the following exceptions:

1.  MEMO BOOK/PADS

Omitted for this rank.

2.  DEFENSE SPRAY & HOLSTER

Omitted for this rank.

3.  GLOVE POUCH

Omitted for this rank.

416

| EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT |
| CLASSIFICATION # 2270 | SPECIFICATIONS AND REGULATIONS |
| DISTRIBUTION A & E | PAGE 39 OF 67 PAGES |

## IX. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS - REGULATION UNIFORMS (Continued)

**DEPUTY WARDEN
DEPUTY WARDEN
IN COMMAND
AND
CHAPLAIN**



**REGULATION
DUTY
UNIFORM**

**REGULATION
CLASS "A"
UNIFORM**

A. **RANK INSIGNIA**

The rank insignia, a gold gilt spread eagle (large and small size), shall be worn as described for Assistant Deputy Warden except:

Deputy Wardens-In-Command shall wear a ½" black NY twist stripe (braid), consistent with the Warden standards for the summer blouse, (see illustration, Section XII, for specifics)

B. The regulation duty uniform shall be the same as required for Assistant Deputy Warden.

C. The class "A" regulation dress uniform shall be the same as required for Assistant Deputy Warden with the following variance:

**ALL WEATHER TRENCH COAT**

1. NYPD/NYCDOC regulation navy-blue all weather double-breasted trench coat.

    a. Males:
       London Fog Davis style (or equal).

    b. Females:
       London Fog Lissette style (or equal).

2. Garment must be converted for uniform use by Deputy Wardens and above by adding large metal insignia onto shoulder straps, Departmental patch on both sleeves (¾" from shoulder seam) and replace the existing 10 buttons with 10 large gold colored buttons containing the seal of the City of New York and 2 small buttons to be added to the shoulder straps near the collar line.

3. The length of the garment shall be consistent with military regulations. The bottom of which shall be hemmed and not to extend beyond 4" below the member's knee.

    **Note:** This garment replaces the winter reefer coat as the mandatory class "A" dress uniform outerwear.

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| --- | --- | --- | --- |
| 416 | CLASSIFICATION<br># 2270 | PAGE 40 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | |

IX.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
      **SUPERVISORY OFFICERS - REGULATION UNIFORMS** (Continued)

**DEPUTY WARDEN**
**DEPUTY WARDEN**
**IN COMMAND**
**AND**
**CHAPLAIN**
**(Continued)**

**REGULATION**
**CLASS "B"**
**UNIFORM**

D.  The class "B" regulation utility uniform shall be omitted for this rank.

**REGULATION**
**UNIFORM**
**OPTIONAL**
**UNIFORM ITEMS**

E.  WINTER REEFER COAT

Shall be the same as required for Assistant Deputy Warden with the exception that the item is an option when the class "A" uniform is not required.

**REGULATION**
**UNIFORM**
**EQUIPMENT**

F.  The Equipment shall be the same as for Assistant Deputy Warden with the following exception:

FLASHLIGHT/HOLDER

Omitted for this rank.

**WARDEN**



A.  RANK INSIGNIA

The rank insignia, 1 gold glit star (large and small size), shall be worn as described for Deputy Warden in Command.

**REGULATION**
**DUTY**
**UNIFORM**

B.  The regulation duty uniform shall be the same as required for Deputy Warden with the following modifications:

UNIFORM CAP - Standard

1.  Gold glit spray design shall be added to the visor.

2.  The band encircling the hat shall be made of black mohair.

| | EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| 416 | CLASSIFICATION<br># 2270 | PAGE 41 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | |

## IX. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SUPERVISORY OFFICERS - REGULATION UNIFORMS (Continued)

**WARDEN**
(Continued)

**CLASS "A"
REGULATION
UNIFORM**

C. The class "A" regulation dress uniform shall be the same as required for Deputy Warden with the following modifications:

SUMMER BLOUSE

A $1/_2$" black NY twist stripe (braid) on each sleeve, 1 $1/_2$" above the existing stripe shall be added (see illustration, Section XII for specifics).

**REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS**

D. The optional uniform items shall be the same as for Deputy Warden except:

WINTER REEFER COAT

Add a $1/_2$" black NY twist stripe (braid) on each sleeve, 1 $1/_2$" above the existing stripe. (see illustration, Section XII for specifics).

**REGULATION
UNIFORM
EQUIPMENT**

E. The equipment shall be the same as for Deputy Warden.

**ASSISTANT CHIEF**

A. RANK INSIGNIA



The rank insignia, 2 gold gilt stars (large and small size), shall be worn as described for Warden.

**REGULATION
DUTY
UNIFORM**

B. The regulation duty uniform shall be the same as required for Warden.

**REGULATION
CLASS "A"
UNIFORM**

C. The class "A" regulation dress uniform shall be the same as required for Warden.

| 416 | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS |  |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | PAGE 42 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | |

## UNIFORM AND EQUIPMENT SPECIFICATIONS

IX.   UNIFORM AND EQUIPMENT SPECIFICATIONS
SUPERVISORY OFFICERS - REGULATION UNIFORMS   (Continued)

**ASSISTANT CHIEF**
(Continued)

REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS
    D.  The optional uniform items shall be the same as for Warden.

REGULATION
UNIFORM
EQUIPMENT
    E.  The equipment shall be the same as for Warden.

**BUREAU CHIEF**   A.  RANK INSIGNIA

The rank insignia. 3 gold gilt star (large and small size), shall be worn as
described for Assistant Chief.

REGULATION
DUTY
UNIFORM
    B.  The regulation duty uniform shall be the same as required for Assistant Chief.

REGULATION
CLASS "A"
UNIFORM
    C.  The class "A" regulation dress uniform shall be the same as required for Assistant
Chief.

REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS
    D.  The optional uniform items shall be the same as for Assistant Chief.

REGULATION
UNIFORM
EQUIPMENT
    E.  The equipment shall be the same as for Assistant Chief.



| 416 | EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
|---|---|---|
| | CLASSIFICATION # 2270 | PAGE 43 OF 67 PAGES |
| | DISTRIBUTION A & E | |

IX.  **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SUPERVISORY OFFICERS - REGULATION UNIFORMS** (Continued)

CHIEF OF DEPARTMENT

   A.  **RANK INSIGNIA**



The rank insignia, 4 gold gilt stars (large and small size), shall be worn as described for Bureau Chief.

REGULATION
DUTY
UNIFORM

   B.  The regulation duty uniform shall be the same as required for Bureau Chief.

REGULATION
CLASS 'A'
UNIFORM

   C.  The class "A" regulation dress uniform shall be the same as required for Bureau Chief.

REGULATION
UNIFORM
OPTIONAL
UNIFORM ITEMS

   D.  The optional uniform items shall be the same as for Bureau Chief.

REGULATION
UNIFORM
EQUIPMENT

   E.  The equipment shall be the same as for Bureau Chief.

| 416 | EFFECTIVE DATE 9/23/96 | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|---|
| | CLASSIFICATION # 2270 | PAGE 44 OF 67 PAGES | |
| | DISTRIBUTION A & E | | |

X. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SPECIALIZED COMMAND UNIFORMS**

The following uniforms are specifically designed for the commands listed below. They shall not be used in combination with the regulation duty, class "A" or class "B" uniforms.

**REGULATION DUTY UNIFORM EMERGENCY SERVICE UNITS**

The following commands are authorized to wear the prescribed emergency service type uniform when performing the functions specifically for their unit and shall not deviate, modify or interchange in any manner, the prescribed uniform set forth herein. They shall not wear the uniform when working a facility, post or assignment designated for a regulation duty, regulation class "A" dress or regulation class "B" utility uniform.

1. Emergency Response Unit;

2. Harbor Unit;

3. K-9 Unit;

4. Communications/Radio Repair Unit; and

5. Fire and Safety Unit.

A. **EMERGENCY SERVICE DUTY CAP**

NYCDOC regulation dark navy blue baseball style cap with a $3/4$ scale command patch affixed to the front center.

> *Note:* Supervisory Officers shall affix a metallic rank insignia to the center of the command patch.

B. **EMERGENCY SERVICE DUTY SHIRT**

1. NYCDOC regulation dark navy-blue colored poplin 65% polyester/35% combed cotton by approved manufacturer, permanent press treated with scotchguard soil release finish emergency service utility shirt. The front shall have a 3" turnback extending from neckline to bottom of shirt. Two pointed breast pockets, left pocket to have a hidden pencil pocket made of a separate fabric, inserted into the pocket edge and topstitched to have an opening of $1^3/8$". Pockets to close with 1 button and buttonhole. Epaulets to be sewn $1^7/8$" tapering down to $1^1/2$" cross stitched at the shoulder seams.

| 416 | EFFECTIVE DATE 9/ 23 /96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| | CLASSIFICATION # 2270 | PAGE 45 OF 67 PAGES | |
| | DISTRIBUTION A & E | | |

## UNIFORM AND EQUIPMENT SPECIFICATIONS
### SPECIALIZED COMMAND UNIFORMS (Continued)

X.

**REGULATION DUTY UNIFORM EMERGENCY SERVICE UNITS** (Continued)

2. The emergency service duty shirt shall be sold pre-patched with the Departmental patch on the left sleeve ½" from the shoulder seam and the command patch affixed to the right sleeve ½" from the shoulder seam (3 ½" for Communications/Radio Repair Unit). In addition, 5 other patches shall be affixed as follows:

a. Unit Identification Patch (Shirt Back)

Six inch by nine and seven-eighths inch embroidered patch sewn centered and level to the rear of the shirt at the shoulder-line. The COMMAND NAME centered on the patch, embroidered in 1 ½" letters with the words NYC, CORRECTION on the following 2 lines in ¾" letters. The embroidery shall be sewn onto a background of midnight navy-blue twill 65% polyester/35% cotton in block lettering with snow white colored thread.



b. Unit Identification Patch (Right Breast)

Two and one-half inch by four inch duplicate of Unit Identification Patch (shirt back) with the COMMAND NAME, embroidered onto a background of midnight navy-blue twill 65% polyester/35% cotton in ⁵/₈" letters and the words NYC, CORRECTION on the following 2 lines in ½" letters. The patch shall be sewn to right breast of shirt above pocket.



c. Member Identification Patch (Left Breast)

Three and three-eighths inch by two and one-half inch embroidered name and patch, sewn over left breast pocket. The member's name, centered on the patch, embroidered in ³/₈" letters and member's shield number on the subsequent line in ³/₈" letters. The embroidery shall be block lettering sewn onto a background of midnight navy-blue twill 65% polyester/35% cotton with the following colored thread; for this patch only;



   i. Correction Officer:

     Snow White

   ii. Supervisory Officer:

     Yellow-Orange

**Note:** Supervisory ranks above Captain shall have their rank spelled out in place of their shield number.


| 416 | EFFECTIVE DATE<br>9 / 23 /96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | PAGE 47 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | |

X.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SPECIALIZED COMMAND UNIFORMS** (Continued)

REGULATION
DUTY UNIFORM
EMERGENCY
SERVICE UNITS
(Continued)

**C. EMERGENCY SERVICE UTILITY TROUSERS**

NYCDOC regulation dark navy-blue colored 65% dacron polyester/35% combed cotton 2x1 Fineline Twill 7 $\frac{1}{4}$ - 7 $\frac{1}{2}$ oz. per square yard cargo/utility style trousers. Shall be made in a full cut uniform pattern tapering from the knee to bottom and featuring 2 quarter top pockets, 6 utility pockets with flaps and inside reinforcing knee pockets, designed to use removable padding. The front pockets shall have a minimum opening of 6 $\frac{1}{2}$" and be 6" deep from the bottom of the opening. They will be stitched, turned and restitched. The inside front pocket facing shall be a separate piece of self material finishing no less than 1 $\frac{1}{4}$" wide. The hip pockets shall be 6 $\frac{1}{2}$" x 6" mitered patch pockets with inverted pleats; $\frac{1}{4}$" topstitching, bartacked upper corners and 2 $\frac{1}{2}$" x 6 $\frac{5}{8}$" flaps, bartacked at upper corners and secured to pockets with velcro closures. The cargo/glove pockets shall be 4" x 3 $\frac{1}{2}$" mitered with inverted pleats and 1 $\frac{5}{8}$" x 4 $\frac{1}{4}$" flaps with velcro closures. Side seam cargo pockets shall be 8" x 9" mitered pocket with inverted pleat, 2 $\frac{1}{2}$" x 8 $\frac{1}{4}$" with flap on left side and 8" x 9" mitered pocket with 2, inverted 2 $\frac{1}{2}$" x 8 $\frac{1}{4}$" flap with 5 $\frac{1}{4}$" x 5 $\frac{1}{4}$" utility pocket on outside with 2 snap tabs and 3 divisions. All pockets and flaps shall be topstitched $\frac{1}{4}$" with straight tacks at upper corners of pockets and flaps. Loop velcro on pockets, hook velcro on flaps $\frac{3}{4}$" x 1". The waistband shall be 2" wide and shall be closed with a crush-proof hook and eye, bartacked for stability. The waistband curtain, attached with a rocap machine, shall have Snugtex (or equal) and be made of black 75% polyester/25% cotton. No roll waistband stiffener, $\frac{1}{4}$" in width, shall be sewn into waistband on the front of the trouser from side seam to side seam.

**D. EMERGENCY SERVICE DUTY JACKET**

1.  NYCDOC regulation dark navy blue 65% dacron polyester/35% combed cotton, 2x1 Fineline Twill 7 $\frac{3}{4}$ oz. per square yard treated with scotchguard soil release and wicking finish. The jacket shall be a windbreaker style uniform jacket with a bi-swing back, zippered side vents, partially shirred waistband, upper patch pockets with flaps, lower hand warming pockets and a zipper front closure to the neck with 2, 2 $\frac{1}{4}$" wide epaulets on the shoulders. The sleeves shall be plain, 1-piece jacket style with a 2" wide cuff and 2 buttons, 1 button hole for adjustable fit. The lining shall be black 100% Taffeta nylon with 150 gram quilted Thinsulate batting for insulation.

2.  The jacket shall be sold pre-patched with the Departmental patch on the left sleeve $\frac{3}{4}$" from the shoulder seam and the command patch affixed to the right sleeve $\frac{3}{4}$" from the shoulder seam (3 $\frac{1}{2}$" for Communications/Radio Repair Unit). In addition, 5 other patches shall be affixed in the same manner as required for the Emergency Service duty shirt.

| 416 | EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
|---|---|---|
| | CLASSIFICATION # 2270 | PAGE 48 OF 67 PAGES |
| | DISTRIBUTION A & E | |

## UNIFORM AND EQUIPMENT SPECIFICATIONS

X. SPECIALIZED COMMAND UNIFORMS (Continued)

**REGULATION DUTY UNIFORM EMERGENCY SERVICE UNITS (Continued)**

3. Left sleeve of jacket accepts service stripe for Correction Officers (see Section XII for placement).

E. TURTLENECK STYLE SWEATER

1. NYCDOC regulation navy blue, police style turtleneck sweater made of 100% cotton or cotton blend with DCNY block letters in white, emblazoned on the left side of the neck cowl.

2. The turtleneck sweater may only be worn with the regulation Emergency Service jacket.

F. SHOES

Black military style leather tactical boots.

G. SOCKS

Black cotton.

**REGULATION DUTY UNIFORM FIREARMS AND TACTICS UNIT**

Members, while on duty at the Firearms & Tactics Unit, shall wear the prescribed uniform as indicated below and not deviate, modify or interchange in any manner the prescribed uniform set forth herein.

A. REGULATION DUTY CAP (Baseball Type)

NYCDOC regulation red colored baseball type cap with NYDC in block letters over crossed pistols (both embroidered in gold), across the front.

Note: Supervisory Officers shall affix the rank insignia to the center of the front of the hat.



416

| EFFECTIVE DATE | SUBJECT |
|---|---|
| **9/ 23 /96** | **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |
| CLASSIFICATION **# 2270** | PAGE 49 OF 67 PAGES |
| DISTRIBUTION **A & E** | |

X.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SPECIALIZED COMMAND UNIFORMS** (Continued)

**REGULATION DUTY UNIFORM FIREARMS AND TACTICS UNIT** (Continued)

B. **REGULATION DUTY SHIRT**

1. NYCDOC regulation 3D stretch poplin shirt with micro comfort finish constructed of 4½ oz. sq. yd. 62% dacron polyester/38% combed cotton with 9-11% filling stretch in silver-tan. Shall have 2 military creases in front and 3 military creases in back with a permanent silicone crease. Two breast pockets finishing 5⅞" wide and 5⅝" long to have mitered corners. Both pockets shall have a 1½" box pleat stitched top and bottom. Left pocket to have a sewn through pencil opening 1¾" wide ⅜" wide velcro strip, 1" long shall be placed on each pocket to accept a matching flap over them. Two eyelet holes sewn above left breast, 1¾" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets ⅛" stitched, and centered 1" from front edge and 1" from bottom edge to accept command insignia.

2. Long sleeve and short sleeve uniform shirt specifications are identical with the exception of the length of the sleeve.

3. Left sleeve of long sleeve shirt accepts gold with black border service stripes for Correction Officers only (see Section XII for placement).

C. **REGULATION DUTY TROUSERS**

NYCDOC regulation 100% Textured Dacron Polyester, 12½ - 13 oz. per yard, elastic weave trousers in silver-tan. Shall be made on a uniform pattern having a plain front with straight side pockets, a watch pocket and 2 back pockets. The side pockets shall have a minimum opening of 6½" and shall be approximately 5" from the bottom opening. They will be stitched, turned and restitched. The inside front pocket facing shall be a separate piece of self material finishing no less than 1¼" wide. The back pockets shall have a minimum opening of 5½" wide and 6" deep. Each back pocket shall have a button through pocket flap to close. The watch pocket, located approximately 1½" to the front of the right seam at the waistband, shall have an approximate opening of 2¾" and will be 3" deep. The side and watch pockets shall have straight bartacks and the back pockets are to be bartacked. The waistband shall be 2" wide and shall be closed with a crush-proof hook & eye, the eye being bartacked. The waistband curtain, will be made of 75% polyester/25% cotton. No roll waistband stiffener ¾" in width, shall be sewn into the waistband from side seam to side seam.

| 416 | EFFECTIVE DATE<br>9 / 23 /96 | SUBJECT<br>UNIFORM AND EQUIPMENT |
|---|---|---|
| | CLASSIFICATION<br># 2270 | SPECIFICATIONS AND REGULATIONS |
| | DISTRIBUTION<br>A & E | PAGE 50 OF<br>67 PAGES |

## X. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SPECIALIZED COMMAND UNIFORMS (Continued)

**REGULATION
DUTY UNIFORM
FIREARMS AND
TACTICS UNIT
(Continued)**

D. UNIFORM CLASS "B" UTILITY JACKET

Shall be the same as for Correction Officer.

E. COMMANDO V-NECK SWEATER

Shall be the same as for Correction Officer.

F. TURTLENECK STYLE SWEATER

Shall be the same as for Correction Officer.

G. SHOES

Black oxford or military style leather tactical boots (shined).

H. SOCKS

Black cotton.

I. TIE

Shall be the same as for Correction Officer.

**REGULATION
DUTY UNIFORM
H.I.P.
S.T.E.P.**

Members, while on duty for that specific purpose, shall wear the prescribed uniform as indicated below and not deviate, modify or interchange in any manner the prescribed uniform set forth herein.

A. REGULATION HAT (Standard)

NYCDOC approved, State Trooper Style (California DOC regulations) 100% Fur Felt, 5x quality, willow green hat with; 3" brim, slight rolled flange, black leather hat strap and band, single black metal eyelet to accommodate cap device.

*Note:* There will be no alteration of the hat including the rolling of the brim or folding of the hat to change its appearance.

Correction Officers

The silver metal cap device bearing the City seal and member's shield number, shall be affixed to the center of the cap.

416

| EFFECTIVE DATE | SUBJECT | |
|---|---|---|
| **9/ 23 /96** | **UNIFORM AND EQUIPMENT** | |
| CLASSIFICATION | **SPECIFICATIONS AND REGULATIONS** | |
| **# 2270** | | |
| DISTRIBUTION | PAGE **51** OF | |
| **A & E** | **67** PAGES | |

X.  **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SPECIALIZED COMMAND UNIFORMS** (Continued)

**REGULATION**
**DUTY UNIFORM**
**H.I.I.P.**
**S.T.E.P.**
**(Continued)**

**Supervisory Officers**

The gold metal cap device bearing the City seal, shall be affixed to the center of the cap.

> *Note:* *Must be worn on all outside duty assignments or as other-wise prescribed by Departmental orders and/or teletypes.*

B.  **REGULATION DUTY CAP (Optional)**

NYCDOC regulation black colored baseball type cap with the unit initials emblazoned on the front center with $1^3/_4$" blue with yellow bordered block lettering.

> *Note:* *Supervisory Officers shall affix a small metal rank insignia to the center of this cap.*

C.  **REGULATION DUTY DRILL CAP (Drill Instructors Only)**

NYCDOC regulation dark green campaign style/drill instructors hat with a black leather strap and buckle worn to front not to rear. The silver metal cap device bearing the City seal and member's shield number, shall be affixed to the center of the cap. Shall be worn as a duty cap by certified drill instructors only.

D.  **REGULATION DUTY SHIRT**

1.  NYCDOC regulation 3D stretch poplin shirt with micro comfort finish constructed of $4^1/_2$ oz. sq. yd, 62% dacron polyester/38% combed cotton with 9-11% filling stretch in silver-tan. Shall have 2 military creases in front and 3 military creases in back with a permanent silicone crease. Two breast pockets finishing $5^3/_8$" wide and $5^3/_4$" long to have mitered corners. Both pockets shall have a $1^1/_2$" box pleat stitched top and bottom. Left pocket to have a sewn through pencil opening $1^3/_8$" wide $3/_8$" wide velcro strip, 1" long shall be placed on each pocket to accept a matching flap over them. Two eyelet holes sewn above left breast, $1^3/_4$" apart (with 1" inside reinforcement sling) to accept regulation shield.

2.  Long sleeve and short sleeve uniform shirt specifications are identical with the exception of the length of the sleeve.

3.  Left sleeve of long sleeve shirt accepts gold with black border service stripes for Correction Officers (see Section XII for placement).

416

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | |  |
| | DISTRIBUTION<br>A & E | PAGE 52 OF<br>67 PAGES | |

X.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
      **SPECIALIZED COMMAND UNIFORMS** (Continued)

**REGULATION**
**DUTY UNIFORM**
**H.I.I.P.**
**S.T.E.P.**
(Continued)

E. **REGULATION DUTY TROUSERS**

NYCDOC regulation 100% textured dacron polyester, 12½ - 13 oz. per yard, elastic weave trousers in green heather. Shall be made on a uniform pattern having a plain front with straight side pockets, a watch pocket and 2 back pockets. The side pockets shall have a minimum opening of 6½" and shall be approximately 5" from the bottom opening. They will be stitched, turned and restitched. The inside front pocket facing shall be a separate piece of self material finishing no less than 1¼" wide. The back pockets shall have a minimum opening of 5½" wide and 6" deep. Each back pocket shall have a button through pocket flap to close. The watch pocket, located approximately 1½" to the front of the right seam at the waistband, shall have an approximate opening of 2¾" and will be 3" deep. The side and watch pockets shall have straight bartacks and the back pockets are to be bartacked. The waistband shall be 2" wide and shall be closed with a crush-proof hook & eye, the eye being bartacked. The waistband curtain, will be made of black, 75% polyester/ 25% cotton. No roll waistband stiffener ¾" in width, shall be sewn into the waistband from side seam to side seam.

F. **REGULATION DUTY JACKET**

1.  NYCDOC regulation black jacket, constructed of 200 Denier nylon (warp) and 3 ply 70 Denier Taslanized nylon (filling), plain weave, treated with durable fluorocarbon water and stain release agents (optional Gore-Tex Z Liner, or equal). The jacket shall be waist length, single breasted, with overlapping storm front with zipper and snap. The outer shell shall be waterproof, equipped with detachable epaulets, 2 lower flaps and pleated pockets with side openings for hands, bi-swing back, 2 piece set-in sleeves with underarm sleeve gussets, sleeve zippers and leather trim on the cuffs; zippered side vents with snap tab closures, collar with collar stand and inside zippered patch pocket; ScotchLite retro-reflective package; zip-out insulated liner. Two eyelet holes sewn above left breast, 1¾" apart (with 1" inside reinforcement sling) to accept regulation shield. Collar eyelets ⅛" stitched, and centered 1" from front edge and 1" from bottom edge to accept the DC insignia. Three snaps or buttons on the collar to accept optional detachable hood (see Section VII, Sub-Section H).

2.  Left sleeve accepts gold with black border service stripes for Correction Officers only (see Section XII for placement).



| 416 | EFFECTIVE DATE 9 / 23 /96 | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|---|
| | CLASSIFICATION # 2270 | PAGE 53 OF 67 PAGES | |
| | DISTRIBUTION A & E | | |

X. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**SPECIALIZED COMMAND UNIFORMS** (Continued)

**REGULATION DUTY UNIFORM H.I.I.P. S.T.E.P.** (Continued)

G. **REGULATION CLASS "A" JACKET**

1. NYCDOC regulation 100% dacron polyester "Ike" jacket in forest green heather lined with 100% nylon taffeta 13-13½ oz. elastique weave. Shall be mid-length with zipper front to the semi-peak lapels. Coat construction shall be used throughout the body and sleeves being fully lined. There shall be 2 outside pleated patch pockets, rounded at the lower corners, approximately 5"- 5⅝" wide x 6"- 6¼" deep, depending on size. The flaps shall be scalloped and measure 5¾" wide and 3" long at the center and at each side. They shall have velcro closures on each side to hold down flap. There shall be 1 inside cut-in inside pocket on the right. The epaulets shall be made of self goods, sewn into the sleeve head seam, cross stitched, and tacked to the jacket at the neck. There shall be 24 ligne buttons on the pocket flaps, epaulets and take-up tab. The pocket flaps and the epaulet buttons shall be gold metal with the City seal emblazoned on it.

2. Left sleeve accepts gold with black border service stripes for Correction Officers only (see Section XII for placement).

H. **COMMANDO V-NECK SWEATER**

1. Shall be the same as for Correction Officer except black in color.

2. Left sleeve accepts gold with black border service stripes for Correction Officers only (see Section XII for placement).

3. The Commando sweater may be worn in place of the regulation duty jacket.

I. **TIE**

Black breakaway type worn with long-sleeve uniform shirt.

*Note:* If the regulation class "A" dress jacket is worn, the tie must also be worn.

J. **SHOES**

Black leather military style oxford or high-top boots (shined).

K. **SOCKS**

Black cotton.



| | EFFECTIVE DATE<br>9/23/96 | SUBJECT | |
|---|---|---|---|
| 416 | CLASSIFICATION<br># 2270 | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| | DISTRIBUTION<br>A & E | PAGE 54 OF<br>67 PAGES | |

## X. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SPECIALIZED COMMAND UNIFORMS (Continued)

**REGULATION
DUTY UNIFORM
PHYSICAL
TRAINING UNIT
ACADEMY**

Members, while on duty for specific physical training unit assignments, shall wear the prescribed uniform as indicated below and not deviate, modify or interchange in any manner the prescribed uniform set forth herein.

**A. REGULATION DUTY SHIRT**

Navy-blue colored golf style shirt, constructed of 50% polyester/50% cotton material or equivalent, short sleeve with no pockets and an open collar. The following shall be embroidered onto the shirt:

1. **Right Breast:**

   Three-eighths inch orange colored block capital letters, centered denoting DEFEN-SIVE TACTICS, INSTRUCTOR.

2. **Left Breast:**

   Three-quarter scale full color Departmental patch.

3. **Center Rear:**

   Three-quarter inch silver colored block capital letters, centered into a semi-circle 2" to 2 ½" from the bottom of the collar, denoting PHYSICAL TRAINING UNIT.

4. **Center Rear:**

   Two and three-quarter inch silver colored block capital letters, centered within the above semi-circle, denoting PT.

**B. REGULATION DUTY PANTS**

NYCDOC regulation navy-blue colored 65% polyester/35% cotton pants. A silver 1" NY twist stripe (braid) shall be sewn on the outside seam of each trouser leg.

**C. UNIFORM CLASS "B" UTILITY JACKET**

Shall be the same as for Correction Officer.

**D. SOCKS**

White cotton

**E. SHOES**

Black sneaker type with a soft rubber sole.

416

| EFFECTIVE DATE<br>9 / 23 /96 | SUBJECT | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS |
|---|---|---|
| CLASSIFICATION<br># 2270 | | PAGE 55 OF<br>67 PAGES |
| DISTRIBUTION<br>A & E | | |

## X. UNIFORM AND EQUIPMENT SPECIFICATIONS
### SPECIALIZED COMMAND UNIFORMS (Continued)

REGULATION
UNIFORM
RECRUITS

**A. REGULATION RECRUIT CAP**

NYPD regulation/NYCDOC approved navy-blue overseas cap.

**B. REGULATION RECRUIT SHIRT**

NYCDOC regulation long sleeve light blue shirt, constructed of 3D stretch poplin with micro comfort finish 4½ oz. sq. yard 62% dacron polyester/38% combed cotton with 9-11% filling stretch. Two military creases in front and 3 in back of each shirt with a permanent crease of silicone produced by the Lintrak System. Two breast pockets finishing 5⅜" wide and 5¾" long to have mitered corners. Both pockets shall have a 1½" box pleat stitched top and bottom. Left pocket to have a sewn through pencil opening 1⅜" wide. Velcro ⅜" wide and 1" long to be placed on each pocket to secure to matching flaps. Shoulder straps to be sewn into sleevehead and measures approximately 1⅞" tapering to 1½" with ends pointed. Straps to set approximately 1" from the collar seam. They shall be stitched to shoulders with a row of cross-stitching 2" from sleeve head and diagonally sewn from each end of the seam to the sleeve.

**C. UNIFORM DUTY TROUSERS**

Shall be the same as for Correction Officer.

**D. CRUISER DUTY JACKET**

Shall be the same as for Correction Officer.

**E. SHOES**

Shall be the same as for Correction Officer.

**F. SOCKS**

Shall be the same as for Correction Officer.

**G. TIE**

Shall be the same as for Correction Officer.

**H. ID CARD HOLDER**

Clear plastic ID Card Holder with small slit on top to accept button of uniform shirt for proper placement over left breast pocket.

| 416 | EFFECTIVE DATE<br>**9/23/96**<br>CLASSIFICATION<br>**# 2270**<br>DISTRIBUTION<br>**A & E** | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS**<br><br>PAGE 56 OF<br>67 PAGES | CORRECTION DEPARTMENT<br>CITY OF NEW YORK |
|---|---|---|---|

XI.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**DEPARTMENTAL AND COMMAND INSIGNIAS**

**DEPARTMENTAL INSIGNIA**



A.  All Correction Officers, when wearing a regulation Cruiser duty jacket, regulation class "A" summer blouse, regulation class "A" winter reefer coat or regulation class "B" utility jacket, shall wear the silver colored, metal Departmental insignia with 1/2" lettering, on both collars.

**COMMAND INSIGNIA**



B.  All Correction Officers, when in uniform, are directed to wear silver colored, metal command insignias with 1/2" lettering for commands with insignias with 3 or less letters and 3/8" lettering for commands with insignias containing 4 letters or symbols (where applicable), on uniform shirt collars at all times.

1.  The following letter command insignias are authorized:

| INSIGNIA | FACILITY/DIVISION/UNIT |
|---|---|
| AMKC | ANNA M. KROSS CENTER |
| ARDC | ADOLESCENT RECEPTION DETENTION CENTER |
| BCF | BROOKLYN CORRECTIONAL FACILITY |
| BHPW | BELLEVUE HOSPITAL PRISON WARD |
| BKCT | BROOKLYN COURT DIVISION |
| BK | BROOKLYN HOUSE OF DETENTION FOR MEN |
| BXCT | BRONX COURT DIVISION |
| BX | BRONX HOUSE OF DETENTION FOR MEN |
| CA | CORRECTION ACADEMY |

416

| EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
|---|---|
| CLASSIFICATION # 2270 | |
| DISTRIBUTION A & E | PAGE 57 OF 67 PAGES |

XI.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
      **DEPARTMENTAL AND COMMAND INSIGNIAS** (Continued)

| COMMAND INSIGNIA (Continued) | INSIGNIA | FACILITY/DIVISION/UNIT |
|---|---|---|
| | CID | CORRECTION INDUSTRIES DIVISION |
| | CIFM | CORRECTIONAL INSTITUTION FOR MEN |
| | CJB | CRIMINAL JUSTICE BUREAU |
| | DIV1 | DIVISION I |
| | DIV2 | DIVISION II |
| | EHPW | ELMHURST HOSPITAL PRISON WARD |
| | ERU | EMERGENCY RESPONSE UNIT (when wearing class "A" uniform) |
| | FSU | FIRE AND SAFETY UNIT (when wearing class "A" uniform) |
| | GMDC | GEORGE MOTCHAN DETENTION CENTER |
| | GRVC | GEORGE R. VIERNO CENTER |
| | HIIP | HIGH IMPACT INCARCERATION PROGRAM |
| | JATC | JAMES A. THOMAS CENTER |
| | K9 | CANINE UNIT (when wearing class "A" uniform) |
| | KCH | KINGS COUNTY HOSPITAL PRISON WARD |
| | MDC | MANHATTAN DETENTION COMPLEX |

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT | |
|---|---|---|---|
| 416 | CLASSIFICATION<br># 2270 | UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | CORRECTION<br>DEPARTMENT<br>CITY OF NEW YORK |
| | DISTRIBUTION<br>A & E | PAGE 58 OF<br>67 PAGES | |

## XI. UNIFORM AND EQUIPMENT SPECIFICATIONS
### DEPARTMENTAL AND COMMAND INSIGNIAS (Continued)

| COMMAND INSIGNIA (Continued) | INSIGNIA | FACILITY/DIVISION/UNIT |
|---|---|---|
| | MNCT | MANHATTAN COURT DIVISION |
| | NIC | NORTH INFIRMARY COMMAND |
| | OBCC | OTIS BANTUM CORRECTIONAL CENTER |
| | OD | OPERATIONS DIVISION |
| | QNCT | QUEENS COURT DIVISION |
| | QN | QUEENS HOUSE OF DETENTION FOR MEN |
| | RISU | RIKERS ISLAND SECURITY UNIT |
| | RMSC | ROSE M. SINGER CENTER |
| | SOD | SPECIAL OPERATIONS DIVISION |
| | SSD | SUPPORT SERVICES DIVISION |
| | TD | TRANSPORTATION DIVISION |
| | VCBC | VERNON C. BAIN CENTER |
| | WF | WEST FACILITY |

| | EFFECTIVE DATE<br>9/23/96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS |  |
|---|---|---|---|
| 416 | CLASSIFICATION<br># 2270 | | |
| | DISTRIBUTION<br>A & E | PAGE 59 OF<br>67 PAGES | |

XI. **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**DEPARTMENTAL AND COMMAND INSIGNIAS** (Continued)

**COMMAND
INSIGNIA**
(Continued)

2. The following symbol command insignias are authorized:



    a. COMMUNICATIONS/RADIO REPAIR UNIT



    b. FIREARMS & TACTICS UNIT



    c. HARBOR UNIT



3. The following insignia can be worn as a replacement for the command insignia on the left collar of the uniform shirt. This shall denote the members course completion.

    MENTAL HEALTH TRAINING CERTIFICATION



| | EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS | |
| --- | --- | --- | --- |
| 416 | CLASSIFICATION<br># 2270 | PAGE 60 OF<br>67 PAGES | |
| | DISTRIBUTION<br>A & E | | |

XII.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**PLACEMENT - PATCHES AND INSIGNIAS**
Correction Officer
Departmental and Command Insignias

SUMMER BLOUSE

WINTER REEFER COAT

Affixed 1 ¼" up and in
from collar point and
parallel to the ground. 

Affixed 1 ¾" up and in
front collar point, centered
and parallel to the collar
bottom.

UNIFORM SHIRT

DUTY CRUISER JACKET

Affixed to collar eyelets,
centered on the collar points
1" from the forward edge
and parallel to the neckline.

Affixed to collar eyelets 1"
up and in from collar point,
centered and parallel to the
collar bottom.

PROPER PLACEMENT OF
DEPARTMENTAL AND COMMAND INSIGNIAS

416

| | EFFECTIVE DATE **9/23/96** | SUBJECT **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** | CORRECTION DEPARTMENT CITY OF NEW YORK |
| --- | --- | --- | --- |
| | CLASSIFICATION **# 2270** | PAGE 61 OF | |
| | DISTRIBUTION **A & E** | 67 PAGES | |

## XII.   UNIFORM AND EQUIPMENT SPECIFICATIONS
### PLACEMENT - PATCHES AND INSIGNIAS

**Supervisory Officer Rank Insignia
Uniform Shirt**

CAPTAIN



Affixed 1" up and in from collar point and parallel to bottom of collar.

ASSISTANT DEPUTY WARDEN



Affixed 1" up and in from collar, stem of Oak Leaf parallel to collar line.

DEP. WARDEN/DEP. WARDEN IN COMMAND

Affixed 1" up and in from collar point beak of eagle pointing perpendicular to collar and forward to front of torso.

WARDEN



Affixed 1" up and in from collar point, "V" of star perpendicular to collar line.

ASSISTANT CHIEF



Affixed 1" up and in from collar point, "V" of stars perpendicular to collar line.

BUREAU CHIEF



Affixed 1" up and in from collar point, "V" of stars perpendicular to collar line.

CHIEF OF DEPARTMENT

Affixed 1" up and in from collar point, "V" of stars perpendicular to collar line.

416

| | EFFECTIVE DATE | SUBJECT | |
|---|---|---|---|
| | 9/ 23 /96 | **UNIFORM AND EQUIPMENT** | |
| | CLASSIFICATION | **SPECIFICATIONS AND REGULATIONS** | |
| | # 2270 | | |
| | DISTRIBUTION | PAGE 62 OF | |
| | A & E | 67 PAGES | |

## XII.  *UNIFORM AND EQUIPMENT SPECIFICATIONS*
### *PLACEMENT - PATCHES AND INSIGNIAS*

Supervisory Officer Rank Insignia
Summer Blouse, Winter Reefer Coat, Trench Coat, and Cruiser Duty Jacket
Epaulets



CAPTAIN

ASSISTANT
DEPUTY WARDEN

DEP. WARDEN
DEP. WARDEN IN COMMAND

NOTE: Beak of
Eagle towards
front of torso.



WARDEN

ASSISTANT CHIEF

BUREAU CHIEF

CHIEF
OF DEPARTMENT

| | | | |
|---|---|---|---|
| 416 | EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>**UNIFORM AND EQUIPMENT**<br>**SPECIFICATIONS AND REGULATIONS** | CORRECTION DEPARTMENT CITY OF NEW YORK |
| | CLASSIFICATION<br># 2270 | PAGE 63 OF | |
| | DISTRIBUTION<br>A & E | 67 PAGES | |

XII.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
**PLACEMENT - PATCHES AND INSIGNIAS**

**Correction Officer**
**Service Stripes**



LEFT SLEEVE ONLY
All long sleeve shirts,
sweaters, jackets and coats.

4"

Each stripe represents
5 years of service.

**Supervisory Officer**
**Cuff Braids**



3 ½"

Captain
Assistant Deputy Warden
Deputy Warden
Chaplain

1 ½"

2 ½"

Deputy Warden in Command
Warden
Assistant Chief
Bureau Chief
Chief of Department



416

| EFFECTIVE DATE **9/ 23 /96** | SUBJECT |
|---|---|
| CLASSIFICATION **# 2270** | **UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS** |
| DISTRIBUTION **A & E** | PAGE 64 OF<br>67 PAGES |

XII.    **UNIFORM AND EQUIPMENT SPECIFICATIONS**
          **PLACEMENT - PATCHES AND INSIGNIAS**

PATCH PLACEMENT



Departmental Patch

OUTER GARMENTS
¾" from shoulder seam

SHIRTS
½" from shoulder seam

Left Sleeve



**Command Patches**

OUTER GARMENTS
¾" from shoulder seam

SHIRTS
½" from shoulder seam

Authorized Patches
Academy
CID
ERU
Firearms & Tactics Unit
Fire & Safety Unit
Honor Unit
HIU
K-9 Unit
STEP

Right Sleeve

**Command Patches**

ALL GARMENTS
3 ½" from shoulder seam

Authorized Patches
Communications/Radio Repair Unit
Transportation Div.

Right Sleeve



416

| EFFECTIVE DATE | SUBJECT |
|---|---|
| **9/23/96** | **UNIFORM AND EQUIPMENT** |
| CLASSIFICATION<br>**# 2270** | **SPECIFICATIONS AND REGULATIONS** |
| DISTRIBUTION<br>**A & E** | PAGE **65** OF<br>**67** PAGES |

XIII.   UNIFORM AND EQUIPMENT SPECIFICATIONS
DEPARTMENTAL AND COMMAND PATCHES





416

| | EFFECTIVE DATE<br>9/ 23 /96 | SUBJECT<br>**UNIFORM AND EQUIPMENT<br>SPECIFICATIONS AND REGULATIONS** | |
|---|---|---|---|
| | CLASSIFICATION<br># 2270 | | |
| | DISTRIBUTION<br>A & E | PAGE  66  OF<br>67  PAGES | |

XIII.   **UNIFORM AND EQUIPMENT SPECIFICATIONS**
             **DEPARTMENTAL AND COMMAND PATCHES**  (Continued)











416

| EFFECTIVE DATE 9/23/96 | SUBJECT UNIFORM AND EQUIPMENT SPECIFICATIONS AND REGULATIONS |
| CLASSIFICATION #2270 | |
| DISTRIBUTION A & E | PAGE 67 OF 67 PAGES |

XIV.  **ATTACHMENT**

    A.  "UNIFORM INSPECTION RECORD CARD", Form # 120 - 1/96.


XV.  **REGULATION CHANGES**

The following orders are hereby superseded:

A.  Directive #2256R, dated June 1, 1988, entitled "Uniform and Equipment Specifications and Regulations".

B.  All subsequent Amendments, Teletype Orders and Memorandums to Directive #2256R.