

# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
335 Broadway
New York, NY 10013

Re:    COBA Agreement for the period May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

Effective the date of approval of the 2003-2005 COBA agreement, employees who have transferred from the uniformed service of the New York City Police Department and the New York City Fire Department shall be treated in the same manner as if they had been a member of the uniformed service continuously for the purpose of calculating increments and longevity adjustments only.

Very truly yours,

*James F. Hanley*

James F. Hanley



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
335 Broadway
New York, NY 10013

Re:   COBA Agreement for the period May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

This is to confirm our agreement to establish a labor management committee to discuss the following items:

     a.    Rikers Island Security, Women's facilities
     b.    evaluation of probationary Correction Officers
     c.    some notice on transfers
     d.    environmental issues
     e.    access to personnel files
     f.    parking at Borough facilities
     g.    jury duty

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY: _____
Norman Seabrook
President

Correction Officers Benevolent Association          May 1, 2005 to July 31, 2007



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
335 Broadway
New York, NY 10013

Re:   COBA Agreement for the period May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

This is to confirm our agreement to establish a labor management committee to discuss the impact of increased productivity. The committee will explore proposals for increased productivity by Correction Officers. Mutually agreed upon proposals may be discussed for implementation. After implementation of any agreed upon proposal, the parties may discuss application of the results of implementation.

If this accords with your understanding, please execute at the line below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA

BY:
Norman Seabrook
President

May 1, 2005 to July 31, 2007

DOC000042



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers Benevolent Association
335 Broadway
New York, NY 10013

Dear Mr. Seabrook:

    **Re:**    COBA Agreement for the period May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

    This is to confirm our mutual understanding and agreement regarding Article XII of the above Agreement. If the stabilization fund referred to in Article XII does not have sufficient monies to maintain the then current level of health insurance benefits provided under GHI-CBP/Blue Cross plan, payroll deductions in the appropriate amounts shall be taken from employees and retirees enrolled in such plan unless agreement is reached on a program wide basis to take the needed monies from the contributions to the welfare fund provided in Article XIII of the above Agreement.

        Very truly yours,

        James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF THE COBA

BY           
Norman Seabrook
President



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
335 Broadway
New York, NY 10013

Re: COBA Agreement for the period of May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

This is to confirm the mutual understanding of the parties with respect to the above captioned Agreement.

The Department of Correction plans to expand the application of "unit management" on a phased-in basis.

The Department reserves its rights to staff its facilities in accordance with the needs of the Agency. To this end, "unit management" shall not impede the assignment of staff, at the discretion of management, between and/or among units in a facility under unit management. The terms of the "travel time" sideletter shall continue to apply in instances where a Correction Officer is assigned to a location outside his/her parent command, except for field assignments.

The Department of Correction will schedule vacations in the most efficient and cost-effective manner (i.e., "vacation smoothing"). Vacation picks shall be based on seniority by tour within the command to assure to the greatest extent practicable an even distribution by tour in each of the respective vacation picks, that is, no more than ten percent of the command by tour per pick.

In the event that unit management is not implemented, or discontinued at management's discretion after implementation, the vacation scheduling modifications shall nevertheless continue to apply. In such an instance, however, the parties agree to reopen the contract on a limited basis with respect to negotiations on an alternate disposition of the savings associated with this issue.

Nothing contained herein shall limit or diminish the Employer's or the Union's rights pursuant to §12-307(b) of the New York City Collective Bargaining Law, except as specifically provided herein. Notwithstanding this, the Union waives its right to raise any claims of any nature relating to this vacation scheduling modification including, but not limited to, a claim of practical impact relating to this scheduling modification, and the Union agrees that all matters subject to bargaining have been disposed of in this Agreement. Notwithstanding this, a claimed violation, misinterpretation, or misapplication of the vacation scheduling modification may be the subject of a grievance.

DOC000044

Norman Seabrook
Page Two

The Employer and the Union agree to convene a labor-management meeting at the request of either party to meet and confer on issues that may arise from the implementation of unit management in the various facilities. The Office of Labor Relations will send a representative at the request of either party.

The Employer and the Union understand and agree that in the event that any aspect of this agreement is contingent on the amendment of Section 9-116 of the Administrative Code for the purpose of effectuating this agreement, then the Union shall cooperate and assist the Employer in its efforts to achieve the necessary amendment, if any, subject to approval by both the City and the union of the language and other terms of the said legislation.

If any part of this Agreement is found by a Court of competent jurisdiction to be invalid, then the terms of this Agreement in its entirety will immediately terminate and be given no further effect. In such event, the parties agree to negotiate immediately over substitute savings to be achieved.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF COBA
BY
Norman Seabrook
President

Correction Officers Benevolent Association                    May 1, 2005 to July 31, 2007



# THE ⸱ TY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Stree⸱ New York, NY 10006-1705
htt⸱ ⸱/nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLAT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' B    olent Association
335 Broadway
New York, NY 10013

Re: COBA A;    ·nent for the period of M. ⸱ 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

This is to co    ıı the mutual understa: iing of the parties with respect to the above captioned Agreement.

Effective upo·    tification of the 2003-2 )05 Agreement, the provisions of Article X, Section 4., "Military Leave", are ı    · applied in a manner con. istent with the practice in other agencies, i.e., 22 work days, 30 calendar days.

If the above ao    Is with your understandir .t, please execute the signature line provided below.

Very truly yours,

*James F. Hanley*

James F. Hanley

AGREED AND ACCE    SI ON BEHALF OF COBA
BY

Norman Seabro .
President



### THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
335 Broadway
New York, NY 10013

     Re: COBA Agreement for the period of May 1, 2005 to July 31, 2007

Dear Mr. Seabrook:

     This is to confirm the mutual understanding of the parties with respect to the above captioned Agreement.

     If another uniform collective bargaining unit has an adjustment made to their salary schedule outside of the collective bargaining or arbitration process during the term of this agreement, then the parties shall reopen this agreement for the purposes of discussing that issue.

Very truly yours,

*James F. Hanley*
James F. Hanley

## 2007 - 2009
## MEMORANDUM OF AGREEMENT
### Between
### The City of New York
### and
### The Correction Officers Benevolent Association

MEMORANDUM OF AGREEMENT (the "Agreement") entered into this 19th day of September, 2007, by and between the City of New York (hereinafter referred to as the "Employer"), and the Correction Officers Benevolent Association, hereinafter referred to as the "Union".)

WHEREAS, the undersigned parties desire to enter into a collective bargaining agreement, including this Memorandum of Agreement, for the period August 1, 2007 through October 31, 2009 modifying the collective bargaining agreement between the Employer and the Union that expired on July 31, 2007, to cover employees represented by the Union ("Employees");

WHEREAS, the undersigned parties intend by this 2007 - 2009 COBA MOA to cover all economic matters including wages, and to incorporate the terms of this 2007 - 2009 COBA MOA into the Successor Separate Unit Agreement covering the period from August 1, 2007 through October 31, 2009;

NOW, THEREFORE, it is mutually agreed as follows:

1. **Term:**

   The term of the successor collective bargaining agreement shall cover the period from August 1, 2007 through October 31, 2009.

2. **Continuation of Terms:**

   The terms of the predecessor separate unit agreement shall continue except as modified pursuant to this 2007 - 2009 Memorandum of Agreement.

3. **General Wage Increase:**

   a. Effective August 1, 2007, Employees shall receive a general wage increase of four percent (4%).

   b. Effective August 1, 2008, Employees shall receive a general wage increase of four percent (4%).

   c. The increases provided for in Section 3 shall be calculated as follows:

      i. The general increase in Section 3 a. shall be based upon the base rates (including salary and salary step schedules) in effect on July 31, 2007.

DOC000048

ii. The general increase in Section 3 b. shall be based upon the base rates (including salary and salary step schedules) in effect on July 31, 2008.

iii. Notwithstanding the provisions set forth in Section 3, the appointment rate for any Employee newly hired on or after January 1, 2006 shall be in accordance with Sections 4. a. and b. of this 2007-2009 COBA MOA.

4. **New Hires**

a. For Correction Officers hired on or after January 1, 2006 and prior to September 1, 2008:

|  | Effective September 1, 2008 |
|---|---|
| First Year | $37,577 |
| Second Year | $39,071 |
| Third Year | $43,668 |
| Fourth Year | $47,689 |
| Fifth Year | $50,677 |
| Basic Maximum | $68,475 |

b. For Correction Officers hired on or after September 1, 2008:

|  | Effective September 1, 2008 |
|---|---|
| First Year | $35,000 |
| Second Year | $38,850 |
| Third Year | $41,900 |
| Fourth Year | $46,250 |
| Fifth Year | $50,000 |
| Basic Maximum | $68,475 |

5. **Welfare Fund**

Effective November 1, 2007, there shall be an increase in the City's contribution to the active welfare fund, only, in the prorata amount of $200.00 per annum.

6. **Longevity**

Effective November 1, 2007, the longevity schedule shall be increased by $314.00 on each step of the schedule.

7. **Annuity Fund** .

Effective August 1, 2009, the City's pro-rata annual contribution to the annuity fund shall be increased by $370 per annum per employee.

**8.    Retroactivity**

In the event that any payment is not paid on the date due under this 2007 – 2009 COBA MOA, such payment when made shall be paid retroactive to such due date.

**9.    Conditions of Payment**

The general wage increases pursuant to Section 3 of this 2007 - 2009 COBA MOA shall be payable as soon as practicable upon ratification of the 2007 -2009 COBA Agreement.

**10.   Prohibition of Further Economic Demands**

No Party to this agreement shall make additional economic demands during the term of the 2007-2009 COBA Agreement.

**11.   Ratification**

The terms of this Memorandum of Agreement are subject to agreement by the City and ratification by the Union.

**12.   Savings Clause**

In the event that any provision of this MOA is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this 2007-2009 COBA MOA.

WHEREFORE, we have hereunto set our hands and seals this 19th day of September, 2007.

**For the City of New York:**

By: *James F. Hanley*
James F. Hanley
Commissioner of Labor Relations

**For the Correction Officers
Benevolent Association:**

By: *Norman Seabrook*
Norman Seabrook
President



# THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
**40 Rector Street, New York, NY 10006-1705**
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:      JAMES F. HANLEY, COMMISSIONER *James F. Hanley*

SUBJECT:   EXECUTED CONTRACT: CORRECTION OFFICERS

TERM:      FEBRUARY 1, 2003 TO APRIL 30, 2005

　　　　Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and the Correction Officer's Benevolent Association on behalf of the incumbents of positions listed in Article I of said contract.

　　　　The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: **DEC 0 6 2005**

```
OFFICE OF LABOR RELATIONS
       REGISTRATION

OFFICIAL          CONTRACT




NO:                    DATE:
0 6 0 1 3         DEC 0 6 2005
```

# CORRECTION OFFICERS
## 2003 - 2005 AGREEMENT

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION....................................................2

ARTICLE II - UNION SECURITY-DUES CHECKOFF.....................................................................2

ARTICLE III - HOURS AND OVERTIME ......................................................................................3

ARTICLE IV - RECALL AFTER TOUR...........................................................................................3

ARTICLE V - COMPUTATION OF BENEFITS ..............................................................................3

ARTICLE VI - SALARIES.................................................................................................................4

ARTICLE VII - UNIFORM ALLOWANCE......................................................................................7

ARTICLE VIII - LONGEVITY ADJUSTMENTS.............................................................................7

ARTICLE IX - PAYMENT FOR HOLIDAY WORK .......................................................................8

ARTICLE X - LEAVES.....................................................................................................................9

ARTICLE XI - VACATIONS............................................................................................................11

ARTICLE XII - HEALTH AND HOSPITALIZATION BENEFITS ...............................................15

ARTICLE XIII - SECURITY BENEFITS FUND ...........................................................................17

ARTICLE XIV - ANNUITY FUND.................................................................................................18

ARTICLE XV - SENIORITY ...........................................................................................................19

ARTICLE XVI - GENERAL ............................................................................................................19

ARTICLE XVII - UNION ACTIVITY .............................................................................................22

ARTICLE XVIII - NO DISCRIMINATION.....................................................................................23

ARTICLE XIX - BILL OF RIGHTS.................................................................................................23

ARTICLE XX - NIGHT SHIFT DIFFERENTIAL............................................................................23

ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE............................................24

ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT ..................................................................27

ARTICLE XXIII - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME ......................28

ARTICLE XXIV - NO STRIKES .....................................................................................................28

ARTICLE XXV - BULLETIN BOARDS..........................................................................................28

ARTICLE XXVI - NO WAIVER ......................................................................................................28

ARTICLE XXVII - SAVINGS CLAUSE..........................................................................................28

ARTICLE XXVIII - LABOR-MANAGEMENT COMMITTEE .......................................................29

ARTICLE XXIX - FINANCIAL EMERGENCY ACT......................................................................30

## CORRECTION OFFICERS
## 2003 - 2005 AGREEMENT

AGREEMENT made this *6th* day of $D e C$  , 2005, by and between the City of
New York (hereinafter called the "City"), acting by the Commissioner of Labor Relations,
and the Correction Officers Benevolent Association of the City of New York, Inc.
(hereinafter called the "Union" or the "C.O.B.A."), for the twenty-seven (27) month period
from February 1, 2003 to April 30, 2005.

## WITNESSETH:

WHEREAS, the Correction Officers employed by the City have duly designated the
Union as their exclusive bargaining representative for the purpose of collective bargaining
with the City with respect to wages, hours and conditions of employment; and

WHEREAS, the Union and the City desire to cooperate in establishing conditions
which will tend to secure standards and conditions of employment consistent with the dignity
of Correction Officers, and to provide methods for fair and peaceful adjustment of disputes
that may arise between the Union and the City; and

WHEREAS, as a result of collective bargaining the parties have reached an
agreement which they desire to reduce to writing;

NOW, THEREFORE, it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

Section 1.

The City recognizes the Union as the sole and exclusive collective bargaining
representative for the unit consisting of the employees of New York City in the title of
"Correction Officer".

## Section 2.

Except as otherwise provided herein, for purposes of this Contract, the terms "employee," "employees," "Correction Officer" or "Correction Officers" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

## ARTICLE II - UNION SECURITY - DUES CHECKOFF

### Section 1.

All employees covered by this Agreement shall be free to become and remain members of the Union in good standing.

### Section 2.

The Union shall have the exclusive right to the checkoff and transmittal of dues in behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969 entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986 entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues" and any executive orders which amend or supersede said Executive Orders.

### Section 3.

An employee may consent in writing to the authorization of the deduction of dues from his wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form, in accord with Section 2 of this Article II, which bears the signature of the employee.

### Section 4.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference.

-6013

## ARTICLE III - HOURS AND OVERTIME

### Section 1.

All ordered and/or authorized overtime in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of his regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee. Such cash payments or compensatory time off shall be computed on the basis of fifteen (15) minute segments.

### Section 2.

In order to preserve the intent and spirit of this Section on overtime compensation, there shall be no rescheduling of days off and/or tours of duty. This restriction shall apply both to the retrospective crediting of time off against hours already worked and to the anticipatory re-assignment of personnel to different days off and/or tours of duty.

### Section 3.

Overtime shall be computed on a monthly basis and the Department shall make every reasonable effort to pay such overtime within six (6) weeks following the submission of the monthly report.

## ARTICLE IV - RECALL AFTER TOUR

Any Correction Officer who is recalled to duty after having completed the employee's regular tour of duty shall receive pay pursuant to the regular overtime provisions of this Agreement, that is, in cash or compensatory time off at the sole option of the Correction Officer at the rate of time and one-half for the time actually worked. The Department will issue a directive to the heads of all commands informing them that a Correction Officer who is recalled shall be put to work.

## ARTICLE V - COMPUTATION OF BENEFITS

Since the average basic forty-hour week has not been changed by this Agreement, the current standard practice for the computation of compensation for holidays, vacation days, personal leave days, annuity fund contributions and other relevant benefits, shall continue to be calculated on the basis of an eight-hour work day.



# ARTICLE VI - SALARIES

## Section L.   Salary Rates

During the term of this Agreement, the following basic amounts, which where specified include both salary rates and longevity adjustments, shall prevail for employees:

a.  For Correction Officers Hired prior to July 1, 1991

| Grade-Service | Effective 1/31/03 | Effective 2/1/03 | Effective 2/1/04 |
|---|---|---|---|
| First Grade |  |  |  |
| 20 Years | $60,593** | $63,295** | $66,133** |
| 15 Years | $59,593** | $62,295** | $65,133** |
| 10 Years | $58,593*R | $61,295*R | $64,133*R |
| 5 Years | $57,593* | $60,295* | $63,133* |
| Basic | $54,048 | $56,750 | $59,588 |
| Second Grade | $43,852 | $46,045 | $48,347 |
| Third Grade | $42,252 | $44,365 | $46,583 |
| Fourth Grade | $40,264 | $42,277 | $44,391 |
| Fifth Grade | $38,369 | $40,287 | $42,301 |
| Sixth Grade | $36,078 | $37,882 | $39,776 |

b.  For Correction Officers Hired between July 1, 1991 and June 30, 1997

| Grade-Service | Effective 1/31/03 | Effective 2/1/03 | Effective 2/1/04 |
|---|---|---|---|
| First Grade |  |  |  |
| 20 Years | $60,593** | $63,295** | $66,133** |
| 15 Years | $59,593** | $62,295** | $65,133** |
| 10 Years | $58,593*R | $61,295*R | $64,133*R |
| 5 Years | $57,593* | $60,295* | $63,133* |
| Basic | $54,048 | $56,750 | $59,588 |
| Second Grade | $41,953 | $44,051 | $46,254 |
| Third Grade | $40,441 | $42,463 | $44,586 |
| Fourth Grade | $38,541 | $40,468 | $42,491 |
| Fifth Grade | $36,729 | $38,565 | $40,493 |
| Sixth Grade | $34,514 | $36,240 | $38,052 |

c. For Correction Officers Hired between July 1, 1997 and November 1, 2002

| Grade-Service | Effective 1/31/03 | Effective 2/1/03 | Effective 2/1/04 |
|---|---|---|---|
| First Grade | | | |
| 20 Years | $60,593** | $63,295** | $66,133** |
| 15 Years | $59,593** | $62,295** | $65,133** |
| 10 Years | $58,593*R | $61,295*R | $64,133*R |
| 5 Years | $57,593* | $60,295* | $63,133* |
| Basic | $54,048 | $56,750 | $59,588 |
| Second Grade | $41,953 | $44,051 | $46,254 |
| Third Grade | $40,441 | $42,463 | $44,586 |
| Fourth Grade | $38,541 | $40,468 | $42,491 |
| Fifth Grade | $36,729 | $38,565 | $40,493 |
| Sixth Grade | $34,514 | $36,240 | $38,052 |

d. For Correction Officers Hired between November 1, 2002 and December 31, 2005

| Grade-Service | Effective 1/31/03 | Effective 2/1/03 | Effective 2/1/04 |
|---|---|---|---|
| First Grade | | | |
| 20 Years | $60,593** | $63,295** | $66,133**. |
| 15 Years | $59,593** | $62,295** | $65,133** |
| 10 Years | $58,593*R | $61,295*R | $64,133*R |
| 5 Years | $57,593* | $60,295* | $63,133* |
| Basic | $54,048 | $56,750 | $59,588 |
| Second Grade | $41,953 | $44,051 | $46,254 |
| Third Grade | $40,441 | $42,463 | $44,586 |
| Fourth Grade | $34,614 | $36,345 | $38,162 |
| Fifth Grade | $32,660 | $34,293 | $36,008 |
| Sixth Grade | $30,692 | $32,227 | $33,838 |

e. For Correction Officers Hired on or after January 1, 2006

| Grade-Service | Effective |
|---|---|
| First Grade | |
| 20 Years | $66,133** |
| 15 Years | $65,133** |
| 10 Years | $64,133*R |
| 5-1/2 years | $63,133* |
| 5 Years | $47,645* |
| Upon completion of 5-1/2 years of employment (Basic) | $59,588 |
| Upon completion of 4-1/2 years of employment | $44,100 |
| Upon completion of 3-1/2 years of employment | $41,500 |
| Upon completion of 2-1/2 years of employment | $38,000 |
| Upon completion of 1-1/2 years of employment | $34,000 |
| Upon completion of six months of employment | $32,700 |
| First six months of employment (Annualized) | $25,100 |

NOTE:    The amounts indicated in this Section by asterisks (* and **) include the longevity adjustments in Article VIII of this Agreement. The longevity adjustments in the amounts indicated herein by a single asterisk (*) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement a Correction Officer paid at such rates shall have completed twenty years of service; and the longevity adjustments in the amounts indicated herein by a double asterisk (**) shall not be deemed to be part of salary for purposes of retirement allowances unless at the time of retirement a Correction Officer paid at such rates shall have completed twenty-five years of service; except that a Correction Officer who has more than twenty years, but less than twenty-five years of service at the time of retirement shall have the adjusted rates indicated by a capital letter R deemed to be part of salary for purposes of retirement allowances.

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

## Section 2.

A laid off employee who is returned to service in the employee's former title or in a comparable title from a preferred list, shall receive the basic salary rate that would have been received by the employee had the employee never been laid off, up to a maximum of two (2) years of general salary increases.

## Section 3.  General Wage Increase

a.          (i)     Effective February 1, 2003, Employees shall receive a rate increase of 5%.

(ii)    Effective February 1, 2004, Employees shall receive a rate increase of 5%.

b.          The increases provided for in Section 3 a. above shall be calculated as follows:



(i)     The increase in Section 3a(i) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on January 31, 2003; and

(ii)    The increase in Section 3a(ii) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on January 31, 2004.

c.      The general increase provided in this Section 3 shall be applied to the base rates and salary grades fixed for the applicable titles, except to the extent that the base rates and salary grades are modified by Section 3d below.

d.      The base rate and salary grades for Correction Officers hired on or after January 1, 2006 are reflected in the table of salaries set forth in Article VI, Section 1.e.

## Section 4.

Paychecks shall be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.

## Section 5.   Salary Itemization

The Department shall make available in convenient places in each command the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the employee's paycheck. The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## ARTICLE VII - UNIFORM ALLOWANCE

In fiscal year 2002-03, 2003-04 and 2004-05, the City shall pay to each employee a uniform allowance of $1,000.00 in accord with the existing standard procedures.

## ARTICLE VIII - LONGEVITY ADJUSTMENTS

## Section 1.

a.      Longevity adjustments shall continue to be paid as follows:

(i)     Upon the completion of five years of service, a Correction Officer First Grade shall receive a longevity adjustment of $3,545



(ii)     Upon completion of ten years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

(iii)    Upon completion of fifteen years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

(iv)    Upon completion of twenty years of service, a Correction Officer First Grade shall receive a longevity adjustment of an additional $1,000

b.     The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service.

The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments.  Such negotiations will be commenced forthwith. If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

c.     The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previously utilized.

d.     ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

## Section 2.

The longevity adjustments provided in Section 1 of this Article VIII are reflected in the table of salaries set forth in Article VI, Section 1 of this Agreement.

## ARTICLE IX - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.



DOC000060

## ARTICLE X - LEAVES

### Section 1.  Personal Leave Day

Each Correction Officer shall accrue one (1) personal leave day with pay for each fiscal year during which the employee is employed by the City of New York in the title of Correction Officer, which the employee shall be entitled to take, at the employee's discretion, subject to the exigencies of the Department, in the following fiscal year. A leave day shall consist of an excusal from one regular tour of duty.

The accrual of the Personal Leave Day shall be eliminated during the first five years of service for Correction Officers hired after June 30, 1993. Thereafter, Correction Officers shall accrue one (1) Personal Leave Day with pay for each subsequent fiscal year during which the employee is employed by the City of New York in the title of Correction Officer, which the employee shall be entitled to take, at the employee's discretion, subject to the exigencies of the Department, in the following fiscal year. A leave day shall consist of an excusal from one regular tour of duty.

Effective July 1, 2004, and thereafter, the annual Personal Leave Day for all employees shall be eliminated including any Personal Leave Day accrued as of June 30, 2005 for service in FY 2005.

### Section 2.  Sick Leave

(i)     Each Correction Officer shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect which is service-connected pursuant to Section 9-117.1(a) of the Administrative Code.

(ii)    Each Correction Officer shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

### Section 3.  Death-in-Family Leave

In the event of a death in a Correction Officer's immediate family and upon application to and approval of the employee's commanding officer or supervisory head, a Correction Officer shall receive leave with pay not exceeding four (4) consecutive regular tours of duty. For the purposes of this Section, the phrase, "Immediate Family", shall include any of the following: (a) a spouse, (b) a natural, foster or step-parent, child, brother or sister, (c) a father-in-law or mother-in-law, or (d) any relative residing in the Correction Officer's



household.  The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased.  If the deceased was in the military service of the United States at the time of death, the Correction Officer requesting leave shall produce the official notice of death.

## Section 4.  Military Leave

Military leave not exceeding a total of thirty (30) days in one calendar year and not exceeding thirty (30) days in any one continuous period of such absence shall be granted with pay to satisfy military obligations in accordance with the further provisions of the side letter attached to this Agreement.

## Section 5.  Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day shall be granted equally to employees covered by this Agreement.  All compensating days off shall be subject to exigencies of the Department.

## Section 6.  Leave to Attend Hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.

Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210 paragraph 2h of the Civil Service Law, are determined not to have been in violation of Section 210.

## ARTICLE XI - VACATIONS

Section 1.

The Department shall continue to provide the following authorized annual vacations for employees hired prior to July 1, 1988:

        a.       Following the first 3 years of service (First Grade Correction Officer): twenty-seven (27) work days.

        b.       During the first 3 years of service (Second, Third, Fourth Grade and Probationary Correction Officer): twenty (20) work days.

        c.       During the calendar year in which the third anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

Section 2.

The Department shall provide the following authorized annual vacations for Correction Officers hired between July 1, 1988 through to June 30, 1993 inclusive:

        a.       Following the first 5 years of service: twenty-seven (27) work days.

        b.       During the first 5 years of service: twenty (20) work days.

        c.       During the calendar year in which the fifth anniversary of appointment occurs:



| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 26 work days |
| Apr. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

### Section 3.

The Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993:

a.   Following the first 5 years of service: twenty-seven (27) work days.

b.   During the first 5 years of service: twelve (12) work days.

c.   During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 24 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 20 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 16 work days |
| Nov. 16 | Dec. 15 | 14 work days |
| Dec. 16 | Dec. 31 | 12 work days |

d.   Effective July 1, 1997, the Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993:

i.   Following the first 5 years of service: twenty-seven (27) work days.

6013.

February 1, 2003 to April 10, 2005

ii.     During the first 5 years of service: thirteen (13) work days.

iii.    During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| **FROM** | **TO** | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 24 work days |
| Apr. 16 | June 15 | 22 work days |
| June 16 | July 15 | 20 work days |
| July 16 | Sept. 15 | 18 work days |
| Sept. 16 | Nov. 15 | 16 work days |
| Nov. 16 | Dec. 15 | 14 work days |
| Dec. 16 | Dec. 31 | 13 work days |

e.      Effective November 1, 2002, the Department shall provide the following authorized annual vacations for Correction Officers hired after June 30, 1993 and before January 1, 2006:

i.      Following the first 5 years of service: twenty-seven (27) work days.

ii.     During the first 5 years of service: eighteen (18) work days.

iii.    During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| **FROM** | **TO** | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 25 work days |
| Apr. 16 | June 15 | 24 work days |
| June 16 | July 15 | 23 work days |
| July 16 | Sept. 15 | 21 work days |
| Sept. 16 | Nov. 15 | 20 work days |
| Nov. 16 | Dec. 15 | 19 work days |
| Dec. 16 | Dec. 31 | 18 work days |

- 013

f.    Effective January 1, 2006, the Department shall provide the following authorized annual vacations for Correction Officers hired on or after January 1, 2006:

    i.    Following the first 5 years of service: twenty-seven (27) work days.

    ii.   During the first 5 years of service: sixteen (16) work days.

    iii.  During the calendar year in which the fifth anniversary of appointment occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| FROM | TO | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 25 work days |
| Apr. 16 | June 15 | 23 work days |
| June 16 | July 15 | 22 work days |
| July 16 | Sept. 15 | 20 work days |
| Sept. 16 | Nov. 15 | 18 work days |
| Nov. 16 | Dec. 15 | 17 work days |
| Dec. 16 | Dec. 31 | 16 work days |

## Section 4.

Vacations shall be scheduled in accordance with existing procedures except as modified by the side letter attached to this Agreement.

## Section 5.

The Department agrees to allow Correction Officers to use their accrued vacation days in the vacation year in which they are earned subject to the exigencies of the Department.

## Section 6.

Correction Officers may request in writing permission to carry over into the next vacation year a maximum of 3 weeks vacation. It is the intention of the Department of Correction to grant such requests which are reasonable. The utilization of this vacation time shall be restricted to the months of January through May and September through November. Vacations shall be scheduled to begin and/or end, connected to a pass day.



DOC000066

## ARTICLE XII - HEALTH AND HOSPITALIZATION BENEFITS

### Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis. There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

### Section 2.

Retirees shall continue to have the option of changing their previous choice of Health Plans. This option shall be:

      (a)    a one time choice;
      (b)    exercised only after one year of retirement; and
      (c)    can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three (3) months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to July 1, 1980 and every two years thereafter, retirees shall have the option of changing their previous choice of health plans. This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

### Section 3.

a.        Effective July 1, 1983 and thereafter, the City's cost for each employee and each retiree under age 65 coverage shall be equalized at the Community rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of individual or family, e.g. the Blue Cross/GHI-CBP payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

b.        If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.



c.        The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional annual amount of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the dividends or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

d.        Pursuant to paragraph 7 of MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

e.        In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein. However, it is understood that the COBA will not be treated any better or any worse than any other Union participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

## Section 4.

Where an employee is suspended without pay prior to disciplinary trial for disciplinary reasons for more than 30 days, the employee shall receive full health and hospitalization benefit coverage during the period of the suspension following the first 30 days. Where an employee is subsequently restored to full pay status, as of the date of suspension, the employee shall be restored to full health and hospitalization coverage for the first 30 days of the suspension.

## Section 5. Health Care Flexible Spending Account

a.        A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code. Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account.

060013.

Participating employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan. Any unfunded balance may be deducted from final salary payments due an employee.

b.     Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered. In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.     An administrative fee of $1.00 per week for the first year shall be charged for participation in the program. An employee's participation in the account is irrevocable during a plan year. At the close of the plan year any excess balance in an employee's account will not be refunded.

## ARTICLE XIII - SECURITY BENEFITS FUND

Section 1.

a.     Effective February 1, 2003, the City shall continue to contribute the pro-rata annual amount of $1,480 for each active employee, and $1,475 for each retiree for remittance to the Security Benefits Fund of the Correction Officers Benevolent Association of the City of New York pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

b.     To the extent permitted by law, part of the amounts so contributed may be applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

c.     Effective February 1, 2003, employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Fund of the Correction Officers' Benevolent Association at the time of such separation pursuant to a supplementary agreement between the City and the COBA shall continue to be so covered, subject to the provisions of Section 1(a), (b), (c) and (f) hereof. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

d.     The Union agrees to provide welfare fund benefits to domestic partners of covered employees in the same manner as those benefits are provided to spouses of married covered employees.



e.    Civil Legal Representation Fund

Effective February 1, 2003, the City shall continue to contribute $75 per annum for each active Employee to the Security Benefits Fund to establish a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel. While these funds shall be administered by the applicable Security Benefits Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Security Benefits Fund. Only the $75 provided above may be used for civil legal representation. No additional monies from the Security Benefits Fund may be used for civil legal representation.

f.    Such payments shall be made pro-rata by the City every twenty-eight (28) days.

Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Security Benefits Fund coverage for the period of the suspension.

## ARTICLE XIV - ANNUITY FUND

Section 1.

Effective February 1, 2003, the City shall continue to contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $522.00 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

For Correction Officers hired after June 30, 1993, there shall be no contribution to the annuity fund during the first five years of service. Thereafter, the City shall contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $522.00 per annum per employee. Contributions hereunder shall be remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

Effective February 1, 2003, for Correction Officers *who have completed five years of service*, the City shall continue to contribute for each employee, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $566.37. Contributions hereunder shall be

06013

remitted by the City each twenty-eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full annuity fund coverage for the period of the suspension.

## ARTICLE XV - SENIORITY

The Department recognizes the importance of seniority in filling vacancies within a command and shall make every effort to adhere to this policy, providing the senior applicant has the ability and qualifications to perform the work involved. While consultation on such matters is permissible, the final decision of the Department shall not be subject to the grievance procedure.

## ARTICLE XVI - GENERAL

### Section 1. Safety Helmets

The City agrees to furnish a safety helmet and equipment when required.

### Section 2. Maintenance of Facilities

All commands and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities. The Union shall give notice to the Department of any failure to maintain these conditions. If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 2 of the grievance procedure concerning that failure.

### Section 3. Semi-Private Hospital Accommodations for Line-of-Duty Injuries

The City shall prepare, submit and support legislation to provide semi-private hospital accommodations for Correction Officers injured in the line-of-duty.

### Section 4. Meal Scheduling

Employees shall not be assigned meals as a matter of practice during either the first hour and one-half or last hour and one-half of their tours. In cases of emergency this practice may be altered.



## Section 5.   Lump Sum Payments

Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the Employer shall provide a monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to the employee's credit in a lump sum. Such payments shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date, or where an employee reached the mandatory retirement age, the Employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

## Section 6.   Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment. Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after the execution of this Agreement, or one hundred-twenty (120) days following its earning, whichever is later, to the date of actual payment. Interest on overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later. Interest accrued pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5.00).

## Section 7.   Layoffs

Where layoffs are scheduled the following procedure shall be used:

1.    Notice shall be provided to the Union not less than thirty (30) days before the effective dates of such projected layoffs.

2.    Within such 30-day period designated representatives of the Employer will meet and confer with the designated representatives of the Union with the objective of considering feasible alternatives to all or part of such scheduled layoffs, including but not limited to (a) the transfer of employees to agencies with re-training, if necessary, consistent with the Civil Service

Law but without regard to Civil Service title, (b) the use of Federal and State funds whenever possible to retain or re-employ employees scheduled for layoff, (c) the elimination or reduction of the amount of work contracted out to independent contractors and (d) encouragement of early retirement and the expediting of the processing of retirement applications.

When a layoff occurs, the Department will provide the Union with a list of employees who are on a preferred list with the original date of appointment utilized for the purpose of such layoff.

## Section 8.  Public Transportation

The City and the C.O.B.A. will use their best efforts to effect free transportation on buses and subways for Correction Officers.

## Section 9.  Personnel Folder

The Department will upon written request to the Chief of Administration by the individual employee, remove from the Personnel folder, investigative reports which upon completion of the investigation are classified exonerated and/or unfounded.

## Section 10.  Disciplinary Record

The past disciplinary or work record of an employee may not be revealed during a Section 75, Civil Service Law, disciplinary proceeding until a determination as to guilt or innocence of the member has been determined.

## Section 11.  Short Sleeve Shirts

Correction Officers may wear short sleeve shirts and no ties on inside posts all year around.

## Section 12.  Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies. In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments. The City will notify and

0 0 13

discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law.  An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements.  Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XVII - UNION ACTIVITY

### Section 1.

Time spent by Union officials and representatives in the conduct of labor relations shall be governed by the provisions of Mayor's Executive Order No. 75, as amended, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement.  No employee shall otherwise engage in Union activities during the time the employee is assigned to the employee's regular duties.

### Section 2.

C.O.B.A. officers and delegates shall be recognized as representatives of the C.O.B.A. within their respective commands.  For the purpose of attending the regularly scheduled monthly meeting, C.O.B.A. delegates shall be excused from duty if the meeting coincides with the delegate's scheduled tour, provided that the command has received at least seventy-two (72) hours advance notice of such request for excusal.

### Section 3.

The Department of Correction will issue a memorandum to all heads of institutions instructing them to discuss labor/management problems with alternate Union delegates when a regular delegate is not available, and such alternate will be released for the regularly scheduled monthly meeting when the regular delegate is unable to attend said monthly delegate meeting because of illness which requires remaining at home or hospitalization, or

22

06013

absence from the New York metropolitan area on leave or by assignment, or required court appearance.

## ARTICLE XVIII - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any Correction Officer because of Union activity.

## ARTICLE XIX - BILL OF RIGHTS

The Guidelines for Interrogation of members of the Department in force at the execution date of this Agreement will not be altered during the term of this Agreement, except to reflect subsequent changes in the law or final decisions of the Supreme Court of the United States and the Court of Appeals of the State of New York regarding the procedures and conditions to be followed in the interrogation of a member of the Department. No less than two (2) weeks' written notice of such proposed alteration of the said Guidelines shall be given to the Union.

## ARTICLE XX - NIGHT SHIFT DIFFERENTIAL

a.  There shall be a 10% night shift differential which shall continue to be paid to Correction Officers assigned to rotating tours of duty for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m. Effective July 1, 1978 a 10% night shift differential shall continue to be paid to all other Correction Officers for work actually performed between the hours of 4:00 p.m. and 8:00 a.m., provided that more than one (1) hour is actually worked after 4:00 p.m. and before 8:00 a.m.

b.  Where overtime compensation is to be calculated for tours in the regular duty chart, the overtime calculation shall be based on the rate paid for the tour to which the overtime is attached; for tours not in the regular duty chart, the overtime calculation shall be based on that rate paid for half or more the hours of the tour to which the overtime is attached.

c.  For all Correction Officers hired after June 30, 1993:

   1.  No night shift differential shall be paid to those employees during the first six months of service.

060013

2.      Thereafter, 55% of the night shift differential as described in paragraph "a" above earned by a similarly situated Correction Officer hired prior to July 1, 1993 shall be paid until the employee reaches First Grade after five years.

## ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE

Section 1.  Definition

For the purpose of this Agreement the term, "grievance" shall mean:

a.          a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

b.          a claimed violation, misinterpretation or misapplication of the rules, regulations, or procedures of the agency affecting terms and conditions of employment, provided that, except as otherwise provided in this Section 1a, the term "grievance" shall not include disciplinary matters;

c.          a claimed violation, misinterpretation or misapplication of the Guidelines for Interrogation of Members of the Department referred to in Article XIX of this Agreement;

d.          a claimed improper holding of an open-competitive rather than a promotional examination;

e.          a claimed assignment of the grievant to duties substantially different from those stated in the employee's job title specification.

Section 2.

The grievance procedure, except for paragraph d. of Section 1 above, shall be as follows:

Step 1  The employee and/or the Union shall present the grievance verbally or in the form of a memorandum to the "Head of the Facility" not later than ninety (90) days after the date on which the grievance arose. The employee may also request an appointment to discuss the grievance. The Head of the Facility shall take any steps necessary to a proper disposition of the grievance and shall reply in writing by the end of the third work day following the date of submission.

06013

DOC000076

<u>Step II</u> An appeal from an unsatisfactory decision at Step I shall be presented in writing to the agency head or the designated representative. The appeal must be made within five (5) working days of the receipt of the Step I decision. The agency head or the designated representative, if any, shall meet with the employee and/or the Union for review of the grievance and shall issue a decision by the end of the tenth work day following the date on which the appeal was filed.

<u>Step III</u> An appeal from an unsatisfactory decision at Step II shall be presented by the employee and/or the Union to the Commissioner of Labor Relations, in writing, within ten (10) working days of the receipt of the Step II decision. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or designee, shall review all appeals from Step II decisions and shall answer such appeals within fifteen (15) working days.

<u>Step IV</u> An appeal from an unsatisfactory decision at Step III may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) working days of receipt of the Step III decision. In addition, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance." The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accord with the Consolidated Rules of the Office of Collective Bargaining. The costs and fees of such arbitration shall be borne equally by the Union and the City. The decision or award of the arbitrator shall be final and binding in accord with applicable law and shall not add to, subtract from or modify any contract, rule, regulation, existing policy or order mentioned in Section 1 of this Article.

### Section 3.

As a condition to the right of a Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the employee or employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the employee or employees and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.



## Section 4.

Any grievance of a general nature affecting a large group of employees and which concerns the claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement shall be filed at the option of the Union at Step III of the grievance procedure, without resort to previous steps.

## Section 5.

If a decision satisfactory to the Union at any level of the grievance procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at Step III of the grievance procedure; or if a satisfactory Step III decision has not been so implemented, the Union may institute a grievance concerning such failure to implement at Step IV of the grievance procedure.

## Section 6.

If the City exceeds any time limit prescribed at any step in the grievance procedure, the grievant and/or the Union may invoke the next step of the procedure, except, however, that only the Union may invoke impartial arbitration under Step IV.

## Section 7.

The City shall notify the Union in writing of all grievances filed by employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

## Section 8.

Each of the steps in the grievance procedure, as well as time limits prescribed at each step of this grievance procedure, may be waived by mutual agreement of the parties.

## Section 9.

a.    Any grievance relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the employee or the Union representative to the Commissioner of Labor Relations not later than thirty

_060 13._

DOC000078

(30) days after the notice of intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The decision shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.

b.  A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within fifteen (15) days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator shall decide such grievance within seventy-five (75) days of its presentation to him. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Union and the City.

## Section 10.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

## Section 11.

The grievance and arbitration procedures contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievance" herein. This Section shall not be construed in any manner to limit the statutory rights and obligations of the City under Article XIV of the Civil Service Law.

## ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT

In the event a Correction Officer dies because of line-of-duty injury received during the actual and proper performance of Correction Officer service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of Correction Officer duty, through no fault of the employee's, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death. Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated to the estate of the deceased.

06013

## ARTICLE XXIII - DEATH BENEFIT - UNUSED LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

a. All unused accrued leave up to a maximum of 54 days' credit;

b. All unused accrued compensatory time earned subsequent to January 1, 1971 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

### ARTICLE XXIV - NO STRIKES

In accord with applicable law, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, or mass absenteeism, or induce any mass resignation during the term of this Agreement.

### ARTICLE XXV - BULLETIN BOARDS

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for employees to read. All notices shall be on Union stationery, shall be used only to notify employees of matters pertaining to Union affairs, and shall not contain any derogatory or inflammatory statements concerning the City, the Department, or personnel employed by either entity.

### ARTICLE XXVI - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof. This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law.

### ARTICLE XXVII - SAVINGS CLAUSE

If any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.



## ARTICLE XXVIII - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty (50) employees covered by this Agreement.

### Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the grievance procedure shall not be appropriate items for consideration by the labor-management committee.

### Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one (1) alternate. Each committee shall select a chairman from among its members at each meeting. The chairmanship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

At the request of either the Department of Correction or the C.O.B.A., a representative of the Office of Labor Relations will sit in on the Labor Management Committee.

### Section 4.

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties. At least one (1) week in advance of a meeting the party calling the meeting shall provide to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of a committee.



## ARTICLE XXIX - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law including the New York State Financial Emergency Act for the City of New York, as amended.

080 13

WHEREFORE, we have hereunto set our hands and seals this 6th day of Dec,
2005.

CITY OF NEW YORK

BY: _James F. Hanley_

JAMES F. HANLEY
Commissioner of Labor Relations

CORRECTION OFFICERS BENEVOLENT
ASSOCIATION OF THE CITY OF NEW
YORK, INC.

BY: _Norman Seabrook_

NORMAN SEABROOK
President

APPROVED AS TO FORM:

BY: _Paul T. Rephen_

PAUL T. REPHEN
ACTING CORPORATION COUNSEL

Date submitted to the
FINANCIAL CONTROL BOARD

UNIT:  **CORRECTION OFFICERS**

TERM:  **February 1, 2003 to April 30, 2005**

OFFICE OF LABOR RELATIONS
REGISTRATION

OFFICIAL                    CONTRACT

NO:
**06013**

DATE:
DEC 0 6 2005



NEW YORK CITY DEPARTMENT OF CORRECTION
Martin F. Horn, Commissioner

Office of The Commissioner

60 Hudson Street
New York, NY 10013
212 • 266 • 1212
Fax 212 • 266 • 1219

**Norman Seabrook, President**
**Correction Officers' Benevolent Association**
**335 Broadway**
**New York, N.Y.  10013**

Re:  **COBA Agreement for the period of February 1, 2003 to April 30, 2005**

Dear Mr. Seabrook:

When the Departmental Doctor determines that a Correction Officer is injured in the line of duty and is incapacitated and unable to return to work for a finite period of time, then the Department will not confine such Officer to his/her residence for that period.  If the administrative determination by the Commissioner or his/her designee is different from that of the Departmental Doctor, then the change will be communicated to the Officer by telephone or in writing.

It is expressly understood that the determination by the Commissioner or his/her designee is final and not subject to the grievance procedure.  This procedure does not affect any other rule or regulation of the Department.

Very truly yours,

Martin F. Horn

06013



NEW YORK CITY DEPARTMENT OF CORRECTION
Martin F. Horn, Commissioner

Office of The Commissioner

60 Hudson Street
New York, NY 10013
212 • 266 • 1212
Fax 212 • 266 • 1219

Norman Seabrook, President
Correction Officers' Benevolent Association
335 Broadway
New York, N.Y. 10013

Re:   COBA Agreement for the period of February 1, 2003 to April 30, 2005

Dear Mr. Seabrook:

This is to confirm our understanding that when a Correction Officer is required to report to a location other than his/her assigned location, he/she shall be allowed travel time within the tour of duty.

This shall not pertain to staff who normally have field assignments.

Very truly yours

Martin F. Horn

06013

Correction Officers Benevolent Association



# OFFICE OF LABOR RELATIONS

### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**PAMELA S. SILVERBLATT**
*First Deputy Commissioner*

Norman Seabrook
President
Correction Officers' Benevolent Association
335 Broadway
New York, N.Y. 10013

Re: COBA Agreement for the period of February 1, 2003 to April 30, 2005 - Change of Sick Leave Language

Dear Mr. Seabrook:

The sole intent of the change in the sick leave language in Article X, Section 2 of the October 1, 1991 - March 31, 1995 Agreement was to acknowledge enactment of Section 9-117.1(a) of the New York City Administrative Code which allows Correction Officers to continue to exclude line of duty sick leave payments from gross income in accordance with Internal Revenue Code Section 104 (a)(1) and Section 1.104 (b) of the Internal Revenue Service Regulations.

Please be assured that the 1987-90 Police Agreement varied in the same manner from the 1984-87 Police Agreement as did the Correction Officers Agreement, and that there was no intent to nor does it deprive any Correction Officer of any benefit nor diminish any benefit, but rather to keep and further an existing benefit.

The sick leave provisions of Article X, Section 2 (i) and (ii) of the 2003-2005 Correction Officer Agreement have no other purpose, nor shall they have any other use, but to continue the benefit therein previously contained.

Very truly yours,

James F. Hanley

08013.