08 Civ. 3134 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

                                                    Plaintiffs,

-against-

THE CITY OF NEW YORK,

                                                    Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S SECOND MOTION FOR
SUMMARY JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-102*
*New York, N.Y. 10007*

*Of Counsel: Megan Burrows Carpenter*
*Tel: (212) 788-0903*
*Matter No. 2008-014682*

Diana Goell Voigt,
Megan Burrows Carpenter,
   Of Counsel.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------------- x
ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

                              Plaintiffs,

                              08 Civ. 3134 (DLC)

      -against-

THE CITY OF NEW YORK,

                            Defendant.

------------------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR SECOND MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiffs, approximately 840 former and current correction officers employed by the New York City Department of Correction ("DOC") that filed timely consents to join in this action, filed this collective action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., against the City of New York in which they alleged certain violations of the FLSA. The sole remaining claim herein is plaintiffs' claim that they were not paid for overtime work allegedly performed after the end of their daily tour schedule.[1]

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court, because plaintiffs are not entitled to overtime compensation for work allegedly performed beyond their tours when they opted not to

---

[1] After the close of discovery, all parties moved for summary judgment. See Docket Sheet, entry nos. 97-104, 107-118. Plaintiffs' motion for summary judgment was denied in its entirety, and defendant's motion for partial summary judgment was granted in its entirety. Id. at entry no. 120. Pursuant to a stipulation entered into between the parties on November 4, 2011, and so-ordered by the Court on November 8, 2011, it was determined that the sole remaining claim is plaintiffs' "late relief" claim. Id. at entry no. 124.

report that time to defendant and there is no evidence that defendant had knowledge that plaintiffs worked such time. Alternatively, to the extent that some plaintiffs performed work beyond their regularly scheduled tour for which they were not paid, such time is de minimis.

## STATEMENT OF FACTS

For its statement of facts, defendant respectfully refers the Court to Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Defendants' 56.1"), dated March 16, 2012, and the exhibits and deposition transcripts upon which it is based.

## ARGUMENT

### POINT I

**PLAINTIFFS ARE NOT ENTITLED TO OVERTIME COMPENSATION FOR OVERTIME ALLEGEDLY WORKED BUT NOT REPORTED TO DEFENDANT.**

Plaintiffs' claim that they were not paid for overtime work allegedly performed after the end of their daily tour fails, as a matter of law, because there is no evidence in the record before the Court that defendant had actual or constructive knowledge that plaintiffs worked overtime and were not compensated for such work. Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008). An employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work. See, e.g., Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981) (knowledge affords employer the opportunity to comply with the FLSA).

Here, DOC tracks the hours that a correction officer works in two ways: 1) each correction officer is required to sign in and out of a log book at the "exact time" of his arrival and departure from his assigned facility; and 2) each correction officer is required to submit an

2

overtime slip accounting for the hours and/or minutes that he worked in excess of his regularly scheduled tour. See Defendant's 56.1, at ¶ 13. Timekeepers assigned to each facility review both the log books and the overtime slips to determine each correction officer's pay for a given week, including any overtime compensation due to the officer. Id. However, most deposed plaintiffs testified that they did not sign in and out at the "exact time" of their arrival and departure at the facility but rather they used their tour start and end time. Id. at ¶ 15. In other words, plaintiffs are provided with a method of accurately recording their time but do not do so.

With respect to the submission of overtime slips, some plaintiffs testified that they do not submit overtime slips for occasions on which they remained at their post after their tour was scheduled to end, unless they remained at their post for an arbitrary number of minutes that met that particular officer's threshold for submitting an overtime slip. Id. at ¶ 35 (testimony that some plaintiffs would not submit slips for less than thirty minutes (Colon, Ladson, Jackson-Gaspard, Crespo), forty minutes (Crivera, Been), forty-five minutes (Allbright, Contreras, Sanders), or sixty minutes (Miller, Gershonowitz, Rivera).

Though plaintiffs have attempted to blame roll call and O/C retrieval as the reason they may not leave their posts on time, their testimony consistently raised another reason—correction officers come to work late. Id. at ¶ 18 (Officer Crivera's testimony that correction officers "come in late almost every day"); ¶ 30 (Officer Steele's testimony that a correction officer will "get here late, his kids, or whatever the situation is," causing a delay in relief); ¶ 33 (Officer Kinard's testimony that some correction officers, tired from working double shifts, sleep in and come to work hours late). In fact, three of the deposed plaintiffs testified that they were themselves disciplined for frequently coming to work late. Id. at ¶¶ 16, 26, 32. Further exacerbating the situation, a "congregation" of officers would, after roll call and O/C retrieval,

go to check their mailboxes or speak with timekeepers before going to their post to relieve a fellow officer. Id. at ¶ 25. Thus, plaintiff's own testimony establishes that their alleged late relief claim was not the result of defendant's work requirements or job responsibilities but rather personal issues of other correction officers who did not arrive on time for work or decided to focus on personal matters before relieving an officer.

These late arrivals appear to be the actual reason that some plaintiffs opt not to submit certain overtime slips. Officer Kinard testified that he sometimes did not put in an overtime slip because the officer relieving him was late getting to work and asked him not to submit an overtime slip as a favor. Id. at ¶ 33. Officer Gershonowitz testified that he would not put in an overtime slip because then the officer relieving him "would have to get a late slip" and Officer Gershonowitz did not want to be seen as a "snitch or a rat." Id. at ¶ 27. Officer Crivera, who stated that correction officers "come in late almost every day," testified that he would not submit an overtime slip if the relieving officer was "just late." Id. at ¶ 18. Officer Ladson testified that he chose not to submit overtime slips to avoid causing trouble for other officers. Id. at ¶ 22. Officer Jackson-Gaspard testified that she chooses not to submit slips for some overtime worked because she does not want her relieving officer to receive a late slip. Id. at ¶ 26. Officer Steele testified that sometimes she chose not to submit an overtime slip because she knew that the relieving officer was running late or "having issues" and he would make it up to her later. Id. at ¶ 30. Officer Rivera testified that he viewed ten to fifteen minutes of overtime as something that just "happens," and such occurrences did not merit an overtime slip. Id. at ¶ 32. This testimony undermines plaintiffs' claim that defendants failed or refused to pay overtime in violation of the FLSA.

Some plaintiffs testified that slips for less than a certain number of minutes were not honored, but had no specific examples to support their testimony, and could not point to any overtime slip, submitted within the statute of limitations period that was submitted and not paid. However, any testimony that DOC disregarded slips for smaller amounts of overtime is refuted by the testimony of those officers who did not have these minimum thresholds, who submitted overtime slips for as little as ten minutes, and whose slips were paid. For example, Officers Bass, Kinard, Shaw and Washington testified that they would submit an overtime slip when they worked fifteen minutes past the time their tour was scheduled to end, and that those slips were paid. Id. at ¶ 37. Officers Monclova and Steele testified that they submitted slips for ten minutes of overtime, and that those slips were paid. Id.

Further, the record establishes that those officers who chose not to submit certain overtime slips were submitting other overtime slips and were being paid for such overtime. Id. at ¶ 35; Exhibit Y, Erath Decl., at ¶ 4. At its core, then, plaintiffs' argument is that even though they frequently requested and received overtime pay, DOC should pay them for additional overtime allegedly worked, but which was deliberately obscured from defendant's view. Such argument fails as a matter of law.

The Eastern District addressed this issue in Joza v. WW JFK LLC, No. 07 Civ. 4153 (ENV)(JO), 2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010) wherein the plaintiff claimed that she should be paid for overtime she allegedly worked but for which she did not submit an overtime slip. It was undisputed in that case, as it is here, that "completion of an overtime slip was the agreed method by which an employee reported overtime work and obtained overtime compensation." Joza, 2010 U.S. Dist. LEXIS 94419 at *24. Further, it was undisputed in Joza, as here, that the plaintiff did, from time to time, claim overtime by

submitting an overtime slip. Id. at *16.  In finding that the plaintiff was not entitled to overtime pay for occasions on which she allegedly worked overtime but did not submit a slip, the court stated that "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of the FLSA's overtime requirements." Id. at *32, citing Forrester, 646 F.2d at 414-15.

Plaintiffs herein, who are undoubtedly in the best position to precisely report time worked in excess of their tours, cannot expect defendant to have "knowledge" that they were working in excess of their tours on certain days when they themselves prevented defendant from having this knowledge by failing to correctly record their time and by failing to submit overtime slips for some days—but not others.  Indeed, all deposed plaintiffs testified that they requested and received overtime while employed with DOC and therefore were aware of the procedures in place for reporting their time and receiving overtime compensation.  See Defendant's 56.1, at ¶ 14.  Further, plaintiffs were requesting and receiving tens of thousands of dollars in overtime per.  See Exhibit Y, Erath Decl., at ¶ 4.  Accordingly, the evidence in the record demonstrates that DOC, upon review of the log books and/or plaintiffs' overtime slips, would have no idea that plaintiffs allegedly worked beyond their tour and did not submit an overtime slip for such work. Joza, 2010 U.S. Dist. LEXIS 94419 at *32-33 (where defendants had no knowledge of plaintiff's alleged extra overtime work, and it was plaintiff who prevented defendants from learning about the alleged extra overtime work, plaintiff's claim of wage and hour law violations "comes up short").  There is simply no evidence in the record that defendant knew or had reason to know that plaintiffs were working for an additional few minutes in excess of their tours without being compensated.

Therefore, since plaintiffs did not accurately record their time and did not submit overtime slips on certain occasions when they allegedly remained at their post after their tour was scheduled to end, defendant could not have requisite knowledge that they were working in excess of their tour. The power to be paid for overtime work performed was securely in plaintiffs' hands; they needed only submit a slip. It is undisputed that plaintiffs actually filed overtime slips and therefore, "the only reasonable conclusion to be drawn is that correction officers were aware of their right to overtime pay and sought compensation for overtime work." See Docket Sheet, entry no. 120, Decision & Order, at 23. That some plaintiffs chose not to submit slips for the nine to ten minutes they allegedly worked beyond their tours—because they did not want another officer to be disciplined for being late, because they were doing a favor for a friend, or perhaps because they themselves were late to work—does not constitute an FLSA violation on defendant's behalf. Accordingly, defendant is entitled to summary judgment on plaintiffs' remaining claim. See Joza, 2010 U.S. Dist. LEXIS 94419, at *32-*33 ("Other than overtime compensation that might have been due her for overtime work she deliberately chose not to report, [plaintiff] was paid every penny of overtime she chose to report and process. Consequently, judgment must be for defendants on all of plaintiff's claims.").

## POINT II

**TO THE EXTENT THAT SOME PLAINTIFFS PERFORMED WORK BEYOND THEIR REGULARLY SCHEDULED TOUR FOR WHICH THEY WERE NOT PAID, SUCH TIME IS DE MINIMIS.**

Even if the Court were to find that plaintiffs worked more than 171 hours in a twenty-eight day work period such that they would be entitled to compensation at time and-one-

half,[2] that they were "relieved late" during a period in which they were entitled to compensation at time and-one-half, and that plaintiffs' failure to submit overtime slips for such time did not bar recovery under the FLSA, defendant respectfully submits that the time plaintiffs allegedly spent waiting to be relieved is de minimis, and thus their claim should still be dismissed. "The de minimis doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." Singh v. City of N.Y., 524 F.3d 361, 370-71 (2d Cir. 2008) (internal quotation and alteration omitted). "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." Singh, 524 F.3d at 371. Three factors are examined by courts when evaluating whether compensable time should be considered de minimis: 1) the administrative difficulty of recording the time; 2) the size of the claim in the aggregate; and 3) whether the tasks occur regularly. Id. at 371. Here, when these factors are weighed, it is clear that the time in which plaintiffs are allegedly waiting to be relieved is de minimis and therefore non-compensable as a matter of law.

---

[2] The FLSA generally requires that employers provide overtime compensation for work beyond forty hours in a single workweek. 29 U.S.C. § 207(a)(1). However, for public employees engaged in law enforcement activities, overtime commences after 171 hours of work in a twenty-eight day work period. § 207(k)(1)(B); 29 C.F.R. § 553.201. This exception is applicable to correction officers. 29 C.F.R. § 553.211(f). Defendant adopted a twenty-eight day work period, pursuant to the federal regulation. See Exhibit Z.

This Court explicitly rejected the argument, asserted in plaintiff's motion for summary judgment, that defendant did not adopt a twenty-eight day work period and was therefore required to calculate plaintiffs' overtime on a weekly basis, holding that "there is substantial evidence that DOC adopted the twenty-eight day period permitted by Section 207(k)(1)(B)." See Docket Sheet, entry no. 120, at 24-26. Plaintiffs have since withdrawn with prejudice any claim they may have had that their overtime was not calculated in compliance with the FLSA. Id. at entry no. 124. Accordingly, there can be no question that the instant matter is a "chart claim" and that as such, possible damages are available only for hours over 171 in a twenty-eight day period. 29 U.S.C. § 207(k)(1)(B); 29 C.F.R. § 553.201. See also Exhibit X, Expert Report, at 3-4, for a discussion of offsets that defendant is entitled to take regarding overtime worked by correction officers.

8

First, as noted above, plaintiffs often fail to comply with defendant's timekeeping requirements, in that they do not sign in and out correctly nor do they submit overtime slips unless the time allegedly worked beyond one's tour exceeds the officer's personal threshold for compensable time. See Defendant's 56.1, at ¶ 15. Therefore, by plaintiffs' own doing, there is an administrative difficulty in recording this time.

Second, the size of the claim is diminutive. It is well settled that "[m]ost courts have found daily periods of approximately ten minutes de minimis even though otherwise compensable." Lindow v. U.S., 738 F.2d 1057, 1062 (9th Cir. 1984); Albrecht v. Wackenhut Corp., No. 07 Civ. 6162 (MAT), 2009 U.S. Dist. LEXIS 88073 at *30-*31, n.7 (W.D.N.Y. Sept. 24, 2009), aff'd by 379 Fed. Appx. 65 (2d Cir. 2010). Further, "[w]hile there is no bright line test for determining how much time will be considered de minimis for FLSA purposes," there is a great deal of authority that time periods of fifteen minutes are de minimis. Albrecht, 2009 U.S. Dist. LEXIS 88073 at *30-*31, n.7, citing Anderson v. Pilgrim's Pride Corp., 147 F.Supp.2d 556, 564 (E.D.Tex. 2001) (majority of courts have found daily periods of approximately ten minutes de minimis as a matter of law); Lindow, 738 F.2d at 1062 (seven to eight minutes spent by employees in shift change activities was de minimis and therefore not compensable); Carter v. Panama Canal Co., 314 F.Supp. 386, 392 (D.D.C. 1970) (two to fifteen minutes of work was de minimis for FLSA purposes), aff'd, 463 F.2d 1289 (D.C. Cir.), cert. denied, 409 U.S. 1012 (1972). Here, based on plaintiffs' own deposition testimony, they work, on average, nine to ten minutes beyond the end of their regularly-scheduled tour, which fits their claim squarely within the boundaries of de minimis work. See Defendant's 56.1, at ¶ 39. Accordingly, any time

allegedly spent by plaintiffs at their post after their tour was scheduled to end is well within the time frame set forth in Albrecht and is therefore de minimis.[3]

Finally, there is no evidence in the record before this Court that plaintiffs are not compensated for working beyond the end of their tour with any sort of regularity. Plaintiffs requested and received tens of thousands of dollars of overtime payments during the limitations period. See Defendant's 56.1, at ¶ 16 ($197,225.83); ¶ 17 ($25,853.57); ¶ 18 ($16,315.49); ¶ 19 ($62,920.71); ¶ 20 ($48,878.70); ¶ 21 ($10,040.99); ¶ 22 ($6,703.20; ¶ 24 ($136,503.40); ¶ 26 ($16,271.84); ¶ 27 ($26,975.89); ¶ 28 ($11,051.32); ¶ 29 ($60,985.74); ¶ 30 ($26,927.12); ¶ 31 ($60,325.26); ¶ 32 ($159,299.91); ¶ 34 ($33,704.94). These payments were calculated on a daily basis, regardless of the number of hours a correction officer works in a twenty-eight day period. Id. at ¶ 11. Further, Officer Been testified that he submitted an overtime slip "almost every day," and six of the deposed plaintiffs testified that they submit overtime slips for very small—ten to fifteen minutes—increments. Id. at ¶¶ 20, 37. Further still, Officers Monclova, Washington, Ladson, Gershonowitz, Steele, and Crespo testified that, during part of the statutory period, they were not relieved late at all. Id. at ¶ 34 (at security division post, held since July 2009, Officer Monclova was relieved nine to sixteen minutes before the end of his tour, and was then "free to go"); ¶ 17 (because Officer Washington's storehouse post, held from January 2008 to the present, did not require face-to-face relief, he left his post sixteen to twenty-one minutes before the end of his tour and waited in the locker room until it was time to sign out); ¶ 22 (in Officer Ladson's closed box post, held from 2005 until March 2009, no face-to-face relief was required);

---

[3] Further, as plaintiffs have testified and as demonstrated in the data analyzed by Dr. Erath, when plaintiffs submitted slips for small amounts of overtime, they were paid. See Defendant's 56.1, at ¶ 36; Exhibit Y, Erath Decl., at ¶¶ 8, 9. There is no evidence that there was any attempt by DOC not to pay for smaller amounts of overtime. Rather, plaintiffs were paid overtime when they properly followed the procedures and submitted a slip seeking payment.

10

¶ 27 (for security post, held from February 2008 until mid-2010, no face-to-face relief was required, and Officer Gershonowitz left his post up to sixteen minutes before its end and could be "out the door on the way home" one minute before the end of his tour); ¶ 30 (Officer Steele testified that she left her post six to eleven minutes early); ¶ 31 (Officer Crespo testified that he was relieved nine to sixteen minutes before the end of his tour).  Accordingly, plaintiffs cannot demonstrate that they were not paid for overtime allegedly worked with any sort of regularity, failing the third prong of the Singh test.

After carefully analyzing the evidence, which is based upon plaintiffs' testimony and payroll records, plaintiffs can establish, at best, that a small percentage of them may have worked nine to ten minutes beyond their regularly scheduled tour.  However, even if plaintiffs worked such time, it was a de minimis amount and non-compensable as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court issue an order granting defendant's second motion for summary judgment and dismissing with prejudice plaintiffs' claim that they were not paid for overtime work allegedly performed after the end of their daily tour schedule, and awarding defendant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 16, 2012

                MICHAEL A. CARDOZO
                Corporation Counsel of the
                  City of New York
                Attorney for Defendant
                100 Church Street, Room 2-102
                New York, New York 10007
                (212) 788-0903
                mcarpent@law.nyc.gov

By: _____
                Megan Burrows Carpenter
                Assistant Corporation Counsel

Diana Goell Voigt,
Megan Burrows Carpenter
    Of Counsel.