08 Civ. 3134 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

                            Plaintiffs,

-against-

THE CITY OF NEW YORK,

                            Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S SECOND MOTION
FOR SUMMARY JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-102*
*New York, N.Y. 10007*

*Of Counsel: Megan Burrows Carpenter*
*Tel: (212) 788-0903*
*Matter No. 2008-014682*

Diana Goell Voigt,
Megan Burrows Carpenter,
   Of Counsel.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------- x
ERIC EDWARDS, Individually and on Behalf of All
Other Persons Similarly Situated,

                                                          Plaintiffs,

                                      08 Civ. 3134 (DLC)

          -against-

THE CITY OF NEW YORK,

                                                        Defendant.
------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

**POINT I**

**THERE IS NO TRIABLE ISSUE OF FACT TO PRECLUDE SUMMARY JUDGMENT.**

       Plaintiffs' opposition is based on a mischaracterization of the evidence and a fundamental misunderstanding of the law. As previously argued in defendant's moving papers, plaintiffs are not entitled to compensation for overtime allegedly worked but deliberately not reported to defendant. In fact, defendant demonstrated that plaintiffs requested and received overtime payments, but chose not to submit overtime slips for certain amounts of time that they deemed de minimis, thereby preventing DOC from acquiring knowledge of alleged uncompensated hours. In circumstances such as these, "the employer cannot be said to have suffered or permitted the employee to work in violation of the FLSA's overtime requirements." Joza v. WW JFK LLC, 2010 U.S. Dist. LEXIS 94419, at *32 (E.D.N.Y. Sept. 9, 2010). Plaintiffs do not refute—or even address—these facts or relevant case law. Instead, they make

arguments that are not supported by any evidence, and are insufficient to defeat defendant's motion for summary judgment.

**A.  There Is No Evidence that Overtime Slips Were Ignored or Thrown Away.**

Though plaintiffs argue that "many overtime slips . . . were ignored and/or thrown away," see Plaintiffs' Memorandum of Law in Opposition to Defendant's Second Motion for Summary Judgment ("Plaintiffs' Opp."), at 3, they have not identified any admissible evidence to support such a contention.  For instance, plaintiffs state that "[w]hen correction officers complain to timekeepers about not receiving overtime, often it is discovered that no overtime slip was sent by the captain to the timekeeper." Id.  In support of this statement, plaintiffs rely solely on the testimony of timekeeper Cynthia Lewis, who stated only that if an officer complains that he has not received overtime, a timekeeper will "look through those slips of the day or the month or the year in question, if it's not there, then the burden of proof is then on the officer." See Exhibit E, annexed to the Rand Declaration, at 38-39.  This testimony, as the Court has already determined, does not show that any captain chose not to submit overtime slips to timekeepers. See Docket Sheet, entry no. 120, Decision and Order ("MSJ Decision"), at 22.

Further, though plaintiffs assert that "[c]aptains often throw out overtime slips into the garbage," they have failed to identify any supervisor who did so or any occasion on which they witnessed the destruction of an overtime slip.  See Plaintiff's Opp., at 3.  For example, Vandorn Ladson testified vaguely that "they" would submit overtime slips and "the captain would throw it out," but he failed to identify a captain threw away slips. Id.  Alethea Miller testified that "it was told to us that [the overtime slips] wasn't being forwarded, that they

were going in the garbage can." Id. However, she never saw a captain rip up an overtime slip and did not know who told her that slips were being thrown away. See Exhibit AA, at 53:6-17.[1]

**B.     There Is No Evidence That Plaintiffs Were Pressured to Not Submit Overtime Slips.**

Plaintiffs claim that that they were pressured into not submitting overtime slips, but are again unable to produce admissible evidence in support of their argument. For example, Noel Gershonowitz testified that "no boss" or "supervisor" ever told him not to submit overtime slips. See Exhibit P, at 36:11-17. Michael Crivera testified that he was never told by a captain to not submit an overtime slip, and admitted that he never saw a captain "rip up" an overtime slip. See Exhibit G, at 34:19-22; Exhibit BB, at 35:12-15. Immanuel Washington claimed that officers could be removed from "preferred command[s]" if they "cry[ed] about overtime," see Plaintiff's Opp., at 5, but failed to identify any officer who had this experience. See MSJ Decision, at 23. As the Court noted, conclusory, vague assertions are insufficient to establish the misconduct alleged here. Id.; Ridinger v. Dow Jones & Co., 651 F.3d 309, 317 (2d Cir. 2011). Further, though plaintiffs submit to the Court that they testified that they were "pressured" not to submit overtime slips for certain amounts of time, only one plaintiff testified so:[2] Philip Kinard, who testified that he was pressured by fellow correction officers not to submit overtime slips because they wanted their own lateness to go unnoticed. See Defendant's 56.1 Statement, at ¶ 33 (citing Kinard's testimony that he was asked not to submit a late slip "as a favor" to fellow officers and that they applied "a kind of pressure" so that they would not receive late slips).

---

[1] Exhibits AA through CC are annexed to the Supp. Carpenter Decl., dated April 13, 2012, submitted in further support of defendant's second motion for summary judgment. Unless otherwise noted, all other exhibits referred to herein are annexed to the Carpenter Decl., dated March 16, 2012.

[2] Plaintiffs also refer to the deposition testimony of Shaw, Colon, Allbright, Miller, Rivera, Jackson-Gaspard, Contreras and Crespo, though none of these correction officers identified a captain or other DOC employee who "pressured" them to not submit overtime slips. Further, these plaintiffs were paid more than $560,000 in overtime during the statutory period, indicating that to the extent anyone attempted to "pressure" them, it had no effect on them whatsoever. See Exhibit Y, Erath Decl., at ¶ 4. Further still, Shaw and Jackson-Gaspard put in overtime slips for as little as fifteen minutes and those slips were paid. Id. at ¶ 8.

3

Regardless, any testimony that DOC disregarded slips for particular amounts of overtime is refuted by the testimony of those officers who submitted overtime slips for less time and whose slips were paid, and specifically plaintiffs Bass, Kinard, Shaw, Washington, Monclova and Steele who testified that they submitted overtime slips for ten and fifteen minutes of overtime and those slips were paid. See Defendant's 56.1, at ¶ 37. As such, plaintiffs have set forth no evidence of any policy or practice of defendant to "pressure" plaintiffs to not submit overtime slips.[3]

## POINT II

### THE TIME THAT PLAINTIFFS ALLEGE THEY WORKED BEYOND THEIR TOURS IS DE MINIMIS.

Plaintiffs' opposition, which contends that the alleged overtime worked by plaintiffs is not de minimis, fails for several reasons. First, plaintiffs do not dispute that that they often fail to comply with defendant's timekeeping requirements, in that they do not sign in and out correctly and they choose not to submit certain overtime slips. Instead, plaintiffs offer only that "[s]ince the Correction Officers testified that they typically performed the same kinds of activities everyday, it would have been possible to compute how much time the Correction Officers spend on compensable activities." See Plaintiffs' Opp., at 9. This illogical statement is refuted by plaintiffs' own testimony, which establishes that the unpaid overtime allegedly worked varied greatly by plaintiff.[4]

---

[3] Though plaintiffs' Point I heading states, inter alia, that "defendant's policy was not to pay for less than half an hour of overtime," plaintiffs do not make this argument in their papers and they submit no evidence whatsoever to support the assertion. See Plaintiff's Opp., at 3. In fact, such a statement is contradicted by the evidence in the record. See Defendant's 56.1 Statement, at ¶ 37; Exhibit Y, Erath Decl., at ¶¶ 7-9.

[4] Plaintiffs argue that because defendant's expert took an average from the deposition testimony, "time spend [sic] working after the end of the scheduled tour times was not irregular." See Plaintiff's Opp., at 9. This assertion is not only illogical, but based on a flawed premise, in that plaintiffs testified to wildly different amounts of time allegedly spent working after the ends of their tours. See e.g., Defendant's 56.1 Statement, at ¶ 16 (Colon's testimony that he

4

Second, in arguing that "the Courts have not adopted a ten or fifteen minute <u>de minimis</u> rule," <u>see</u> Plaintiff's Opp., at 8, plaintiffs ignore the precedent established by <u>Lindow v. U.S.</u> and its Second Circuit progeny. 738 F.2d 1057, 1062 (9th Cir. 1984) ("Most courts have found daily periods of approximately ten minutes <u>de minimis</u> even though otherwise compensable"); <u>Albrecht v. Wackenhut Corp.</u>, 2009 U.S. Dist. LEXIS 88073 at *30-*31, n.7 (W.D.N.Y. Sept. 24, 2009), <u>aff'd by</u> 379 Fed. Appx. 65 (2d Cir. 2010) (citing cases holding that time periods of fifteen minutes are <u>de minimis</u>). Instead, plaintiffs offer a lengthy citation to a 2007 case from the Western District of Wisconsin. This case is not binding and the Second Circuit has said that ten to fifteen minutes is <u>de minimis</u>. Here, plaintiffs' deposition testimony shows that they worked, on average, nine to ten minutes beyond the end of their regularly-scheduled tour. <u>See</u> Defendant's 56.1, at ¶ 39. This is well within the time frame set forth in <u>Albrecht</u> and is therefore <u>de minimis</u>.

Third, plaintiffs misinterpret the application of the <u>de minimis</u> doctrine to aggregate claims, arguing that because "in the aggregate the time is significant" it is "therefore compensable as a matter of law." <u>See</u> Plaintiff's Opp., at 10. That is, plaintiffs treat the "aggregate size" factor as dispositive. This is incorrect. <u>See Lindow</u>, 738 F.2d at 1064 (holding that though the aggregate claim may have been substantial, it was still <u>de minimis</u> in light of the administrative difficulty of recording the time and the irregularity of the pre-shift work). Further, plaintiffs' calculation of their "aggregate" claim as 5.04 hours per 28-day period, is inaccurate.[5] As stated in the expert report, those nine to ten minutes work out to <u>three to four</u>

---

worked four to nine minutes beyond the end of his tour); ¶ 28 (Bass's testimony that he could be relieved on time, fourteen to twenty-nine minutes late, or seventy minutes late); ¶¶ 17, 22, 27, 30, 31, 34 (six plaintiffs' testimony that they left their posts <u>on time or before the end of their tours</u>).

[5] Plaintiffs took Dr. Erath's "high" estimate of 10.8 minutes per day and multiplied it by twenty-eight days. <u>See</u> Plaintiffs' Opp., at 10. This calculation fails to take into account: 1) that correction officers work, at most, twenty days in a twenty-eight day period; 2) plaintiffs' use of sick and vacation time, and 3) plaintiffs' submission of

5

cents per day of unpaid overtime. See Exhibit X, at 4. Plaintiffs have offered no legal basis for their argument these few cents constitute a claim large enough in its aggregate to defeat defendant's de minimis argument.

Fourth, plaintiffs argue, without any factual support,[6] that because correction officers communicate with each other during relief and this communication "took place after the end of the Correction Officers' tour," the time spent "getting updates" was compensable. See Plaintiffs' Opp., at 9. In support of their argument, plaintiffs cite to IBP. Inc. v. Alvarez, 546 U.S. 21, 33 (2005), a donning and doffing case. Even if plaintiffs' unsupported assertions were true and their legal argument was in fact supported by case law, which it is not, plaintiffs have failed to demonstrate that this is sufficient to defeat defendant's de minimis claim.

Finally, plaintiffs have failed to address the utter lack of evidence that they were not compensated for working beyond the end of their tour with any sort of regularity. It is undisputed that plaintiffs requested and received thousands of dollars of overtime payments during the limitations period, see Defendant's 56.1, at ¶¶ 16-22, 24, 26-32, 34, that some plaintiffs testified that overtime slips for small increments of time were paid, id. at ¶ 37, and that many plaintiffs were not relieved late, id. at ¶¶ 17, 22, 27, 30, 31, 34. Plaintiffs simply cannot demonstrate that they were not paid for overtime allegedly worked with any sort of regularity. For these reasons, defendant has established that the time allegedly worked beyond their tours was de minimis. Singh v. City of N.Y., 524 F.3d 361, 370-71 (2d Cir. 2008). As explained above and in defendant's motion for summary judgment, even if plaintiffs worked nine to ten

---

overtime slips. See Exhibit X, Expert Report, at 2-3 (assuming these extra nine to ten minutes "on all days worked" except for those days on which the plaintiff submitted an overtime slip).

[6] The "Dec. of Correction Officers," see Plaintiffs' Opp., at 9, does not appear on ECF and was not served on defendant.

minutes beyond their tours, the time was a de minimis amount and non-compensable as a matter of law and accordingly, their claim should be dismissed.

## POINT III

### THERE IS NO BASIS FOR EXCLUDING DR. ERATH'S DECLARATION OR EXPERT REPORT.

**A.     Dr. Erath's Declaration Was Properly Submitted in Support of Defendant's Motion.**

Plaintiffs seek to have the declaration of Dr. Christopher Erath stricken because it was not produced "by the January 13, 2012 deadline" set by the court. See Plaintiff's Opp., at 10. Dr. Erath's expert report was produced to plaintiffs on January 13, 2012. See Defendant's 56.1 Statement, at ¶ 43; Exhibit CC, cover letter for expert report. Expert discovery closed on February 24, 2012. See Docket Sheet, entry no. 123. Plaintiffs do not appear to argue that Dr. Erath's expert report was untimely served, merely that his declaration, submitted in support of defendant's second motion for summary judgment, was. See Plaintiff's Opp., at 10.

While courts will not admit supplemental expert evidence following the close of discovery that "expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report," U.S. v. Vulcan Soc'y, Inc., 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009), "to the extent that an expert affidavit is within the scope of the initial expert report, it is properly submitted in conjunction with dispositive motions even outside the time frame for expert discovery." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 279-80 (S.D.N.Y. 2011). See also Lidle v. Cirrus Design Corp., 2010 U.S. Dist. LEXIS 67031, at *7, n.4 (S.D.N.Y. July 6, 2010) (allowing affidavits from plaintiff's experts submitted in opposition to summary judgment because affidavits supported experts' initial positions); Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp., 262 F. Supp. 2d 50, 61 (S.D.N.Y. 2003) (finding expert affidavit may be considered on motion for summary judgment where it is

"substantially similar" to expert report); Emig v. Electrolux Home Prods. Inc., 2008 U.S. Dist. LEXIS 68811, at *3, n.3 (S.D.N.Y. Sept. 11, 2008) (allowing expert affidavit that "offers more information and elaboration on opinions previously expressed" in expert report). Here, the Erath Declaration merely calculates the amount of cash overtime payments made to plaintiffs and identifies instances of plaintiffs' overtime totaling sixty minutes or less. See Exhibit Y, at ¶ 2. These details support defendant's initial position and offer more information and elaboration on the calculations Dr. Erath previously made in his expert report. Therefore, the declaration is proper and should not be excluded.

**B.      Dr. Erath's Expert Report Does Not Lack Foundation.**

Plaintiffs argue that Dr. Erath's report "lacks foundation" because it does not state the dates on which the twenty-eight day periods began. See Plaintiffs' Opp., at 10.[7] Without explaining why this is important (i.e. why, for the purposes of this motion, a twenty-eight day period that begins on one day is different from a twenty-eight day period that begins on another), plaintiffs claim that this "omission" renders the entire report unreliable. Id. at 12. This argument is based on yet another mischaracterization of the evidence before the Court. Using the FISA data and plaintiffs' deposition testimony, Dr. Erath calculated the number of hours each plaintiff worked in each twenty-eight day period, their regular rate of pay, and overtime payments made to them. See Exhibit X, Expert Report, at 1-4. Dr. Erath fully explained the assumptions and variables underlying his analysis. Id. The fact that he did not include the start date for each twenty-eight day period in his report does not affect the validity of his calculations, and to the extent that plaintiffs had questions about the manner in which Dr. Erath performed his calculations, they could have deposed him during the course of expert discovery. They chose not

---

[7] From there, plaintiffs claim that Dr. Erath "was not able to identify any 28 days overtime period identified in the FISA electronic system and did not have any basis for himself, unilaterally designating a specific 28 day periods." See Plaintiffs' Opp., at 13-14. Plaintiffs do not offer any support for this assertion.

8

to do so. Nor did plaintiffs hire an expert, or otherwise perform a calculation producing a different result, to cast doubt upon the reliability of Dr. Erath's report. Further, despite having more than one month after receiving Dr. Erath's report before expert discovery closed, plaintiffs never raised any objection to it. Rather, plaintiffs rely on counsel's incoherent argument as a basis to claim that the report is unreliable. Their tardy and unsupported attack on the report is transparent and unavailing.

C.   **Plaintiffs' Remaining Objections to Dr. Erath's Expert Report Are Baseless.**

Plaintiffs argue that Dr. Erath should be disqualified as an expert because he "submitted no evidence that he has any expertise regarding the FISA electronic system or any expertise in calculating overtime under the FLSA." See Plaintiffs' Opp., at 14. It is not known what plaintiffs mean by "the FISA electronic system." Dr. Erath (and plaintiffs) were provided with the electronic data maintained by the Financial Information Services Agency ("FISA"), for the period from March 27, 2006 through December 31, 2011, which included plaintiffs' Employee Attribute, Pay Detail, Leave Accrual and Leave Usage files. See Exhibit X, expert report, at 2. The FISA data is payroll information, and Dr. Erath used this data for his calculations. Id. Further, Dr. Erath's curriculum vitae indicates that he has "served as an expert witness in numerous matters involving damages in . . . wage and hour cases." Id. at C.V. More broadly, Dr. Erath possesses an A.B. in Economics and Mathematics from Bowdoin College and a Master's and a Ph.D. in economics from the University of Wisconsin. Id. To the extent that he performed mathematical calculations for defendant, there is no support for plaintiffs' argument that Dr. Erath is unqualified.

Plaintiffs appear to further object to Dr. Erath's report on the ground that multiplication and division are somehow insufficiently tested theories, not acceptable under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993). See Plaintiffs' Opp., at 14-15.

9

Though plaintiffs assert that defendant has "failed to demonstrate the methods by which Dr. Erath calculated damages," Dr. Erath's report provides a detailed explanation of the manner in which he performed his calculations. See Exhibit X, at 1-4. Accordingly, plaintiffs have failed to demonstrate any basis for striking Dr. Erath's expert report, and they cannot sustain a challenge to Dr. Erath's approach under Daubert.

**D.     DOC Adopted a Twenty-Eight Day Period for Calculating Overtime**

Inexplicably, plaintiffs again argue that "the law enforcement exception in the FLSA is inapplicable to corrections officers," see Plaintiffs' Opp., at 13, and again, they disregard the previous decision of the Court and fail to cite any reason to disregard the plain language of the regulation that explicitly provides that the law enforcement exception applies to correction officers. See 29 C.F.R. §§ 553.201, 553.211(f); MSJ Decision, at 25, n.11. Plaintiffs cite Solis v. Dep't of Corr., 2009 U.S. Dist. LEXIS 93050 (W.D. Wash. 2009), "which merely found that 'based on the allegations provided,' it was 'uncertain . . . whether the law enforcement exception applies' to the corrections officers' complaint in that case." See MSJ Decision, at 25, n.11. Further, plaintiffs ignore the evidence submitted by defendant demonstrating that DOC adopted a twenty-eight day work period, pursuant to the federal regulation, see Exhibit Z, and they disregard this Court's finding that "there is substantial evidence that DOC adopted the twenty-eight day period permitted by Section 207(k)(1)(B)." See MSJ Decision, at 24-26. Accordingly, plaintiffs' challenge to Dr. Erath's export report on the grounds that potential damages are calculated pursuant twenty-eight day periods fails.

## CONCLUSION

For the foregoing reasons as well as the reasons set forth in the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated March 16, 2012, defendant respectfully requests that the Court issue an order granting defendant's second motion for summary judgment and dismissing with prejudice plaintiffs' claim that they were not paid for overtime work allegedly performed after the end of their daily tour schedule, and awarding defendant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
April 13, 2012

>    MICHAEL A. CARDOZO
>    Corporation Counsel of the
>       City of New York
>    Attorney for Defendant
>    100 Church Street, Room 2-102
>    New York, New York 10007
>    (212) 788-0903
>    mcarpent@law.nyc.gov
>
>    By: _____
>        Megan Burrows Carpenter
>        Assistant Corporation Counsel

Diana Goell Voigt,
Megan Burrows Carpenter
   Of Counsel.