UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ERIC EDWARDS, Individually and on       :
Behalf of All Other Persons Similarly   :
Situated,                               :       08 Civ. 3134 (DLC)
                         Plaintiff,     :
                                        :       OPINION & ORDER
            -v-                         :
                                        :
THE CITY OF NEW YORK,                   :
                         Defendant.     :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiffs:
William C. Rand
228 East 45th Street, 17th Floor
New York, NY 10017

Jeffrey M. Gottlieb
Dana L. Gottlieb
Gottlieb & Associates
150 East 18th Street, Suite PHR
New York, NY 10003

For Defendants:
Diana Goell Voigt
Megan Burrows Carpenter
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     Plaintiff Eric Edwards brings this suit on behalf of

himself and approximately 840 corrections officers employed or

formerly employed by the New York City Department of Corrections

("DOC") who filed consents to join this action.  The plaintiffs

allege violations of the Fair Labor Standards Act ("FLSA"), principally for the failure to pay sufficient overtime. Following the Court's August 26, 2011 Opinion on the parties' cross-motions for summary judgment (the "First Summary Judgment Opinion") and a November 4 stipulation between the parties, the sole remaining claim in this action is the plaintiffs' claim that they were not paid for overtime work allegedly performed after the end of their daily tour schedule (the "Late Relief Claim").  On March 16, 2012, the defendant moved for summary judgment on the Late Relief Claim.  For the following reasons, the defendant's motion is granted.

BACKGROUND

    A full description of the background and context of this litigation may be found in the First Summary Judgment Opinion, familiarity with which is assumed.  See Edwards v. City of New York, No. 08 Civ. 3134 (DLC), 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011).  A summary of the facts relevant to the defendant's March 16 motion is set forth herein.  Unless otherwise noted, the following facts are undisputed.

    The plaintiff corrections officers work at correctional facilities in the metropolitan area.  A majority work on a schedule of four days on and two days off.  A regular tour is

eight hours and thirty-one minutes.  Corrections officers are
paid overtime for work performed in excess of their daily tour.

     To track the hours worked by corrections officers and
compute their overtime pay, DOC requires officers to both (1)
sign in and out of a log book at the "exact time" of their
arrival and departure from their assigned facility, and (2)
submit overtime slips accounting for any time beyond ten minutes
worked in excess of their regularly scheduled tours.
Timekeepers review and reconcile log books and overtime slips to
compute officers' weekly overtime pay.[1]

     Nineteen plaintiffs have been deposed in this action.  All
testified that they had requested and received overtime at some
point during their employment with DOC.  In the aggregate, the
nineteen deposed plaintiffs earned more than $900,000 in
overtime during the limitations period.  As noted in the First
Summary Judgment Opinion, however, a number of the plaintiffs
have indicated that it is their practice to only submit overtime
slips if they have worked a minimum number of minutes beyond the

_____

[1] Officers submit overtime slips to a Captain in their facility's
control room.  The control room Captain reviews the overtime
slips submitted after a tour and completes a "tour certification
sheet" documenting the overtime performed on the tour.  The
Captain then transfers the tour certification sheet and overtime
slips to a timekeeper, who reviews these records for any
discrepancies and to ensure that overtime is documented and has
been authorized.  For the calculation of overtime pay,
timekeepers rely principally upon the overtime slips and the log
books.

end of their shift.  Four deposed plaintiffs testified that they would only submit an overtime slip if they had worked an hour or more beyond the end of their shift.  Three plaintiffs testified that their minimum threshold was 40-45 minutes, while another three testified that their threshold was 30 minutes.  Four plaintiffs testified that they would submit overtime slips if they worked a minimum of fifteen minutes in excess of their scheduled tour, while an additional plaintiff testified that she would submit slips for ten minutes of overtime.

A majority of the deposed plaintiffs also stated that they do not sign in and out of their facility's log at the "exact time" of their arrival and departure.  These plaintiffs instead sign in and out with the times corresponding to the start and end times of their scheduled tours.

A correction officer's shift ordinarily ends thirty-one minutes after the start of his or her replacement officer's shift.  During that time, the replacement officer attends roll call, retrieves an olin resin capsule ("OR capsule"), goes to the post, conducts a "count," inventories equipment, and reviews a log book.  Various plaintiffs testified that when an officer submits an overtime slip because he or she was relieved late, the late relief officer receives a "late slip" and may be subject to discipline.

Numerous plaintiffs testified that they were relieved late on a regular basis.  The plaintiffs did not offer admissible evidence to explain this pattern of lateness, but testified that they believed relief officers often experienced delays during roll call and while retrieving OR capsules, and frequently arrived at facilities late for their tours.

The plaintiffs claim that they were frequently not paid for overtime work performed because of late relief officers. Several plaintiffs testified that on certain occasions they did not submit overtime slips because they believed that supervisors would discard or refuse to sign off on overtime slips for less than a certain amount of time.  In addition, several plaintiffs testified that they believed they had not been paid overtime on certain occasions even when they had submitted overtime slips. Finally, several plaintiffs testified to their belief that corrections officers were pressured not to submit overtime slips for small amounts of time.  But the plaintiffs have again failed, as they did in connection with the First Summary Judgment Opinion, to identify any admissible evidence to support these beliefs.  For instance, they have failed to identify any supervisor who told anyone not to file overtime slips or any occasion on which a person witnessed the destruction of an overtime slip.

PROCEDURAL HISTORY

This action was filed on March 27, 2008, and certified as a collective action on November 3.  Approximately 840 current and former correctional officers filed timely consents to join this action.  On March 15, 2010, the Court so-ordered a stipulation between the parties which stated that:

> For purposes of discovery, summary judgment, and trial, the parties have selected a group of Test Plaintiffs from all opt-in plaintiffs which consist of agreed upon representative test plaintiffs from a majority of DOC facilities which are among the facilities subject to the instant action (the "Test Plaintiffs").

The parties agreed that rulings on the fifty Test Plaintiffs would be binding on all plaintiffs.

Fact discovery closed on February 28, 2011.  The parties cross-moved for summary judgment on March 28.  The plaintiffs moved for summary judgment on the following claims: (1) that time spent donning and doffing their duty uniforms and equipment is compensable under the FLSA; (2) that they were not paid for overtime while waiting for relief officers to arrive; (3) that defendant failed to properly calculate overtime; and, (4) that their overtime checks were delayed.  The defendant moved for partial summary judgment (1) to bar FLSA claims accruing earlier than two years before a plaintiff joined this lawsuit and (2) on the plaintiffs' donning and doffing claim.  In the First Summary

Judgment Opinion, the Court granted the defendant's motion and denied the plaintiffs' cross-motion.  Following a conference held on October 28, the parties entered into a November 4 stipulation, so-ordered by the Court on November 8, that the sole remaining claim in this action is the Late Relief Claim. Expert discovery concluded on February 24, 2012, and the defendant moved for summary judgment on the Late Relief Claim on March 16.  The motion became fully submitted on April 13.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the

pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554
F.3d 225, 266 (2d Cir. 2009).  "A party may not rely on mere
speculation or conjecture as to the true nature of the facts to
overcome a motion for summary judgment," as "[m]ere conclusory
allegations or denials cannot by themselves create a genuine
issue of material fact where none would otherwise exist."  Hicks
v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).
Only disputes over material facts -- "facts that might affect
the outcome of the suit under the governing law" -- will
properly preclude the entry of summary judgment.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475
U.S. 574, 586 (1986) (stating that the nonmoving party "must do
more than simply show that there is some metaphysical doubt as
to the material facts").

     The defendant argues that the Late Relief Claim fails as a
matter of law because the plaintiffs have failed to provide any
evidence that their employer had actual or constructive
knowledge that the plaintiffs worked overtime because of late
relief and were not properly compensated for this work.  The
FLSA provides that "no employer shall employ any of his
employees . . . for a workweek longer than forty hours unless
such employee receives compensation for his employment in excess
of the hours above specified at a rate not less than one and

one-half times the regular rate at which he is employed."  29
U.S.C. § 207(a)(1).  "Employ" is defined in the FLSA as
including "to suffer or to permit work."  29 U.S.C. § 203(g).
"It is clear an employer's actual or imputed knowledge that an
employee is working is a necessary condition to finding the
employer suffers or permits that work."  Chao v. Gotham
Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008).  Thus, to
establish liability under the FLSA on a claim for unpaid
overtime, "a plaintiff must prove that he performed work for
which he was not properly compensated, and that the employer had
actual or constructive knowledge of that work."  Kuebel v. Black
& Decker, Inc., 643 F.3d 352, 361 (2d Cir. 2011).  "[O]nce an
employer knows or has reason to know that an employee is working
overtime, it cannot deny compensation even where the employee
fails to claim overtime hours."  Holzapfel v. Town of Newburgh,
NY, 145 F.3d 516, 524 (2d Cir. 1998).

    Even assuming that the plaintiffs performed overtime work
because of late relief for which they were not compensated, and
this work was not de minimis, the defendant is still entitled to
summary judgment.  The plaintiffs have failed to produce any
admissible evidence that the defendant had actual or
constructive knowledge of uncompensated overtime work.  The
plaintiffs were familiar with and utilized the defendant's
system for tracking and compensating overtime; indeed, every

deposed plaintiff testified that he or she had submitted overtime slips and received overtime compensation.  The majority of deposed plaintiffs each received thousands of dollars in overtime during the limitations period.  Some plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked that did not exceed a certain arbitrary time threshold.  That fact, however, is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work.

The plaintiffs argue that they were not properly compensated for overtime work caused by late relief due to an array of employer misconduct.  The plaintiffs allege that supervisors (1) destroyed or discarded overtime slips rather than transfer the slips to timekeepers, and (2) pressured officers not to submit overtime slips for short periods of overtime.

First, the plaintiffs allege that control room Captains often destroy or discard overtime slips rather than transfer them to timekeepers.[2]  But the plaintiffs have failed to identify

---

[2] The plaintiffs argue here, as they did in their March 28 summary judgment moving papers, that "[w]hen correction officers complain to timekeepers about not receiving overtime, often it is discovered that no overtime slip was sent by the Captain to the timekeeper," and cite to the deposition of DOC timekeeper Cynthia Lewis ("Lewis").  As stated in the First Summary Judgment Opinion, Lewis testified only that if an officer complains that he has not received overtime, the timekeeper will

any Captain who did so, or specify any occasion on which this
occurred.  For example, plaintiff Vandorn Ladson ("Ladson")
testified that officers "would submit an overtime slip and the
captain would throw it out."  But Ladson also could not identify
any Captain who had done so, could not recall who had told him
that Captains threw out overtime slips, and stated that his
basis for believing that Captains throw out slips was that he
could "look on [his] pay stub and see that [he] wasn't paid for
the overtime."  He did not identify with any specificity the
date much less the pay stub to which he was referring or provide
any support in opposition to this motion to his vague assertion.

     Similarly, plaintiff Alethea Miller ("Miller") testified
that "it was told to us that [overtime slips weren't] being
forwarded, that they were going in the garbage can."  But Miller
could not identify a supervisor who discarded overtime slips,
clarified that she had no direct knowledge of such a practice,
and stated that she "wasn't told that directly from the officer
who saw it."

---

"look through those slips of the day or the month or the year in
question, if it's not there, the burden of proof is on the
officer."  As before, this testimony does not constitute
evidence that Captains chose not to submit overtime slips to
timekeepers.  Furthermore, the plaintiffs cannot use Lewis'
testimony that officers occasionally complained to her that
Captains had reduced their overtime to support the plaintiffs'
allegations that Captains in fact did so.

The plaintiffs also argue that officers who put in overtime slips for short periods of time were not paid and that supervisors pressured officers not to submit overtime slips for short periods of time.  The deposed plaintiffs testified to widely varying minimum overtime thresholds below which they felt pressured not to report work.  Miller, for example, "knew" that overtime slips for under an hour of work would not be honored. By contrast, plaintiff Harry Bass testified that "it was like an unwritten rule, if it's less than fifteen minutes . . . you're not getting paid."

The plaintiffs have failed to identify any supervisor who pressured a single corrections officer not to submit overtime slips.  For example, Philip Kinard ("Kinard") testified that officers "get pressured by the supervisors not to put in overtime slips," but characterized this as an "unwritten rule," and could not remember a specific occasion on which he had been told by a supervisor that submitting an overtime slip would result in his relief officer receiving a late slip.  Similarly, plaintiff Trina Jackson-Gaspard claims she was told by a Captain "when [she] first started the job," in approximately 2001 or 2002, not to submit slips for less than fifteen minutes of overtime, but could not identify the Captain or describe the incident with any specificity.

The plaintiffs' conclusory allegations that officers were pressured by supervisors not to submit overtime slips flies in the face of the hundreds of thousands of dollars in overtime compensation paid to the nineteen deposed plaintiffs alone during the limitations period.  Indeed, a recurring theme in the plaintiffs' depositions is that the officers themselves pressured one another not to submit overtime slips if a relief officer ran late.  Kinard, for example, testified that he had not submitted overtime slips "[b]ecause the [relief] officer would get a late slip, and you [were] trying to look out for your brother and sister officer."  Kinard described a "kind of pressure" from fellow officers not to submit overtime slips, and testified that he had received calls from late relief officers requesting that he not submit overtime slips.  Noel Gershonowitz testified that he often refrained from submitting an overtime slip when relieved late because the relief officer would receive a late slip and "you go from being a nice guy to being a damn snitch or a rat[.]"

The plaintiffs have pointed to extensive deposition testimony in their opposition papers, none of which supports their assertion that supervisors destroyed or discarded overtime slips, or pressured officers not to submit slips.  The plaintiffs rely upon the perceived existence of "an unwritten rule" on overtime, but fail to adduce any evidence that this

13

alleged rule actually existed, or that supervisors knew about it or did anything to propagate it.   "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment[.]"  <u>Ridinger v. Dow Jones & Co.</u>, 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted).  In sum, a jury would have to rely on speculation and conjecture to render a verdict in the plaintiffs' favor.

The defendant is entitled to summary judgment on the Late Relief Claim.  Because the plaintiffs have failed to produce any evidence that the defendant had actual or constructive knowledge of uncompensated overtime, it is unnecessary to reach the defendant's alternative argument that any such work performed was <u>de</u> <u>minimis</u> as a matter of law.


<u>CONCLUSION</u>

The defendant's March 16 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendant and close this case.

SO ORDERED:

Dated:    New York, New York
          May 15, 2012


                         _____
                              DENISE COTE
                    United States District Judge